## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BENJAMIN HUDOCK AND BREANN HUDOCK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.; BEST BUY CO., INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, LLC,<br><br>Defendants.<br>_____ | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs, by and through Plaintiffs' Counsel, sue on their own behalf and on behalf of the Class and Subclass defined below Defendant LG Electronics U.S.A., Inc. ("LG") and Defendants Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC (collectively, "Best Buy") and allege upon facts and information and belief as follows.

### INTRODUCTION

1.      This is a class action on behalf of consumers who purchased LG televisions.

2.      LG labels its LED televisions as having refresh rates of "120Hz" or "240Hz" when, in actuality, its televisions' refresh rates are 60Hz and 120Hz, respectively.

3.      "Hz," the scientific symbol for the unit "Hertz," literally means one cycle

1

per second. In the television industry, Hz is the standard unit of measurement for reporting a television's refresh rate, that is, how many unique images per second are displayed on the television screen. "120Hz" literally means 120 unique images per second. "240Hz" literally means 240 unique images per second. By expressly misrepresenting the refresh rate as a specific number of cycles per second, LG has deliberately misled consumers into believing that LG's LED televisions have a higher refresh rate than they actually have.  A television's refresh rate is directly linked to picture quality, and is one of the most material specifications touted by television manufacturers to consumers.

4.     Best Buy has likewise advertised LG televisions using misleading and untrue specifications.  Like LG, Best Buy markets and advertises the LG televisions with the same false refresh rates as LG. Best Buy makes these false assertions in advertisements and information displayed to customers in its stores and on its website.

5.     As a consequence of Defendants fraudulent' scheme, Plaintiffs paid more for LG's LED televisions than they would have otherwise paid had the accurate refresh rates been disclosed by Defendants.  Due to Defendants' deceptive practices, Plaintiffs received a television with lower picture quality than was represented by Defendants. Plaintiffs' experience and injury is typical of many consumers who have purchased LG televisions.

**PARTIES**

6.     Plaintiff Benjamin Hudock is a resident of East Troy, Wisconsin who, jointly with his wife, Plaintiff Breann Hudock, purchased an LG television, model number 55LN5100-UB from Best Buy.

7.     Plaintiff Breann Hudock is a resident of East Troy, Wisconsin who, jointly with her husband, Plaintiff Benjamin Hudock, purchased an LG television, model number 55LN5100-UB from Best Buy.

8.     Defendant LG Electronics U.S.A., Inc., is a New Jersey corporation with its principal place of business in Englewood Cliffs, NJ.

9.     Defendant Best Buy Co., Inc., is a Minnesota corporation with its principal place of business in Richfield, MN.

10.     Defendant Best Buy Stores, L.P., is a Virginia limited partnership with its principal place of business in Richfield, MN.

11.     Defendant Bestbuy.com, LLC, is a Virginia limited liability company with its principal place of business in Richfield, MN.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over the instant lawsuit pursuant to 28 U.S.C. §1332(d)(2), because there is minimal diversity, there are more than 100 members in the class and the aggregate amount in controversy exceeds $5,000,000, exclusive of attorneys' fees, interest, and costs.

13.     This Court has personal jurisdiction over the Defendants because they conduct substantial and continuous business in the State of Minnesota.

14.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions that give rise to the claims occurred within the State of Minnesota and the Defendants conduct a substantial part of their business within this District.

## SUBSTANTIVE ALLEGATIONS

### A.      General Allegations

15.     When watching television, the viewer is exposed to a series of still images displayed in rapid succession, which gives the appearance of motion on the television screen.  The number of times a television is able to display a unique image per second is referred to as the television's refresh rate and is measured in Hertz, abbreviated as "Hz."[1] Refresh rate, and the corresponding Hz measurement, are industry standard specifications that directly correspond to each other—a television with a refresh rate of 60Hz displays 60 unique images per second; a television with a refresh rate of 120Hz displays 120 unique images per second; and a television with a refresh rate of 240Hz displays 240 unique images per second.  Simply stated, for televisions, refresh rate equals Hz and Hz equals refresh rate.

16.     The refresh rate, or Hz measurement, is a vital specification of a television. Higher refresh rates serve to reduce or eliminate motion blur when fast moving objects or scenes appear on screen.   It is somewhat analogous to the shutter speed of a camera—the faster the shutter speed, the better a camera is able to capture a moving object as a still

---

[1] A Hertz is defined as one cycle per second.

frame, without motion blur.  In much the same way, the more often a television can refresh the picture and generate unique images, the better and more clearly a television is able to display moving objects on the screen.

17.     A significant hurdle to increasing the refresh rates for televisions is that electric current runs at 60Hz in the United States.  This means that the natural, or native, refresh rate of a television can be at most 60Hz because only 60 unique images per second are able to be carried by the electrical frequency.

18.     In order to surpass the 60Hz barrier and produce 120Hz and 240Hz televisions that display the corresponding number of unique images per second, a manufacturer producing a 120Hz or 240Hz refresh rate television must incorporate advanced interpolation technology.  Such technology predicts, creates and displays an extra unique image (or images) in between each of the 60 images that are produced by the 60Hz electrical current.  For example, a regular 60Hz television displays 60 unique images per second as follows: A-B-C-D-E-F-G-H and so on.  A 120Hz television with interpolation technology takes the same broadcast and displays 120 unique images per second in the following manner: A-ab-B-bc-C-cd-D-de-E-ef-F-fg-G-gh-H and so on.  For a television to have a refresh rate greater than 60Hz, it must rely on some form of advanced interpolation technology.

19.     Given the technological challenges (and cost) in surpassing the inherent 60Hz threshold, television manufacturers, rather than investing in the technology to increase the actual Hz and refresh rates of their televisions, have developed alternate

methods to artificially enhance the perceived performance of their products without actually increasing the refresh rate to the specified number of unique images per second.

20.     The actual refresh rate of LG's LED televisions are one-half of the refresh rates LG represents in its specifications held out to consumers.  An LG LED television marketed as "120Hz" has an actual refresh rate of 60Hz and shows 60 unique images per second, an LG LED television marketed as "240Hz" has a refresh rate of 120Hz and shows 120 unique images per second.

21.     As already stated, the Hz specification of a television has a specific and particular meaning: Hz is the accepted and conventional method used to determine a television's refresh rate.  LG has hijacked this unit of measurement and represented it as a "specification" that is a complete fabrication.

22.     Compounding the confusion and deception, the actual and true refresh rate of LG's televisions are not made readily available, in any medium, to the consumer.

23.     Shockingly, while LG makes it a practice to conceal the actual and true Hz specification of their televisions, they make a particularly pointed effort to literally misrepresent the refresh rate of their televisions in print and on the internet.  Through its website, LG makes available "Spec Sheets" for their television models.  In the Spec Sheet is a line dedicated to "Refresh Rate."  On 60Hz televisions, LG's spec sheets list the "refresh rate" as "120Hz"; on 120Hz televisions, LG's spec sheets list the "refresh rate" as "240Hz."  The refresh rate specification is misrepresented in Hz and is listed at one-hundred percent over its true value.

24.     LG repeats these representations on its packaging, which all consumers see in conjunction with the transaction.

25.     Overall, LGs actions in marketing its televisions with regard to refresh rate consist of efforts to conceal, fabricate, and misrepresent information to the consumer.  It is akin to LG marketing a 48-inch television but representing that the television is 55 inches.  Only with refresh rates, the misrepresentation is even more egregious because a consumer has no method to validate refresh rate claims—they are left with no choice but to rely on the manufacturer's and retailer's representations.

26.     A consumer's lone bulwark against LG's efforts to deceive and the barrage of misinformation, obfuscation and concealment that follows, is reliance on a seemingly objective and informed third party to provide accurate and reliable information regarding LG's LED televisions.   Retailers of LG's televisions are in such a position, and consumers often depend on them to provide guidance and to help them differentiate among items.

27.     Best Buy, as a retailer of LG's televisions, is in a position to inform consumers and provide them with accurate information regarding LG's televisions and, in particular, the refresh rates of those televisions.  In fact, Best Buy holds itself out to be experts in the products they sell as their company motto is, "Expert Service. Unbeatable Price."

28.     Rather than providing the "expert" insight and consultation expected of them, Best Buy joined LG in deceiving consumers and propagated LG's misrepresentations by advertising LG televisions as having refresh rates and a Hz

7

specification of two times the actual capability of the televisions. In short, Best Buy adopted LG's misrepresentations in its own labeling, thereby endorsing LG's deceptions as legitimate.

29. To make things worse, Best Buy not only repeated LG's misleading representations, but advertised LG's televisions, both on Best Buy's website and in stores, as having "Screen Refresh Rate[s]" of "120Hz" or "240Hz," when in reality the LG televisions it sold had half those refresh rates.

30. Plaintiffs reasonably relied on Defendants' false and misleading advertisements and labeling by purchasing an LG LED television. Plaintiffs reasonably believed, based on Defendants' misrepresentations, that they were purchasing a television with a significantly and materially higher refresh rate and, therefore, better picture quality than the television actually possessed. As a result, Plaintiffs paid substantially more than they would have otherwise paid for the televisions had the refresh rates been accurately disclosed by Defendants. Plaintiffs would not have purchased the LG television, or, alternatively, would have paid much less for it, had the accurate refresh rate been accurately disclosed by Defendants.

31. Plaintiffs have suffered an ascertainable loss as a result of Defendants' conduct in that they paid more than the LED television was worth and more than what Defendants would have been able to charge had the true refresh rates been displayed. Like screen size and resolution, refresh rate is one of the top selling points for LED televisions, and is thus a material term of the products' sales display. Defendants' own packaging and in-store and digital placards prominently and intentionally feature the

8

refresh rate, stated in "Hz." Higher refresh rates command higher prices. Several methodologies are available to calculate the incremental value of refresh rates on televisions, including conjoint and hedonic regression analyses, through which a qualified expert can calculate specific premiums attributable to such refresh rates.

**B.      Plaintiffs' Allegations**

32.     Plaintiffs purchased an LG LED television, model number 55LN5100-UB.

33.     In the weeks leading up to their purchase, Plaintiffs began shopping for a new television for their home.  Plaintiffs understood that a higher refresh rate television would provide a better, clearer image of moving objects on the screen.  Plaintiffs decided to search for and purchase a television with a minimum of a 120Hz refresh rate.

34.     On November 29, 2013, Plaintiff Breann Hudock viewed advertisements and specifications of the LG 55LN5100-UB television on Best Buy's website, Bestbuy.com.

35.     The main product page for the 55LN5100-UB television on Best Buy's website, which was viewed by Plaintiff, advertised a "120Hz refresh rate" in bold text. Under that bold heading, the webpage explained that a 120Hz refresh rate "[h]elps minimize blurring and ghosting during intense action sequences, so you can enjoy movies, sporting events and games in crystal clarity."

36.     The "Specifications" section of that webpage contained the following representation:

| Screen Refresh Rate | 120Hz | This refers to how many times per second a TV screen image is completely reconstructed. A TV with a 60Hz refresh rate means that the picture will be completely rebuilt 60 times in one second. Why is this important? Generally, the more the screen is refreshed, the smoother the images will appear. |
| --- | --- | --- |

37.     Plaintiff Breann Hudock spoke to her husband, Plaintiff Benjamin Hudock, over the phone and read the above specifications to him.  Together, relying on the 120Hz advertised refresh rate, Plaintiffs decided to purchase the LG 55LN5100-UB television from Best Buy's website.

38.     After purchasing the television, Plaintiffs noticed that the television's images were not as clear as expected.  Only later did Plaintiffs come to learn that their television's actual refresh rate was 60Hz.  Had Plaintiffs known that the actual refresh rate of the television was 60Hz—not 120Hz as advertised—they would not have purchased the television or, alternatively, would not have been willing to pay as much for it.

## CLASS ACTION ALLEGATIONS

39.     Plaintiffs bring all claims herein pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23 are all satisfied with respect to the class defined below.

**A.     Class Definitions**

40.     The National Class includes:

> All persons in the United States who, from May 9, 2010 until the present, purchased an LG LED television that LG labeled as having a "Hz" rating twice as high as its actual refresh rate.

41.     The Best Buy Purchaser Subclass includes:

> All persons in the United States who, from May 9, 2010 until the present, purchased, from a Best Buy store or from Best Buy's website, an LG LED television that Best Buy labeled as having a "Hz" rating twice as high as its actual refresh rate.

10

42.     Excluded from the Class and Subclass are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons immediate families, and the presiding judge(s) in this case and his, her, or their immediate family. The Class and Subclass also do not include consumers who purchased televisions whose packaging and in-store or digital placards stated "Trumotion 120" or "Trumotion 240" *without* a "Hz" unit after the number.

**B.      The Proposed Class and Subclass Satisfy the Rule 23(a) Prerequisites**

43.     **Numerosity**:  At this time, Plaintiffs do not know the exact size of the Class or Subclass; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class and Subclass members are well into the thousands, possibly millions, and thus are so numerous that joinder of all members is impractical. The number and identities of Class and Subclass members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendants.

44.     **Commonality**:  There are questions of law or fact common to the Class and Subclass, which include but are not limited to the following:

a.      Whether Defendants represented to Plaintiffs and the Class and Subclass that the LG televisions were capable of a higher refresh rate, expressed in Hz, than the televisions could actually produce;

b.      Whether Defendants intended Plaintiffs and members of the Class and Subclass to rely on the statements of refresh rate;

    c.        Whether Plaintiffs and members of the Class and Subclass were harmed by Defendants' misrepresentations;

    d.        Whether Defendants' conduct violated Minnesota law;

    e.        Whether Defendants' conduct violated New Jersey law; and

    f.        Whether Plaintiffs and the Class and Subclass have been damaged, and if so, the proper measure of damages.

45.   **Typicality**:   Like Plaintiffs, many other consumers purchased LG televisions that were advertised and marketed as having twice the refresh rate as they were actually capable of.  Plaintiffs' claims are typical of the claims of the Class and Subclass because Plaintiff and each Class member and Subclass member were injured by Defendants' false representations about the refresh rates of LG televisions.  Plaintiffs and the Class and Subclass have suffered the same or similar injury as a result of Defendants' false and misleading representations and advertisements. Defendants' false statements were identical—they represented that the LG LED televisions had refresh rates that were twice the value of the actual and true refresh rates. For instance, for model 65UF7700, LG states: "Refresh Rate[:] TruMotion 240Hz," when that model's actual refresh rate is 120Hz. For model 55UF6450, LG states: "Refresh Rate[:] TruMotion 120Hz," when that model's actual refresh rate is 60Hz. For model 55UF8300, LG states: "Refresh Rate[:] TruMotion 120Hz," when that model's actual refresh rate is 60Hz. For model 55UF6800, LG states: "Refresh Rate[:] TruMotion 120Hz," when that model's actual refresh rate is 60Hz. For model 55UF7600, LG states: "Refresh Rate[:] TruMotion 120Hz," when that model's actual refresh rate is 60Hz. For model 65UF9500, LG states: "Refresh Rate[:]

TruMotion 240Hz," when that model's actual refresh rate is 120Hz. For model 65UF8500, LG states: "Refresh Rate[:] TruMotion 240Hz," when that model's actual refresh rate is 120Hz. Plaintiffs suffered the same injury as other class members who purchased televisions whose refresh rates were misrepresented by 100%. Plaintiffs' claims and the claims of members of the Class and Subclass emanate from the same legal theory, Plaintiffs' claims are typical of the claims of the Class and Subclass, and, therefore, class treatment is appropriate.

46. **Adequacy of Representation**:  Plaintiffs are committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions.  Plaintiffs will fairly and adequately represent the interests of the Class and Subclass and do not have any interests adverse to those of the Class or Subclass.

## C.     The Proposed Class and Subclass Satisfy the Rule 23(b)(2) Prerequisites for Injunctive Relief

47. Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiffs remain in the market for televisions; there is no way for them to know when or if Defendants have ceased misrepresenting the refresh rates of LG televisions, and are therefore in danger of being harmed again.

48. Specifically, Defendants should be ordered to cease from further advertisements that inaccurately state the refresh rates of LG televisions.

49.     Defendants' ongoing and systematic practices make declaratory relief with respect to the Class and Subclass appropriate.

**D.     The Proposed Class Satisfies the Rule 23(b)(3) Prerequisites for Damages**

50.     The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class or Subclass, and a class action is the superior method for fair and efficient adjudication of the controversy.   The likelihood that individual members of the Class or Subclass will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class or Subclass member.

**LEGAL BASES FOR RELIEF**

**COUNT I**
**Violation of Prevention of Minnesota's Consumer Fraud Act – Unlawful Practices,**
**Minn. Stat. § 325F.68, *et seq.***

51.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

52.     The LG televisions sold by Defendants are merchandise as defined in Minnesota Statutes § 325F.68, subd. 2.

53.     Defendants are persons as defined in Minnesota Statutes § 325F.68, subd. 3.

54.     Defendants misrepresented the refresh rate of LG televisions, artificially inflating the refresh rate, expressed in Hz, to at least twice the actual refresh rate.   The false statement of the refresh rates of the LG televisions were untrue, misleading, and

14

deceptive, inducing Plaintiffs to spend more for a television that has lower picture quality than represented.

55.     The misrepresented refresh rate of LG televisions, expressed in Hz, is a material fact to Plaintiffs and other consumers because it is directly related to picture quality, and because Defendants themselves recognize the materiality of their representations as evidenced by their prominent placement on Defendants' labels, packaging, brochures, and shelf tags.  Consumers, including Plaintiffs and the members of the Class and Subclass would not have paid as much for the LG televisions had Defendants accurately disclosed the refresh rate of the televisions.  Nor could Defendants charge as much for such televisions, as the refresh rate is directly related to the amount of money manufacturers and retailers are able to charge for televisions.

56.     Defendants placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants.  Plaintiffs and the Class and Subclass were harmed by Defendants' misrepresentations.  Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.

57.     Plaintiffs and members of the Class and Subclass have suffered loss by paying more than they would have otherwise paid—and more than Defendants would have been able to charge—for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.

15

**COUNT II**
**Violation of Minnesota's Uniform Deceptive Trade Practices Act,**
**Minn. Stat. § 325D.43, *et seq.***

58.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

59.     By falsely inflating and misstating the refresh rate on LG televisions, Defendants represented that the televisions were of a particular standard, quality, quantity, and grade when the televisions were in fact of a lower standard, quality, quantity, and grade.  The refresh rate of televisions is directly related to picture quality.  By representing that the refresh rate was higher than it actually is, Defendants misled Plaintiffs and members of the Class and Subclass into believing that the televisions were capable of higher refresh rate and picture quality than they actually were.

60.     Plaintiffs and members of Class and Subclass have suffered loss by paying more than they would have otherwise paid for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.

**COUNT III**
**Violations of the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13**

61.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

62.     Minnesota Stat. § 325D.13 provides: "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

63.     Defendants are "persons" within the meaning of Minn. Stat. § 325D.10.

64.     Defendants knowingly misrepresented directly to Plaintiffs and consumers the true quality of their merchandise, in advertising and selling its merchandise, by

16

falsely inflating and misstating the refresh rate on LG televisions. The refresh rate of televisions is directly related to picture quality.  By representing that the refresh rate was higher than it actually is, Defendants misled Plaintiffs and members of the Class and Subclass into believing that the televisions were capable of higher refresh rate and picture quality than they actually were, and thus violated Minn. Stat. § 325D.13.

65.     Plaintiffs and members of Class and Subclass have suffered loss by paying more than they would have otherwise paid for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.

## COUNT IV
### Violation of New Jersey's Consumer Fraud Act – Fraud in Connection with Sale or Advertisement of Merchandise, N.J. Stat. Ann. § 54:8-1, *et seq.*

66.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

67.     Defendants representations related to the refresh rates of LG televisions, as described herein, are advertisements as defined by N.J. Stat. Ann. § 56:8-1(a).

68.     The LG televisions sold by Defendants are merchandise as defined in N.J. Stat. Ann. § 56:8-1(c).

69.     Defendants are persons as defined in N.J. Stat. Ann. § 56:8-1(d).

70.     Defendants misrepresented the refresh rate of LG televisions, artificially inflating the refresh rate, expressed in Hz, to at least twice the actual refresh rate.  The false statement regarding the refresh rates of the LG televisions were untrue, misleading, and deceptive, inducing Plaintiffs and other consumers to spend more for televisions that have lower picture quality than represented.

71.    The misrepresented refresh rate of LG televisions, expressed in Hz, is a material fact to Plaintiffs and other consumers because it is directly related to picture quality, and because Defendants themselves recognize the materiality of their representations as evidenced by their prominent placement on Defendants' labels, packaging, brochures, and shelf tags.  Consumers, including Plaintiffs and the members of the Class and Subclass would not have paid as much for the LG televisions had Defendants accurately disclosed the refresh rate of the televisions. Nor could Defendants charge as much for such televisions, as the refresh rate is directly related to the amount of money manufacturers and retailers are able to charge for televisions.

72.    Defendants placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants.  Plaintiffs and the Class and Subclass were harmed by Defendants' misrepresentations and purchased the LG televisions.  Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.

73.    Plaintiffs and members of the Class and Subclass have suffered loss by paying more than they would have otherwise paid—and more than Defendants would have been able to charge—for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.

**COUNT V**
**Unjust Enrichment**

74.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

75.     As described herein, Defendants placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants.

76.     Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.

77.     Defendants generated profits from misleading Plaintiffs and members of the Class and Subclass into purchasing LG televisions.

78.     Defendants have been knowingly and unjustly enriched at the expense of and to the detriment of Plaintiffs and the members of the Class and Subclass by collecting excess profits to which Defendants are not entitled.

79.     Defendants' actions were unjust because, absent the material misrepresentations about the refresh rates of their televisions, they would not have been able to receive as much money for those models as they did, and as Plaintiffs paid due to the false statements.

80.     Defendants have unjustly retained those ill-gotten profits and should be required to disgorge this unjust enrichment.

## COUNT VI
## Breach of Express Warranty

81.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

82.     Defendants are merchants as defined by relevant statutes.

83.     The televisions sold to Plaintiffs and members of the Class and Subclass are goods as defined by relevant statutes.

84.     As described herein, Defendants placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants.

85.     Defendants' false statements of the refresh rates of the LG televisions became a basis of the bargain, and Plaintiffs and members of the Class and Subclass expected that the LG televisions that they purchased would conform to Defendants' affirmations of the refresh rates.

86.     Plaintiffs and the Class and Subclass were harmed by Defendants' misrepresentations and purchased the LG televisions.

87.     Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.

88.     Plaintiffs provided notice to Best Buy and LG of this claimed breach of warranty by letter dated April 29, 2016, sent by certified mail, return receipt requested.

Counsel for Plaintiffs received notification that the letters had been received by each of the Defendants prior to Plaintiffs filing this lawsuit.

89.     Plaintiffs and members of Class and Subclass have suffered loss by paying more than they would have otherwise paid for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.

## COUNT VII
### Breach of Implied Warranty

90.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

91.     Defendants are merchants as defined by relevant statutes.

92.     The televisions sold to Plaintiffs and members of the Class and Subclass are goods as defined by relevant statutes.

93.     As described herein, the LG televisions sold to Plaintiffs and members of the Class and Subclass were not as described by Defendants in the contract description. Had the true and accurate refresh rates of the televisions been known, they would not have passed without objection in the trade and consumers would not have purchased the televisions, or would have been willing to pay less, because the televisions did not comply with the contract descriptions, which described the televisions as being capable of higher refresh rates than they actually were.  Further, as explained herein, trade usage of "Hz" refers to refresh rates.  Defendants were aware of such trade usage and nevertheless misstated the refresh rates on the televisions sold to Plaintiffs and member of the Class and Subclass.  The description of the televisions sold to Plaintiffs and members of the Class and Subclass did not meet the contract descriptions as interpreted

by trade usage because they were not capable of the refresh rates listed in the descriptions.

94.     High refresh rate televisions are used for, and reasonably and objectively expected to be capable of, displaying moving objects and action with reduced motion blur.  High refresh rate televisions are specifically selected by consumers who wish to watch high action television (such as sports programming), making such use the ordinary purpose of the products.  Because the refresh rates are actually lower than described, the televisions purchased by Plaintiffs and members of the Class and Subclass are unfit for that ordinary purpose.

95.     As described herein, the televisions sold to Plaintiffs and members of the Class and Subclass did not conform to the promises or affirmations of fact made on the packaging and labels associated with the televisions.  The packaging and associated technical specifications represented that the refresh rate of the televisions sold to Plaintiffs and members of the Class and Subclass were capable of a much higher refresh rate, expressed in Hz, than they actually were.

96.     Plaintiffs and members of the Class and Subclass were harmed by these implied warranties by purchasing the televisions.

97.     As a result of Defendants' breaches of their implied warranties of merchantability, Plaintiffs and members of the Class and Subclass have been injured. Had Plaintiffs and members of the Class and Subclass known the true and accurate refresh rates of the televisions, they would not have purchased the televisions, or would have been willing to pay less.

## COUNT VII
## Breach of Contract

98.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

99.     Defendants offered to sell Plaintiffs a "120Hz" television.

100.    Plaintiffs accepted Defendants' offer and performed under the contract by providing payment for the television at the price dictated by Defendants' offer.

101.    Defendants breached their contracts with Plaintiffs by supplying a television with a refresh rate of 60 Hz.

102.    As a Direct result of Defendants' breach of contract, Plaintiffs have sustained economic losses and are entitled to compensatory damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, request relief as follows:

1.     Certification of the Class and Subclass as defined herein pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1), (b)(2), (b)(3), or a combination of subsections;

2.     Appointment of Plaintiffs as Class and Subclass Representatives and their undersigned counsel as Class Counsel;

3.     Restitution of all charges paid by Plaintiffs and members of the Class and Subclass because of Defendants' deceptive business practices as described herein;

4.      Disgorgement and restitution to Plaintiffs and to members of the Class and

Subclass of all monies wrongfully obtained and retained by Defendants;

5.      Compensatory and actual damages in an amount according to proof at trial;

6.      Statutory damages and penalties, as provided by law;

7.      Prejudgment interest commencing on the date of payment of the charges

and continuing through the date of entry of judgment in this action;

8.      Costs and fees incurred in connection with this action, including attorneys'

fees, expert witness fees, and other costs, as provided by law; and

9.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  May 9, 2016                    Respectfully submitted,

By: /s/ David M. Cialkowski
David M. Cialkowski (MN Lic. #0306526)
Jason R. Lee (MN Lic. #0396847)
**ZIMMERMAN REED, LLP**
1100 IDS Center, 80 S. 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
david.cialkowski@zimmreed.com
jason.lee@zimmreed.com

Daniel C. Hedlund (MN Lic. #258337)
Joseph C. Bourne (MN Lic. #0389922)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
jbourne@gustafsongluek.com

24

Luke P. Hudock (WI Lic. #1086264)
**HUDOCK LAW GROUP, S.C.**
P.O. Box 83
Muskego, WI 53150
Telephone: (414) 526-4906
lphudock@law-hlg.com

*Attorneys for Plaintiffs*