**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: 0:16-cv-01220-JRT-FLN**

| | |
|---|---|
| BENJAMIN HUDOCK AND BREANN HUDOCK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.; BEST BUY CO., INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, LLC,<br><br>Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF LG ELECTRONICS U.S.A., INC.'S  MOTION TO DISMISS** |

The Complaint in this action is based on the flawed premise that Plaintiffs were damaged when they supposedly realized – two-and-a-half years after buying an LG television from BestBuy.com at a deep discount during a "Black Friday" sale – that the TV's "refresh rate" was not as allegedly advertised.  The legal claims Plaintiffs have asserted in an effort to make this misguided theory actionable are equally ill-founded.  As a threshold matter, Plaintiffs do not have standing to pursue the state law claims asserted in the Complaint.  And even putting aside their lack of standing, Plaintiffs' claims fail to state a claim upon which relief can be granted under Rule 12(b)(6).

Accordingly, Plaintiffs' Complaint against LG Electronics USA, Inc. ("LG") should be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiffs Benjamin and Breann Hudock ("Plaintiffs") are Wisconsin residents who claim that they purchased an LG LED High-Definition television, Model No. 55LN5100-UB (the "LG LED TV") online at BestBuy.com on November 29, 2013 – the day after Thanksgiving, also known as "Black Friday."  (Compl. ¶ 34.)  Plaintiffs are long-time Best Buy rewards program members who bought the LG LED TV using Ms. Hudocks' Best Buy rewards account and who paid with a Best Buy-branded credit card. They received rewards points for the purchase, and Ms. Hudock was subsequently upgraded to Elite status – entitling her to additional rewards points on qualifying Best Buy purchases.  Rewards points entitle members to Reward Certificates that can be applied for discounts on products purchased at Best Buy stores or on BestBuy.com.[1]

Plaintiffs allege that the "native" refresh rate of all televisions – the number of frames displayed in succession per second to create the appearance of motion on the screen – is 60Hz.  (Compl. ¶ 17.)  Plaintiffs acknowledge that the only way manufacturers can surpass that 60Hz barrier is by using technology that displays extra frames between the images that are produced by the 60Hz electrical current to reduce a viewer's perception of motion blur.  (*Id. ¶* 18.)  Plaintiffs further acknowledge that there are different technologies that manufacturers may use to do so.  (*Id. ¶¶* 18-19.)  But the crux of Plaintiffs' Complaint is that the term "refresh rate" necessarily refers only to "*unique images* per second" (*id.* ¶¶ 3, 15-20) and not frame "*cycles* per second" (*id.* ¶ 3),

---

[1] Although not necessary to determine this Motion, LG proffers these facts regarding the rewards program as additional background on the alleged purchase.

a definition Plaintiffs invented and for which they offer no citation or support in the Complaint.  And, based on Plaintiffs' self-serving definition, they allege that only one method of reducing motion blur – interpolation technology – allows a television to have an "*actual* refresh rate" greater than 60Hz.  (*Id.* ¶ 18 (emphasis added).)  Thus, even though Plaintiffs' LG LED TV uses advanced technology to cycle 120 frames per second to reduce motion blur (*id.* ¶¶ 3, 19), Plaintiffs' contention is that the LG LED TV's "TruMotion 120Hz" specification is "misleading and untrue" because the TV does not show 120 "*unique images*" per second.  (*Id.* ¶¶ 3-4, 45 (emphasis added).)

Despite these allegations, the Complaint reflects that it took Plaintiffs approximately two-and-a-half years to "notice" that this alleged refresh rate issue was causing them harm.  In fact, Plaintiffs watched the LG LED TV in their Wisconsin home without complaint or incident from the time they purchased the TV in November 2013 until April 29, 2016 – *10 days before filing the Complaint* – when Plaintiffs' counsel sent LG a letter by certified mail.  (Compl. ¶ 88; *see also* Declaration of J. Christopher Mitchell Ex. 1 ("Mitchell Decl.").)[2]  That letter requested no relief and did not seek repair

---

[2] Plaintiffs have incorporated a number of documents by reference in their Complaint (¶ 88), and LG therefore includes with this Motion copies of those incorporated documents.  It is well-settled that courts in the Eighth Circuit may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" when considering a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure:  Civil § 1357 (2d ed. 1990));  *see also Blakley v. Schlumberger TechCorp.*, 648 F.3d 921, 931 (8th Cir. 2011).  Likewise, materials that do not contradict the complaint may be considered.  *Missouri ex. rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).  The Court also may consider an "'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document'"

or replacement of the LG LED TV, stating only that "the Hudocks expect that LG Electronics will deliver to consumers a product that fully conforms to its advertising." Mitchell Decl. Ex. 1.  Plaintiffs filed the Complaint on May 9, 2016.

## ARGUMENT

### I.    THE COMPLAINT IS SUBJECT TO DISMISSAL FOR PLAINTIFFS' LACK OF ARTICLE III STANDING.

As a threshold matter, Plaintiffs' claims should be dismissed because Plaintiffs lack Article III standing to assert those claims.

Plaintiffs have standing to bring this action only if they have "'suffered an injury in fact, meaning that the injury is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'"  *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006) (quoting *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 591 (8th Cir. 2003)).  The injury also "must be traceable to the defendant's challenged action" and it "must be 'likely' rather than 'speculative' that a favorable decision will redress the injury."  *Id*.  "An alleged injury cannot be 'too speculative for Article III purposes.'"  *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992)).

Moreover, "[a] class representative must have standing to assert claims on his or her own behalf in order to have standing to assert claims as a class representative."  *Thunander v. Uponor, Inc.*, 887 F.Supp.2d 850, 863 (D. Minn. 2012) (citing *In re Milk

---

without converting the motion into one for summary judgment. *Cozad v. Litton Loan Serv'g, LP*, No. 12-32, 2012 WL 7688260, at *1 n.1 (D. Minn. Dec. 12, 2012) (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 n.9 (8th Cir. 1997)).

*Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999)).  "[T]he injury must affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.  A plaintiff "must demonstrate standing for each claim he seeks to press" and "must demonstrate standing separately for each form of relief sought."  *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citations omitted).

Here, Plaintiffs neither reside in nor allege injury in Minnesota or New Jersey.  As a result, they lack standing to assert Minnesota and New Jersey claims.  Likewise, Plaintiffs lack standing to assert claims related to television models that they never purchased and marketing materials that they never saw or relied on.  Plaintiffs' claims and the claims that they purport to bring on behalf of a nationwide class under the laws of states where they neither reside nor allege injury, as well as for products they never purchased and advertisements they never relied upon, therefore should be dismissed under Rule 12(b)(1).

### A. Plaintiffs Reside in Wisconsin, Purchased their Television From Wisconsin and Used their Television In Wisconsin; They Lack Standing to Assert State Law Claims Under Minnesota and New Jersey Law.

A plaintiff has Article III standing to assert state law claims only if the plaintiff (1) resides in the state, or (2) has suffered injury in the state.  *See, e.g., Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-2664, 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014).  Thus, "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."  *Id.* (quoting *In re Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litig.*, No. 12-169, 2013 WL 5503308, at *11 (D.N.J. Oct. 2, 2013)).  Here, Plaintiffs allege that they reside in

Wisconsin, that they purchased their LG LED TV online – presumably from their home in Wisconsin – and that they use their LG LED TV (and thus purportedly suffered an injury) in Wisconsin.   (Compl. ¶¶ 6-7, 32-38.)    Plaintiffs do not claim that they purchased their LG LED TV in Minnesota or New Jersey, or that they suffered injury in either of those states.   Accordingly, they cannot point to any injury-in-fact in Minnesota or New Jersey and have no standing to bring suit for alleged violations of Minnesota or New Jersey law.  *See, e.g., Zaycer v. Sturm Foods, Inc.*, 896 F.Supp.2d 399, 409 (D. Md. 2012) ("Zaycer was neither harmed by the Product, nor purchased the Product, in any state other than Maryland.   Zaycer suffered no injury-in-fact, and is not in imminent danger of being injured by the Product in any of the states except Maryland.   Because the injury to the named plaintiff occurred in Maryland, she has no standing to sue under any state consumer protection law except for Maryland's.").

Nor can Plaintiffs manufacture standing to bring claims under other states' laws by purporting to bring claims on behalf of a "National Class."   (Compl. ¶ 40.)   "[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action."   *Sondel v. Northwest Airlines, Inc.*, No. 3-92-381, 1993 WL 559028, at *5 (D. Minn. Jan. 14, 1993) (citing and quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974)).   Plaintiffs have no Article III standing to assert claims under the laws of any jurisdiction other than Wisconsin, and each count of the Complaint must be dismissed to the extent it purports to assert a claim under the laws of any other state, including claims on behalf of other purported class members nationwide.   Accordingly, Plaintiffs' Complaint – which alleges

eight counts under Minnesota and/or New Jersey law[3] – should be dismissed in its entirety.

The law of the state in which the plaintiff resides also governs the claims under Minnesota's choice-of-law rules. *See In re Baycol Prods. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003). Minnesota has adopted a five-factor choice-of-law approach, which considers (1) the predictability of results, (2) the maintenance of interstate order, (3) the simplification of judicial task, (4) the advancement of the forum's governmental interests, and (5) the better rule of law. *See Milkovich v. Saari*, 203 N.W.2d 408, 412 (Minn. 1973). The third and fifth factors of the test generally are found to be neutral, *see Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001); *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 96 (Minn. 2000), but application of the remaining factors easily tip the result in favor of the plaintiffs' home state where they shopped for, made the purchase at issue, and allegedly sustained injury.

Here, Minnesota has no meaningful relationship to the alleged conduct as between Plaintiffs and LG, and the only connection to New Jersey is that LG has its main office

---

[3] Plaintiffs do not identify the state law applicable to their unjust enrichment, breach of express and implied warranty, and breach of contract claims. Accordingly, these common law claims should be dismissed – particularly where plaintiffs lack standing to pursue claims under the laws of the states invoked elsewhere in the Complaint. *See, e.g., In re Dynamic Random Access Memory Antitrust Litig.*, 536 F.Supp.2d 1129, 1146 (N.D. Cal. 2008) ("Plaintiffs' claim states neither that it is proceeding under specific state laws, nor that it is proceeding as a single claim on behalf of a nationwide class. . . . [T]he claim is unclear under principles of Rule 8 pleading requirements as alleged, and plaintiffs are therefore required to amend their unjust enrichment claim, so that defendants may properly be placed on notice as to the extent of the claim they are required to defend.").

there.  In *In re Baycol*, Judge Davis applied Minnesota's choice-of-law analysis to a putative class action and held that:

> [A]s the injury occurred in the state of plaintiff's residence, the substantive law of the state of plaintiff's residence should be applied to their claims. Plaintiffs argue, however, that as [the defendants] are headquartered in Pennsylvania, and that [one of the defendants] is located in Connecticut, the law of either Pennsylvania or Connecticut can be constitutionally applied to the claims of the Class Action Complaint. The Eighth Circuit, however, has not given the do[mi]cile of the corporate defendant much weight in tort cases. . . . **[I]n the event of a conflict, the law of the state in which the plaintiff resides will govern the claim.**

218 F.R.D. at 207 (citing *Hughes*, 250 F.3d at 621) (emphasis added); *see also id.* at 208 ("The advancement of the forum's governmental interest factor generally weighs in favor of application of the state law in which the plaintiff lives and in which the injury occurred") (internal citations omitted).  Under these principles, each of Plaintiffs' causes of action should be dismissed.

### B. Plaintiffs Lack Standing to Bring Claims on Behalf of Purchasers of Products They Did Not Purchase And Alleged Representations They Did Not Rely Upon.

Plaintiffs allege the purchase of only one LG LED TV, Model 55LN5100-UB (Compl. ¶ 32) – a special Black Friday "doorbuster" sale model that LG manufactured exclusively for Best Buy.  Yet, Plaintiffs purport to bring suit on behalf of consumers who purchased *any* model of *any* LG LED television marketed as TruMotion 120Hz or TruMotion 240Hz, sold by any retailer at any price anywhere in the country.  (*Id.* ¶¶ 40-41.)  And while Plaintiffs claim that they relied only on alleged statements on the BestBuy.com website at the time of the subject online purchase (*id.* ¶¶ 34-36), they purport to challenge statements that they do not claim to have *ever* seen or heard (*e.g.*, *id.*

8

¶¶ 23-24, 29).  Plaintiffs' attempt to expand the scope of this case to include product lines and models that Plaintiffs never purchased, based on advertisements that they never saw or relied upon, is impermissible under Article III.  Thus, were any of Plaintiffs' claims to survive the standing deficiencies identified in the prior section, those claims should be dismissed to the extent they purport to cover products and alleged representations other than those allegedly purchased or relied upon by Plaintiffs.

"[C]ourts routinely dismiss claims in consumer class actions that attempt to seek relief relating to products that the named plaintiffs have not purchased."  *Chin v. General Mills, Inc.*, No. 12-2150, 2013 WL 2420455, at *3 (D. Minn. June 3, 2013) (collecting cases); *see also, e.g., Garcia v. Kashi Co.*, 43 F.Supp.3d 1359, 1393 (S.D. Fla. 2014) ("[A] plaintiff in a consumer class action lacks standing to challenge a non-purchased product because there is no injury-in-fact as to that product, even if he purchased a substantially similar product.").  That is because "named plaintiffs in a class action may not rely on injuries that the putative class may have suffered, but instead must allege that they personally have been injured."  *Chin*, 2013 WL 2420455, at *3 (citing and quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'")).

*Chin v. General Mills* is squarely on point.  There, the plaintiffs brought a putative class action on the ground that they were misled by marketing and labeling indicating that

General Mills Nature Valley granola bars were "100% Natural" even though the bars allegedly contained "highly processed" ingredients. *Chin*, 2013 WL 2420455, at *1. The Nature Valley granola bars were offered in several flavors, and the *Chin* plaintiffs tried to challenge the labeling and marketing of *all* granola bars products with the "100% Natural" labeling, including flavors they never bought. *Id.* at *1, *3. Despite the similarities in the products and labeling, the *Chin* court found that the plaintiffs could assert claims relating only to the granola bar flavors they had purchased (for example, "Chewy Trail Mix Granola Bars"), and that the plaintiffs "lack[ed] Article III standing for [the non-purchased] products" (for example, "Yogurt Chewy Granola Bars"). *Id.* at *3. As a result, the *Chin* plaintiffs' claims regarding products they did not purchase were dismissed. The outcome should be the same here.[4]

Courts likewise routinely dismiss claims that challenge advertising statements that the named plaintiffs did not see or rely upon. *See, e.g.*, *Loreto v. Procter & Gamble Co.*, No. 09-815, 2013 WL 6055401, at *4 (S.D. Ohio Nov. 15, 2013) (holding that consumers who were not exposed to allegedly deceptive statement lack standing to sue); *Lateef v.*

---

[4] The Eighth Circuit's subsequent opinion in *Wallace v. ConAgra, Inc.*, 747 F.3d 1025, 1030-31 (8th Cir. 2014), is also instructive. There, an individual consumer brought a claim for "price premium" damages resulting from his purchase of "100% kosher" hot dogs for which the manufacturing specifications permitted up to 30% non-kosher beef. Whether any non-kosher beef actually ended up in the package that plaintiffs bought was only speculation, however. *Id.* at 1032-33. The Eighth Circuit found that Wallace lacked standing because "the alleged 'injury must affect the plaintiff in a *personal and individual* way,'" and alleged harm to other purchasers of the same product therefore could not confer standing. *Id.* at 1030 (emphasis in original) (quoting *Lujan* 504 U.S. at 560 n.1 (1992)).

*Pharmavite LLC*, No. 12-5611, 2012 WL 5269619, at *4 (N.D. Ill. Oct. 24, 2012) (holding that plaintiff lacked Article III standing to assert state-law claims relating to defendant's web-based advertising because the plaintiff alleged that she "purchased the bottle of supplements after reading the bottle's *label*," and made "no allegation that she visited the website, knew it existed, or was aware of the statements on it"); *In re Ferrero Litig.*, 794 F.Supp.2d 1107, 1111-12 (S.D. Cal. 2011) (holding that named plaintiffs lacked standing to assert claims based on allegedly deceptive statements on product website where they "both allege that they only relied on representations from Nutella's label and television advertisements …."). Here, Plaintiffs allege that they saw and relied upon certain statements only on the BestBuy.com website in connection with their purchase – and nowhere else. Plaintiffs have no standing to challenge materials in retail stores or in other media that they do not even allege they viewed, and any remaining claims should be dismissed to the extent they purport to extend to such materials.

## II.  PLAINTIFFS' COMPLAINT FAILS TO STATE A VIABLE CLAIM.

In the unlikely event the Court reaches the viability of any of Plaintiffs' claims after having considered LG's arguments regarding dismissal under Rule 12(b)(1), it should dismiss those claims under Rule 12(b)(6).

A complaint should be dismissed if it fails to state claims that are plausible on their face. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011). Although the Court must accept the facts alleged in the Complaint as true, those factual allegations still must be parsed for facial

plausibility – that is, there must be "more than a sheer possibility that a defendant has acted unlawfully." *See Iqbal*, 556 U.S. at 678.  Moreover, a pleading that offers mere "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient to state a claim.  *Id.* at 678 (quotations and original alterations omitted) (citing *Twombly*, 550 U.S. at 555, 557); *see also Varga v. U.S. Bank, N.A.*, 764 F.3d 833, 838-39 (8th Cir. 2014) (complaint must be dismissed where claim lacks facial plausibility).  Indeed, if factual allegations are not sufficient "to raise a right to relief above the speculative level," the claims should be dismissed.  *Twombly*, 550 U.S. at 555.

As further detailed below, each of Plaintiffs' eight counts should be dismissed under Rule 12(b)(6) because Plaintiffs fail to state any claim for relief and because their fraud-based claims fail to meet the heightened pleading standard in Federal Rule of Civil Procedure 9(b).

## A. Plaintiffs' Fraud-Based Claims [Counts I–V] Fail for Lack of Particularity.

Each of Plaintiffs' claims for consumer fraud, deceptive and unlawful trade practices,[5] and unjust enrichment sounds in fraud, and therefore those claims must satisfy the heightened pleading standard set forth in Rule 9(b).  *See, e.g., Tuttle v. Lorillard Tobacco Co.*, 118 F.Supp.2d 954, 963 (D. Minn. 2000) ("Notwithstanding the relative breadth of the consumer protection statutes, Rule 9(b) applies where, as here, the gravamen of the complaint is fraud.").  Because one of Rule 9(b)'s main purposes is to

---

[5] Minnesota's consumer protection statutes "are commonly read together so as to prohibit the use of deceptive and unlawful trade practices." *Liabo v. Wayzata Nissan, LLC*, 707 N.W.2d 715, 724 (Minn. Ct. App. 2006).

allow a defendant to respond to and defend against charges of fraud, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995). Plaintiffs therefore must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby" to satisfy Rule 9(b). *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal citations omitted); *see also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549-50 (8th Cir. 1997) (a plaintiff alleging fraud must set forth the "who, what, when, where, and how.").

Here, Plaintiff's' Complaint fails under Rule 9(b) on multiple counts, most notably for failing to identify even a single misrepresentation that LG allegedly made to Plaintiffs, the date of any such misrepresentation, or its causal effect, if any. The Complaint says nothing more than, "[o]n November 29, 2013, Plaintiff Breann Hudock viewed advertisements and specifications of the LG 55LN5100-UB television on Best Buy's website, Bestbuy.com." (Compl. ¶ 34.) The Complaint nowhere alleges that Plaintiffs ever viewed – much less relied on or were allegedly misled by – a single **_LG_** representation.

The Complaint's other allegations that Plaintiffs might claim implicate conduct on LG's part do not do so with the particularity required by Rule 9(b). Plaintiffs' conclusory accusation that "LG labels its LED televisions as having refresh rates of '120Hz' or '240Hz' when, in actuality, its televisions' refresh rates are 60Hz and 120Hz, respectively" (Compl. ¶ 2) provides no information about the "where," "when," or "how"

13

of the allegedly fraudulent misstatements.  Indeed, while Plaintiffs include other similarly vague and general accusations regarding LG (*see, e.g.*, Compl. ¶¶ 20, 23 (among others)) there is again no specificity about what LG actually said or allegedly knew when making the alleged statements; when, where, or to whom the statements allegedly were made; or how they were communicated.  All of these allegations fail to meet the heightened Rule 9(b) standard.  *See E-Shops Corp. v. U.S. Bank, N.A.*, 678 F.3d 659, 666 (8th Cir. 2012).

Plaintiffs' other broad-brush allegations about the "Defendants" – collectively – likewise fail to state a claim against LG.  The Eighth Circuit has made clear that, where a complaint alleges fraud, it must "inform each defendant of the nature of his alleged participation in the fraud."  *See Steambend Props. II, Inc. v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (citation omitted).  Where, as here, plaintiffs' allegations "attribute[] fraudulent representations and conduct to multiple defendants generally in a group pleading fashion" – without specifying the "'time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained or given up as a result'" – the Eighth Circuit has found the pleading too "vague" to "satisfy Rule 9(b)."  *Id.* (citations omitted).  Alleging that *someone* among a group of defendants committed a fraudulent act does not equate to an actionable contention that *a particular person* did so.  *Quintero Cnty. Ass'n Inc. v. FDIC*, 792 F.3d 1002, 1010 (8th Cir. 2015) ("Appellants' shotgun-style allegations of wrongdoing by all the Director Defendants 'generally, in a group pleading fashion . . . do[es] not satisfy Rule 9(b).'").

14

Accordingly, Plaintiffs' Minnesota Consumer Fraud Act (MCFA) (Count I); Minnesota Deceptive Trade Practices Act (MDTPA) (Count II); Minnesota Unlawful Trade Practices Act (MUTPA) (Count III), New Jersey Consumer Fraud Act (NJCFA) (Count IV); and unjust enrichment (Count V) claims – all of which sound in fraud – fail as a matter of law under Rule 9(b). *See, e.g., E-Shops,* 678 F.3d at 665-66 (affirming dismissal of MCFA and MDTPA claims for failure to meet Rule 9(b) standard); *Thunander*, 887 F.Supp.2d at 873, 876 (dismissing MCFA, MDTPA, and MUTPA claims under Rule 9(b)); *Frederico v. Home Depot*, 507 F.3d 188, 200-02 (3d Cir. 2014) (applying Rule 9(b) to NJCFA claim and dismissing same); *United States v. Henderson,* No. 03-5060, 2004 WL 540278, at *2-3 (D. Minn. Mar. 16, 2004) (dismissing unjust enrichment claim for failure to plead with specificity under Rule 9(b)).

### B.  The MCFA and MUTPA Counts [Counts I and III] Fail to Allege A Public Benefit, As Required Under Minnesota's Private Attorney General Statute.

Plaintiffs' claims under the MCFA (Count I) and the MUTPA (Count III) are subject to dismissal for the additional and independent reason that they do not allege a public benefit.  Private citizens may only pursue private claims under the MCFA or MUTPA through Minnesota's Private Attorney General Statute, which limits such actions to those that benefit the public. *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F.Supp.2d 981, 985-86 (D. Minn. 2011) (citations omitted).  Plaintiffs have not invoked the Private Attorney General Statute in their Complaint, nor have they alleged that the action benefits the public.  Accordingly, the MCFA and MUTPA counts should be dismissed.

While courts look to a variety of factors to determine whether or not a public benefit exists, "[c]ourts consistently focus their inquiry on the relief sought by the plaintiff, and find no public benefit where plaintiffs request only damages …." *In re Levaquin Prods. Liab. Litig.*, 752 F.Supp.2d 1071, 1077 (D. Minn. 2010).   Here, Plaintiffs' MCFA and MUTPA counts allege only that "Plaintiffs and members of the Class and Subclass have suffered loss by paying more than they would have otherwise paid [. . .] for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants." (Compl. ¶¶ 57, 65; *see also id.* ¶¶ 51-56, 61-64.)[6]   Courts in this District have found that, "[w]here plaintiffs seek only damages, courts typically find no public benefit."  *Select Comfort Corp.*, 796 F.Supp.2d at 986 (D. Minn. 2011).

Moreover, Plaintiffs' claim is not saved because they allege false advertising on behalf of a class.  *See, e.g.*, *Baker v. Best Buy Stores, LP*, 812 N.W.2d 177 (Minn. Ct. App. 2012) (dismissing claims of false advertising brought in a class action because the plaintiffs did not show how the action would benefit the public).  "[C]ourts addressing

---

[6] While Plaintiffs make a general allegation that the proposed class and subclass satisfy the Rule 23(b)(2) prerequisites for injunctive relief (Compl. ¶¶ 47-49), Plaintiffs' MCFA and MUTPA claims nowhere request such relief and, indeed, Plaintiffs' Prayer for Relief is void of a request for an injunction of any type.  Even if Plaintiffs had requested such relief, courts in this District have held that a request for an injunction is not a sufficient allegation that the public would benefit from the action.  *See Select Comfort Corp.*, 796 F.Supp.2d at 986 ("inclusion [] of a prayer for injunctive relief is not dispositive") (citation omitted).  Indeed, claims under the Minnesota Private Attorney General Statute have been held invalid if they do not "make sufficient allegations . . . to show a public benefit," even if they seek an injunction alleging a public benefit in "eliminating false or misleading advertising."  *Select Comfort Corp. v. Tempur Sealy Int'l, Inc.*, 11 F.Supp.3d 933, 938–39 (D. Minn. 2014).

the public-benefit issue do not focus solely (or even substantially) on the size of the audience receiving an alleged misrepresentation, but rather hone in on 'the relief sought by' the plaintiff." *Buetow v. A.L.S. Enters., Inc.*, 888 F.Supp.2d 956, 960 (D. Minn. 2012) (citations omitted). Plaintiffs thus must do more than simply claim that they have suffered a monetary loss and that they represent a putative class of plaintiffs to establish a public benefit. Plaintiffs must "address how or why there is any public benefit to the action now before the Court" and point to a specific benefit their action would bring to the public. *Tempur Sealy*, 11 F.Supp.3d at 939. They have not done so here.

### C. The MDTPA Claim [Count II] Should Be Dismissed Because it Fails to State a Claim for Injunctive Relief.

Plaintiffs likewise fail to state a claim under the MDTPA, Minn. Stat. § 325D.44, which prohibits deceptive trade practices. Unlike the MCFA and MUTPA, the MDTPA "requires no reference to [the Minnesota Private Attorney General Statute]" because the MDTPA "contains its own legislative grant of standing" in § 325D.45. *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 496 (Minn. 1996). However, "injunctive relief [is] the only allowable relief under the [M]DTPA." *Tuttle v. Lorillard Tobacco Co.*, No. 99-1550, 2001 WL 821831, at *4-5 (D. Minn. July 5, 2001); *see also Dennis Simmons, D.D.S., P.A. v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999) (affirming the "conclusion that the [M]DTPA provides only injunctive relief, and because appellant pursued damages, not an injunction, he has not stated a claim for which relief could be granted.").

Plaintiffs' MDTPA claim again makes the rote and conclusory allegation that Plaintiffs "suffered loss by paying more than they would have otherwise paid for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants" (Compl. ¶ 60) – the identical allegation made with respect to Plaintiffs' MCFA and MUTPA claims (*compare* Compl. ¶¶ 57, 65). And Plaintiffs' Prayer for Relief nowhere mentions an injunction. Moreover, prospective injunctive relief is unavailable to Plaintiffs because such relief only is permitted for persons "likely to be damaged by a deceptive trade practice." Minn. Stat. § 325D.45, subd. 1; *see also Simmons*, 603 at 339. Plaintiffs are not "likely to be damaged" by Defendants' alleged conduct. *See Olen v. N. Tier Retail, LLC*, No. 11-2665, 2012 WL 1580994, at *6 (D. Minn. May 4, 2012) (dismissing claim since named plaintiff "experienced" and "is clearly aware of" defendant's alleged practice "and is unlikely to be confused in the future"); *see also Deleski Ins. Agency, Inc. v. Allstate Ins. Co.*, No. 13-1780, 2013 WL 6858573, at *13 (D. Minn. Dec. 30, 2013) (MDTPA claim dismissed because complaint alleged only "that [defendant] engaged in deceptive trade practices in the past" and did "not allege . . . that Plaintiffs are likely to be harmed in the future by deceptive practices ….").

Because injunctive relief is the only remedy available to Plaintiffs under the MDTPA and because they have not claimed, and cannot properly claim, injunctive relief here, the MDTPA claim should be dismissed.

### D.  Plaintiffs' NJCFA Claim [Count IV] Fails Because Plaintiffs Have Not Pled Ascertainable Loss.

Plaintiffs' NJCFA claim also should be dismissed because Plaintiffs have not pled ascertainable loss.  The New Jersey Supreme Court has interpreted the ascertainable loss requirement to mean that plaintiffs must establish an "actual loss," that is "quantifiable or measurable" or "real and demonstrable," as opposed to "hypothetical or illusory" or "speculative."  *Thiedemann v. Mercedes-Benz, USA, LLC*, 872 A.2d 783, 792, 793, 795, 796 (N.J. 2005).  Under the NJCFA, a party must "have a claim that he or she has suffered an ascertainable loss of money or property" to have standing to bring a cause of action under the Act.  *Weinberg v. Sprint Corp.*, 801 A.2d 281, 291 (N.J. 2002).  Moreover, "to the extent that [a] plaintiff seeks to prove only that the price charged for [the product] was higher than it should have been as a result of defendant's fraudulent marketing campaign, and seeks thereby to be relieved of the usual requirements that plaintiff prove an ascertainable loss, the theory must fail."  *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc*., 929 A.2d 1076, 1088 (N.J. 2007).

Plaintiffs allege, in conclusory fashion, that they "have suffered an ascertainable loss as a result of Defendants' conduct in that they paid more than the LED television was worth and more than what Defendants would have been able to charge had the true refresh rates been displayed."  (Compl. ¶ 31; *see also* Compl. ¶¶ 71, 73.)  But more is required to plead an ascertainable loss under the NJCFA.   Indeed, Plaintiffs' theory of ascertainable loss – *i.e.*, that they paid more for the TV than they would have based on

the advertised refresh rate – is precisely what the New Jersey Supreme Court already has rejected. *Int'l Union*, 929 A.2d at 1088.

Plaintiffs have not provided "specific information" – as they must – to demonstrate that there is any objectively quantifiable difference in value between the LG LED TV they purchased and the television they purportedly expected to receive. *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F.Supp.2d 529, 541-42 (D.N.J. 2011).  To the contrary, the BestBuy.com website page that Plaintiffs allege they relied on in purchasing their LG LED TV shows that they received a deep discount – the regular price of $999.99 was discounted by 50% to $499.99 on a Black Friday special – contradicting Plaintiffs' bald assertion that they "paid more" (Compl. ¶ 5, Mitchell Decl. Ex. 3) for their LG LED TV on account of an allegedly inflated refresh rate.  Plaintiffs' allegations of "ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss."  *Lieberson*, 865 F.Supp.2d at 541-42; *see also, e.g.*, *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009) (dismissing claim for failure to allege cost differences and amount of purported "premium" paid); *Solo v. Bed Bath & Beyond, Inc*., No. 06-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (plaintiff who alleged the purchase of "a sheet set that was advertised as having a '1000 Thread Count,' but. . . actually had a thread count of only 492" failed to "plead specific facts setting forth and defining the ascertainable loss suffered" because he failed to allege with particularity that the "sheets he received were worth an amount of money less than the sheets he was promised, or that he experienced a measurable out-of-pocket loss").

Accordingly, Plaintiffs have failed to plead ascertainable loss and their NJCFA claim should be dismissed.

### E. Plaintiffs May Not Pursue An Unjust Enrichment Claim [Count V] Where, As Here, Another Adequate Remedy Is Available.

In addition to failing for lack of standing and lack of particularity under Rule 9(b), Plaintiff's unjust enrichment claim fails for another reason: under Minnesota law, a plaintiff may not seek equitable relief where there is another adequate remedy available at law. *See U.S. v. Bame*, 721 F.3d 1025, 1030 (8th Cir. 2013). Thus, Plaintiffs' unjust enrichment claim should be dismissed under Rule 12(b)(6) because multiple other causes of action are available to them, including consumer protection remedies and warranty claims. As the Eighth Circuit has clarified, an adequate remedy exists even if the plaintiff cannot state an actionable claim under the statute or pleads the claims in the alternative. *See, e.g., id.*; *see also Mooney v. Allianz Life Ins. Co. of N. Am.*, No. 06-545, 2009 WL 511572, at *4 (D. Minn. Feb. 26, 2009) (availability of statutory remedies for consumer fraud constituted adequate legal remedy, displacing unjust enrichment claim).

As detailed in this Memorandum, the Court should dismiss Plaintiffs' statutory, warranty and contract claims for lack of standing and other deficiencies. However, such a dismissal will not render those claims "inadequate" to displace the unjust enrichment claim. *Johnson v. Res. Bancshares Mortg. Group*, No. 97-2378, 2000 WL 34424097, at *2 (D. Minn. May 15, 2000) (dismissing unjust enrichment claim because the Real Estate Settlement Procedures Act provided adequate remedy, even though that statutory claim was concurrently dismissed). Judicial notions of "unjust enrichment" cannot be used to

circumvent legislated standards for recovery when those standards are unsatisfied. Whether a legal remedy is "adequate" depends on whether the remedy is available, not whether it can be pursued successfully in a particular action. *See, e.g., Drobnak v. Andersen Corp.*, 561 F.3d 778, 787 (8th Cir. 2009) (affirming dismissal of unjust enrichment claim because plaintiffs also asserting claims under the Uniform Commercial Code "would have had an adequate legal remedy" had they "adhered to the statutory notice and Rule 9(b) pleading requirements").

Neither is this a matter of pleading in the alternative. As the Eighth Circuit has explained, "the issue here is not one of pleading." *Bame*, 721 F.3d at 1031. "District courts routinely dismiss unjust enrichment claims where the plaintiff pleaded and pursued both equitable and legal claims simultaneously, as well as where the plaintiff failed to pursue adequate legal remedies." *Id.* "It would be anomalous to allow unjust enrichment recovery, despite law to the contrary, merely because the plaintiff fashioned the pleadings a certain way." *Id.* at 1032; *see also Kelley v. Coll. of St. Benedict*, 901 F.Supp.2d 1123, 1132-33 (D. Minn. 2012) (that the Federal Rules "allow for pleading claims in the alternative" is irrelevant since "the availability of an adequate legal remedy precludes resort to unjust enrichment as a matter of law.").

Because Plaintiffs have other claims available to them, they may not simultaneously assert an unjust enrichment claim, and Count V should be dismissed.

**F. The Plain Language of LG's Limited Warranty Bars Plaintiffs' Warranty Claims [Counts VI and VII].**

Assuming that the Court does not dismiss Plaintiffs' express and implied warranty causes of action for lack of standing, Plaintiffs' warranty counts also fail to state a claim on their face. LG's Limited Warranty warrants that LG's televisions will be repaired or replaced, at LG's option, for one year from the date of purchase. Mitchell Decl. Ex. 5.[7] Additionally, LG's warranty provides that:

> **THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TO THE EXTENT ANY IMPLIED WARRANTY IS REQUIRED BY LAW, IT IS LIMITED IN DURATION TO THE EXPRESS WARRANTY PERIOD ABOVE. NEITHER THE MANUFACTURER NOR ITS U.S. DISTRIBUTOR SHALL BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL, OR PUNITIVE DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, LOST PROFITS, LOST OR CORRUPTED PROGRAMMING OR DATA, OR ANY OTHER DAMAGE WHETHER BASED IN CONTRACT, TORT, OR OTHERWISE.**

*Id.* (emphasis original). Thus, (a) LG disclaimed all other express and implied warranties, including any warranty of merchantability or fitness for a particular purpose, and (b) any and all warranties were limited in duration to the one-year express warranty period.

---

[7] In deciding the instant Motion to Dismiss, the Court properly may consider the LG Limited Warranty because it is embraced by the allegations in the Complaint. *See Thunander*, 887 F.Supp.2d at 859 n.1 (considering express warranty exhibit on motion to dismiss because it was referenced in the complaint).

23

Minnesota law expressly authorizes warranty disclaimers as long as the disclaimers are "conspicuous" – as LG's warranty disclaimers are here. *E.g.,* Minn. Stat. § 336.2-316(2); Minn. Stat. § 336.1-201(10) (a disclaimer is "conspicuous" if a "reasonable person against which it is to operate ought to have noticed it"); *see also Thunander*, 887 F.Supp.2d at 866 (implied warranty of merchantability disclaimed by language in express warranty that included capitalized and bold-face letters); *Windsor Craft Sales, LLC v. VICEM Yat Sanayi ve Ticaret AS*, No. 10-297, 2012 WL 639432, at *7 (D. Minn. Feb. 28, 2012) (implied warranty of merchantability claim dismissed because distributor agreement stated that it was "IN LIEU OF ALL OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING SPECIFICALLY ANY IMPLIED WARRANTY OF MERCHANTABILITY"); *Glorvigen v. Cirrus Design Corp.*, No. 06-2661, 2008 WL 398814, at *5 (D. Minn. Feb. 11, 2008) (back page of purchase agreement disclaimed implied warranty of merchantability in capital letters, causing the claim to "fail[] as a matter of law").   Other than the express LG Limited Warranty, any and all warranties were explicitly and validly disclaimed, and Plaintiffs' express and implied warranty claims fail on their face to the extent they exceed the scope of the LG Limited Warranty. *Milwaukee Mut. Ins. Co. v. Deere & Co. Inc.,* No. 04-4905, 2005 WL 2105513, at *7 (D. Minn. Aug. 26, 2005) ("Because it is clear that all the implied warranties were disclaimed as a matter of law, Plaintiff's claim for breach of the implied warranties of merchantability and fitness are barred.").

Plaintiffs' warranty claims fail for yet another reason:  any warranties available to Plaintiffs expired one year after the date of purchase, which was November 29, 2014 – a

year-and-a-half before they raised any issue with LG.  Plaintiffs never complained about their LG LED TV at any point during the Limited Warranty period.  To the contrary, they concede that they only contacted LG to make a warranty claim a year-and-a-half *after* the warranty had expired.  (Compl. ¶ 88.)  Plaintiffs' warranty claims should be dismissed for that reason as well.  *See, e.g.*, *Spectro Alloys Corp. v. Fire Brick Eng'rs Co.*, 52 F.Supp.3d 918, 928 (D. Minn. 2014) ("[P]arties may contract to limit the time frame and manner in which a party is required to give the other party notice of a warranty claim."); *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 365-66 (Minn. 2009) (plaintiff's breach of warranty claim was "barred as a matter of law because [plaintiff] failed to provide the written notice that the contract required" and that "parties to a contract may expressly agree" that failure to give a particular type of notice "bars a subsequent claim"); *Dryvit Sys., Inc. v. Stein*, 568 S.E.2d 569, 571 (Ga. Ct. App. 2002) ("Where notice to the manufacturer within a specified time is a condition precedent to recovery on a breach of warranty claim, the notice must be given as prescribed.").

Finally, even apart from the Limited Warranty period, "the buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach" to recover on a warranty theory.  Minn. Stat. § 336.2-607(3)(a).  One of the purposes of the notification requirement is to "provide the seller with an opportunity to correct the defect." *Christian v. Sony Corp. of Am.*, 152 F.Supp.2d 1184, 1188 (D. Minn. 2001) (citing *Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 5 (Minn. 1992)).  Here, Plaintiffs did not provide notice that the television's images were "not as clear as expected" until *close to two-and-a-half years* after they purchased the

TV.  (Compl. ¶¶ 38, 88.)  This not only dooms their warranty claims, but demonstrates the implausibility of their allegation that they would not have been willing to pay as much for the TV had they known about the alleged "refresh rate" issue.

In sum, Plaintiffs' warranty claims fail because (1) LG validly disclaimed all express and implied warranties, including the warranties of merchantability and fitness for a particular purpose, other than those explicitly provided in the LG Limited Warranty; (2) Plaintiffs have not alleged that they complied with the terms of the LG Limited Warranty (nor can they, since they made no claims within the warranty period), (3) Plaintiffs have not alleged – because they cannot – that LG has done anything in breach of the LG Limited Warranty; and (4) Plaintiffs have not alleged that they provided the requisite notice and opportunity to correct under Minnesota law.  Counts VI and VII should be dismissed.

### G. Plaintiffs' Breach of Contract Claim Fails On Its Face.

Again assuming that Plaintiffs' Minnesota law claims are not dismissed for lack of standing, on a breach of contract claim, a plaintiff must prove (1) the formation of a contract; (2) the performance by plaintiff of any conditions precedent; and (3) a material breach of the contract by defendant.  *Commercial Assocs., Inc. v. Work Connection, Inc.,* 712 N.W.2d 772, 782 (Minn. Ct. App. 2006) (citation omitted).  Some Minnesota cases also require the element of damages.  *Parkhill v. Minn. Mut. Life Ins. Co.,* 174 F.Supp.2d 951, 961 (D. Minn. 2000).

Here, Plaintiffs have not pled any contract with LG other than the LG Limited Warranty.  Aside from being subsumed by their breach of warranty count, Plaintiffs also

have not pled (and cannot plead) that they performed any conditions precedent – as they must under the second element of a breach of contract claim – because Plaintiffs did not provide the notice required by the LG Limited Warranty during the warranty period. *See Commercial Assocs., Inc.* 712 N.W.2d at 782. Accordingly, Plaintiffs' breach of contract claim fails on its face.

## <u>CONCLUSION</u>

For the reasons set forth herein, LG respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice, and award all other and further relief deemed appropriate.


Dated: July 12, 2016                    Respectfully submitted,

                                        /s/   *Mitchell E. Zamoff*
                                        Mitchell E. Zamoff (MN No. 389582)
                                        J. Christopher Mitchell (MN No. 395128)
                                        Alicia Paller (MN No. 0397780)
                                        HOGAN LOVELLS US LLP
                                        80 South Eighth Street, Suite 1225
                                        Minneapolis, MN 55402
                                        Tel: 612.402.3000
                                        Fax: 612.402.3001
                                        mitch.zamoff@hoganlovells.com
                                        chris.mitchell@hoganlovells.com
                                        alicia.paller@hoganlovells.com

                                        Phoebe A. Wilkinson (*pro hac vice pending*)
                                        A. Elizabeth Korchin (*pro hac vice pending*)
                                        HOGAN LOVELLS US LLP
                                        875 Third Avenue
                                        New York, NY 10022
                                        Tel: 212.918.3000
                                        Fax: 212.918.3100
                                        phoebe.wilkinson@hoganlovells.com
                                        elizabeth.korchin@hoganlovells.com

                                        *Counsel for Defendant LG Electronics USA, Inc.*