# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

BENJAMIN HUDOCK and BREANN
HUDOCK, *individually and on behalf of
all others similarly situated*,

                                 Plaintiffs,

v.

LG ELECTRONICS U.S.A., INC., BEST
BUY CO., INC., BEST BUY STORES,
L.P., and BESTBUY.COM LLC,

                                 Defendants.

Civil No.  16-1220 (JRT/FLN)

**MEMORANDUM
OPINION AND ORDER ON
DEFENDANTS' MOTIONS
TO DISMISS**

---

David M. Cialkowski, **ZIMMERMAN REED, PLLP**, 1100 IDS Center, 80 South Eighth Street, Minneapolis, MN  55402; Daniel C. Hedlund, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN  55402; and Luke Hudock, **HUDOCK LAW GROUP, S.C.**, P.O. Box 83, Muskego, WI 53150, for plaintiffs.

John C. Mitchell, **HOGAN LOVELLS US LLP**, 80 South Eighth Street, Suite 1225, Minneapolis, MN  55402; and Phoebe A. Wilkinson, **HOGAN LOVELLS US LLP**, 875 Third Avenue, New York, NY  10020, for defendants.

This case arises from Plaintiffs Benjamin and Breann Hudock's ("Plaintiffs") purchase of a television purporting to have a 120Hz refresh rate.  Plaintiffs allege the television, in fact, has a 60Hz refresh rate.  As stated in the Complaint, Plaintiffs filed this purported class action against Defendant LG Electronics U.S.A., Inc. (LG) and Defendants Best Buy Co., Inc. (Best Buy Co.), Best Buy Stores, L.P. (Best Buy LP), and BestBuy.com, LLC (BestBuy.com) (collectively, Best Buy).  Plaintiffs allege violations

of Minnesota and New Jersey consumer fraud statutes, as well as a number of common law claims.  LG and Best Buy filed motions to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, the Court will grant in part and deny in part Defendants' motions to dismiss.

## BACKGROUND

Plaintiffs, married Wisconsin residents, purchased a television manufactured by LG on "Bestbuy.com."  (Compl. ¶¶ 6-7, 34, 37, May 9, 2015, Docket No. 1.)  Plaintiffs assert that, prior to buying the television, Plaintiffs decided to purchase a television with a minimum of a 120Hz refresh rate.[1]  (*Id.* ¶ 33.)  Plaintiffs contend they spent weeks shopping for the television and, on November 29, 2013, Breann Hudock "viewed advertisements and specifications" for the television they purchased on "Bestbuy.com."  (*Id.* ¶¶ 33-34, 37.)  Plaintiffs allege the "advertisements and specifications" indicated the television had a 120Hz refresh rate.  (*Id.* ¶¶ 35-36.)

According to Plaintiffs, after conferring with Benjamin Hudock and describing the specifications, Breann Hudock purchased the television from the website "relying on the

---

[1] The refresh rate corresponds to the Hertz (Hz) specification. The refresh rate of a particular television indicates the number of times per second a television refreshes the image displayed. (Compl. ¶ 15.) The higher the refresh rate of a television, the more unique images are displayed per second allowing the television to display moving images more clearly, resulting in better picture quality. (*Id.* ¶ 16.)

Defendants challenge Plaintiffs' definition of refresh rate as "unique images per second" rather than "cycles per second." (Mem. of Law is Supp. of LG's Mot. to Dismiss at 2-3, July 12, 2016, Docket No. 20.)  For the purpose of the motion to dismiss, the Court will accept the Complaint's definition of the refresh rate as true. *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

120Hz advertised refresh rate." (*Id.* ¶ 37.)   After purchasing the television, Plaintiffs allege they "noticed that the television's images were not as clear as expected," but did not learn until later that the television only had a 60Hz refresh rate. (*Id.* ¶ 38; *see also* Decl. of J. Christopher Mitchell ("Mitchell Decl."), Ex. 1, July 12, 2016, Docket No. 26.)

On April 29, 2016, two and a half years after Plaintiffs purchased the television, Plaintiffs notified LG and Best Buy that the television's refresh rate did not conform to LG's and Best Buy's representations. (*Id.* ¶ 88.)   On May 9, 2016, Plaintiffs filed this purported class action against LG and Best Buy, alleging eight claims:  (1) violation of Minnesota's Consumer Fraud Act (MCFA), Minn. Stat. § 325F.68, et seq. (Count I); (2) violation of Minnesota's Uniform Deceptive Trade Practices Act (MDTPA), Minn. Stat. § 325D.43, et seq. (Count II); (3) violation of Minnesota's Unlawful Trade Practices Act (MUTA), Minn. Stat. § 325D.13 (Count III); (4) violation of New Jersey's Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 54:8-1, et seq. (Count IV); (5) unjust enrichment (Count V); (6) breach of express warranty (Count VI); (7) breach of implied warranty (Count VII); and (8) breach of contract (Count VIII).[2]  (Compl. ¶¶ 51-102.)  LG and Best Buy filed motions to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

---

[2] While Plaintiffs did not indicate the state law invoked for the common law claims, both parties apply Minnesota law for the purpose of the motion to dismiss.  As the case proceeds, however, choice of law issues with respect to Plaintiffs' common law claims remain.

# DISCUSSION

## I.    STANDING

Defendants first argue Plaintiffs lack standing to bring their claims under various theories.   Normally, the Court would address Defendants' standing arguments first, before the merits, because "standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit."   *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 621 (8th Cir. 2012) (quoting *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007)).   But in the class action context, the Supreme Court's decisions in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), "'make clear that there are situations in which a court may defer' the standing question 'to later in the case.'"   *Roth v. Life Time Fitness, Inc.*, No. 15-3270, 2016 WL 3911875, at *4 (D. Minn. July 14, 2016) (quoting *In re Target Corp. Customer Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014)).[3]   Although neither created a blanket exception, *Amchem* and *Ortiz* stand for the proposition that standing questions may be postponed when class certification is "logically antecedent" to standing.

---

[3] This Court acknowledges that courts disagree on the scope and application of *Amchen* and *Ortiz*. *Compare Roth*, 2016 WL 3911875, at *5 (declining to address the standing argument on a motion to dismiss), *and In re Target Corp. Customer Data Sec. Breach Litig*, 66 F. Supp. 3d at 1159 (finding that the court may wait to address standing questions until after class certification), *with Insulate SB, Inc. v. Advanced Finishing Syss., Inc.*, No. 13-2664, 2014 WL 943224, at *10-12 (D. Minn. Mar. 11, 2014) (finding the court must address standing prior to class certification).   But the Eighth Circuit has not addressed the issue and well-reasoned decisions support this Court's interpretation.   *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1068-70 (N.D. Cal. 2015) (describing the split in authority in detail and finding federal courts possess discretion to delay adjudication of standing questions when class certification is logically antecedent to the standing question).

*See Roth*, 2016 WL 3911875, at *4; *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 970-71 (N.D. Cal. Feb. 14, 2016); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1068-70 (N.D. Cal. 2015).

Here, the Court will exercise its discretion to defer consideration of the standing issues until after class certification.  There is no question that Plaintiffs have standing to sue Defendants under, at the very minimum, Wisconsin law.  (Mem. of Law in Supp. of LG's Mot. to Dismiss at 6, July 12, 2016, Docket No. 20 (admitting Plaintiffs have standing under Wisconsin law).)  The Court finds Defendants' standing arguments, therefore, do not address whether Plaintiffs have individual standing.  Instead, class certification is "logically antecedent" to the standing issues raised by Defendants; specifically, the Court can determine during the class certification process whether Plaintiffs' can bring claims under the laws of states in which no currently-named plaintiff resides or whether Plaintiffs' injuries are sufficiently similar to those of the proposed class to permit claims for a broader range of LG products.  *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 451 (S.D.N.Y. 2010); *see also* Fed. R. Civ. P. 23(a).  If standing issues remain after class certification, Defendants are free to make a motion at that time.  *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 402 (S.D.N.Y. 2010).

## II.     FAILURE TO STATE A CLAIM

### A.     Standard of Review

In reviewing a Rule 12(b)(6) motion, the Court views a complaint in "the light most favorable to the nonmoving party." *Longaker v. Boston Sci. Corp.*, 872 F. Supp. 2d 816, 819 (D. Minn. 2012). The Court considers all facts alleged in the complaint as true to determine whether the complaint states a "'claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility[,]'" and therefore must be dismissed. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Therefore, to survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B.    Claims Against Best Buy Co., Best Buy LP, and BestBuy.com

In order to evaluate Defendants' motions to dismiss, the Court must first determine how to construe the Complaint's allegations regarding Best Buy in "the light most favorable" to Plaintiffs.   *Longaker*, 872 F. Supp. 2d at 819.   While Plaintiffs contend construing Best Buy Co., Best Buy LP, and BestBuy.com collectively as "Best Buy" is "in the light most favorable" to Plaintiffs, the Court disagrees.   Instead, the Court construes Plaintiffs' allegations regarding "Bestbuy.com" and the "Best Buy website" to refer to the entity BestBuy.com.   The Court's construction preserves the most claims in light of the Eighth Circuit's holding that "attribut[ing] fraudulent representations and conduct to multiple defendants generally in a group pleading fashion" falls short of the Fed. R. Civ. P. 9(b) standard.   *Streambend Props. II LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015).

In light of this construction, the Court will dismiss without prejudice all claims against Best Buy Co. and Best Buy LP.   For the purpose of the motion to dismiss, only Plaintiffs' claims, and not those of any potential class members, are considered.   *Browe v. Evenflo Co., Inc.*, No. 14-4690, 2015 WL 3915868, at *4 n.1 (D. Minn. June 25, 2015). The Complaint does not set forth any relationship between Plaintiffs' purchase of the television and Best Buy Co. or Best Buy LP.   Plaintiffs specifically alleged all representations came from BestBuy.com and, based on those representations, Plaintiffs purchased the television from BestBuy.com.   (Compl. ¶¶ 32-38.)   Plaintiffs failed to make any allegations that would impute liability for BestBuy.com's actions onto Best Buy Co. and Best Buy LP.

Plaintiffs respond that the Court may attach alter ego liability for Plaintiffs' claims against Best Buy Co. and Best Buy LP because Plaintiffs define the three entities as "Best Buy."[4]   But there is a "presumption of separateness" between a parent and a subsidiary corporation.  *Ass'n of Mill & Elevator Mutual Ins. Co. v. Barzen Int'l, Inc.*, 553 N.W.2d 446, 449 (Minn. Ct. App. 1996).   "Piercing the corporate veil is an equitable remedy that may be applied in order to avoid an injustice."  *Equity Trust Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. Ct. App. 2009).   "A court may pierce the corporate veil to hold a party liable for the acts of a corporate entity if the entity . . . is the alter ego of the entity."  *Id.*   Courts assess a number of factors to determine whether piercing the corporate veil is appropriate.  *Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997).

Here, Plaintiffs do not allege any of the facts necessary to plead alter ego liability. All Plaintiffs allege regarding the relationship between the entities is the use of "(collectively, 'Best Buy')" at the beginning of the Complaint.  (Compl. at 1.)  Other than this reference, the Complaint is silent regarding the interaction between the three entities. Plaintiffs, thus, failed to meet their burden of pleading alter ego liability because

---

[4] Plaintiffs further posit the Court can consider other litigation where Best Buy admitted Best Buy Co. owned Best Buy LP and BestBuy.com.  But neither case cited by Plaintiffs addressed the issue of alter ego liability.  *Sterk v. Best Buy Stores, L.P.*, No. 11-894, 2012 WL 5197901, at *1 (N.D. Ill. Oct. 17, 2012) (refusing to consider Best Buy's disclosure at the motion to dismiss stage of litigation); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-4572, 2011 WL 3738968, at *2 (N.D. Cal. Aug. 24, 2011) (finding Best Buy's claims fell within the "control exception to *Illinois Brick*" and permitting Best Buy's direct-purchase claims to survive a motion to dismiss).  The Court, therefore, cannot find previous litigation prevents a dispute over this issue.  *See United States v. Young*, 804 F.2d 116, 117 (8th Cir. 1986).

Plaintiffs did "not plead[] any facts directly addressing . . . the operative test." *See N. Cent. EMS Corp. v. Bound Tree Med., LLC*, No. 15-2793, 2016 WL 544472, at *5 (D. Minn. Feb. 10, 2016).

For this reason, the Court will grant Defendants' motion to dismiss all claims against Best Buy Co. and Best Buy LP without prejudice.

### C.      Particularity

Defendants assert Plaintiffs failed to plead their fraud-based claims with the particularity required by Rule 9(b).[5]   Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   The rule requires a plaintiff to "identify who, what, where, when, and how." *Streambend Properties II*, 781 F.3d at 1013 (quoting *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009)).   It must "specify[] the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."   *Id.* (quoting *Hypoguard USA*, 559 F.3d at 822).   The goal of Rule 9(b), like Rule 8, "is fair notice," *City of Wyoming v. Procter & Gamble Co.*, No. 15-2101, 2016 WL 5496321, at *6 (D. Minn. Sept. 28, 2016), and, therefore, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint

---

[5] Plaintiffs' fraud-based claims include Minnesota's consumer protection statutes, New Jersey's consumer protection statute, and unjust enrichment (Counts I through V). *See Nunez v. Best Buy Co.*, 315 F.R.D. 245, 248-49 n.3 (D. Minn. 2016); *Rosenthal v. Sharkninja Operating LLC*, No. 16-1048, 2016 WL 7338535, at *3 (D.N.J. Dec. 19, 2016).

should inform each defendant of the nature of his [or her] alleged participation in the fraud," *Streambend Properties II*, 781 F.3d at 1013.

LG argues Plaintiffs failed to allege the fraud-based claims with particularity because they failed to identify any misrepresentations made by LG, the date LG made any misrepresentation, and the causal effect of any LG misrepresentation. BestBuy.com further argues Plaintiffs failed to allege any conduct that would amount to fraud because Plaintiffs did not immediately recognize any problem with the refresh rate.

To the contrary, Plaintiffs alleged the "who, what, where, when, why, and how" of both LG's and BestBuy.com's conduct.  Plaintiffs alleged: on November 29, 2013 Plaintiffs viewed advertisements and specifications for the television on BestBuy.com (Compl. ¶ 34); the advertisements and specifications stated the television had a 120Hz refresh rate (*id.* ¶¶ 35-36); BestBuy.com "adopted LG's misrepresentations" about the 120Hz refresh rate (*id.* ¶¶ 23, 28); BestBuy.com and LG "joined" together to "deceiv[e] consumers" – including Plaintiffs – "by advertising a fraudulent 120Hz refresh rate" (*id.* ¶ 28); Plaintiffs purchased the television based on LG and BestBuy.com's representations (*id.* ¶ 37); Plaintiffs received the television and, arguably, LG advertised the 120Hz refresh rate on its packaging (*id.* ¶¶ 24, 38); and Plaintiffs were injured because, but for LG and BestBuy.com's representations, Plaintiffs would not have purchased the television or would have paid a lower price (*id.* ¶ 38).  Consequently, Rule 9(b) does not require dismissal of Plaintiffs' fraud-based claims.

### D.      MCFA and MUTA

Defendants next challenge Plaintiffs' claims under the MCFA, Minn. Stat. § 325F.68 et seq. and MUTA, Minn. Stat. § 325D.13.   Specifically, Defendants argue Plaintiffs failed to allege a public benefit.

Neither the MCFA nor the MUTA provides a private cause of action.   *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1076 (D. Minn. 2010).   Under Minnesota's Private Attorney Statute ("Private AG Statute"), however, "any person injured by a violation" of the laws entrusted to the Minnesota Attorney General to investigate and enforce – including the MCFA and MUTA – may file a lawsuit and recover damages as well as costs and attorney fees.   *Id.* (citing Minn. Stat. § 8.31, subd. 3a).

But "the Private AG Statute [only] grants private citizens the right to act as a 'private' attorney general."   *Ly v. Nystrom*, 615 N.W.2d 302, 313 (Minn. 2000).   Thus, "the role and duties of the attorney general . . . define the limits of the private claimant under the statute."   *Id.* at 313.   The Minnesota Supreme Court concluded that "the Private AG Statute applies only to those claimants who demonstrate that their cause of action benefits the public."   *Id.* at 314; *see also In re Levaquin*, 752 F. Supp. 2d at 1076 (listing public benefit cases).

"To determine whether a lawsuit is brought for the public benefit[,] the Court must examine not only the form of the alleged misrepresentation, but also the relief sought by the plaintiff."   *Zutz v. Case Corp.*, No. 02-1776, 2003 WL 22848943, at *4 (D. Minn. Nov. 21, 2003).   "Courts consistently focus their inquiry on the relief sought by the

plaintiff, and find no public benefit where plaintiffs request only damages even when plaintiffs are suing for injuries resulting from mass produced and mass marketed products." *In re Levaquin*, 752 F. Supp. 2d at 1077 (collecting cases).  Defendants argue Plaintiffs only seek damages resulting from Defendants' actions and, therefore, Plaintiffs failed to allege a public benefit.

To begin, Defendants' assertion that Plaintiffs failed to allege injunctive relief defies the plain language of the Complaint.  In the section labeled "**Proposed Class and Subclass Satisfy the Rule 23(b)(2) Prerequisites for Injunctive Relief**," Plaintiffs alleged "Defendants should be ordered to cease from further advertisements that inaccurately state the refresh rates of LG televisions."   (Compl. ¶ 48.)   Plaintiffs explained injunctive relief may be appropriate because "there is no way for [Plaintiffs] to know when or if Defendants have ceased misrepresenting the refresh rates of LG televisions."  (*Id.* ¶ 47.)  Plaintiffs incorporated these allegations into both their MCFA and MUTA claims (*id.* ¶¶ 51, 61) and, while failing to specifically request injunctive relief in the Prayer for Relief, requested "[s]uch other and further relief as the Court deems just and proper" (*id.* at 24).

Even if Plaintiffs had failed to request injunctive relief, however, that fact would "not preclude" satisfaction of "the public benefit requirement."  *ADT Sec. Servs., Inc. v. Swenson, ex rel. Estate of Lee*, 687 F. Supp. 2d 884, 892 (D. Minn. 2009).  The other factor considered in a public benefit inquiry – the form of the alleged misrepresentation – proved dispositive in *Collins v. Minnesota School of Business, Inc.*, 655 N.W.2d 320 (Minn. 2003).  As this Court observed regarding *Collins*, "[n]either the Minnesota Court

of Appeals nor the Minnesota Supreme Court indicated that the plaintiffs had sought injunctive relief." *ADT Sec. Servs., Inc. v. Swenson*, No. 97-2983, 2008 WL 2828867, at *6 (D. Minn. July 21, 2008).  "Nonetheless, both courts concluded that plaintiffs had sought a sufficient 'public benefit' for the purposes of the Private Attorney General Statute." *Id.*  "Thus, although federal courts in Minnesota have focused the public benefit inquiry on whether plaintiff is seeking only money damages . . . after *Collins*, it seems reasonable to infer that the Minnesota Supreme Court is as much if not more concerned with the degree to which defendants' alleged misrepresentations affect the public." *In re Levaquin*, 752 F. Supp. 2d at 1078.

Plaintiffs alleged LG and BestBuy.com mass marketed misrepresentations about LG televisions to the public.  (Compl. ¶¶ 23-25, 28-29.)  Further, Plaintiffs alleged an injunction would be appropriate because "there is no way for them to know when or if Defendants . . . ceased misrepresenting the refresh rates of LG televisions." (*Id.* ¶ 47.) And, arguably, the result of this lawsuit may indirectly lead to changes in LG's and BestBuy.com's marketing related to the 120Hz refresh rate, thereby preventing future lawsuits and creating a public benefit. *See In re Levaquin*, 752 F. Supp. 2d at 1078; *ADT Sec. Servs.*, 2008 WL 2828867, at *8.

Thus, construing the Complaint in the light most favorable to Plaintiffs, Plaintiffs requested injunctive relief and alleged that LG and BestBuy.com fraudulently market televisions to the public.  (Compl. ¶¶ 23-25, 28-29, 47-49, 51, 61.)  The result of this lawsuit may, either directly or indirectly, benefit the public by causing LG and BestBuy.com to redress the allegedly fraudulent marketing.  And, for these reasons, the

- 13 -

Court will deny Defendants' motion to dismiss Counts I and III against LG and BestBuy.com.

### E.    MDTPA

Defendants next contest Plaintiffs' MDTPA claim.   Under the MDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable."  Minn. Stat. § 325D.45, subd. 1.  Because the MDTPA provides relief for "a person likely to be damaged," it only provides injunctive relief "from future damage, not past damage."  *Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020 (D. Minn. 2003).  Thus, to state an MDTPA claim, a plaintiff must both request an injunction and allege "a likelihood of future harm."  *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. 14-869, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014).

Defendants argue that, even if Plaintiffs alleged injunctive relief,[6] Plaintiffs' MDTPA claim fails because Plaintiffs are not entitled to an injunction.   Specifically, Defendants assert Plaintiffs are not "likely to be damaged" because Plaintiffs are aware of Defendants' alleged misconduct and unlikely to be damaged in the future.

On a motion to dismiss, the MDTPA requires Plaintiffs to allege irreparable injury or threat of future harm to Plaintiffs.  *See Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130,

---

[6] Defendants reassert their claim that Plaintiffs failed to ask for injunctive relief.  As set forth above, reading the Complaint in the light most favorable to Plaintiffs, Plaintiffs requested injunctive relief.  (Compl. ¶¶ 47-48, 58.)

1141 (D. Minn. 2016) (dismissing an MDTPA claim where **all** plaintiff's claims were "grounded in past damage").   A pleading can be so deficient that awareness of a fraudulent practice can preclude an inference of future damage.   *See, e.g.*, *Indep. Glass Ass'n, Inc. v. Safelite Grp., Inc.*, No. 05-238, 2005 WL 3079084, at *2 (D. Minn. Nov. 16, 2005) (dismissing MDTPA claim where plaintiff was never deceived by defendant's practices).   But on a motion to dismiss a plaintiff must simply "allege facts sufficient to support a likelihood of future harm."   *Deleski Ins. Agency, Inc. v. Allstate Ins. Co.*, No. 13-1780, 2013 WL 6858573, at *13 (D. Minn. Dec. 30, 2013) (citing *Gardner*, 296 F. Supp. 2d at 1020).

Here, Plaintiffs alleged sufficient facts to survive a motion to dismiss.   Plaintiffs request injunctive and declaratory relief (Compl. ¶¶ 48-49, 61), state that injunctive relief is appropriate because "there is no way for them to know when or if Defendants have ceased misrepresenting the refresh rates of LG televisions" (*id.* ¶ 47), and assert Plaintiffs "are . . . in danger of being harmed again" because "Plaintiffs remain in the market for televisions" (*id.*).   At the motion to dismiss stage, "these allegations provide a proper basis for Plaintiffs' MDTPA claim."   *Masterson Pers., Inc. v. McClatchy Co.*, No. 05-1274, 2005 WL 3132349, at *7 (D. Minn. Nov. 22, 2005); *see also Gardner*, 296 F. Supp. 2d at 1020-21 (distinguishing pleading and proving a "likelihood of future harm").   Thus, the Court will deny Defendants' motion to dismiss Count II as to LG and BestBuy.com.

Plaintiffs alternatively argue that, in spite of caselaw to the contrary, Plaintiffs are not limited to injunctive relief under the MDTPA.   But both this Court and the

Minnesota Court of Appeals have consistently found the sole remedy for violations of the MDTPA is injunctive relief. *See, e.g.*, *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1070 (D. Minn. 2013); *Alsides v. Brown Institute, Ltd.*, 592 N.W.2d 468, 476 (Minn. Ct. App. 1999). The Court applies this precedent and finds Plaintiffs are only entitled to injunctive relief under the MDTPA.

### F.     NJCFA

Defendants next contend Plaintiffs failed to state an NJCFA claim. To state a claim under the NJCFA, N.J. Stat. Ann. § 54:8-1 et seq., a plaintiff must allege sufficient facts to demonstrate: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011).

Defendants argue Plaintiffs failed to allege sufficient facts to demonstrate ascertainable loss. "The plain language of the [NJCFA] unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action." *D'Agostino v. Maldonado*, 216 N.J. 168, 185 (2013). An "ascertainable loss" is "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measureable." *Thiedemann v. Mercedes-Benz U.S.A., LLC*, 183 N.J. 234, 248 (2005). "Put differently, a plaintiff is not required to show monetary loss, but only that he purchased something and received 'less than what was promised.'" *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (quoting *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002)).

"There are at least three recognized theories of ascertainable loss that may apply to a NJCFA claim." *Truglio v. Planet Fitness, Inc.*, 2016 WL 4084030, at *6 (D.N.J. July 28, 2016) (quoting *Hammer v. Vital Pharm., Inc.*, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012)). Reviewing the Complaint, Plaintiffs only allege ascertainable loss under the "loss in value" theory.

The "loss in value" theory "requires that the consumer be misled into buying a product that is ultimately worth less than the product that was promised." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015). To survive a motion to dismiss, "a plaintiff must allege '(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified.'" *Id.* (quoting *Smajlaj*, 782 F. Supp. 2d at 99). "Failure to quantify this difference in value results in the dismissal of a claim." *Smajlaj*, 782 F. Supp. 2d at 99. Here, the Court must determine whether Plaintiffs adequately pled "that the difference in value between the product promised and the one received could be reasonably quantified." *See Mladenov*, 124 F. Supp. 3d at 375.

Plaintiffs pled only that they "suffered an ascertainable loss as a result of Defendants' conduct in that they paid more than the LED television was worth and more than what Defendants would have been able to charge had the true refresh rates been displayed." (Compl. ¶¶ 31, 71, 73.) Nowhere do Plaintiffs allege: (1) the amount

Plaintiffs paid for the television;[7] or (2) the cost of a comparable LG television with a 60Hz refresh rate.  In the absence of this information, the Court has "no basis for valuing the products [Plaintiffs] received as opposed to the products they were promised."  *See Mladenov*, 124 F. Supp. 3d at 375-76 (holding plaintiff failed to plead an ascertainable loss based on the general allegation that plaintiffs "would not have purchased the . . . products . . . or would have purchased alternative products in absence of Defendant's misleading advertisements" because plaintiff supplied "no basis for valuing the products they received as opposed to the products they were promised"); *see also Smajlaj*, 782 F. Supp. 2d at 101-03 (holding plaintiff adequately alleged ascertainable loss under the "loss in value" theory where plaintiffs calculated the value of the allegedly misleading "low sodium" soup from the value of regular "sodium" soup).

Therefore, the Court will grant Defendants' motion to dismiss Count IV against both LG and BestBuy.com without prejudice.

### G.     Unjust Enrichment

Defendants also assert Plaintiffs failed to plead an unjust enrichment claim. Applying Minnesota law, Defendants argue Plaintiffs' unjust enrichment claim must be

---

[7] Defendants also argue Plaintiffs did not suffer an ascertainable loss because Plaintiffs purchased the television at a deep discount.  To support this contention, Defendants submitted evidence outside the Complaint showing the price Plaintiffs paid for the television.  The Court generally must ignore materials outside the pleadings, unless materials "are part of the public record or do not contradict the complaint." *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 859 n.1 (D. Minn. 2012) (quoting *Mo. ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999), *cert. denied*, 527 U.S. 1039 (1999)).  Here, the evidence submitted is not a public record and contradicts the Complaint to the extent it is used to undermine Plaintiffs alleged loss.

dismissed because an unjust enrichment claim "is not available where there is an adequate legal remedy or where statutory standards for recovery are set by the legislature." *United States v. Bame*, 721 F.3d 1025, 1030 (8th Cir. 2013) (quoting *Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992)).

This Court has had numerous occasions to address this issue under Minnesota law. Most recently, this Court addressed the issue in *North Central EMS*, 2016 WL 544472, at *9. There, the Court held it will not dismiss an unjust enrichment claim when a plaintiff states "a plausible alternative claim for unjust enrichment" on a motion to dismiss. *Id.*; *see also In re Levaquin*, 752 F. Supp. 2d at 1081.

Further supporting this conclusion, while the parties agree with the application of Minnesota law for the purpose of the motion to dismiss, it is unclear that Minnesota law will ultimately apply to the state-law claims. The parties have not directly addressed the choice of law issues raised by this case and, on the current record, the Court declines to decide the issue. *Cantonis v. Stryker Corp.*, No. 09-3509, 2011 WL 1084971, at *3 (D. Minn. Mar. 21, 2011) (refusing to engage in a choice of law analysis when the choice of law was not clear from the face of the pleadings and the issue was not appropriately before the court). Thus, dismissing Plaintiffs' unjust enrichment claim under Minnesota law is improper at this stage. The Court will, therefore, deny Defendants' motion to dismiss Count V against LG and BestBuy.com.

### H.      Breach of Express and Implied Warranties

Defendants next argue Plaintiffs failed to plead viable warranty claims. Defendants first argue Plaintiffs failed to provide adequate notice as required under Minnesota law.  To the contrary, the Complaint alleges "Plaintiffs provided notice to Best Buy and LG of this claimed breach of warranty by letter dated April 29, 2016" (Compl. ¶ 88) and, reading this allegation in the light most favorable to Plaintiffs, Plaintiffs pled they provided notice to Defendants prior to filing the lawsuit.

Defendants' second argument postulates that in purchasing the television Plaintiffs agreed to the terms of LG's limited warranty and Best Buy's express disclaimer of any warranty.  The Complaint does not discuss the existence of either a limited warranty or a warranty disclaimer.   (*Id.*  ¶¶ 81-97.)   Thus, Defendants ask the Court to consider materials outside the pleadings to resolve its argument.

When considering a Rule 12(b)(6) motion, the Court generally must ignore materials outside the pleadings, but it may consider "some materials that are part of the public record or do not contradict the complaint." *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 859 n.1 (D. Minn. 2012) (quoting *Mo. ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999), *cert. denied*, 527 U.S. 1039 (1999)). A court may also consider materials that are "necessarily embraced by the pleadings." *Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997).   Here, Defendants argue the Court may consider the limited warranty and warranty disclaimer because they are embraced by the pleadings.

But the Court has only considered a warranty outside the pleadings when the complaint discussed the existence of a written warranty. *See, e.g.*, *Thunander*, 887 F. Supp. 2d at 859 n.1 (noting the complaint quoted the warranty); *Johnsen v. Honeywell Int'l Inc.*, No. 14-594, 2015 WL 631361, at *3 (E.D. Mo. Feb. 12, 2015) (noting the plaintiff referenced the warranty in the complaint).

Where, as here, a complaint did not discuss the existence of a written warranty or warranty waiver, the Court refused to consider the evidence on a Rule 12(b)(6) motion. *See, e.g.*, *Browe*, 2015 WL 3915868, at *3 (noting plaintiff's complaint did not reference the limited warranty); *George v. Uponor Corp.*, 988 F. Supp. 2d 1056, 1072 (D. Minn. 2013) (finding "an express warranty would likely qualify as a document embraced by the pleadings where a plaintiff . . . alleged a breach of a *specific* warranty" (emphasis added)); *Stephens v. Arctic Cat Inc.*, No. 09-2131, 2011 WL 890686, at *3 (E.D. Mo. Mar. 14, 2011) (noting that when a defendant submits a written warranty on a motion to dismiss it is unclear the warranty is "embraced by the pleadings").

In the Complaint, Plaintiffs neither reference the warranty/warranty waiver nor indicate any such written instrument exists. Thus, the Court will not consider the evidence outside the record.

Because Defendants do not assert Plaintiffs failed to allege the elements of breach of express and/or implied warranties, the Court will deny Defendants' motion to dismiss Counts VI and VII as to LG and BestBuy.com.

## I.     Breach of Contract

Defendants finally argue Plaintiffs failed to allege a breach of contract claim.  To plead breach of contract, Plaintiffs must allege "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant."  *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (quoting *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011)).

Beginning with BestBuy.com, the Complaint plainly alleges BestBuy.com offered to sell Plaintiffs a television with a 120Hz refresh rate (Compl. ¶¶ 34-35, 99), Plaintiffs accepted the offer when they purchased the television (*id.* ¶¶ 37, 100), Plaintiffs paid the purchase price for the television and, as such, both paid consideration and performed all conditions precedent under the contract (*id.*), BestBuy.com breached the contract when it failed to deliver a television with a 120Hz refresh rate (*id.* ¶ 101), and BestBuy.com's breach damaged Plaintiffs (*id.* ¶¶ 38, 102).  Therefore, the Court will deny Defendants' motion to dismiss Count VIII as to BestBuy.com.

Next, LG argues the Complaint only alleges Plaintiffs purchased a television from BestBuy.com and, thereby, Plaintiffs failed to allege formation of a contract with LG.[8] In order to plead formation of a contract, Plaintiffs must allege offer, acceptance and

---

[8] LG also argues the only contract that exists between LG and Plaintiffs is the limited warranty submitted to support the motion to dismiss.  For the reasons articulated above, the Court does not consider this evidence because it is not referenced in the Complaint. *Browe*, 2015 WL 3915868, at *3.

consideration. *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. Ct. App. 2006).

Here, Plaintiffs failed to allege formation of a contract with LG. Namely, the Complaint only alleges Plaintiffs purchased a television from BestBuy.com and makes no allegations that LG offered to sell Plaintiffs the television. In this situation, Plaintiffs did not allege sufficient facts to support a breach of contract claim against LG. *See, e.g.*, *Jacobsen Diamond Ctr., LLC v. ADT Sec. Servs., Inc.*, No. 14-1578, 2016 WL 3766236, at *13 (N.J. Super. Ct. App. Div. July 15, 2016) (finding a plaintiff did not allege a breach of contract claim with a manufacturer when plaintiff purchased items from a retailer); *N. Cent. EMS Corp.*, 2016 WL 544472, at *4 (dismissing breach of contract claim under Minnesota law where defendant was not party to a contract). For this reason, the Court will grant Defendants' motion to dismiss Count VIII as to LG with prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant LG Electronics U.S.A., Inc.'s Motion to Dismiss [Docket No. 18] is **GRANTED in part** and **DENIED in part** as follows:

    a.      The motion is **GRANTED** with respect to the New Jersey Consumer Fraud Act [Count IV]. Count IV is **DISMISSED without prejudice**.

    b.      The motion is **GRANTED** with respect to the breach of contract claim [Count VIII]. Count VIII is **DISMISSED with prejudice**.

      c.      The motion is **DENIED** in all other respects.

2.      Defendants Best Buy Co., Best Buy Stores, L.P., and BestBuy.com, LLC's Motion to Dismiss [Docket No. 22] is **GRANTED in part** and **DENIED in part** as follows:

      a.      The motion is **GRANTED** in its entirety with respect to the claims against Best Buy Co., Inc. and Best Buy Stores, L.P.  Best Buy Co., Inc. and Best Buy Stores, L.P. are **DISMISSED without prejudice** from this case.

      b.      The motion is **GRANTED** with respect to the New Jersey Consumer Fraud Act claim [Count IV] against BestBuy.com.   Count IV is **DISMISSED without prejudice**.

      c.      The motion is **DENIED** in all other respects.

DATED:  March 27, 2017
at Minneapolis, Minnesota.

                                s/ John R. Tunheim
                                  JOHN R. TUNHEIM
                                  Chief Judge
                              United States District Court