## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| BENJAMIN HUDOCK, BREANN HUDOCK, and GERALD DELOSS, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 0:16-CV-01220 |
| | ) | **PLAINTIFFS' OPPOSITION TO** |
| Plaintiffs, | ) | **DEFENDANTS' PARTIAL MOTIONS** |
| | ) | **TO DISMISS PLAINTIFFS' FIRST** |
| v. | ) | **AMENDED CLASS ACTION** |
| | ) | **COMPLAINT** |
| LG ELECTRONICS U.S.A., INC.; BEST BUY CO., INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**Table of Contents**

Introduction ................................................................................................................. 1

Procedural History ...................................................................................................... 2

Statement of Facts ....................................................................................................... 3

      I.      Television Refresh Rates. .................................................................... 3

      II.     The Plaintiffs. .................................................................................... 5

      III.    Amendments at Issue. ........................................................................ 6

Argument ..................................................................................................................... 8

      I.      Plaintiffs Have Pled an Ascertainable Loss. ...................................... 8

      II.     Plaintiff DeLoss's Allegations Satisfy the Pleading Requirments of Rule 8(a) ......................................................................................... 17

      III.    The FAC Pleads Plaintiff DeLoss's Fraud-Based Allegations with Sufficient Particularity ................................................................... 19

Conclusion ................................................................................................................. 21

# Table of Authorities

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................ 18

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ......................................................................... 17

*Cannon v. Cherry Hill Toyota, Inc.*,
  161 F. Supp. 2d 362 (D.N.J. 2001) ............................................................... 10

*Cantonis v. Stryker Corp.*,
  No. 09-3509, 2011 WL 1084971 (D. Minn. Mar. 21, 2011) ......................... 18

*Dzielak v. Whirlpool Corp.*,
  26 F. Supp. 3d 304 (D.N.J. 2014) ................................................................. 10

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,
  678 F. 3d 659 (8th Cir. 2012) ....................................................................... 19

*Eberhart v. LG Elecs. USA, Inc.*,
  188 F. Supp. 3d 401 (D.N.J. 2016) ................................................... 10, 13, 14

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007) ......................................................................... 19

*Hamilton v. Palm*,
  621 F.3d 816 (8th Cir. 2010) ........................................................................ 18

*In re Nat'l Hockey League Players' Concussion Injury Litig.*,
  No. MDL 14-2551, 2015 WL 1334027 (D. Minn. Mar. 25, 2015) .............. 19

*Leimer v. State Mut. Life Assur. Co. of Worcester, Mass.*,
  108 F.2d 302 (8th Cir. 1940) ........................................................................ 18

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ............................................................... 13

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ......................................................................... 10

*Mladenov v. Wegmans Food Mkts., Inc.,*
  124 F. Supp. 3d 360 (D.N.J. 2015) ............................................................... 11

*Smajlaj v. Campbell Soup Co.,*
  782 F. Supp. 2d 84 (D.N.J. 2011) .................................................................... 9

*Thiedemann v. Mercedes-Benz U.S.A., LLC,*
  183 N.J. 234 (2005) ....................................................................................... 10

*U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.,*
  441 F. 3d 552 (8th Cir. 2006) ........................................................................ 20

*Union Ink Co., Inc. v. AT&T Corp.,*
  352 N.J. Super. 617 (App. Div. 2002) ........................................................... 10

**Statutes**

Minn. Stat. § 325D.13 .................................................................................... 1, 2
Minn. Stat. § 325D.43 ....................................................................................... 1
Minn. Stat. § 325F.68 ........................................................................................ 1
N.J. Stat. Ann. § 56:8-1 ..................................................................................... 2

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................... 2, 17
Fed. R. Civ. P. 9(b) ........................................................................................... 2

## Introduction

This case challenges LG Electronics, U.S.A., Inc.'s ("LG's") and Best Buy Co., Inc.'s, Best Buy Stores, L.P.'s, and BestBuy.Com., LLC's (collectively, "Best Buy's") practice of representing to consumers that LG televisions have twice the "refresh rate" than they actually have. The refresh rate of a television refers to the number of times a new, unique image appears on the screen each second, *i.e.*, how often the screen image is "refreshed" with a new image to create the illusion of movement. Higher refresh rates provide far less blurring and jerking, and as such, a television's advertised refresh rate is a primary selling point. Traditionally, flat panel LCD televisions were limited to 60Hz, or 60 new images per second. In recent years, some manufacturers have employed new technology to double (120Hz), quadruple (240Hz), and even octuple (480Hz) the refresh rates of their televisions. The technology to increase refresh rates in LCD televisions is expensive and results in higher prices for such TVs.

Because higher refresh rates command higher price points in television sets, Plaintiffs allege that as a direct result of Defendants' false and misleading advertising of refresh rates, they have suffered a loss by: (1) paying more than they would have otherwise paid for their LG televisions or that they would not have purchased the televisions at all had they known the true refresh rate, and (2) paying more than Defendants would have been able to charge in a market with small margins, fierce competition, and near-commodity pricing. Plaintiffs assert claims under Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*; Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*, Minnesota's Unlawful

1

Trade Practices Act, Minn. Stat. § 325D.13; the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*; and claims for breach of express warranty, breach of implied warranty, breach of contract, and unjust enrichment.

Defendants challenge the First Amended Complaint ("FAC") on only two bases: (1) failure to plead an ascertainable loss as required by the New Jersey Consumer Fraud Act, and (2) failure to plead with the requisite sufficiency as required under Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure with respect to Plaintiff DeLoss's claims.[1] For the following reasons, Defendants' Motions should be denied.

## Procedural History

On behalf of the Hudocks, in April 2016, the undersigned sent letters to all Defendants, notifying them of the misrepresentation and breach of warranty. Defendants did nothing to address the problem. On May 9, 2016, the Hudocks filed their class action complaint in the U.S. District Court for the District of Minnesota, alleging violations of Minnesota's consumer protection laws, violations of the New Jersey Consumer Fraud Act ("NJCFA"), unjust enrichment, breach of warranty, and breach of contract. Defendants moved to dismiss.

On March 27, 2017, this Court sustained the complaint with the following exceptions: Plaintiffs were given leave to re-plead (1) the factual bases for suing all the Best Buy entities rather than just BestBuy.com, and (2) the factual bases for alleging an ascertainable loss under the NJCFA. Mem. Op. and Order on Defs.' Mots. to Dismiss

---

[1] The Best Buy Defendants do not join in the portion of LG's motion relating to claims brought by DeLoss because no claims have been asserted against the Best Buy Defendants by Plaintiff DeLoss.

(Mar. 27, 2017) (Doc. 51) (hereinafter "Op."). Plaintiffs filed their amended complaint on May 5, 2017, providing the factual bases sought by the Court and adding Gerald DeLoss as a Plaintiff. First Am. Class Action Compl. (May 5, 2017) (Doc. 60) (hereinafter "FAC"). Best Buy does not challenge the amended factual bases for the Hudocks' inclusion of Best Buy Co., Inc., and Best Buy Stores, L.P., as proper defendants.

## Statement of Facts

### I.    Television Refresh Rates

When watching television, the viewer is exposed to a series of still images displayed in rapid succession, which gives the appearance of motion on the television's display panel. FAC ¶ 46. The number of times the display panel can display a new image per second is measured in Hertz, abbreviated "Hz," and is referred to as the television's refresh rate. FAC ¶ 46. A television's Hz measurement, and the corresponding refresh rate, are industry standard specifications that directly and unquestionably correspond to each other – a television with a 60Hz refresh rate panel displays 60 new images per second; a television with a 120Hz refresh rate panel displays 120 new images per second; and a television with a 240Hz refresh rate panel displays 240 new images per second. FAC ¶ 46. Simply stated, for televisions, refresh rate equals Hz and Hz equals refresh rate. FAC ¶ 46.

The refresh rate(Hz) is a vital specification for televisions because a higher refresh rate(Hz) is the superior and most effective method to combat the inherent issue that plague all liquid crystal display ("LCD") televisions – motion blur or jerking. FAC ¶ 47. Motion blur occurs when the television's refresh rate(Hz) cannot keep up with the images

required for a clear presentation of the broadcast. Televisions with higher refresh rates(Hz) can reduce or eliminate motion blur during fast moving action scenes, sporting events, camera panning, bottom of the screen scrolling, and other instances where a greater number of images are required for a clear and smooth picture. To create a clearer picture, a television must have the ability to capture (or create) the images it is missing. It is somewhat analogous to the shutter speed of a camera – the faster the shutter speed, the more clearly the camera can capture a moving object as a still frame and without motion blur. FAC ¶ 47.  In much the same way, the more often a television can refresh the picture and generate new images, the better and more clearly a television's display panel can present moving objects. FAC ¶ 47.

A significant hurdle to increasing the refresh rates(Hz) for televisions is that electric current runs at 60Hz in the United States. FAC ¶ 48. This means that the natural, or native, refresh rate of a television can be at most 60Hz because only 60 new images per second can be carried by the power source to the television. FAC ¶ 48. To surpass the inherent 60Hz threshold and produce an actual 120 or 240 refresh rate(Hz) television that displays the corresponding number of new images, some manufacturers incorporated expensive interpolation technology which produces additional, unique images per second by means of sophisticated software and hardware. However, some manufacturers, such as LG, have developed alternate methods to artificially enhance the perceived performance of their products without actually increasing the refresh rate to the specified number of unique images per second. FAC ¶ 50. While these different manipulations, such as "backlight scanning," may serve to reduce motion blur somewhat, they are a simpler and

less expensive manufacturing option and far less effective than increasing the refresh rate(Hz) of the display panels. Compared to higher refresh rate(Hz) panels, these enhancement methods are of inferior quality.

## II.    The Plaintiffs

Plaintiffs Breann and Benjamin Hudock are owners of an LG LED 55LN5100 televisions, which they purchased in November, 2013. FAC ¶ 68. In the weeks leading up to their purchase, the Hudock Plaintiffs began shopping for a new television for their home.  The Hudock Plaintiffs understood that a higher refresh rate television would provide a better, clearer image of moving objects on the screen. FAC ¶ 69. The Hudock Plaintiffs decided to search for and purchase a television with a minimum of a 120Hz refresh rate. FAC ¶ 69. Relying on representations on BestBuy.com, Breann Hudock believed that the 55LN5100 had a "120Hz refresh rate" which "[h]elps minimize blurring and ghosting during intense action sequences, so you can enjoy movies, sporting events and games in crystal clarity." FAC ¶ 71. She informed her husband of these specifications, and together, they purchased the television for $499.99 from Best Buy's website. FAC ¶ 73. While the Hudock Plaintiffs made their purchase during a Black Friday promotion for the "on sale" price of $499.99 reduced from the claimed "regular price" of $999.99, the Hudocks allege that their television model was manufactured in limited quantities exclusively and solely for the Black Friday promotion at Best Buy and was never, in fact, available for purchase at the claimed "regular price" of $999.99. FAC ¶ 73.

After purchasing the television, the Hudock Plaintiffs noticed that the television's images were not as clear as expected. FAC ¶ 73. Only later did the Hudock Plaintiffs come to learn that their television's actual refresh rate was 60Hz.  FAC ¶ 73. Had the Hudock Plaintiffs known that the actual refresh rate of the television was 60Hz—not 120Hz as advertised—they would not have purchased the television or, alternatively, would not have been willing to pay as much for it. FAC ¶ 73.

## III.    Amendments at Issue

*Additional Plaintiff Gerald DeLoss*

The undersigned added Gerald DeLoss as a party Plaintiff to this action by virtue of the FAC. The following facts are relevant to Defendants' motion:

9. Plaintiff Gerald DeLoss is a resident of Deerfield, Illinois. Plaintiff DeLoss purchased a 55" LG UF6450 series television from Kohl's.

74. Plaintiff DeLoss purchased a 55" LG LED television, model number 55UF6450.

75. Prior to purchasing this television, Plaintiff DeLoss researched various models and specifications of televisions online. Plaintiff DeLoss understood that a higher refresh rate television would provide a better, clearer image of moving objects on the screen. For this reason, he decided to search for and purchase a television with a minimum of a 120Hz refresh rate.

76. Plaintiff DeLoss reviewed the specifications for the 55UF6450 television model as labeled and represented by LG. LG advertised the refresh rate of this model as 120Hz. Prior to purchasing the television, Plaintiff DeLoss confirmed the purported 120Hz refresh rate online, as well as on the packaging of the television.

77. On January 30, 2016, Plaintiff DeLoss, relying on the 120Hz advertised refresh rate, decided to purchase the 55UF6450 television from Kohl's for $699.99.

78. Only after purchasing the television did Plaintiff DeLoss come to learn that his television's actual refresh rate was 60Hz. Had he known that the actual refresh rate

was 60Hz—not 120Hz as advertised—he would not have purchased the television or, alternatively, would not have been willing to pay as much for it. Plaintiff was promised a 120Hz television, but he received a 60Hz television worth approximately 15-20% less (approximately $105 to 140) than what he was promised.

*Ascertainable Loss*

With regard to pleading ascertainable loss, Plaintiffs *deleted* the following sentence that appeared in original complaint: "Higher refresh rates command higher prices. Several methodologies are available to calculate the incremental value of refresh rates on televisions, including conjoint and hedonic regression analyses, through which a qualified expert can calculate specific premiums attributable to such refresh rates." Compl. at ¶ 31.

To address the shortcomings identified in this Court's order, Plaintiffs added the following averments in the FAC regarding ascertainable loss:

62. All other features being equal, televisions with higher refresh rates have more objective value and command a price premium compared to televisions with lower refresh rates. The price premium associated with higher refresh rates occurs across brands and product lines and can be applied with particularity to LG's LED televisions, including Plaintiffs' television models.

63. Televisions with higher refresh rate capabilities consistently command a quantifiable, 15-20% higher Manufacturer's Suggested Retail Price ("MSRP") and actual sales prices than television models with lower refresh rates.

64. Defendants have in their possession all significant and relevant MSRP data, sales data, or both, from which an expert can perform a hedonic regression analysis to isolate the exact value associated with each constituent characteristic of LG's LED televisions, including the refresh rate.

65. In addition to sales data, LG has in its possession the manufacturing cost data of its televisions which will show the input cost difference between higher and lower refresh rate televisions which inevitably translates to a respective retail price differential.

66. Even in the absence of these multiple sources of relevant data, an expert can conduct a conjoint analysis, involving a scientific survey measuring consumer preferences, which can isolate and quantify the premium attributable to refresh rates reflected in retail pricing.

67. Plaintiffs approximate their losses at 15-20% of their purchase price. In addition, given the universal price difference between higher and lower refresh rate televisions, the data in possession of Defendants and the methodologies available for expert analysis, Plaintiffs will be able to provide a detailed quantification of damages both for the class and for themselves during the appropriate stage of litigation.

73. [Plaintiffs purchased their television] for $499.99. While the Hudock Plaintiffs made their purchase during a Black Friday promotion for the "on sale" price of $499.99 reduced from the claimed "regular price" of $999.99, upon information and belief, Plaintiffs' television model was manufactured in limited quantities exclusively and solely for the Black Friday promotion at Best Buy and was never, in fact, available for purchase at the claimed "regular price" of $999.99. … Plaintiffs were promised a 120Hz television but received a 60Hz television valued approximately 15-20% less (approximately $75 to $100) than what they were promised.

78. Only after purchasing the television did Plaintiff DeLoss come to learn that his television's actual refresh rate was 60Hz. Had he known that the actual refresh rate was 60Hz—not 120Hz as advertised—he would not have purchased the television or, alternatively, would not have been willing to pay as much for it. Plaintiff was promised a 120Hz television, but he received a 60Hz television worth approximately 15-20% less (approximately $105 to 140) than what he was promised.

113. Defendants' conduct caused Plaintiffs and members of the Class and Subclass to suffer an ascertainable loss by receiving less than what was promised, as discussed supra in Paragraphs 61-67, 73, and 78.

## Argument

### I.   Plaintiffs Have Pled an Ascertainable Loss.

Plaintiffs have cured any deficiency with regard to pleading ascertainable loss under the New Jersey Consumer Fraud Statute. Defendants disagree, arguing that: (1)

Plaintiffs have not pled the cost of a comparable 60Hz television that was available on the dates of their purchases, and (2) the Hudocks cannot have an ascertainable loss because they purchased their television "at a deep discount." However, neither of these reasons can support the motion to dismiss Plaintiffs' NJCFA claims.

Plaintiffs have each suffered an ascertainable loss as a result of Defendants' conduct in that they paid more than their respective LED televisions were worth and more than what Defendants would have been able to charge had the true refresh rates been displayed. FAC ¶¶ 61-67.  Like screen size and resolution, refresh rate is one of the top selling points for LED televisions, and is thus a material term of the products' sales display. Defendants' own marketing and in-store and digital placards prominently and intentionally feature the refresh rate, stated in "Hz." FAC ¶ 61. All other features being equal, televisions with higher refresh rates have more objective value and command a price premium compared to televisions with lower refresh rates. FAC ¶ 62.

Under the NJCFA, damages are available under a benefit-of-the-bargain theory. *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011). "Misrepresenting a product in order to get a consumer to purchase it does cause an injury, and what New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the difference in value between the promised product and the actual product received." *Id.* This requires proving only "that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised." *Id.* Importantly, there are "two options by which [plaintiffs] could adequately plead ascertainable loss:

price comparison *or* a method for quantifying loss." *Eberhart v. LG Elecs. USA, Inc.*, 188

F. Supp. 3d 401, 407 (D.N.J. 2016) (emphasis in original).

> As this Court noted in ordering on Defendants' initial motions to dismiss:
>
> An "ascertainable loss" is "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measureable." *Thiedemann v. Mercedes-Benz U.S.A., LLC*, 183 N.J. 234, 248 (2005). "Put differently, a plaintiff is not required to show monetary loss, but only that he purchased something and received 'less than what was promised.'" *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (quoting *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002)).

Op. at 16. In *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 335-36 (D.N.J. 2014), the

court clarified, "[t]he [complaint] alleges facts that would allow the Court to quantify a

difference in value and even suggests a means to calculate loss . . . [t]he precise amount

of loss need not be known; it need only be measurable. Rule 9(b) does not require that a

plaintiff allege a specific dollar amount to survive the pleadings stage." (citations

omitted). Contrary to Defendants' contentions, Plaintiffs do not need to demonstrate the

amount of ascertainable loss to a reasonable degree of certainty at the motion to dismiss

stage. LG's Def. Br. to Dismiss, at 9 (Doc. 67) (June 5, 2017) (hereinafter, "Def. Br.")

(citing *Cannon v. Cherry Hill Toyota, Inc.*, 161 F. Supp. 2d 362, 374 (D.N.J. 2001), an

order granting summary judgment, not a motion to dismiss, and discussing what a

plaintiff must prove, not plead).

In the FAC, Plaintiffs clearly plead ascertainable loss both using the price

comparison approach and by articulating accepted methodologies that are available in

this case. First, Plaintiffs allege that televisions with higher refresh rate capabilities

consistently command a quantifiable, 15-20% higher Manufacturer's Suggested Retail

Price ("MSRP") and actual sales prices than television models with lower refresh rates. FAC ¶ 63. Plaintiffs expressly state that the price premium associated with higher refresh rates *occurs across brands and product lines and can be applied with particularity to LG's LED televisions, including Plaintiffs' television models*. FAC ¶ 62. This information, coupled with the price each Plaintiff paid for their television, provides a basis by which the loss "could be reasonably quantified" such that Plaintiffs have satisfied the ascertainable loss requirement of the NJCFA. *See Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 375 (D.N.J. 2015).

Plaintiffs go on to plead three different methods under which the loss can and will be quantified after discovery commences. First, with MSRP data, sales data, or both, currently in Defendants' possession, an expert can perform a hedonic regression analysis to isolate the exact value associated with each constituent characteristic of LG's LED televisions, including the refresh rate. FAC ¶ 64. Second, LG has in its possession the manufacturing cost data of its televisions which will show the input cost difference between higher and lower refresh rate televisions which inevitably translates to a respective retail price differential. *Id.* ¶ 65. Finally, even in the absence of these multiple sources of relevant data, an expert can conduct a conjoint analysis involving a scientific survey measuring consumer preferences, which will isolate and quantify the premium attributable to refresh rates reflected in retail pricing. *Id.* ¶ 66. Plaintiffs have met their burden in pleading an ascertainable loss at this stage of the litigation.

As Defendants note, this Court previously held that the Hudock Plaintiffs failed to plead: "(1) the amount [they] paid for the television; *or* (2) the cost of a comparable LG

television with a 60Hz refresh rate." Op. at 17-18 (emphasis added). The Hudocks have stated the amount they paid for the television, $499.99. FAC ¶ 73. Plaintiff DeLoss's purchase price was $699.99. *Id.* ¶ 77. Plaintiffs have stated that the price differential between their televisions and comparable televisions with half the refresh rate is 15-20%. *Id.* ¶¶ 63, 73, 77. For the Hudocks, this loss amounts to a $75-$100 ascertainable loss. *Id.* ¶ 73. Plaintiff DeLoss experienced a $105-$140 ascertainable loss. *Id.* ¶ 78. This satisfies the "price comparison" approach. Plaintiffs do not need to provide any additional information at this stage of the litigation to satisfy the ascertainable loss requirement. However, as detailed above, Plaintiffs also adequately plead three additional methods for quantifying loss, using a permissible, alternative approach.

Defendants argue that Plaintiffs' price comparisons resulting in the 15-20% ascertainable loss do not count, not because they do not meet the ascertainable loss requirements, but because they amount to "speculation" and an "unfounded assertion." But Defendants do not point to a single authority permitting a court to dismiss clearly stated factual allegations in a complaint merely because the defendants believe they are not true. Defendants attempt to paper over their precedential shortcomings by arguing that the percentages do not correspond to comparable televisions, but this, too was clearly alleged: "the price premium associated with higher refresh rates occurs across brands and product lines and can be applied with particularity to LG's LED televisions, including Plaintiffs' television models." FAC ¶ 62. Plaintiffs did not pull these numbers out of thin air and are eager to conduct discovery to prove their validity through expert testimony.

12

Defendants do cite *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529 (D.N.J. 2011), for the proposition that stating a specific percentage of the price premium is insufficient. However, Defendant leaves out half of the court's analysis. Plaintiffs in *Lieberson* failed to allege both the price of the products at issue generally *and* the price which she actually paid for them, thus leaving the court with no conception of the amount of loss. *Lieberson*, 865 F. Supp. 2d at 541-42. Here, Plaintiffs have stated their purchase price and the premium differential percentage, resulting in a quickly calculable ascertainable loss ($75-$100 for the Hudocks, $105-$140 for Mr. DeLoss).

*Eberhart* is similarly distinguishable. In *Eberhart*, the court found that the proposed calculation of ascertainable loss would result in a zero or nominal loss. Under the court's understanding, the plaintiff was proposing a price comparison between televisions whose actual refresh rate is equal: for example, comparing 120Hz LG televisions with falsely advertised refresh rates of TruMotion 120. This would be incorrect, the court observed, because one would expect two comparable televisions advertising the same refresh rate to have comparable prices, resulting in "a zero or nominal loss." *Id.* at 407. By contrast, Plaintiffs' price comparison formula in the FAC is based on (1) the price Plaintiffs paid for their televisions, and (2) sales and MSRP of comparable televisions with advertised *lower* refresh rates. Plaintiffs' 15-20% premium estimate is based on data publicly available and is easily refined by expert calculation.[2]

---

[2] On June 13, 2017, the Court gave the parties until Labor Day 2017 to engage in mediation. (Doc. 76 at 3). During that time, Plaintiffs conducted further research into their ability to demonstrate ascertainable loss through the alternative "price comparison" approach. While a hedonic regression model, performed at the appropriate stage of

Relatedly, Defendants again erroneously assert that because the Hudocks allegedly purchased their television at a "deep discount" they could not possibly have suffered a loss. First, Defendants fail to cite a single case for the proposition that ascertainable loss cannot be established if the plaintiff purchased the item on sale or at a discount off the retail price. Second, as briefed previously, this argument is nonsensical. The Hudock Plaintiffs were never in the market for a 60Hz refresh rate television. FAC ¶ 69. Had Defendants' marketing been accurate and truthful, the Hudocks would not have selected the television they ultimately purchased. FAC ¶ 73.

---

litigation would be able to account for TV feature variables and isolate the premium associated with increased refresh rates, Plaintiffs were also able to locate two LG models that appear identical in every respect except for refresh rates: models 60UH7700 ("7700") and 60UH7650 ("7650").

As the similarity in their model numbers might suggest, these two models are nearly identical. In fact, of the forty-five technological features and specifications listed in the spec sheets, these models are indistinguishable in forty-four of the items listed. The only discernible difference between these models is the refresh rate – the 7700 model was marketed as TruMotion 240Hz and the 7650 was marketed as TruMotion 120Hz.

Given the only difference between these two models is the refresh rate(Hz), any difference in retail price can be legitimately attributed to the difference in that feature. The lower refresh rate(Hz) television (7650 model) retailed for $998.00 and the higher refresh rate(Hz) television (7700 model) retailed for $1,196.99. The reasonable and justifiable judgment is the higher refresh rate(Hz) feature translates to a 20% price premium ($198.99 in this instance) for LG's televisions. Given the advanced technology required to achieve a higher refresh rate(Hz), this conclusion is rational and expected.

As otherwise pleaded in the FAC, this price premium is repeated across comparable models and brands, and is applicable to Plaintiffs' televisions as well. Plaintiffs understand that facts concerning the 7650 and 7700 are not currently in the FAC. However, should the Court determine that Plaintiffs' four methods for determining the premium paid are insufficient, the Court is well within its discretion to permit Plaintiffs to amend the FAC accordingly. *See Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401 (D.N.J. 2016) (permitting second amendment to address ascertainable loss a third time "[b]ecause Plaintiff could reasonably plead sufficient facts to survive a motion to dismiss").

Moreover, even if the television at issue was indeed, "deeply discounted" (which Plaintiffs dispute), the Hudocks still did not receive a feature that was promised, and so they were damaged. Despite a "sale," $500 is still a lot of money to part with, and the Hudocks carefully considered what they were getting for their money, including a 120Hz refresh rate. Tellingly, Defendants have not put forth any evidence that the same model with a 60Hz refresh rate would have sold for the same price. To the contrary, a portion of the sales price can still be attributed to the advertised 120Hz refresh rate which an expert will easily be able to isolate and quantify using the aforementioned analytical tools. The Hudocks themselves have pled that they would not have parted with $500 for the same TV with a 60Hz refresh rate. To find otherwise would allow advertisers to offer the moon for a "discount," secure thousands of transactions, then argue in court that the "discount" applies to their false statements rather than to consumer incentives and competitive realities. That is not what the NJCFA's ascertainable loss factor intends to accomplish.[3]

Even if Defendants' "discount" argument were relevant, there will be a fact inquiry as to the existence or amount of the alleged discount, and now is not the time to address disputes of fact. Counsel for Defendants repeatedly represented—at oral

---

[3] Defendants bizarrely argue that the Hudocks have no ascertainable loss, using Mr. DeLoss's model and price as a comparison. Def. Br. at 11-12. This is obviously a fatally flawed comparison because Defendants make absolutely no effort to account for the variations in features between Mr. DeLoss's model and the Hudocks' TV that would relate to prices. Defendants appear to make this argument for the sole purpose of losing it, and instead to make a larger point, *i.e.*, that they "cannot be lumped together on a class-wide basis." Def. Br. at 12 n.4. But the differences in features relate solely to price and losses (differences which an expert can use a regression model to account for), not to liability for misrepresenting the refresh rates as twice what they are, which is common among all relevant models. Either way, the different features of the televisions do not create predominant individual issues for liability or damages.

argument and in a letter to Plaintiffs' counsel—that Best Buy offered and sold LG 55LN5100 televisions at $999.99 before and after Black Friday 2013. However, that claim is suspect in light of Plaintiffs' investigation.

Plaintiffs have been unable to verify that the 55LN5100 was ever offered for sale at $999.99. For instance, on the day *before* the sale as revealed by publicly available website archives, although the website listed the price as $999.99, there was no option to "Add to Cart" for that model, as was the case with other models, but instead there was a greyed-out box labeled "Coming Soon." (January 26, 2017, letter from David Cialkowski to Mitchell Zamoff and webpage exhibits on file with Plaintiffs' counsel). It appears from the archive report, therefore, that the day before the sale, Best Buy was not making the product available for $999.99 (or for any price for that matter).

Furthermore, three days *after* the sale, the archive report for Best Buy's website shows the "New!" product listed at $999.99, but, again, there was no option to "Add to Cart." Instead, the button was greyed out, this time carrying the label "Sold Out Online." *Id.* Plaintiffs' counsel could not find an archived report where the 55LN5100 was offered for sale, *i.e.*, where consumers were invited to "Add to Cart," at the $999.99 price point. In addition, various sources contemporaneously reported that the 55LN5100 was sold exclusively at Best Buy, that it was *not* sold prior to Black Friday 2013, and that it was a *dialed-down* version of the LG 55LN5200 (which retailed for $700—$300 *less* than what Defendants claim the inferior 55LN5100 retailed for). LG's own packaging for Hudock's model reinforces the conclusion that this product was never intended to be sold at another time of the year (before or after). *See* Doc. 41 at 10 (product box picturing television

16

depicting a child opening a Christmas present with Christmas-themed ribbons and packages surrounding the image of the television).

The undersigned addressed these concerns to Defendants' counsel on January 26, 2017, and requested *documentation* of the retail sales of the 55LN5100 at the claimed regular price of $999.99. Counsel for Defendants provided no documentation of any such sales, and merely provided a statement that such sales occurred. Thus, Defendants' letter was unresponsive and failed to establish any discount with actual evidence. While Defendants' counsel's statements may ultimately prove true, all the evidence *actually available* to Plaintiffs reasonably suggests the opposite.

These maneuvers underscore the reasons why "facts" outside the pleadings are not to be considered at the motion to dismiss stage. Defendants seek dismissal based on a theory requiring proof of a certain set of facts—facts they would like to give traction to through lawyer statements, but which they continue to withhold any documentation of.

## II.  Plaintiff DeLoss's Allegations Satisfy the Pleading Requirements of Rule 8(a).

Defendant LG asserts that DeLoss has failed to meet the "short and plain statement" standard required by Fed. R. Civ. P. Rule 8(a). It is axiomatic that

> Rule 8 does not… require a plaintiff to plead specific facts explaining precisely how the defendant's conduct was unlawful. Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests, and allow the court to draw the reasonable inference that the plaintiff is entitled to relief.

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (internal citations and quotations omitted).

17

To survive a motion to dismiss, a complaint must contain sufficient factual matter, that, when accepted as true, states a claim for relief that is plausible on its face. *See, e.g.*, *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). All doubts are to be resolved in favor of the complaint's sufficiency. *Leimer v. State Mut. Life Assur. Co. of Worcester, Mass.*, 108 F.2d 302, 304 (8th Cir. 1940); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, n.8 (2007) (citing *Leimer, inter alia*: "these cases stand for the unobjectionable proposition that, when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

Defendant alleges that DeLoss has provided insufficient factual content to allow LG to identify the common law claims asserted against it, and "whether and to what extent it has choice of law arguments to present the Court regarding the applicability of, or conflict between, various state law causes of action." Def. Br. at 18. Defendant cites no persuasive authority for the proposition that a choice of law analysis must be evident on the face of the complaint, and this Court has otherwise already decided to reserve such an analysis for later stages of litigation. Op. at 3 n.2, 19 (citing *Cantonis v. Stryker Corp.*, No. 09-3509, 2011 WL 1084971, at *3 (D. Minn. Mar. 21, 2011) as "refusing to engage in a choice of law analysis when the choice of law was not clear from the face of the pleadings and the issue was not appropriately before the court.").

The factual allegations and claims contained within the First Amended Complaint are more than sufficient to provide LG with notice of the claims asserted against it. DeLoss states that he resides in Deerfield, Illinois. FAC ¶ 9. He alleges the precise date

he purchased his television. FAC ¶ 77. He alleges the exact model number and price of the television he purchased. FAC ¶ 77. He alleges that he viewed LG's television advertisements and specifications online. FAC ¶¶ 75-76. DeLoss then goes on to describe the representations that he relied on were false, and the approximate amount by which he believes he overpaid ($105-$140). FAC ¶ 78. Reading the complaint in its entirety, these allegations more than apprise LG of the claims asserted against it. Based on the foregoing, DeLoss has satisfied the 8(a), "short and plain statement" standard required of pleadings.

## III.   The FAC Pleads Plaintiff DeLoss's Fraud-Based Allegations with Sufficient Particularity.

Rule 9(b) requires plaintiffs to include "factual allegations explaining the who, what, when, where and how [the defendants'] conduct amounted to false, deceptive, or misleading conduct." *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F. 3d 659, 666 (8th Cir. 2012). "The level of particularity required depends on the nature of a case." *Id.* at 663. "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud *or otherwise inject precision or some measure of substantiation* into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (emphasis added). "In determining whether allegations of fraud are sufficiently pled, the Court should consider the complaint as a whole." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, No. MDL 14-2551, 2015 WL 1334027, at *8 (D. Minn. Mar. 25, 2015).

This standard is met in this case. As discussed above, LG is clearly on notice of the advertisements of refresh rates contained on its product packaging for the 55UF6450 model LED TV, purchased on January 30, 2016. DeLoss has provided the price he paid for the television, in addition to the amount by which he believes he overpaid for his television. The First Amended Complaint as a whole goes into great detail as to why the refresh rate was falsely advertised, why refresh rates are important to consumers, and why the false and misleading advertising caused DeLoss to overpay for the television. It also alleges that LG is responsible for the public misrepresentations by printing them on their product specifications and labeling, resulting in retailers repeating the misrepresentations. Given LG's ubiquitous online presence, the fact that DeLoss has failed to differentiate between different sources of online information is immaterial. This is particularly true because the representations contained on the television's product specifications, labeling, and packaging, as alleged, are sufficient to form the basis of DeLoss's fraud based claims even without the specific online representations.

In the event this Court finds DeLoss's allegations insufficient, Plaintiff requests leave to amend the Complaint. It is black-letter law that leave to amend should be freely granted absent undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the opposing party. *See, e.g.*, *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F. 3d 552, 557-58 (8th Cir. 2006). The facts alleged by Defendant to be necessary but missing may be easily incorporated into an amended complaint, including the facts that DeLoss reviewed materials relative to the purchase of his television on websites including, but not limited to, www.kohls.com and www.lg.com;

20

DeLoss purchased the television from his home in Illinois on the website www.kohls.com; DeLoss used his television at his home in Illinois; and DeLoss experienced motion blur and picture quality issues with his television, which were particularly noticeable while watching sporting events like ice hockey. As such, leave to amend would be appropriate under the circumstances.

**Conclusion**

Based on the foregoing points and authorities, Plaintiffs respectfully request that this Court DENY Defendants' partial motions to dismiss in their entirety.

Respectfully submitted,

Dated: September 18, 2017

s/ David M. Cialkowski
David M. Cialkowski (MN Lic. #0306526)
Alyssa J. Leary (MN Lic. #0397552)
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 S. 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
david.cialkowski@zimmreed.com
alyssa.leary@zimmreed.com

Daniel C. Hedlund (MN Lic. #258337)
Joseph C. Bourne (MN Lic. #0389922)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
jbourne@gustafsongluek.com

Luke P. Hudock (WI Lic. #1086264)
**HUDOCK LAW GROUP, S.C.**
P.O. Box 83
Muskego, WI 53150

Telephone: (414) 526-4906
lphudock@law-hlg.com

*Attorneys for Plaintiffs*