## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BENJAMIN HUDOCK, BREANN
HUDOCK, and GERALD DELOSS,

*individually and on behalf of all others similarly situated,*

Plaintiffs,

v.

LG ELECTRONICS U.S.A., INC., BEST
BUY CO., INC., BEST BUY STORES,
L.P., and BESTBUY.COM, LLC,

Defendants.

Civil No. 16-1220 (JRT/FLN)

**MEMORANDUM OPINION
AND ORDER DENYING
DEFENDANTS' PARTIAL MOTIONS
TO DISMISS**

David M. Cialkowski and Alyssa Leary, **ZIMMERMAN REED, PLLP**, 1100 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402; Daniel C. Hedlund, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; and Luke Hudock, **HUDOCK LAW GROUP, S.C.**, P.O. Box 83, Muskego, WI 53150, for plaintiffs.

Phoebe Anne Wilkinson, **HOGAN LOVELLS US LLP**, 875 Third Avenue, New York, NY 10022; and Peter H. Walsh, **HOGAN LOVELLS US LLP**, 80 South Eighth Street, Suite 1225, Minneapolis, MN 55402, for defendants.

This case arises from Plaintiffs Benjamin and Breann Hudock's and Gerald DeLoss's respective purchases of televisions purporting to have a 120Hz refresh rate. Plaintiffs allege that the televisions, in fact, have a 60Hz refresh rate. Plaintiffs filed this purported class action against LG Electronics U.S.A., Inc. ("LG") and Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC (collectively "Best Buy"). Plaintiffs

allege violations of Minnesota and New Jersey consumer-fraud statutes, as well as a number of common-law claims.

In July 2016, LG and Best Buy filed motions to dismiss the Complaint, in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). On March 27, 2017, the Court granted Defendants' motion in part. Relevant here, the Court dismissed without prejudice the Hudocks' claim under the New Jersey Consumer Fraud Act ("NJCFA"). The Complaint was amended. Defendants renew their motion to dismiss the NJCFA claim, and LG also moves to dismiss all the claims of newly added Plaintiff Gerald DeLoss. For the reasons set forth below, the Court will deny Defendants' renewed motion to dismiss.

## BACKGROUND[1]

In deciding the Defendants' first motion to dismiss, the Court dismissed the Hudocks' NJCFA claim without prejudice because nowhere in the original Complaint did they "allege: (1) the amount . . . paid for the television; or (2) the cost of a comparable LG television with a 60Hz refresh rate. In the absence of this information, the Court "ha[d] 'no basis for valuing the products [the Hudocks] received as opposed to the products they were promised.'" *Hudock v. LG Elecs. U.S.A., Inc.*, No 16-1220, 2017 WL 1157098, at *7 (D. Minn. Mar. 27, 2017) (quoting *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 376 (D.N.J. 2015)) (second alteration in original).

---

[1] The Court described the relevant factual background in its March 2017 Order. *Hudock v. LG Elecs. U.S.A., Inc.*, No 16-1220, 2017 WL 1157098, at *1 (D. Minn. Mar. 27, 2017).

In the Amended Complaint, the Hudocks state that they paid $499.99 for their LG television, and the newly added Plaintiff, Gerald DeLoss, states that he paid $699.99 for his. (Am. Compl. ¶¶ 73, 77, May 5, 2017, Docket No. 60.) Plaintiffs also include in the Amended Complaint allegations related to the cost of a comparable LG television with a 60Hz refresh rate. They allege that "higher refresh rates are directly, demonstrably and mathematically linked to higher prices"; that "televisions with higher refresh rates have more objective value and command a price premium"; that "[t]elevisions with higher refresh rate capabilities consistently command a quantifiable, 15-20% higher Manufacturer's Suggested Retail Price ("MSRP")"; that Defendants are in possession of the relevant MSRP data, sales data, and manufacturing-cost data; that "an expert can perform a hedonic regression analysis to isolate the exact value associated with . . . the refresh rate"; and that "an expert can conduct a conjoint analysis, involving a scientific survey measuring consumer preferences, which can isolate and quantify the premium attributable to refresh rates in retail pricing." (*Id.* ¶¶ 4, 62-67.) "Plaintiffs approximate their losses at 15-20% of their purchase price," and they allege that they "will be able to provide a detailed quantification of damages both for the class and for themselves during the appropriate stage of litigation." (*Id.* ¶ 67.) Plaintiffs do not allege the specific retail price of comparable televisions with 120Hz refresh rates available for purchase at the time that Plaintiffs purchased their televisions.

The Amended Complaint also adds a second Plaintiff: Gerald DeLoss, an Illinois resident, who purchased a 55" LG 55UF6450 television – a different model from the one that the Hudocks purchased. (*Id.* ¶¶ 9, 74-78.) DeLoss alleges that he too was misled

-3-

into buying a television that he thought had a 120Hz refresh rate, but that actually had a 60Hz refresh rate. (*Id.*)

Defendants ask the Court to dismiss Plaintiffs' NJCFA claim with prejudice under Rule 12(b)(6) for failure to state a claim, arguing that the Plaintiffs have failed to plead an ascertainable loss under the loss-in-value theory. Defendants also ask the Court to dismiss all claims of newly added Plaintiff DeLoss under Rules 8(a) and 9(b). Because Plaintiffs plausibly plead a method of ascertaining damages using expert testimony and analysis, and because DeLoss's claims comply with Rules 8(a) and 9(b), the Court will deny Defendants' motions.

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, the Court views a complaint in "the light most favorable to the nonmoving party." *Longaker v. Bos. Sci. Corp.*, 872 F. Supp. 2d 816, 819 (D. Minn. 2012). The Court considers all facts alleged in the complaint as true to determine whether the complaint states a "'claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility[,]'" and therefore must be dismissed.

*Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Therefore, to survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## II. PLAINTIFFS' NJCFA CLAIM

### A. The NJCFA Pleading Standard

To state a claim under the NJCFA, N.J. Stat. Ann. § 56 ch. 8, a plaintiff must allege sufficient facts to demonstrate: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011).

Defendants argue that Plaintiffs fail to allege sufficient facts to demonstrate ascertainable loss. "[T]he plain language of the [NJCFA] unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action." *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013) (quoting *Weinberg v. Sprint Corp.*, 173 N.J. 233, 251 (2002)). An "ascertainable loss" is "either an out-of-pocket loss or a demonstration of loss in value that is quantifiable or measureable." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005). "Put differently, a plaintiff is not required to show monetary loss, but only that he purchased something and received 'less than what was

promised.'" *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (quoting *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361, 379 (N.J Super. Ct. App. Div. 2002)).

"There are at least three recognized theories of ascertainable loss that may apply to a NJCFA claim." *Truglio v. Planet Fitness, Inc.*, No. 15-7959, 2016 WL 4084030, at *6 (D.N.J. July 28, 2016) (quoting *Hammer v. Vital Pharm., Inc.*, No. 11-4124, 2012 WL 1018842, at *8 (D.N.J. Mar. 26, 2012)). Plaintiffs allege ascertainable loss under only the "loss-in-value" theory, sometimes called the "benefit-of-the-bargain" theory. *See Mladenov*, 124 F. Supp. 3d at 375.

The loss-in-value theory "requires that the consumer be misled into buying a product that is ultimately worth less than the product that was promised." *Id.* To survive a motion to dismiss, a plaintiff must allege "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified." *Smajlaj*, 782 F. Supp. 2d at 99. "Failure to quantify this difference in value results in the dismissal of a claim." *Id.* at 100-01.

Plaintiffs argue that they sufficiently plead an ascertainable loss in two independent ways: (1) using price differences, and (2) using expert testimony and analysis. Plaintiffs **do not** plausibly allege ascertainable loss using price differences, but they **do** plausibly allege ascertainable loss using expert testimony and analysis.

### B.   Ascertainable Loss Using Price Differences

The Amended Complaint lacks price information about televisions with 120Hz refresh rates that are comparable to the televisions that Plaintiffs purchased. Instead, the

Amended Complaint alleges that 120Hz televisions "are directly, demonstrably and mathematically linked to higher prices"; that they "have more objective value and command a price premium"; and that they "command a quantifiable, 15-20% higher [price]" than their 60Hz counterparts. (Am. Compl. ¶¶ 4, 62-63.) But Plaintiffs do not allege that the asserted 15-20% price difference corresponds to the price of any existing (or then-existing), comparable 60Hz televisions available for sale. And Plaintiffs fail to identify either comparable 60Hz televisions available to them for purchase on the dates in question or the prices for such comparable televisions. Absent the necessary data, Plaintiffs' allegation that their loss corresponds to a 15-20% price difference is an unsupported conclusory statement and is insufficient to plead ascertainable loss using price differences. *See Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 54-421 (D.N.J. 2011) (concluding that an allegation that comparable products "cost at least twenty-five (25%) less" is insufficient without identifying the cost of allegedly comparable products).[2]

---

[2] Plaintiffs have not alleged that the necessary data are "peculiarly in the possession of the defendant," which could justify a relaxation of the pleading standard here. *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 440 (8th Cir. 2013). Nor is the Court confident that the Plaintiffs could make such an allegation. Plaintiffs state in their opposition that their "15-20% premium estimate is based on data publicly available." (Pls.' Mem. in Opp. at 17, Sept. 18, 2017, Docket No. 80.) Moreover, Plaintiffs acknowledge that they have used internet-archiving tools for other aspects of this case. (*Id.* at 17-21.) Clearly Plaintiffs have access to some public data but chose to omit them from the Amended Complaint.

## C. Ascertainable Loss Using Expert Testimony and Analysis

But Plaintiffs do plausibly plead ascertainable loss using expert testimony and analysis. In *Dzielak v. Whirlpool Corp.*, the court found plausible the plaintiff's allegation that a price premium "can be reasonably quantified by an appropriate market study of the prices for comparable [products] sold with and without the [feature at issue], or through a contingent variation study, or through other means regularly employed by economic and valuation experts." 26 F. Supp. 3d 304, 335-36 & n.23 (D.N.J. 2014). The court held that "[t]he precise amount of loss need not be known; it need only be measureable." *Id.* at 336.

Here, Plaintiffs allege two plausible methods for quantifying their loss.[3] First, they allege that "an expert can perform a hedonic regression analysis" using sales data "to isolate the exact value associated with . . . the refresh rate." (Am. Compl. ¶ 64.) Second, they allege that "an expert can conduct a conjoint analysis" to measure "consumer preferences, which can isolate and quantify" the portion of the retail price "attributable to refresh rates." (*Id.* ¶ 66.) Consistent with *Dzielak*, these are two valid methods for

---

[3] While two of Plaintiffs' alleged methods of proving ascertainable loss are sufficient at the pleading stage, at the class-certification stage, Plaintiffs may encounter difficulty using expert testimony and analysis to show that the class's NJCFA claim "can be proven by 'evidence that is common to the class rather than individual to its members.'" *Harnish v. Widener Univ. Sch. of Law*, No. 12-00608, 2015 WL 4064647, at *6 (D.N.J. July 1, 2015) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)), *aff'd*, 833 F.3d 298 (3d Cir. 2016).

pleading ascertainable loss.[4]  26 F. Supp. 3d at 335-336 & n.23.  The Court will therefore deny Defendants' motion to dismiss Plaintiffs' NJCFA claim.[5]

## III. PLAINTIFF DELOSS'S CLAIMS

### A. DeLoss's Fraud-Based Claims

LG asserts that Plaintiff DeLoss fails to plead his fraud-based claims with the particularity required by Rule 9(b).  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The rule requires a plaintiff to "identify who, what, where, when, and how." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (quoting *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009)).  It must "specify[] the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  *Id.*

---

[4] A different method that Plaintiffs allege – that cost information "inevitably translates" into retail-pricing differences (Am. Compl. ¶ 65) – is implausible.  Just because a manufacturer might have to pay more to produce a good with a particular feature does not mean that consumers are willing to pay more for that feature – much less that consumers' additional willingness to pay correlates in a quantifiable way to the manufacturer's costs.  Accordingly, it is illogical to assume that LG's costs of making a television with a 120Hz refresh rate, versus a 60Hz one, means that consumers will value the higher refresh rate in an amount that correlates to LG's costs, or even at all.  LG's costs – without more – are simply not reflective of consumers' values.

[5] Defendants cite to no authority to support their argument that, at the pleading stage, Plaintiffs have not suffered an actual loss because they purchased their televisions at a discount.  An ascertainable loss articulated under the loss-in-value theory simply "requires that the consumer be misled into buying a product that is ultimately worth less than the product that was promised."  *Mladenov*, 124 F. Supp. 3d at 375.  Plaintiffs plausibly plead an actual loss.

(alteration in original) (quoting *Hypoguard*, 559 F.3d at 822). The goal of Rule 9(b), like Rule 8, "is fair notice." *City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1154 (D. Minn. 2016).

LG asserts that DeLoss fails to plead his fraud-based claims with particularity because he fails to allege where he purchased his television or that he did not immediately recognize any problem with the refresh rate.

To the contrary, DeLoss alleges the "who, what, where, when, why, and how" of LG's conduct. *See Streambend Props.*, 781 F.3d at 1013. He alleges that he purchased an LG UF6450 series television from Kohl's on January 30, 2016, for $699.99; that LG advertised the refresh rate of this model as 120Hz; that DeLoss confirmed the 120Hz refresh rate prior to purchase; that after the purchase, he learned that his television's actual refresh rate was 60Hz; and that had he known that the actual refresh rate was 60Hz, he would not have purchased the television or, alternatively, would not have been willing to pay as much for it. (Am. Compl. ¶¶ 9, 74-78.) Consequently, Rule 9(b) does not require dismissal of DeLoss's fraud-based claims.

### B. DeLoss's Common-Law Claims

LG also moves to dismiss DeLoss's common-law claims for failure to satisfy Rule 8(a). The crux of LG's argument is that, by failing to allege the geographical location of DeLoss's purchase or harm, LG has no way of knowing what state's laws apply to DeLoss's claims. But because the Court has already held that it need not engage in choice-of-law analysis at this early stage of the case, Rule 8(a) does not require dismissal of DeLoss's common-law claims. *See Hudock*, 2017 WL 1157098, at *8.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant LG's Partial Motion to Dismiss First Amended Class Action Complaint [Docket No. 65] is **DENIED**.

2. Defendant Best Buy's Partial Motion to Dismiss First Amended Class Action Complaint [Docket No. 70] is **DENIED**.

DATED: January 30, 2018　　　　　　　　_____s/John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　United States District Court