# GUSTAFSON GLUEK PLLC

**ATTORNEYS AT LAW**

CANADIAN PACIFIC PLAZA
120 SOUTH SIXTH STREET, SUITE 2600
MINNEAPOLIS, MINNESOTA 55402
TEL (612) 333-8844 • FAX (612) 339-6622

JOSEPH C. BOURNE
JBOURNE@GUSTAFSONGLUEK.COM

April 11, 2018

**VIA ECF**
The Honorable Franklin L. Noel
United States District Court
9W U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

    **Re:**    *Hudock v. LG Electronics U.S.A., Inc.*, No. 16-cv-1220 (JRT/FLN)

Dear Magistrate Judge Noel:

    I write, on behalf of Plaintiffs,[1] to request the Court's assistance in resolving the outstanding areas of disagreement concerning the entry of a Protective Order and ESI Protocol in this action. *See* Scheduling Order, ECF No. 77, ¶ 3.d (requiring the parties to "request an informal conference with the Court before filing a discovery motion").

    The parties agree on all but two issues: (1) the provisions concerning the written assurance; and (2) whether responsive documents or document families may be redacted or withheld on a basis other than a legally recognized claim of privilege. Entry of a Protective Order and ESI Protocol is necessary to move discovery forward and avoid further delay that may require revisiting the Scheduling Order.

## I.    Discovery and Meet-and-Confer Background

    Plaintiffs served requests for production of documents and interrogatories on November 29, 2017. On December 8, Plaintiffs requested a meet and confer. Counsel for the parties conferred on December 15, during which Plaintiffs offered to extend the discovery response deadline due to the holidays. Plaintiffs stated that they wanted to have

---

[1] The parties agree that the Protective Order and ESI Protocol entered in this action should also be entered in the related action, *Villa Lara v. LG Electronics U.S.A., Inc.*, Case No. 0:17-cv-05222 (JRT/FLN).

Page 2
April 11, 2018

any protective order and ESI protocol in place before discovery responses were due. Defendants stated they were already working on drafts and would send them to Plaintiffs.

Defendants responded to discovery requests on January 22, 2018, but they did not provide a proposed protective order or ESI protocol as discussed. Plaintiffs thus assumed the task and drafted a protective order based on this District's form. In line with District precedent, Plaintiffs added the following two sentences regarding redaction of documents:

> A party may only redact information from a responsive document—without obscuring any other information within the document—or document family member that is subject to a legally recognized claim of privilege or other protection (including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, or other applicable privilege). However, a party may not redact information on the basis that is non-responsive or not relevant, or contains trade secrets or other confidential information.

Plaintiffs sent the drafts to Defendants on February 1, 2018. On February 12, having heard nothing, Plaintiffs wrote to Defendants to make sure Defendants had received, and were reviewing, Plaintiffs' proposed protective order and ESI protocol. On February 13, Defendants advised that they would review Plaintiffs' proposals and had also been working on drafts of their own. On February 16, Plaintiffs asked Defendants when Defendants would provide their drafts or revisions.

On February 26, having heard nothing, Plaintiffs expressed concern to Defendants about the delay. Defendants sent counterdrafts on February 28. These new drafts made substantial changes; essentially, they were total rewrites of Plaintiffs' proposals, and it was difficult to ascertain all the changes Defendants wanted because Defendants did not redline their changes.

On March 15, after Plaintiffs had completed their review of Defendants' February 28 drafts, Plaintiffs requested a meet and confer. On March 16, Plaintiffs sent a redline of their proposed edits to Defendants' February 28 drafts. Plaintiffs noted that there were a few areas of significant disagreement, in particular: (1) that the written assurance contained a noncompete agreement; (2) that Plaintiffs would be required to identify their experts and obtain Defendants' consent, or obtain a Court order, before providing confidential information to their experts for use in this litigation; and (3) that Defendants could redact or otherwise withhold responsive documents on a basis other than a legally recognized claim of privilege.

The parties met and conferred telephonically on March 27. They discussed the issues identified above, as well as several other issues. One or both parties agreed to give further consideration to virtually every issue discussed during the meet and confer. On

Page 3
April 11, 2018

April 2, Plaintiffs sent Defendants a letter in which they compromised on several issues, further explained their views, and suggested ways to try to resolve the outstanding areas of disagreement.

On April 6, Defendants sent Plaintiffs a letter setting forth their views, along with their proposed revisions to the protective order and ESI protocol. As noted above, there remain two areas of disagreement: (1) the provisions concerning the written assurance; and (2) the redaction of documents for responsiveness. On April 9, Plaintiffs advised Defendants that they would file this letter as part of your Honor's informal discovery dispute resolution process because the parties are unable to agree on those provisions.

## II.    The Written Assurance

The first area of disagreement concerns the written assurance, which is to be designated as Exhibit A to the Protective Order and must be signed by persons receiving confidential or highly confidential information for purposes of this litigation. The parties agree that certain persons must sign the written assurance. However, Defendants seek to impose additional, unwarranted obligations relating to Plaintiffs' consultants or testifying experts. In particular, Defendants propose:

> Counsel for the party retaining a consultant or expert under paragraph 2.2 shall – prior to disclosure of any "Confidential" or "Confidential – Attorneys' Eyes Only" information – notify the other parties of its intent to disclose "Confidential" or "Confidential – Attorneys' Eyes Only" information and provide a completed Written Assurance from the consultant or expert.  All other parties shall then have 7 days to object in writing to the disclosure of "Confidential" or "Confidential – Attorneys' Eyes Only" information to the person identified.  A party that receives a timely written objection must meet and confer with the objecting party to try to resolve the matter by agreement within 7 days of the written objection. If no agreement is reached, the party seeking to make the disclosure may file a motion seeking permission from the Court to do so.  Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions). No disclosure shall be made until the Court rules on the motion or the parties otherwise agree in writing.  If no party objects in writing to the disclosure within 7 days of receiving a completed Written Assurance, then disclosure may be made to the consultant or expert.

Proposed Protective Order ¶ 2.5.

Page 4
April 11, 2018

Although Defendants no longer seek language restricting the future employment of a person who signs the written assurance, they do seek language limiting the persons who can sign the written assurance:

> I further confirm that I am not now – and do not presently anticipate becoming – an employee or consultant of a competitor of LG Electronics, U.S.A., Inc., Best Buy Co., Inc.; Best Buy Stores, L.P.; and/or BestBuy.Com, LLC, nor am I a former employee of any Defendant.

Proposed Protective Order, Ex. A.

These proposals are contrary to court rules and the Court's scheduling order in this case, and they are unfair, prejudicial, and unnecessary.[2] The Scheduling Order contains deadlines for "[d]isclosure of the identity of expert witnesses," ECF No. 77 ¶ 2.a, and "may be modified only upon formal motion and a showing of good cause." ECF No. 77. Defendants' proposal—that Plaintiffs must disclose the identity of their experts well in advance of those deadlines, not to mention the substance of why they need the information to formulate their opinions—is contrary to the Scheduling Order. Defendants have waived any such objection; if they wanted earlier disclosure of the identity of expert witnesses, they should have raised that concern during the Rule 26(f) conference with Plaintiffs and the Rule 16(b) conference with the Court.

The timing and content of expert disclosures is also governed by Rule 26. Parties must disclose the identity of their experts who may be used at trial at the time they produce a written report setting forth their opinions. Fed. R. Civ. P. 26(a)(2)(A)-(B). Notably, this rule does not require: (1) disclosure of *non-testifying, consulting* experts; or (2) disclosure of the identity of experts before serving their written report. Courts in this District have long held that disclosure of non-testifying experts can be compelled only when the party seeking that information meets their "heavy burden" to show "exceptional circumstances." *Kuster v. Harner*, 109 F.R.D. 372, 375 (D. Minn. 1986). These rules are in place for a reason, and they govern federal civil procedure in all cases—including cases such as this, which involve the marketing and sale of consumer electronics. There is nothing present in this case that makes it exceptional or justifies deviation from settled

---

[2] These restrictions are also wholly improper. But even if such restrictions were proper, Defendants' proposal improperly shifts the burden to Plaintiffs to show good cause to be able to work with their experts. *See, e.g.*, *Medtronic, Inc. v. Guidant Corp.*, Civ. No. 00-1473 (MJD/JGL), 2001 WL 34784493, at *2 (D. Minn. Dec. 20, 2001) ("Rule 26 places the burden of demonstrating the need for a protective order on the party seeking such an order, not on the party opposing the order.").

Page 5
April 11, 2018

court rules.[3] Indeed, courts in this District have rejected such proposals because
"[f]inding an appropriate expert can be a time consuming and expensive process," and
"allowing a veto of a non-testifying consulting expert would needlessly 'bog down' the
discovery process." *Medtronic*, 2001 WL 34784493, at *3.

Defendants have not provided Plaintiffs with any case law indicating that such
provisions are appropriate in a protective order over the objection of the adverse party.
Such provisions are unfair and prejudicial. Defendants would learn the identity of (and
potentially depose) any non-testifying experts, which they are otherwise not entitled to.
They would also learn the identity of potential, testifying experts well in advance. As a
result, they would have unlimited time to prepare competing expert reports, to prepare for
the depositions of Plaintiffs' experts, and to seek to undermine Plaintiffs' theory of the
case.

Defendants have never articulated what concerns underlie their extraordinary
position, although they gave the example that Plaintiffs might hire a Samsung engineer as
an expert and provide them with Defendants' sensitive information, which that expert
would then take back to Samsung. This concern makes no sense.

First, it would make no sense for Plaintiffs to retain an expert who works for one
of LG's chief competitors. Defendants would argue that erodes the expert's credibility,
and it would be smart for Plaintiffs to avoid such an argument. That individual would
also likely be subject to a nondisclosure agreement, meaning they could not utilize their
knowledge of that company's motion clarity or refresh rate technology.

Second, if Defendants' concern is protecting sensitive information concerning LG
technology, then it is unclear why these provisions should also inure to Best Buy, or why
Best Buy provided Plaintiffs with a list of its competitors for purposes of the protective
order. For example, it is difficult to see how Best Buy could have any trade secrets
relating to the sale or marketing of televisions such that employees of JCPenney, Kmart,
or Rent-a-Center are a particular concern. Defendants' retention of a single, shared
outside counsel in this litigation also tends to suggest that neither LG nor Best Buy has
trade secrets that it is especially concerned about protecting. Notably, Best Buy works
with LG's direct competitors, such as Samsung, Sony, and Sharp.

Defendants have given no reason to think that the safeguards provided by
Plaintiffs' proposed protective order are inadequate. If Plaintiffs retain an expert who
receives confidential information from Defendants, they will be bound by the protective
order and cannot use that information for any purpose other than this litigation. In any

---

[3] Defendants also have not shown good cause for such a sharp departure from this
District's form protective order, which has been determined by courts in this District to
adequately protect the interests of federal court litigants.

Page 6
April 11, 2018

event, Defendants would have a remedy under the protective order and other potentially applicable law in the unlikely event that it is violated.

## III.    Redacting or Withholding Responsive Documents or Document Families

The second area of disagreement concerns the redaction or withholding of responsive documents or document families on grounds other than a legally recognized claim of privilege.

Plaintiffs propose the following language:

A party may redact or withhold any responsive documents or information only if the document is subject to a legally recognized claim or privilege (including, without limitation, the attorney-client privilege, the work-product doctrine, and the joint defense privilege). A party may not redact a document, or withhold a member of a document family, on the basis that it is non-responsive or not relevant, or that it contains trade secrets or other confidential information.

Proposed Protective Order ¶ 4.5; *see also* Proposed ESI Protocol § II.J ("Members of an otherwise responsive family should not be withheld except on the basis of a legally recognized claim of privilege.").

Defendants instead propose the following language:

A party may redact or withhold responsive documents or information if the document or information is subject to a legally recognized claim of privilege (including, without limitation, the attorney-client privilege, the work-product doctrine, and the joint defense privilege). Commercially sensitive and/or trade secret information may be redacted or withheld only if it is irrelevant.

Proposed Protective Order ¶ 4.5; *see also* Proposed ESI Protocol § II.J ("Members of an otherwise responsive family should not be withheld except on the basis of a legally recognized claim of privilege, unless the individual document is both commercially sensitive and irrelevant.").

From the parties' March 27 telephonic meet and confer, Plaintiffs understood Defendants to be primarily concerned with the ability to withhold attachments that were nonresponsive, irrelevant, and contained trade secrets or other highly confidential information. In an attempt to reach a compromise, Plaintiffs offered in their April 2 letter to agree that:

Defendants may withhold attachments that are wholly nonresponsive and irrelevant, and which contain trade secrets or other particularly sensitive

Page 7
April 11, 2018

> highly-confidential information, as long as Defendants log any such attachments or family documents (so if we believe there is an issue with a particular document withheld in such a manner, we can meet and confer about it). As part of that compromise, Defendants must agree not to redact portions of otherwise responsive documents because of non-responsiveness, their highly confidential nature, or any basis other than a legally recognized claim of privilege.

In their April 6 response letter, Defendants rejected this proposal, indicating that they had the right to *redact portions of otherwise responsive documents* in addition to withholding wholly irrelevant attachments from otherwise responsive document families, and that they would not log any redactions or withholding that was not based on a privilege claim.

### A.  Redactions of Portions of Responsive Documents

The Federal Rules of Civil Procedure do not allow a party to redact for relevance; the only bases for prohibiting a party from seeing a portion of a document are claims of privilege or work-product. *See* Fed. R. Civ. P. 26(b)(5). As this Court has recognized, "there is nothing in the Federal Rules of Civil Procedure that permits the unilateral redaction of information, in otherwise responsive documents, that one party or the other deems not relevant." *In re Stryker Rejuvenate & ABGII Implant Prods. Liab. Litig.*, MDL No. 13-2441 (DWF/FLN), 2014 WL 2808919, at *3 (D. Minn. June 20, 2014).

Courts in this District consistently conclude that redactions for responsiveness are improper. This is so for three main reasons. First, Rule 34 "concerns the discovery of 'documents'; it does not concern the discovery of individual pictures, graphics, paragraphs, sentence, or words within those documents." *Donaldson Co., Inc. v. Baldwin Filters, Inc.*, Civ. No. 09-1049 (JMR/AJB), 2010 WL 11561226, at *4 (D. Minn. May 25, 2010); *see also Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, No. 09-cv-3037 (SRN/LIB), 2011 WL 1486033, at *4 (Apr. 19, 2011) (affirming magistrate judge's order requiring reproduction of unredacted documents and noting that Rule 34 "discusses production of 'documents,' rather than paragraphs or sentences"). Defendants have not articulated any reason to depart from the federal rules in this case.

Second, redacting part of a document may strip it of context needed for the receiving party to understand it. In other words, even "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information." *Donaldson*, 2010 WL 11561226, at *4. If Plaintiffs lack the context needed to understand the documents produced by Defendants, then it does not matter if the redacted portions can, on their own, be considered responsive or relevant. The point is that Plaintiffs may not be able to avail themselves of the information provided by Defendants, and as a result they would be prejudiced in their prosecution of this litigation.

Page 8
April 11, 2018

Third, "redacting allegedly nonresponsive or irrelevant portions of discoverable documents breeds suspicion." *Burris v. Versa Prods., Inc.*, Civ. No. 07-3938 (JRT/JJK), 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013) (quotation and alteration omitted). Whether the redacted portion of a document is truly nonresponsive or irrelevant unilaterally decides the issue (which may be subjective and require an exercise of judgment), based solely on one party's say-so and contrary to the remainder of the document.[4] *Cf. Columbia Ins. Co. v. Tibbott*, No. 11-cv-1040 (PAM/SER), 2012 WL 13027067, at *11 (D. Minn. June 21, 2012) (reviewing documents in camera and *rejecting* producing party's contention of irrelevance of redacted portions). This deprives the receiving party "of the opportunity to see information in its full context and fuel[s] mistrust about the redactions' propriety." *Burris*, 2013 WL 608742, at *3.

Defendants have not explained why this extraordinary measure and contravention of the Federal Rules is required in this case. Defendants obliquely suggested during the meet and confer that they are primarily concerned with trade secrets. But if so, the relief they seek is overly broad. First, Plaintiffs are not competitors of Defendants, and the protective order provides ample protection in the form of "confidential" and "attorneys' eyes only" designations. Second, there is not even an absolute privilege against disclosure of legitimate trade secrets. *Burris*, 2013 WL 608742, at *2. But even if there were, the burden of proof would be on Defendants to make more than a "conclusory assertion" and instead "show that the information is not generally known or readily ascertainable, that the information derives independent economic value from secrecy, or that the information is the subject of reasonable efforts to maintain its secrecy." *Id.* And even if they established that they sought redaction of nonresponsive, irrelevant trade secrets, they would then need to show why the confidentiality provisions of the Protective Order do not safeguard their interests, and at that time they may move the Court for a protective order seeking to redact nonresponsive portions of particular documents. *See, e.g.*, Fed. R. Civ. P. 26(c)(1); *Burris*, 2013 WL 608742, at *2 ("Gulf has failed to demonstrate why the Protective Order in this case will fail to protect its interests or that there is some substantial likelihood that Plaintiffs or any other party will fail to scrupulously adhere to the Protective Order's non-disclosure provisions.").

Defendants also cited Judge Mayeron's decision in *Sandoval v. Am. Bldg. Maintenance Indus., Inc.*, 267 F.R.D. 257 (D. Minn. 2007), in their letter to Plaintiffs, apparently for the proposition that redaction for responsiveness is acceptable in this District. In order to find that 2007 case, however, Defendants must have had to wade through the host of more recent decisions in this District in which *every Judge to consider the issue* has barred the practice of redacting for responsiveness as contrary to

---

[4] Defendants' suggestion that they can redact documents for responsiveness without logging those redactions is particularly concerning. Without an appropriate log, Plaintiffs would have no way to accept or contest the redactions. *Donaldson*, 2010 WL 11561226, at *5 & n.3.

Page 9
April 11, 2018

Rule 34, requiring re-production of unaltered documents where redactions already unilaterally occurred. *Cf.* D. Minn. cases discussed *supra*; *see also Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) (holding, "Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive" and ordering defendant to re-produce redacted documents in unredacted form); *Skky, Inc. v. Manwin USA, Inc.*, No. 13-2086 (PJS/JJG), 2014 WL 12527215, at *11-12 (D. Minn. Oct. 29, 2014) (rejecting argument that redacting for relevance is "common practice" and ordering defendant to re-produce documents in unaltered form); *Hageman v. Accenture, LLP*, No. 10-1759 (RHK/TNL), 2011 WL 13136510, at *4 (D. Minn. June 7, 2011) (holding that Rule 34 does not permit redaction of irrelevant portions of documents and ordering that unmodified documents be re-produced).[5] The bottom line is that unilateral redaction for responsiveness is simply not appropriate, and because parties continue to employ the tactic, with courts needing to step in to order expensive re-production of discovery materials, the Court should adopt Plaintiff's language foreclosing this practice at the outset.

---

[5] Defendants' position has been roundly rejected outside this District as well. Courts have overwhelmingly rejected unilateral redactions for relevance. *See In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practices, & Prods. Liab. Litig.*, No. 8:10-02151, 2012 WL 9337626, at *1 (C.D. Cal. Jan. 13, 2012) (ordering that "no further redactions on 'relevancy' grounds shall be allowed" and stating "the better policy is not to allow unilateral redactions based on relevance by the producing party"); *Live Nation Merch., Inc.* v. *Miller*, No. 13-CV-03936, 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) (ordering production of unredacted version of document withheld on the basis that it contained confidential information and was purportedly not relevant); *Holman v. Experian Info. Solutions, Inc.*, No. 11-cv-00180, 2012 WL 2501085, at *6 (N.D. Cal. June 27, 2012) (ordering the re-production of documents in unredacted form where the responding party claimed that documents were not responsive to the discovery requests); *ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*, No. 1:10-CV-00362, 2010 WL 5230862, at *3 (N.D. Ohio Dec. 16, 2010) ("The Court sees no compelling reason for Jewell to not disclose information solely on the grounds that Jewell thinks the non-disclosed materials are not relevant or responsive where that information appears in a document that contains otherwise relevant or responsive information."); *In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, Nos. 08-md-1945 (RJH)(DFE), 08-Civ.-0333 (RJH)(DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (finding that redacting allegedly nonresponsive or irrelevant portions of discoverable documents "breed[s] suspicions," and finding "[t]his is especially true when a protective order is in place, as is the case here.").

Page 10
April 11, 2018

### B.  Withholding of Attachments or Responsive Family Documents

Withholding of attachments, when they are part of a responsive document family, is also improper. A document family could include, for example, a "parent" email and "child" attachments; the "parent" could also be a fax cover, with the faxed letter and attachment to the letter both being a "child." The Sedona Conference Glossary, Vol. XV (Fall 2014), at 322. The "prevailing practice" in federal court "is for parties to produce any non-privileged attachment to an e-mail if the e-mail is determined to be relevant, and to produce the e-mail if any of the attachments are determined to be relevant." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08 Civ. 7508, 2011 WL 3738979, at *5 (S.D.N.Y. Aug. 18, 2011) (noting that prevailing practice "serves as a helpful guide for related discovery disputes").

This prevailing practice has come about for good reasons. First, evidentiary rules allow an adverse party to require that the complete writing be introduced. Fed. R. Civ. P. 106 & adv. comm. notes. This evidentiary rule suggests that for discovery purposes, if something was attached to a relevant e-mail, it is also likely relevant to the context of the communication—just like stapled paper documents are treated as a single document for relevance determinations. *Abu Dhabi*, 2011 WL 3738979, at *5. Second, documents must be produced under Rule 34 "as they are kept in the usual course of business," which includes production of the entire document family. *Id.* Thus, in general, the entire responsive document family should be produced, even if not all documents in the family are responsive.

It is possible that attachments will be, in some circumstances, less critical to understanding the context of a responsive email than actual portions of that email. As a result, a reasonable compromise that preserves the parties' rights and avoids prejudice to either side would be to permit Defendants to withhold nonresponsive, irrelevant documents that are part of a responsive document family if those documents contain trade secrets or other highly confidential information—if those withholdings are appropriately logged in a manner that will permit Plaintiffs to assess whether they were properly withheld. *See In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, MDL No. 2342, 2013 WL 8445354, at *4 (E.D. Pa. Oct. 31, 2013) (ordering Pfizer to produce a "withholding log" on a prospective basis for documents not yet produced). The burden of logging any such withheld attachments that truly "have nothing to do with the litigation in the first place" is significantly less than other options, such as requiring redaction of those attachments, and it preserves the producing party's interest in not producing information that is particularly sensitive and wholly nonresponsive and irrelevant.

Plaintiffs would be satisfied with either option. Either attachments to responsive documents may not be withheld for responsiveness or confidentiality, or they may be withheld—and logged—under that limited set of circumstances. And again, like redactions for responsiveness, if Defendants have good cause to withhold a particular nonresponsive document that is part of a responsive document family, they can always

Page 11
April 11, 2018

make a showing of good cause and move the Court for an appropriate protective order concerning those particular documents.[6] But the protective order should not permit any party to do this unilaterally as a matter of course.

## IV.    Conclusion

      Plaintiffs are concerned with the delay in entering a Protective Order and ESI Protocol, because Defendants are not producing documents until after such orders are entered. In fact, Defendants suggested to Plaintiffs during the meet and confer that they are withholding their supplemental *written responses* to Plaintiffs' discovery requests (as opposed to production of documents) until such orders are entered. Continued delay risks making the discovery schedule unworkable. As a result, Plaintiffs respectfully seek the Court's assistance in resolving these areas of dispute.

                                  Respectfully submitted,

                                  GUSTAFSON GLUEK PLLC

                                  *s/Joseph C. Bourne*
                                  Joseph C. Bourne

JCB/jlh

cc: All Counsel of Record (via ECF)

---

[6] If Defendants can make such a particularized showing, such a protective order motion would likely not be necessary because Plaintiffs would agree during the meet-and-confer process. Plaintiffs are concerned with receiving information that is relevant to their claims, and not losing needed context to understand relevant documents or having Defendants make *ipse dixit* determinations concerning the relevance of responsive and presumptively relevant information.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| BENJAMIN HUDOCK, BREANN HUDOCK, and GERALD DELOSS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.; BEST BUY CO., INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, LLC,<br><br>Defendants. | Civil No. 16-1220 (JRT/FLN) |
| IVAN VILLA LARA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.; BEST BUY CO., INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, LLC,<br><br>Defendants. | Civil No. 17-5222 (JRT/FLN) |

## STIPULATION FOR PROTECTIVE ORDER

1

Upon stipulation of the parties for an order pursuant to Fed. R. Civ. P. 26(c) that trade secret or other confidential information be disclosed only in designated ways:

1. <u>DEFINITIONS</u>

As used in the Protective Order, these terms have the following meanings:

1.1 "Attorneys" means counsel of record;

1.2 "Confidential" documents are documents designated pursuant to paragraph 2;

1.3 "Confidential – Attorneys' Eyes Only" documents are the subset of Confidential documents designated pursuant to paragraph 2.3;

1.4 "Designating Party" is a party or non-party that designates documents, information or items that it produces in disclosures or in responses to discovery as "Confidential" or "Confidential – Attorneys' Eyes Only";

1.5 "Documents" are all materials within the scope of Fed. R. Civ. P. 34, as well as transcripts of testimony or information disclosed or produced at a deposition;

1.6 "Destroy" or "to destroy" electronically stored information means to delete from all databases, applications, and file systems so that the information is not accessible without the use of specialized tools or techniques typically used by a forensic expert;

1.7 "Party" means any party to these actions, including all of its officers and employees;

1.8 "Protected document" means a document protected by a privilege or the work-product doctrine;

1.9 "Promptly" means within 5 business days;

2

1.10   "Receiving Party" means a party that receives documents, information or other items from another party; and

1.11   "Written Assurance" means an executed document in the form attached as Exhibit A.

2. DESIGNATING AND DISCLOSING CONFIDENTIAL INFORMATION

2.1   "Confidential" Designation.   By identifying a document "Confidential," a party may designate any document, including interrogatory responses, other discovery responses, or transcripts, that it in good faith contends to constitute or contain trade secret or other confidential information protectable under Rule 26(c).

2.2   Authorized Disclosure.   Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "Confidential" only to the following, and only to the extent disclosure of such Confidential information to those persons is reasonably necessary for this litigation:

(a)   the Court and its officers;

(b)   counsel of record and their office associates, legal assistants, and stenographic and clerical employees;

(c)   in-house counsel for the Parties;

(d)   persons shown on the face of the document to have authored or received it;

(e)   court reporters retained to transcribe testimony;

(f)   the Parties;

(g)   outside independent persons and/or vendors (i.e., persons not currently or formerly employed by, consulting with, or otherwise associated with any party) who are retained by a party or its attorneys to furnish technical or expert services, or to provide assistance as mock jurors or focus group members or the like, or to give testimony in these actions;

(h)   any Court-appointed mediator agreed upon by the Parties; and

(i)   other persons upon further order of the Court or written consent of the Parties.

2.3   <u>"Confidential – Attorneys' Eyes Only" Designation.</u>  The parties shall have the right to further designate Confidential documents or portions of documents as "Confidential – Attorneys' Eyes Only."   Documents and other materials or items marked "Confidential – Attorneys' Eyes Only" contain sensitive information, the disclosure of which would create a substantial risk of serious harm that could not be avoided by less restrictive means.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "Confidential – Attorneys' Eyes Only" only to the persons designated in paragraphs 2.2(a), (b), (c), (d), (e), (g), (h), and (i), and only to the extent disclosure of such "Confidential – Attorneys' Eyes Only" information to those persons is reasonably necessary for this litigation.

2.4   <u>Non-Parties.</u>  Third parties producing documents in the course of these actions may also designate documents as "Confidential" or "Confidential – Attorneys'

Eyes Only," subject to the same protections and constraints as the parties to the actions. A copy of the Protective Order and of Local Rule 5.6 shall be served along with any subpoena served in connection with the actions. All documents produced by such third parties shall be treated as "Confidential – Attorneys' Eyes Only" for a period of 14 days from the date of their production, and during that period any party may designate such documents as "Confidential" or "Confidential – Attorneys' Eyes Only" pursuant to the terms of the Protective Order.

2.5   <u>Written Assurances.</u>   Each person appropriately designated pursuant to paragraph 2.2(e), (f), (g), (h) and (i) to receive "Confidential" or "Confidential – Attorneys' Eyes Only" information shall execute a "Written Assurance" in the form attached as Exhibit A.

**<u>Defendants propose the following additional language, which is italicized for convenience. Plaintiffs do not agree this provision should be included.</u>**

*Counsel for the party retaining a consultant or expert under paragraph 2.2 shall – prior to disclosure of any "Confidential" or "Confidential – Attorneys' Eyes Only" information – notify the other parties of its intent to disclose "Confidential" or "Confidential – Attorneys' Eyes Only" information and provide a completed Written Assurance from the consultant or expert. All other parties shall then have 7 days to object in writing to the disclosure of "Confidential" or "Confidential – Attorneys' Eyes Only" information to the person identified. A party that receives a timely written objection must meet and confer with the objecting party to try to resolve the matter by agreement within 7 days of the written objection. If no agreement is reached, the party*

5

*seeking to make the disclosure may file a motion seeking permission from the Court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions). No disclosure shall be made until the Court rules on the motion or the parties otherwise agree in writing. If no party objects in writing to the disclosure within 7 days of receiving a completed Written Assurance, then disclosure may be made to the consultant or expert.*

  2.6 <u>Depositions.</u> All depositions or portions of depositions taken in these actions that contain trade secret or other confidential information may be designated "Confidential" or "Confidential – Attorneys' Eyes Only" and thereby obtain the protections accorded other "Confidential" or "Confidential – Attorneys' Eyes Only" documents. Confidentiality designations for depositions shall be made either on the record or by written notice to the other party within 14 days of receipt of the transcript. Unless otherwise agreed, depositions shall be treated as "Confidential – Attorneys' Eyes Only" during the 14-day period following receipt of the transcript. The deposition of any witness (or any portion of such deposition) that encompasses "Confidential" or "Confidential – Attorneys' Eyes Only" information shall be taken only in the presence of persons who are qualified to have access to such information.

3. <u>USE OF CONFIDENTIAL INFORMATION</u>

3.1  <u>General.</u>  All "Confidential" and "Confidential – Attorneys' Eyes Only" documents, along with the information contained in the documents, shall be used solely for the purpose of this action, and no person receiving such documents shall, directly or indirectly, transfer, disclose, or communicate in any way the contents of the documents to any person other than those permitted in paragraphs 2.2 and 2.3.  Prohibited purposes include, but are not limited to, use in any litigation other than in the above-captioned actions or for competitive purposes.  Each party must make reasonable efforts to protect the confidentiality of any "Confidential" or "Confidential – Attorneys' Eyes Only" information disclosed or produced to that party.  A party who learns of a breach of confidentiality must promptly make reasonable efforts to remedy the breach and promptly notify the designating and/or producing party of the scope and nature of that breach.

3.2  <u>Filing Confidential Information.</u>  This Protective Order does not authorize the filing of any document under seal. A document containing "Confidential" or "Confidential – Attorneys' Eyes Only" information may be filed only in compliance with the Electronic Case Filing Procedures for the District of Minnesota and Local Rule 5.6.

3.3  <u>Presentation At A Hearing or Trial.</u>  A party intending to present another party's or a non-party's "Confidential" or "Confidential – Attorneys' Eyes Only" information at a hearing or trial must promptly notify the other party or non-party so that the other party or non-party may seek relief from the Court.

3.4     Protected Material Subpoenaed or Ordered Produced in Another Litigation.

If a party is served with a subpoena or a court order issued in another litigation that compels disclosure of any information or items designated in this action as "Confidential" or "Confidential – Attorneys' Eyes Only," that Party must promptly (a) provide a copy of the subpoena or court order to the Designating Party; (b) provide a copy of this Protective Order and notice in writing to the subpoenaing or requesting party that some or all of the material covered by the subpoena or order is subject to this Protective Order; and (c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose "Confidential" or "Confidential – Attorneys' Eyes Only" information may be affected.  If the Designating Party timely seeks a protective order, the party served with the subpoena court order shall not produce any information designated in this action as "Confidential" or "Confidential – Attorneys' Eyes Only" before a determination by the court from which the subpoena or order issued, unless the party has obtained the Designating Party's permission.  Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

4.    INADVERTENT OR UNAUTHORIZED DESIGNATIONS OR DISCLOSURES

4.1    Inadvertent Failures To Designate.  Any party who inadvertently fails to identify documents as "Confidential" or "Confidential – Attorneys' Eyes Only" shall have 14 days from the discovery of its oversight to correct its failure.  Such failure shall be corrected by providing written notice of the error and substituting copies of the inadvertently produced documents.  Any party receiving such inadvertently unmarked

8

documents shall make reasonable efforts to retrieve documents distributed to persons not entitled to receive documents with the corrected designation and shall provide written confirmation of retrieval of the documents.

4.2     <u>Requests To Change Designations.</u> Any party may request a change in the designation of any information designated "Confidential" or "Confidential – Attorneys' Eyes Only" by providing written notice of each designation it believes should be changed and describing the basis for the proposed change to the Designating Party.  The parties shall meet and confer in a good faith attempt to resolve any disputes regarding the proper designations within 7 days of the date of service of the written notice.   Any such document shall be treated as designated until the Designating Party agrees to change its designation or the Court orders otherwise after providing an opportunity for the Designating Party to be heard.  If the requested change in designation is not agreed to, the party seeking the change may move the Court for appropriate relief, providing notice to any third party whose designation of produced documents as "Confidential" or "Confidential – Attorneys' Eyes Only" in the action may be affected.  The party or non-party asserting that the material is "Confidential" or "Confidential – Attorneys' Eyes Only" shall have the burden of proving that the information in question is within the scope of protection afforded by Fed. R. Civ. P. 26(c).

4.3     <u>Unauthorized Disclosure of "Confidential" or "Confidential – Attorneys' Eyes Only" Information.</u>  If a party learns that, by inadvertence or otherwise, it has disclosed "Confidential" or "Confidential – Attorneys' Eyes Only" information to any person or in any circumstance not authorized under this Protective Order, the party shall

promptly (a) notify in writing the party that produced the "Confidential" or "Confidential – Attorneys' Eyes Only" information of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the "Confidential" or "Confidential – Attorneys' Eyes Only" information, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order, and (d) request such person or persons to execute the "Written Assurance" that is attached hereto as Exhibit A.

4.4    <u>Privileged or Otherwise Protected Information.</u>    Requests for return or destruction of Documents by a party subject to a legally recognized claim of privilege or other protection (including, without limitation, the attorney-client privilege, the work-product doctrine, the joint defense privilege, or other applicable privilege), shall be governed by Fed. R. Evid. 502(b) and Fed. R. Civ. P. 26(b)(5)(B).  A party or non-party who discovers that it may have received an inadvertently disclosed or produced protected document shall promptly notify the producing party and must promptly return or destroy the document without distributing, disseminating, or reproducing the document, and shall retrieve and destroy the documents to the extent such documents have been distributed, disseminated, or reproduced.

**4.5    <u>Plaintiffs propose the following language, which is italicized for convenience.</u>**

<u>*No Withholding of Responsive, Non-Privileged Information.*</u> *A party may redact or withhold any responsive documents or information only if the document or information is subject to a legally recognized claim of privilege (including, without limitation, the*

10

*attorney-client privilege, the work-product doctrine, and the joint defense privilege). A*

*party may not redact or withhold a document on the basis that it is non-responsive or not*

*relevant, or that it contains trade secrets or other confidential information.*

**Defendants propose the following language, which is italicized for**

**convenience.**

*Withholding and Redaction of Information.* *A party may redact or withhold responsive*

*documents or information if the document or information is subject to a legally*

*recognized claim of privilege (including, without limitation, the attorney-client privilege,*

*the work-product doctrine, and the joint defense privilege). Commercially sensitive*

*and/or trade secret information may be redacted or withheld only if it is irrelevant.*

5. MISCELLANEOUS

5.1    Final Disposition.  Within 60 days of the termination of both of the above-

captioned actions, including any appeals, each party shall either destroy or return to the

opposing party all documents designated by the opposing party as "Confidential" or

"Confidential – Attorneys' Eyes Only," and all copies of such documents, and shall

destroy all extracts and data taken from such documents.  Each party shall provide a

certification as to such return or destruction within the 60-day period.  Outside counsel

shall be entitled to retain, however, a set of all documents filed with the Court and all

correspondence generated in connection with this litigation.  Any retained material, and

the outside counsel retaining it, continues to be subject to this Protective Order.

5.2    Right to Further Relief. Any party may apply to the Court for a

modification of the Protective Order, and nothing in the Protective Order shall be

construed to prevent a party from seeking such further provisions enhancing or limiting confidentiality as may be appropriate.

      5.3    <u>Right to Assert Other Objections.</u>  No action taken in accordance with the Protective Order shall be construed as a waiver of any claim or defense in the action or of any position as to discoverability or admissibility of evidence.

      5.4    <u>Duration.</u>  The obligations imposed by the Protective Order shall survive the termination of this action. The Court retains jurisdiction even after termination of this action to enforce this Protective Order and to make such amendments, modifications, deletions, and additions as the Court may deem appropriate.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: April 11, 2018

/s/ _____
Daniel C. Hedlund (MN Lic. #258337)
Joseph C. Bourne (MN Lic. #0389922)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
jbourne@gustafsongluek.com

David M. Cialkowski (MN Lic. #0306526)
Alyssa J. Leary (MN Lic. #0397552)
**ZIMMERMAN REED, LLP**
1100 IDS Center, 80 S. 8th St.
Minneapolis, MN 55402
Telephone: (612) 341-0400
david.cialkowski@zimmreed.com
alyssa.leary@zimmreed.com

Luke P. Hudock (WI Lic. #1086264)

**HUDOCK LAW GROUP, S.C.**
P.O. Box 83
Muskego, WI 53150
Telephone: (414) 526-4906
lphudock@law-hlg.com

*Counsel for Plaintiffs Breann and Benjamin*
*Hudock, Gerald DeLoss, and Ivan Villa Lara*

Dated: April 11, 2018                    */s/*_____
                                         Peter H. Walsh (MN No. 388672)
                                         Alicia J. Paller (MN No. 397780)
                                         **HOGAN LOVELLS US LLP**
                                         80 South Eighth Street, Suite 1225
                                         Minneapolis, MN 55402
                                         T. (612) 402-3000
                                         F. (612) 402-3001
                                         peter.walsh@hoganlovells.com
                                         alicia.paller@hoganlovells.com

                                         Phoebe A. Wilkinson (*pro hac vice*)
                                         A. Elizabeth Korchin (*pro hac vice*)
                                         **HOGAN LOVELLS US LLP**
                                         875 Third Avenue
                                         New York, NY 10022
                                         T. (212) 918-3000
                                         F. (212) 918-3100
                                         phoebe.wilkinson@hoganlovells.com
                                         elizabeth.korchin@hoganlovells.com

                                         *Counsel for Defendants LG Electronics,*
                                         *U.S.A., Inc., Best Buy Co., Inc., Best Buy*
                                         *Stores, L.P., and BestBuy.com, LLC*

13

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BENJAMIN HUDOCK, BREANN HUDOCK, and GERALD DELOSS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.; BEST BUY CO., INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, LLC,<br><br>Defendants. | Civil No. 16-01220 (JRT/FLN) |
| IVAN VILLA LARA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS U.S.A., INC.; BEST BUY CO., INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, LLC,<br><br>Defendants. | Civil No. 17-05222 (JRT/FLN) |

## <u>WRITTEN ASSURANCE</u>

_____ declares that:

      I reside at _____in the city of _____ ,

county _____ , state of _____ ;

1

I am currently employed by _____ located at _____ and my current job title is _____.

I have read in its entirety and believe I understand the terms of the Protective Order that was issued by the United States District Court for the District of Minnesota on [date] in the above-captioned actions. I agree to comply with and be bound by the provisions of the Protective Order. I understand that any violation of the Protective Order may subject me to sanctions by the Court.

I solemnly promise that I will not disclose in any manner any documents, copies of documents, contents of documents, or any other type of information designated "Confidential" or "Confidential – Attorneys' Eyes Only" obtained pursuant to such Protective Order to any person other than those specifically authorized by the Protective Order. I shall not copy or use such documents except for the purposes of this action and pursuant to the terms of the Protective Order.

**Defendants propose including the language in the following paragraph and footnote, which is italicized for convenience. Plaintiffs do not agree this provision should be included.**

*I further confirm that I am not now – and do not presently anticipate becoming – an employee or consultant of a competitor[1] of LG Electronics, U.S.A., Inc., Best Buy Co., Inc.; Best Buy Stores, L.P.; and/or BestBuy.Com, LLC, nor am I a former employee of any Defendant.*

---

[1] *Defendants have provided a list of competitors to Plaintiffs for this purpose (and only for this purpose).*

2

As soon as practical, but no later than 30 days after final termination of this action, I shall destroy or return to the attorney from whom I have received them, any documents in my possession designated "Confidential" or "Confidential – Attorneys' Eyes Only", and all copies, excerpts, summaries, notes, digests, abstracts, and indices relating to such documents.

I submit myself to the jurisdiction of the United States District Court for the District of Minnesota for the purpose of enforcing or otherwise providing relief relating to the Protective Order, even if such enforcement proceedings occur after termination of the above-captioned actions.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on _____          _____
                     (Date)                                              (Signature)

In:_____          _____
     (City and State where sworn and signed)                    (Printed Name)

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BENJAMIN HUDOCK, BREANN HUDOCK, and GERALD DELOSS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LG ELECTRONICS U.S.A., INC.; BEST BUY CO., INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, LLC, <br><br> Defendants. | Civil No. 16-1220 (JRT/FLN) |
| IVAN VILLA LARA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS U.S.A., INC.; BEST BUY CO., INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, LLC, <br><br> Defendants. | Civil No. 17-5222 (JRT/FLN) |

Pursuant to the parties' joint submission, the Court hereby adopts the following:

## PROTOCOL REGARDING PRODUCTION FORMAT OF ELECTRONICALLY STORED INFORMATION AND HARDCOPY DOCUMENTS

1

The procedures and protocols outlined herein govern the production of electronically stored information ("ESI") and paper ("hardcopy") documents by the parties during the pendency of this litigation (the "Action"). Subject to the Protective Order in this Action, this protocol governs all productions in the matter. The Parties agree to take reasonable steps to preserve ESI in a form that will permit the collection and production of metadata that is necessary to fulfill their agreement on the form of production, set forth below. The Parties further agree to conduct all aspects of ESI discovery in a manner that is reasonable and proportional to the needs of the case. The Parties agree to discuss search term formulation relating to requests for production of ESI, if necessary. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this protocol. The production formats for any other materials will be addressed by the parties after meeting and conferring regarding the specific item or category of items.

This Protocol does not address, limit, or determine the relevance, discoverability, or admission into evidence of any ESI or document. Nor do the Parties waive any objections as to the production, discoverability, or confidentiality of any ESI or documents subject to this Protocol.

The parties acknowledge their duty to work together cooperatively throughout the discovery process.

2

## I.  DEFINITIONS

**A.**  "Electronically stored information," or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

**B.**  "Native," "Native format," or "Native data format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

**C.**  "Metadata" means and refers to information about information or data about data, and includes, without limitation: (i) information embedded in or associated with a Native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

**D.**  Plaintiffs Benjamin Hudock, Breann Hudock, Gerald DeLoss, and Ivan Villa Lara (collectively referred to as "Plaintiffs"), and Defendants LG Electronics U.S.A., Inc., Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC, as well as their officers, directors, employees, agents, and legal counsel (collectively referred to as "Defendants"), are referred to as the "Parties" or "Party" respectively solely for the purposes of this Protocol.

**E.**  "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.

**F.**   "Optical Character Recognition" or "OCR" means the process of recognizing and

3

creating a file containing visible text within an image.

**G.**   "Searchable Text" or "Extracted Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**H.**   "And" and "or" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, e.g., "and" shall be construed to mean "and/or."

**I.**   "Include" and "Including" shall be construed to mean "include but not be limited to" and "including, but not limited to."

**J.**   Reference to the singular shall also be deemed to refer to the plural, and vice-versa.

## II.   FORMAT OF PRODUCTION

**A.   Productions Made in This Action**. For any documents produced in this action, Defendants will produce documents in the format(s) as outlined in paragraphs II.B–O below.

**B.   General Production Format.** All documents produced pursuant to this Protocol, whether stored as paper or ESI, with the exceptions noted in paragraph II.D below, will be produced as black-and-white, single-page, 300 dpi (minimum) Group IV TIFF images, with Searchable Text  and related path provided in document level text files, with load files pursuant to Appendix 1. Parties have no obligation to make non-text-searchable documents text-searchable (by OCR scanning, for example).  The parties will meet and

4

confer regarding any good faith request for production of documents under this paragraph in a different format.

**C.**  **Plaintiffs propose the following language, which is italicized for convenience. Defendants do not agree this provision should be included.**

***Production of Responsive, Non-Privileged Documents.*** *A party may redact or withhold any responsive documents only if the document is subject to a legally recognized claim of privilege (including, without limitation, the attorney-client privilege, the work-product doctrine, and the joint defense privilege). A party may not redact or withhold a document on the basis that it is non-responsive or not relevant, or that it contains trade secrets or other confidential information.*

**D.**  **Production of Certain Files in Native Format.**

**i.**  Excel or other spreadsheet files will be produced in native format. Native Excel or other spreadsheet files which are redacted may be produced in .TIFF format. At the producing party's option, or upon the parties' agreement, Native Excel or other spreadsheet files which are redacted may be redacted by overwriting the data contained in a particular cell, row, column or tab with the word "REDACTED." These documents will be identified as redacted within the "REDACTED" field in the .DAT. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced subject to paragraph II.O will be the metadata extracted from the original native file. If an Excel or other spreadsheet file is redacted, the text link metadata field will be replaced with an OCR Searchable Text file reflecting the redactions

5

applied to that file. In the event that a party believes a redacted Excel or other spreadsheet file produced in .TIFF format results in too great a reduction in its usability, the parties shall meet and confer regarding re-production of the file in native format. If the parties cannot resolve the issue, the parties shall bring the matter to the Court for resolution in accordance with the procedure for discovery disputes set forth in the Scheduling Order.

      **ii.**     PowerPoint or other presentation files that are identified as having animation, video, or sound will be produced in native format unless redacted. Native PowerPoint or other presentation files which are redacted may be produced as black-and-white, single-page, 300 dpi (minimum) Group IV TIFF images, with Searchable Text and related path provided in document level text files, with load files pursuant to Appendix 1, which shall include all information contained in the original file, including but not limited to speaker notes and "hidden" slides, with any redaction clearly delineated. These documents will be identified as redacted within the "REDACTED" field in the .DAT. If the file contains video or audio components, the video or audio will be produced as Native files with appropriate links to the parent document. If the original of the redacted file produced in .TIFF format contained animation, video, or audio, that fact shall be reflected by the notation "ANIMATION REDACTED," "VIDEO REDACTED," or "AUDIO REDACTED" as applicable, and the resulting video or audio will be produced as native files with appropriate links to the parent document.

      **iii.**    Microsoft Word or other word-processing files shall be produced as black-and-white, single-page, 300 dpi (minimum) Group IV TIFF images with extracted

text, unless they contain tracked changes or comments, in which case they may instead be produced as native files, at the producing party's option. Regardless of whether produced as TIFF or native, all files will be produced with extracted text and related path provided in document level text files, with load files pursuant to Appendix 1. Microsoft Word or other word-processing files which are redacted may be produced as black-and-white, single-page, 300 dpi (minimum) Group IV TIFF images, with Searchable Text and related path provided in document level text files, with load files pursuant to Appendix 1. All word processing files produced shall include all information contained in the original file, including but not limited to tracked changes, comments, and hidden text, with any redaction clearly delineated. These documents will be identified as redacted within the "REDACTED" field in the .DAT. If the file contains video or audio components, the video or audio will be produced as native files with appropriate links to the parent document. If the original of the redacted file produced in .TIFF format contained animation, video, or audio, that fact shall be reflected by the notation "ANIMATION REDACTED," "VIDEO REDACTED," or "AUDIO REDACTED" as applicable, and the resulting video or audio will be produced as native files with appropriate links to the parent document.

      **iv.**    Audio and video files will be produced in native format. Should redaction be required, the parties will meet and confer promptly to determine a mechanism for accomplishing such redaction.

  **E. Duplicates**. The Parties are not required to produce exact duplicates of electronic

documents. Parties may de-duplicate identical ESI vertically within each custodian or horizontally across custodians, which will be determined as follows:

     **i.**     Electronic files will be de-duplicated based upon calculated MD5 or SHA1 Hash values. File contents only will be used for MD5 or SHA1 Hash value calculation and will not include operating system metadata (*e.g.*, filename, file dates) values.

     **ii.**     Messaging files will be de-duplicated based upon MD5 or SHA1 Hash values for the message family, including parent object and attachments.

     **iii.**     While duplicates within a document family may be de-duplicated, if the same file exists in isolation, it is to be produced.

     **iv.**     If documents are removed as they are duplicates, the metadata for the produced documents will list the names of everyone who had those documents prior to the documents exclusion for each copy of the document.

    **F.**  **System Files.** Electronic file collection may be "De-NISTed" at the producing party's option, removing commercially available, non-user created operating system and application files contained on the National Institute of Standards and Technology ("NIST") file list. Identification of NIST list matches will be through MD5 Hash values.

    **G.**  **Time Zone.** Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Central Time (CT). The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect,

among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text.

**H.  Dynamic fields.** Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE],") rather than the values for such fields existing at the time the file is processed, or at the producing Party's option may be produced in native format.

**I.  Compressed File Types.** Compressed file types (*e.g.*, .zip, .rar) shall be uncompressed for processing.

**J.  <u>Plaintiffs propose the following language, which is italicized for convenience.</u>**

***Parent-Child Relationships.*** *When producing responsive documents, document families should be produced in full and in the order in which they are maintained in the normal course of business, i.e., child documents should be included and produced consecutively numbered immediately after the parent document. Members of an otherwise responsive family should not be withheld except on the basis of a legally recognized claim of privilege. If the parent or child is privileged and withheld on that basis, a slip sheet shall be inserted in the production.*

**<u>Defendants propose the following language, which is italicized for convenience.</u>**

9

***Parent-Child Relationships.*** *When producing responsive documents, document families should be produced in full and in the order in which they are maintained in the normal course of business, i.e., child documents should be included and produced consecutively numbered immediately after the parent document. Members of an otherwise responsive family should not be withheld except on the basis of a legally recognized claim of privilege, unless the individual document is both commercially sensitive and irrelevant. If the parent or child is privileged and withheld for any reason, a slip sheet shall be inserted in the production.*

**K. Embedded Objects.** Parties shall not be required to extract and produce graphics and other objects embedded within production documents.

**L. Bates Numbering and Other Unique Identifiers.** Documents produced in native format will be named with a unique Bates number, and the original file name will be identified in the load file. Bates number ranges will be contiguous. Bates number ranges will not be reused, except with prior written agreement to cover specific reproduction of selected materials. If documents need to be reproduced due to initial production mishaps, then the replacement documents should have the same Bates ranges as previously used, if feasible. For image files (*i.e.*, TIFF images), each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically stamped onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the

10

terms of a Protective Order entered by this Court in this litigation or has been redacted in accordance with applicable law or Court order. In the case of confidential materials as defined in a Protective Order, or materials redacted in accordance with applicable law or Court order, a designation may be electronically stamped onto the document's image at a location that does not obliterate or obscure any information from the source document, other than material being redacted.

**M. Production Media.** Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), thumb drive, such other readily accessible computer or electronic media as the parties may hereafter agree upon, or electronically via secure file share/FTP (the "Production Media"). To the extent feasible, each item of Production Media shall include: (1) the name of the producing party; (2) the production date; (3) a unique production volume, starting with the same Bates prefix used on the documents being produced; (4) name of a technical contact, preferably whoever generated the media item so that in case of extraction issues, the receiving party has someone to talk with; and (5) the Bates number range of the materials contained on such Production Media item or other description of the items. The Production Media shall be accompanied by a transmittal email or letter identifying the aforementioned information.

**N. Encryption.** To maximize the security of information in transit, any Production Media may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media. The encryption method shall be

disclosed prior to data transmission to ensure the receiving party has appropriate access to the encryption technology being used. The producing party will provide a named point of contact, and phone number so that any encryption or data access questions can be quickly and easily resolved.

**O. Electronic Text Files.** For each document, a single text file shall be provided along with the native or image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text shall be extracted directly from the native electronic file where available, unless the document was redacted, an image file, or a physical file. In these instances, a text file created using OCR will be produced in lieu of extracted text.

**P. Metadata.**

**i.** The load files accompanying any scanned paper documents will include the following objective coding fields, where applicable and available:

| Field | Field Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| CUSTODIAN | Custodian designation where appropriate (for documents collected from an archive, the name of the archive will be listed) |
| BEGATTACH | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family |

| Field | Field Description |
|---|---|
| PARENT_BATES | First Bates identifier of parent document; or, for a standalone document, the BEGBATES<br><br>**This PARENT_BATES field should be populated in each record** |
| CHILD_BATES | First Bates identifier of "Child" attachment(s); may be more than one Bates number listed depending on number of attachments.<br><br>**The CHILD_BATES fields should be populated in each record representing a "parent" document.** |
| FAMILY_COUNT | Number of documents in a family (parent + child documents) |
| PAGE COUNT | Number of pages |
| TEXTLINK | Link to text file for the document |
| PROD VOLUME | Production Volume |
| CONFIDENTIALITY | Confidentiality designation for the document pursuant to the Protective Order |
| PAPER | Indication of whether the document is a scanned paper document |

    **ii.**       The following list identifies the minimum metadata fields that will be included in Load files accompanying ESI, to the extent applicable, available, and/or unredacted:

| Field | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|
| BEGBATES | First Bates identifier of item | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item | Last Bates identifier of item |
| ATTRANGE | Bates identifier of the first page of the "parent" document to the Bates identifier of the last page of the last attachment "child" document | Bates identifier of the first page of the "parent" document to the Bates identifier of the last page of the last attachment "child" document |
| BEGATTACH | Starting Bates number of a document family | Starting Bates number of a document family |

| ENDATTACH | Ending Bates number of a document family | Ending Bates number of a document family |
|---|---|---|
| PARENT_BATES | First Bates identifier of parent document/email message; or, for a standalone document, the BEGBATES.<br><br>**This PARENT_BATES field should be populated in each record.** | First Bates identifier of parent document/email message; or, for a standalone document, the BEGBATES.<br><br>**This PARENT_BATES field should be populated in each record.** |
| CHILD_BATES | First Bates identifier of "child" attachment(s); may be more than one Bates number listed depending on number of attachments<br><br>**The CHILD_BATES fields should be populated in each record representing a "parent" document** | First Bates identifier of "child" attachment(s); may be more than one Bates number listed depending on number of attachments.<br><br>**The CHILD_BATES fields should be populated in each record representing a "parent" document** |
| FAMILY_COUNT | Number of documents in a family (parent + child documents) | Number of documents in a family (parent + child documents) |
| PAGE_COUNT | Number of pages (TIFF documents only) | Number of pages (TIFF documents only) |
| CUSTODIAN | Custodian designation where appropriate (for documents collected from an archive, the name of the archive will be listed) | Custodian designation where appropriate (for documents collected from an archive, the name of the archive will be listed) |
| DUPLICATE_CUSTODIANS | Other custodians of a deduplicated document, if applicable (for documents collected from an archive, the name of the archive will be listed) | Other custodians of a deduplicated document, if applicable (for documents collected from an archive, the name of the archive will be listed) |
| AUTHOR | Document author from Metadata | n/a |
| FROM | n/a | Contents of this metadata field, or an equivalent |
| TO | n/a | Contents of this metadata field, or an equivalent |
| Cc | n/a | Contents of this metadata field, or an equivalent |

14

| BCC | n/a | Contents of this metadata field, or an equivalent |
|---|---|---|
| SUBJECT | n/a | Contents of this metadata field, or an equivalent |
| TITLE | Title from a document's properties | n/a |
| IMPORTANCE | n/a | For emails, "High," "Low," or "Normal" (or equivalent if an email client other than Outlook was used) |
| SENT_DATE_TIME | n/a | The sent date and time of the message in the format MM/DD/YYYY HH:MM. |
| RECEIVED_DATE_TIME | n/a | The date and time the message was received in the format MM/DD/YYYY HH:MM. |
| CREATED_DATE_TIME | The document's creation date and time or operating system creation date and time in the format MM/DD/YYYY HH:MM | n/a |
| MOD_DATE_TIME | Document's last modified dated and time or operating system last modified date and time in the format MM/DD/YYYY | n/a |
| FILE_NAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILE EXTEN | File extension | File extension |
| FILE_SIZE | Size of the file in bytes | Size of the file in bytes |
| FILE_TYPE | Contents of this metadata field, or an equivalent. The use of this value will be consistent across all productions. | "email" |
| FILE_PATH | File path of the document | n/a |
| HASH_VALUE | MDS or SHA1 hash of the document | MDS or SHA1 hash of the email |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) |

15

| TEXTLINK | Link to text file for the document | Link to text file for the email |
| PROD VOLUME | Production Volume | Production Volume |
| CONFIDENTIALITY | Confidentiality designation for the document pursuant to a Protective Order | Confidentiality designation for the email pursuant to a Protective Order |

      **iii.**      Such metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original metadata of the document; or would be burdensome or costly to obtain. The Parties agree to meet and confer if these metadata fields cannot be provided for a particular set of documents or if additional fields of metadata are requested.

## III.   STRUCTURED DATA

The Parties shall meet and confer regarding the production of structured data as needed.

## IV.   OBJECTIONS TO ESI PRODUCTION

**A.** If any formatting requirements or other specifications agreed to in this protocol are later determined by the producing party to be not feasible, or unduly burdensome or unreasonably costly, the Parties will promptly meet and confer in order to attempt to agree upon appropriate modifications to the protocol before presenting any such issue to the Court.

**B.** A producing party shall produce ESI in the format agreed to in this Protocol, or as otherwise agreed by the parties, except that nothing in this paragraph shall prohibit a

16

producing party from producing a document in both native and non-native format. If an issue arises, the issue will only be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet and confer process.

## V.  AUTHENTICITY AND ADMISSIBILITY

Nothing in this Protocol shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity and admissibility of any document or data are preserved and may be asserted at any time.

## VI.  DOCUMENTS PROTECTED FROM DISCOVERY

**A. Non-Waiver.**  Pursuant to Fed. R. Evid. 502(d) and the operative Protective Order, any Party's production of ESI covered by an applicable privilege or protection shall not constitute a waiver of the privilege or protection with respect to the ESI or the subject matter of the ESI in this case or any other federal or state proceeding, arbitration, or other forum.  Nothing in this paragraph shall require a Party to produce ESI protected from disclosure.  This paragraph shall be interpreted to provide the greatest protection allowed by Fed. R. Evid. 502, or otherwise permitted by law.  Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.  The Parties will not make an argument that a privilege was waived with respect to discoverable information produced either directly or through a privilege log.

17

**B. Clawback Provision: Disputing Claims of Privilege over Produced Documents**. Upon receipt of notice of the assertion of a privilege over produced discoverable information, the receiving Party shall either:

**i.**     to the extent it contests the privilege asserted, promptly so notify the producing Party, and sequester the contested document(s). The Parties shall meet and confer to attempt to resolve the disagreement regarding the privilege. If the Parties are unable to resolve the disagreement after meeting and conferring in good faith, the Party asserting the privilege shall notify the Court of their unresolved dispute(s) and seek a resolution in accordance with the procedure for discovery disputes set forth in the Scheduling Order; or

**ii.**     to the extent it does not contest the privilege asserted, promptly certify in writing to the producing Party that it has returned or made reasonably diligent efforts to identify and destroy each copy of the privileged discoverable information, including all information derived therefrom.

**C. Privilege Logs.** Privilege logs shall contain the following information for each withheld or redacted document, except those listed in Paragraph VI.D below:

**i.**      sequential number associated with each privilege log record;

**ii.**     the date of the document;

**iii.**     the Bates numbers of documents redacted

**iv.**     the identity of all persons who sent, authored, or otherwise prepared the document, including the denotation of which of them are attorneys;

18

    **v.**    the identity of all persons designated as addressees or copyees, including the denotation of which of them are attorneys;

    **vi.**    a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; and

    **vii.**    the type or nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine).

**D. Documents Presumptively Excluded from Privilege Logs.** The following documents presumptively need not be included on a privilege log:

    **i.**    Communications exclusively between a Party and its outside counsel regarding this litigation.

    **ii.**    Work product regarding this litigation and created after commencement of this Action.

    **iii.**    In the interest of the Parties' time, and to minimize litigation costs, the Parties shall in good faith negotiate the exclusion of any other categories of documents that, while technically responsive and privileged, are relatively irrelevant to the issues in the litigation.

## VII. OTHER

**A.** Any Party serving a subpoena *duces tecum* will take reasonable steps to instruct the subpoena recipient to produce electronic documents in a reasonably useable format, similar to the format set forth herein. The Issuing Party will produce any ESI,

19

documents, or information obtained under a subpoena to all other Parties in the same format in which it is received from the third party, including load files. No Issuing Party shall be obligated to produce anything other than the documents and other information (such as load files) that it receives from a subpoena recipient.

**B.** No Issuing Party has any obligation to incur expenses in conducting additional processing of ESI received in response to a subpoena prior to producing such ESI to other Parties to the lawsuit.

**C.** Except as specifically set forth herein, nothing in this Protocol shall alter the parties' respective responsibilities to otherwise comply with the applicable Federal Rules of Civil Procedure and any applicable Local Rules regarding the collection or production of ESI.

IT IS SO ORDERED.

Dated: _____, 2018

_____
The Honorable Franklin L. Noel
United States Magistrate Judge

20

## APPENDIX 1: FILE FORMATS

**All load files will be produced in Concordance Load File format and be consistent in layout across productions.**

**A. <u>Image Load Files:</u>** In general, image load files will meet these requirements. The Parties agree to meet and confer further if meeting these requirements is not reasonably possible.

- Every document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data. This will include a native link   (path to the native file as included in the production, *e.g.*, d:\PROD001\natives\ABC00015.xls) for all files produced in native format.

- The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt, or .dii extension (*e.g.*, ABC001.lfp).

- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, et. seq.).

- The producing party will provide document level OCR text files to accompany the TIFF format production. Each document's electronic image will convey the same information and image as the original document, except for redactions. OCR will be run on the redacted document.

- The image load file shall contain one row per TIFF image.

- Every image in the delivery volume shall be contained in the image load file.

- The image key shall be named the same as the Bates number of the page.

- Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.), *i.e.*, a separate volume shall be created for each piece of media delivered.

**B. <u>Metadata Load Files:</u>** In general, metadata load files will meet these requirements. The Parties agree to meet and confer further if meeting these requirements is not reasonably possible.

- The metadata load file shall use the following delimiters:

    o Column Delimiter: Pilcrow - ¶ (ASCII :020)
    o Text Qualifier: Thorn - þ (ASCII :254)
    o New line: Registered sign - ® (ASCII 174)

- The first record shall contain the field names in the order of the data set forth in Section II.O above.

21

- Metadata fields that are not applicable to a document shall be blank cells.

- All date fields shall be produced in "mm/dd/yyyy HH:MM:SS [AM/PM]" format standardized to Central Time (CT).

- A carriage-return line-feed shall be used to indicate the start of the next record.

- Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (*i.e.*, ABC001.dat).

- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et seq.*).

- The .dat and .txt files shall be encoded in UTF-8 or UTF-16 coding. Coding shall be consistent across all productions.

## C.   <u>Scanned Hardcopy Documents:</u>

1.      In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically unitized).

2.      OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file. The text file shall contain image keys/Bates numbers for each page.

3.      In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the attachment fields.