# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| *Hudock et al. v. LG Electronics U.S.A., Inc. et al.*<br><br>This Document Relates To:<br><br>All Actions | Lead Case No. 0:16-cv-01220-JRT-KMM<br><br>**ANSWER OF LG ELECTRONICS U.S.A., INC. TO PLAINTIFFS' CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT** |

Defendant LG Electronics U.S.A., Inc. ("LG") hereby answers Plaintiffs' Consolidated Second Amended Class Action Complaint (the "Second Amended Complaint"), dated May 1, 2019, filed in the above-captioned action (the "Action") and asserts affirmative defenses to the Second Amended Complaint as follows.

## INTRODUCTION

1.   **This is a class action on behalf of consumers who purchased LG televisions.**

Paragraph 1. *Answer*: LG denies the allegations contained in Paragraph 1 of the Second Amended Complaint, except admits that Plaintiffs purport to bring this action on behalf of consumers who purchased LG televisions.

2.   **LG labels its LED televisions as having refresh rates of "120Hz" or "240Hz" when, in actuality, its televisions' refresh rates are 60Hz and 120Hz, respectively.**

Paragraph 2. *Answer*: LG denies the allegations contained in Paragraph 2 of the Second Amended Complaint.

3.   **"Hz," the scientific symbol for the unit "Hertz," literally means one cycle per second. In the television industry, Hz is the standard unit of measurement for reporting a television's refresh rate, that is, how many unique images per second are displayed on the television screen. "120Hz" literally means 120 unique images per second. "240Hz" literally means 240 unique images per second. By expressly misrepresenting the refresh rate as a specific number of cycles per second, LG has deliberately misled consumers into believing that LG's LED televisions have a higher refresh rate than they actually have.**

1

Paragraph 3. *Answer*: LG denies the allegations contained in Paragraph 3 of the Second Amended Complaint, and states that television refresh rates are generally expressed in Hertz, which is defined by the International System of Units as "cycles per second."

4.    **A television's refresh rate is directly linked to picture quality, and is one of the most material specifications touted by television manufacturers to consumers. Due to the advanced technology required to achieve refresh rates higher than 60, higher refresh rates are directly, demonstrably and mathematically linked to higher prices.**

Paragraph 4. *Answer*: LG denies the allegations contained in Paragraph 4 of the Second Amended Complaint, except states that at times manufacturers advertise a television's refresh rate as a specification that could be relevant to some purchasers' decisions, and states that pricing for televisions is based on myriad factors.

5.    **Best Buy has likewise advertised LG televisions using misleading and untrue specifications. Like LG, Best Buy markets and advertises the LG televisions with the same false refresh rates as LG. Best Buy makes these false assertions in advertisements and information displayed to customers in its stores and on its website.**

Paragraph 5. *Answer*: LG denies the allegations contained in Paragraph 5 of the Second Amended Complaint regarding the claimed "misleading and untrue specifications," "false refresh rates," and "false assertions," as they relate to LG, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 of the Second Amended Complaint.

6.    **As a consequence of Defendants' fraudulent scheme, Plaintiffs paid more for LG's LED television than he would have otherwise paid had the accurate refresh rate been disclosed by Defendants. Due to Defendants' deceptive practices, Plaintiffs received televisions with lower picture quality than represented by Defendants. Plaintiffs' experience and injury is typical of many consumers who have purchased LG televisions.**

Paragraph 6. *Answer*: LG denies the allegations contained in Paragraph 6 of the Second Amended Complaint.

## PARTIES

**A.    Plaintiffs**

7.     **Plaintiff Ivan Villa Lara ("Villa Lara") is a resident of Los Angeles County, California who purchased an LG television, model number 55LN5100 from Best Buy.**

Paragraph 7. Answer: LG denies that Plaintiff Villa Lara purchased an LG

television, model number 55LN5100, from Best Buy. LG denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations

contained in Paragraph 7 of the Second Amended Complaint.

8.     **Plaintiff Scott Poppen ("Poppen") is a resident of Kane County, Illinois who purchased two LG televisions, model numbers 55LA6200 and 55LN5100 from Best Buy.**

Paragraph 8. *Answer*: To the extent that the allegations contained in Paragraph 8

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

9.     **Plaintiff Benjamin Hudock is a resident of East Troy, Wisconsin who, jointly with his wife, Plaintiff Breann Hudock, purchased an LG television, model number 55LN5100-UB from Best Buy.**

Paragraph 9. *Answer*: To the extent that the allegations contained in Paragraph 9

relate to Benjamin Hudock's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Hudock from this

Action (ECF 178), those allegations are moot, and no answer is required.

10.    **Plaintiff Breann Hudock is a resident of East Troy, Wisconsin who, jointly with her husband, purchased an LG television, model number 55LN5100-UB from Best Buy (together, with Benjamin Hudock, the "Hudock Plaintiffs").**

Paragraph 10. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 10 of the Second

3

Amended Complaint. To the extent that the allegations contained in Paragraph 10

relate to Benjamin Hudock's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Benjamin Hudock

from this Action (ECF 178), those allegations are moot, and no answer is required.

**11.      Plaintiff Gerald DeLoss ("DeLoss") is a resident of Deerfield, Illinois. Plaintiff DeLoss purchased a 55" LG UF6450 series television from Kohl's.**

Paragraph 11. *Answer*: To the extent that the allegations contained in Paragraph 11

relate to Plaintiff DeLoss' claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff DeLoss from this Action

(ECF 177), those allegations are moot, and no answer is required.

**12.      Plaintiff Eugene Mannacio ("Mannacio") is a resident of Novato, California who purchased an LG television, model number 60UH7700, from Best Buy.**

Paragraph 12. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 12 of the Second

Amended Complaint.

**13.      Plaintiff Brian Fleishman ("Fleishman") is a resident of Willow Grove, Pennsylvania who purchased an LG television, model number 55-LA-9650, from Best Buy.**

Paragraph 13. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 13 of the Second

Amended Complaint.

**14.      Plaintiff Piakanae Carpenter ("Carpenter") is a resident of Mabelton, Georgia who purchased an LG television, model number 47 LN 5700, from a Best Buy store located in Long Island, New York.**

Paragraph 14. *Answer*: To the extent that the allegations contained in Paragraph 14

relate to Plaintiff Carpenter's claims against LG, those claims were dismissed

pursuant to the Court's May 15, 2019 Order dismissing Plaintiff DeLoss from this

Action (ECF 179), those allegations are moot, and no answer is required.

**B.    LG Electronics U.S.A., Inc.**

**15.    Defendant LG Electronics U.S.A., Inc. is a New Jersey corporation with its principal place of business in Englewood Cliffs, New Jersey.**

Paragraph 15. *Answer*: LG denies the allegations contained in Paragraph 15 of the

Second Amended Complaint, but states that LG's principal place of business is in

Englewood Cliffs, New Jersey.

**16.    Defendant LG sells its LED televisions through retailers, including Best Buy, and supplies retailers, including Best Buy, with all specifications for its LED televisions with the intent that retailers pass that information to consumers.**

Paragraph 16. *Answer*: LG admits that "LG sells its LED televisions through

retailers, including Best Buy" and that LG provides retailers, including Best Buy,

with information regarding its LED televisions. LG otherwise denies the allegations

contained in Paragraph 16 of the Second Amended Complaint.

**C.    Best Buy**

**17.    Defendant Best Buy Co., Inc. is a Minnesota corporation with its principal place of business in Richfield, Minnesota.**

Paragraph 17. *Answer*: LG states that the allegations contained in Paragraph 17 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies that it has sufficient

knowledge or information to admit or deny the allegations contained in Paragraph 17

of the Second Amended Complaint, and those allegations therefore are denied.

**18.    Defendant Best Buy Stores, L.P., is a Virginia limited partnership with its principal place of business in Richfield, Minnesota.**

Paragraph 18. *Answer*: LG states that the allegations contained in Paragraph 18 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies that it has sufficient

knowledge or information to admit or deny the allegations contained in Paragraph 18

of the Second Amended Complaint, and those allegations therefore are denied.

**19.     Defendant BestBuy.com, LLC, is a Virginia limited liability company with its principal place of business in Richfield, Minnesota.**

Paragraph 19. *Answer*: LG states that the allegations contained in Paragraph 19 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies that it has sufficient

knowledge or information to admit or deny the allegations contained in Paragraph 19

of the Second Amended Complaint, and those allegations therefore are denied.

**20.     As set forth herein, all claims asserted against the Best Buy entities are asserted against Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC under a direct liability theory, agency theory, and alter ego theory based on the following facts:**

Paragraph 20. *Answer*: LG states that Paragraph 20 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required. To

the extent that the allegations set forth in Paragraph 20 are deemed to be factual in

whole or in part, and are determined to relate to LG, LG denies the allegations set

forth in Paragraph 20.

*Direct Liability*

**21.     Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC are all directly liable to Plaintiffs for the conduct alleged herein.**

Paragraph 21. *Answer*: LG states that the allegations contained in Paragraph 21 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required LG denies the allegations set

forth in Paragraph 21.

22.   **Best Buy Co., Inc. centrally manages, at its corporate headquarters in Minnesota, the development of all Best Buy merchandise and services offerings, *pricing and promotions*, procurement and supply chain, *online and mobile application operations, marketing and advertising* and labor deployment across all channels.**

Paragraph 22. *Answer*: LG states that the allegations contained in Paragraph 22 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Second Amended Complaint.

23.   **Best Buy Co., Inc. conducts and controls both its online and brick-and-mortar retail operations—including the marketing and sale of LG televisions with misleading and false refresh rates—through Best Buy Stores, L.P.**

Paragraph 23. *Answer*: LG states that the allegations contained in Paragraph 23 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 23 of the Second Amended Complaint regarding the claimed "misleading and false refresh rates," and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 of the Second Amended Complaint.

24.   **Best Buy Stores, L.P. conducts and controls its online and brick-and-mortar retail operations—including the marketing and sale of the LG television with a misleading and false refresh rate purchased by Plaintiffs—through the website BestBuy.com and through Best Buy stores.**

Paragraph 24. *Answer*: LG states that the allegations contained in Paragraph 24 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 24 of the Second Amended Complaint regarding the claimed "misleading and false refresh rates," and denies knowledge or information sufficient

to from a belief as to the truth of the remaining allegations contained in Paragraph 24

of the Second Amended Complaint.

25. **BestBuy.com, LLC, which is wholly owned by parent Best Buy Stores, L.P., operates the retail website through which Plaintiffs saw some of the false, deceptive, and misleading advertising for the LG televisions at issue in this case and through which Best Buy Co., Inc., and Best Buy Stores, L.P., directed and conducted these marketing and retail activities.**

Paragraph 25. *Answer*: LG states that the allegations contained in Paragraph 25 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies the allegations

contained in Paragraph 25 of the Second Amended Complaint regarding the claimed

"false, deceptive, and misleading advertising for the LG televisions at issue," and

denies knowledge or information sufficient to from a belief as to the truth of the

remaining allegations contained in Paragraph 25 of the Second Amended Complaint.

26. **Best Buy Co., Inc. sells consumer electronics through its retail stores, as well as through BestBuy.com.**

Paragraph 26*. Answer*: LG states that the allegations contained in Paragraph 26 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 26 of the Second Amended Complaint, and states that that certain Best

Buy entities sell numerous consumer products including consumer electronics.

27. **Best Buy Co., Inc. negotiates directly with key vendors, including LG, for payment terms, promotional programs, return policies, and factory warranties to maximize profitability of its retail sales, conducted through Best Buy Stores, L.P., and BestBuy.com.**

Paragraph 27. *Answer*: LG denies the allegations contained in Paragraph 27 of the

Second Amended Complaint.

28. **Best Buy Co., Inc., worked directly with LG, Best Buy Stores, L.P., and BestBuy.com, LLC, to advertise and sell the deceptively advertised LG television at issue in this case.**

Paragraph 28. *Answer*: LG denies the allegations contained in Paragraph 28 of the

Second Amended Complaint.

*Agency Liability*

29. **Best Buy Co., Inc. and BestBuy.com, LLC, are liable as principles of their agent, Best Buy Stores, L.P., for directing and controlling the unlawful acts as alleged herein.**

Paragraph 29. *Answer*: LG states that the allegations contained in Paragraph 29 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies the allegations

contained in Paragraph 29 of the Second Amended Complaint.

30. **BestBuy.com, LLC, is a wholly owned subsidiary of Best Buy Stores, L.P.**

Paragraph 30. *Answer*: LG states that the allegations contained in Paragraph 30 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 30 of the Second Amended Complaint.

31. **Best Buy Stores, L.P., is a subsidiary of Best Buy Co., Inc., the parent holding company for various Best Buy businesses.**

Paragraph 31. *Answer*: LG states that the allegations contained in Paragraph 31 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 31 of the Second Amended Complaint.

32.     **Best Buy Co., Inc. centrally manages, at its corporate headquarters in Minnesota, the development of all Best Buy merchandise and services offerings, *pricing and promotions*, procurement and supply chain, *online and mobile application operations, marketing and advertising* and labor deployment across all channels.**

Paragraph 32. *Answer*: LG states that the allegations contained in Paragraph 32 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Second Amended Complaint.

33.     **Best Buy Co., Inc. thus conducts its retail operations of consumer electronics, home office products, entertainment software, appliances, and related services using its subsidiary arm, Best Buy Stores, L.P.**

Paragraph 33. *Answer*: LG states that the allegations contained in Paragraph 33 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Second Amended Complaint.

34.     **In turn, Best Buy Stores, L.P. conducts its online retail operations on its website using its subsidiary, BestBuy.com, LLC.**

Paragraph 34. *Answer*: LG states that the allegations contained in Paragraph 34 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Second Amended Complaint.

35.     **At the direction and under the control of Best Buy Co., Inc., Best Buy Stores, L.P., deceptively advertised and sold LG televisions with false refresh rates, as described herein, both in stores and online.**

Paragraph 35. *Answer*: LG states that the allegations contained in Paragraph 35 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 35 of the Second Amended Complaint regarding "deceptively advertised" and "false refresh rates," and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 35 of the Second Amended Complaint.

36.     **At the direction and under the control of Best Buy Stores, L.P., BestBuy.com, LLC, approved and published the deceptively worded messages regarding refresh rates to be associated with the LG televisions depicted for sale online.**

Paragraph 36. *Answer*: LG states that the allegations contained in Paragraph 36 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 36 of the Second Amended Complaint regarding "deceptively worded messages regarding refresh rates" and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 36 of the Second Amended Complaint.

*Alter Ego Liability*

37.     **BestBuy.com, LLC, and Best Buy Stores, L.P., are alter egos for the parent and holding company, Best Buy Co., Inc., for purposes of the unjust and deceptive acts alleged herein.**

Paragraph 37. *Answer*: LG states that the allegations contained in Paragraph 37 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 37 of the Second Amended Complaint regarding "unjust and deceptive acts alleged herein" and states the remaining allegations contained in

Paragraph 37 of the Second Amended Complaint purport to state a legal conclusion as to which no response is required. To the extent that the remaining allegations set forth in Paragraph 37 are deemed to be factual in whole or in part, and are determined to relate to LG, LG denies the remaining allegations set forth in Paragraph 37.

**38.** **Best Buy Co., Inc. centrally manages, at its corporate headquarters in Minnesota, the development of all Best Buy merchandise and services offerings, *pricing and promotions*, procurement and supply chain, *online and mobile application operations, marketing and advertising* and labor deployment across all channels.**

Paragraph 38. *Answer*: LG states that the allegations contained in Paragraph 38 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the Second Amended Complaint.

**39.** **All three entities are significantly intertwined such that the parent corporation has a close, synergistic relationship with its subsidiaries that transcends mere ownership. Acting through its various affiliates including Best Buy Stores, L.P., and BestBuy.com, LLC, Best Buy Co., Inc., is the largest specialty retailer of consumer electronics in the world. Best Buy Co., Inc. actively identifies itself as the retailer of the products it sells, not its subsidiaries.**

Paragraph 39. *Answer*: LG states that the allegations contained in Paragraph 39 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39 of the Second Amended Complaint.

**40.** **The entities do not observe corporate distinctions for purposes of sharing the inventory they offer to customers. Best Buy Co., Inc., manages its U.S. retail operations with leadership teams responsible for all areas of its business, operating an omni-channel platform that it says provides customers the ability to shop when and where they want. Through the Best Buy website, customers may elect to pick up orders initiated online in any Best Buy store, or have merchandise shipped directly to them from a Best Buy distribution center or retail store.**

Paragraph 40. *Answer*: LG states that the allegations contained in Paragraph 40 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 of the Second Amended Complaint.

41.     **All three Best Buy entities share a single, principle executive office in Richfield, Minnesota.**

Paragraph 41. *Answer*: LG states that the allegations contained in Paragraph 41 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Second Amended Complaint.

42.     **The sole internet presence for all three entities is www.bestbuy.com.**

Paragraph 42. *Answer*: LG states that the allegations contained in Paragraph 42 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 of the Second Amended Complaint.

43.     **All three Best Buy entities share overlapping policies related to consumer transactions including, but not limited to, the Conditions of Use for their shared retail website, www.bestbuy.com, and privacy policies applicable to websites owned or operated by Best Buy Co., Inc., and its subsidiaries, as well as information collected in Best Buy stores or other locations under the Best Buy name.**

Paragraph 43. *Answer*: LG states that the allegations contained in Paragraph 43 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 43 of the Second Amended Complaint.

44.     **All three Best Buy entities honor the same consumer rewards programs - the "My Best Buy" rewards program and the benefits flowing from use of the Best Buy credit card or "My Best Buy Visa card" apply to both purchases in store and online.**

Paragraph 44. *Answer*: LG states that the allegations contained in Paragraph 44 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 44 of the Second Amended Complaint.

45.     **All three Best Buy entities share the benefits of established intellectual property rights such as trademarks including, for example, in BEST BUY, the BEST BUY logo, the tag design, MY BEST BUY, and BESTBUY.COM, such that no entity has an independent identity to consumers. These marks, however, are not "owned" by Defendants but by other of their Best Buy entities, including Best Buy Concepts, Inc., and BBY Solutions, Inc., demonstrating the control Best Buy Co., Inc. exerts over its various arms.**

Paragraph 45. *Answer*: LG states that the allegations contained in Paragraph 45 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 45 of the Second Amended Complaint.

46.     **The domain name "bestbuy.com" is registered to BBY Solutions, Inc., (and not BestBuy.com), further demonstrating the control Best Buy Co., Inc. exerts over its subsidiaries and affiliates, in addition to the informal nature under which the various Best Buy entities are operated.**

Paragraph 46. *Answer*: LG states that the allegations contained in Paragraph 46 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 46 of the Second Amended Complaint.

47.     **The Best Buy entities' collective operations to promote retail sales of consumer electronics, among other activities, establish a functional economic unity between the companies. For purposes of the retail sales of the subject LG televisions, and the statements made to the public in connection with those sales, Best Buy Defendants have no independent identity.**

Paragraph 47. *Answer*: LG states that the allegations contained in Paragraph 47 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies knowledge or

information sufficient to form a belief as to the truth of the allegations contained in

Paragraph 47 of the Second Amended Complaint.

48.     **It is necessary to hold all three entities liable for the false and deceptive practices implicated by the advertising on the Best Buy website as Best Buy Stores, L.P., and in turn, BestBuy.com, LLC, are vehicles through which Best Buy Co., Inc., has unjustly engaged in false and misleading advertising as alleged herein.**

Paragraph 48. *Answer*: LG states that the allegations contained in Paragraph 48 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies the allegations

contained in Paragraph 48 of the Second Amended Complaint regarding any

misleading or false advertising of refresh rates. The remaining allegations contained

in Paragraph 48 consist of argument which does not require a response.

## JURISDICTION AND VENUE

49.     **This Court has jurisdiction over the instant lawsuit pursuant to 28 U.S.C. § 1332(d)(2), because the parties are sufficiently diverse, there are more than 100 members in the class and the aggregate amount in controversy exceeds $5,000,000, exclusive of attorneys' fees, interest, and costs.**

Paragraph 49. *Answer*: LG states that Paragraph 49 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required. To

the extent that the allegations set forth in Paragraph 49 are deemed to be factual in

whole or in part, LG denies the allegations set forth in Paragraph 49.

50. **This Court has personal jurisdiction over the Defendants because they conduct substantial and continuous business in the State of Minnesota.**

Paragraph 50. *Answer*: LG states that Paragraph 50 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required. To

the extent that the allegations set forth in Paragraph 50 are deemed to be factual in

whole or in part, LG denies the allegations set forth in Paragraph 50.

51. **Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions that give rise to the claims occurred within the State of Minnesota and the Defendants conduct a substantial part of their business within this District.**

Paragraph 51. *Answer*: LG states that Paragraph 51 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required. To

the extent that the allegations set forth in Paragraph 51 are deemed to be factual in

whole or in part, LG denies the allegations set forth in Paragraph 51.

## SUBSTANTIVE ALLEGATIONS

A. **General Allegations**

52. **When watching television, the viewer is exposed to a series of still images displayed in rapid succession, which gives the appearance of motion on the television screen. The number of times a television is able to display a unique image per second is referred to as the television's refresh rate and is measured in Hertz, abbreviated as "Hz." Refresh rate, and the corresponding Hz measurement, are industry standard specifications that directly correspond to each other—a television with a refresh rate of 60Hz displays 60 unique images per second; a television with a refresh rate of 120Hz displays 120 unique images per second; and a television with a refresh rate of 240Hz displays 240 unique images per second. Simply stated, for televisions, refresh rate equals Hz and Hz equals refresh rate.**

Paragraph 52. *Answer*: LG denies the allegations contained in Paragraph 52 of the

Second Amended Complaint, and states refresh rate is generally expressed in Hertz,

which is defined by the International System of Units as "cycles per second"; and

what a consumer perceives as motion on a television is actually the display of numerous still images in rapid succession.

53.     **The refresh rate, or Hz measurement, is a vital specification of a television. Higher refresh rates serve to reduce or eliminate motion blur when fast moving objects or scenes appear on screen. It is somewhat analogous to the shutter speed of a camera—the faster the shutter speed, the better a camera is able to capture a moving object as a still frame, without motion blur. In much the same way, the more often a television can refresh the picture and generate unique images, the better and more clearly a television is able to display moving objects on the screen.**

Paragraph 53. *Answer*: LG denies the allegations contained in Paragraph 53 of the Second Amended Complaint, except admits to the existence of "motion blur," and states that there are a variety of causes that have been suggested by different commentators for motion blur in televisions.

54.     **A significant hurdle to increasing the refresh rates for televisions is that electric current runs at 60Hz in the United States. This means that the natural, or native, refresh rate of a television can be at most 60Hz because only 60 unique images per second are able to be carried by the electrical frequency.**

Paragraph 54. *Answer*: LG denies the allegations contained in Paragraph 54, except admits upon information and belief that electric current runs at 60 Hz in the United States.

55.     **In order to surpass the 60Hz barrier and produce 120Hz and 240Hz televisions that display the corresponding number of unique images per second, a manufacturer producing a 120Hz or 240Hz refresh rate television must incorporate advanced interpolation technology. Such technology predicts, creates and displays an extra unique image (or images) in between each of the 60 images that are produced by the 60Hz electrical current. For example, a regular 60Hz television displays 60 unique images per second as follows: A-B-C-D-E-F-G-H and so on. A 120Hz television with interpolation technology takes the same broadcast and displays 120 unique images per second in the following manner: A-ab-B-bc-C-cd-D-de-E-ef-F-fg-G-gh-H and so on. For a television to have a refresh rate greater than 60Hz, it must rely on some form of advanced interpolation technology.**

Paragraph 55. *Answer*: LG denies the allegations contained in Paragraph 55, except states that for a television to have a refresh rate greater than 60 Hz, it must rely on some form of technology.

56.   **Given the technological challenges (and cost) in surpassing the inherent 60Hz threshold, television manufacturers, rather than investing in the technology to increase the actual Hz and refresh rates of their televisions, have developed alternate methods to artificially enhance the perceived performance of their products without actually increasing the refresh rate to the specified number of unique images per second.**

Paragraph 56. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 56 of the Second

Amended Complaint as they relate to other television manufacturers, and denies all

allegations contained in Paragraph 56 of the Second Amended Complaint as they

relate to LG.

57.   **The actual refresh rate of LG's LED televisions are one-half of the refresh rates LG represents in its specifications held out to consumers. An LG LED television marketed as "120Hz" has an actual refresh rate of 60Hz and shows 60 unique images per second, an LG LED television marketed as "240Hz" has a refresh rate of 120Hz and shows 120 unique images per second.**

Paragraph 57. *Answer*: LG denies the allegations contained in Paragraph 57 of the

Second Amended Complaint.

58.   **As already stated, the Hz specification of a television has a specific and particular meaning: Hz is the accepted and conventional method used to determine a television's refresh rate. LG has hijacked this unit of measurement and represented it as a "specification" that is a complete fabrication.**

Paragraph 58. *Answer*: LG denies the allegations contained in Paragraph 58 of the

Second Amended Complaint, and states that television refresh rates are generally

expressed in Hertz, which is defined by the International System of Units as "cycles

per second."

59.   **Compounding the confusion and deception, the actual and true refresh rate of LG's televisions are not made readily available, in any medium, to the consumer.**

Paragraph 59. *Answer*: LG denies the allegations contained in Paragraph 59 of the

Second Amended Complaint.

60.   **Shockingly, while LG makes it a practice to conceal the actual and true Hz specification of their televisions, they make a particularly pointed effort to literally misrepresent the refresh rate of their televisions in print and on the internet. Through its website, LG makes available "Spec Sheets" for their television models. In the Spec Sheet is a line dedicated to refresh rate. On 60Hz televisions, LG's spec sheets list the refresh rate as "120Hz"; on 120Hz televisions, LG's spec sheets list the refresh rate as "240Hz." The refresh rate specification is misrepresented in Hz and is listed at one-hundred percent over its true value.**

Paragraph 60. *Answer*: LG denies the allegations contained in Paragraph 60 of the

Second Amended Complaint, except states that at times LG has made available

information on its website addressing the specifications of televisions it manufactures

and refers to those postings for their true and complete contents.

61.   **Overall, LG's actions in marketing its televisions with regard to refresh rate consist of efforts to conceal, fabricate, and misrepresent information to retailers, with the intent that retailers rely on such information, adopt that information, and then pass it on directly to the consumer. It is akin to LG marketing a 48-inch television but representing that the television is 55 inches. Only with refresh rates, the misrepresentation is even more egregious because a consumer has no method to validate refresh rate claims—they are left with no choice but to rely on the manufacturer's and retailer's representations.**

Paragraph 61. *Answer*: LG denies the allegations contained in Paragraph 61 of the

Second Amended Complaint.

62.   **A consumer's lone bulwark against LG's efforts to deceive and the barrage of misinformation, obfuscation and concealment that follows, is reliance on a seemingly objective and informed third party to provide accurate and reliable information regarding LG's LED televisions. Retailers of LG's televisions are in such a position, and consumers often depend on them to provide guidance and to help them differentiate among items.**

Paragraph 62. *Answer*: LG denies the allegations contained in Paragraph 62 of the

Second Amended Complaint.

63.   **Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC, as retailers of LG's televisions, are in a position to inform consumers and provide them with accurate information regarding LG's televisions and, in particular, the refresh rates of those televisions. In fact, Best Buy holds itself out to be experts in the products they sell as their company motto is, "Expert Service. Unbeatable Price."**

Paragraph 63. *Answer*: LG states that the allegations contained in Paragraph 63 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in the first sentence of Paragraph 63 of the Second Amended Complaint, and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 63 of the Second Amended Complaint.

64.     **However, as is standard industry practice, retailers—including Best Buy— rely on manufacturers—including LG—to provide specifications and the content to be included on fact tags and online for consumers to view and rely on when making purchasing decisions.**

Paragraph 64. *Answer*: LG states that the allegations contained in Paragraph 64 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 64 of the Second Amended Complaint.

65.     **Accordingly, rather than providing the "expert" insight and consultation expected of them, Best Buy joined LG in deceiving consumers and propagated LG's misrepresentations by advertising LG televisions as having refresh rates and a Hz specification of two times the actual capability of the televisions. In short, Best Buy copied and adopted LG's misrepresentations in its own labeling, thereby endorsing LG's deceptions as legitimate.**

Paragraph 65. *Answer*: LG states that the allegations contained in Paragraph 65 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 65 of the Second Amended Complaint.

66.     **To make things worse, Best Buy not only repeated LG's misleading representations, but advertised LG's televisions, both on Best Buy's website and in stores, as having "Screen Refresh Rate[s]" of "120Hz" or "240Hz," when in reality the LG televisions it sold had half those refresh rates.**

Paragraph 66. *Answer*: LG states that the allegations contained in Paragraph 66 of

the Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies the allegations

contained in Paragraph 66 of the Second Amended Complaint.

67.   **Plaintiffs reasonably relied on Defendants' false and misleading advertisements and labeling by purchasing an LG LED television. Plaintiffs reasonably believed, based on Defendants' misrepresentations, that he was purchasing a television with a significantly and materially higher refresh rate and, therefore, advanced technology and a better picture quality than the television actually possessed. As a result, Plaintiffs paid substantially more than he would have otherwise paid for the televisions had the refresh rate been accurately disclosed by Defendants. Plaintiffs would not have purchased his LG television, or, alternatively, would have paid much less for it, had the accurate refresh rate been accurately disclosed by Defendants.**

Paragraph 67. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of whether Plaintiffs would not have purchased their LG

televisions, and otherwise denies the allegations contained in Paragraph 67 of the

Second Amended Complaint.

68.   **Plaintiffs have suffered an ascertainable loss as a result of Defendants' conduct in that they paid more than their LED television was worth and more than what Defendants would have been able to charge had their true refresh rate been displayed. Under contract law and relevant state consumer protection statutes, such conduct entitles Plaintiffs to benefit-of-the-bargain damages, or the expectation interest they were deprived of, that is, delivery of the product as promised (*i.e.*, a 120Hz television), or the cost to purchase what was promised (*i.e.*, the monetary equivalent of a 120Hz television) regardless of any discount offered at the time of purchase.**

Paragraph 68. *Answer*: LG denies the allegations contained in Paragraph 68 of the

Second Amended Complaint, except states that at times manufacturers advertise a

television's refresh rate as a specification that could be relevant to some purchasers'

decisions.

69.   **Like screen size and resolution, refresh rate is one of the top selling points for LED televisions, and is thus a material term of the products' sales display. Defendants'**

**own marketing and in-store and digital placards prominently and intentionally feature the refresh rate, stated in "Hz."**

Paragraph 69. *Answer*: LG denies the allegations contained in Paragraph 69 of the

Second Amended Complaint, except states that at times manufacturers advertise a

television's refresh rate as a specification that could be relevant to some purchasers'

decisions.

70. **All other features being equal, televisions with higher refresh rates have more objective value and command a price premium compared to televisions with lower refresh rates. The price premium associated with higher refresh rates occurs across brands and product lines and can be applied with particularity to LG's LED televisions, including Plaintiff's television model.**

Paragraph 70. *Answer*: LG denies the allegations contained in Paragraph 70 of the

Second Amended Complaint, and states that pricing for televisions is based on

myriad factors.

71. **Televisions with higher refresh rate capabilities consistently command a quantifiable, 15-20% higher Manufacturer's Suggested Retail Price ("MSRP") and actual sales prices than television models with lower refresh rates.**

Paragraph 71. *Answer*: LG denies the allegations contained in Paragraph 71 of the

Second Amended Complaint.

72. **Defendants have in their possession all significant and relevant MSRP data, sales data, or both, from which an expert can perform a hedonic regression analysis to isolate the exact value associated with each constituent characteristic of LG's LED televisions, including the refresh rate.**

Paragraph 72. *Answer*: Paragraph 72 of the Second Amended Complaint consists of

argument which does not require a response. LG otherwise denies the allegations

contained in Paragraph 72 of the Second Amended Complaint.

73. **In addition to sales data, LG has in its possession the manufacturing cost data of its televisions which will show the input cost difference between higher and lower refresh rate televisions which inevitably translates to a respective retail price differential.**

Paragraph 73. *Answer*: Paragraph 73 of the Second Amended Complaint consists of argument which does not require a response, and which the Court rejected as "implausible" in its Memorandum Opinion and Order Denying Defendants' Partial Motions to Dismiss on January 30, 2018 (ECF 94) at 9, n. 4. LG otherwise denies the allegations contained in Paragraph 73 of the Second Amended Complaint.

74. **Even in the absence of these multiple sources of relevant data, an expert can conduct a conjoint analysis, involving a scientific survey measuring consumer preferences, which can isolate and quantify the premium attributable to refresh rates reflected in retail pricing.**

Paragraph 74. *Answer*: LG denies the allegations contained in Paragraph 74 of the Second Amended Complaint.

75. **Plaintiffs approximate their losses at 15-20% of their purchase price. In addition, given the universal price difference between higher and lower refresh rate televisions, the data in possession of Defendants and the methodologies available for expert analysis, Plaintiffs will be able to provide a detailed quantification of damages both for the Class and for themselves during the appropriate stage of litigation. Alternatively, a readily available and appropriate metric for calculating the lost benefit of the bargain or deprivation of expectation interests is delivery of the product promised (i.e., a 120Hz television), or replacement costs (*i.e.*, the monetary equivalent of a 120Hz television) regardless of any discount offered at the time of purchase. Thus, even if Plaintiffs' television were sold to them at a "discount," their damages could be calculated as the difference between what it would have cost Plaintiffs to purchase a 120Hz television and the price they paid for the 60Hz television they actually received. For instance, on November 21, 2013, around the time of Villa Lara's purchase, Best Buy offered a Samsung 120Hz LED television, model UN55FH6003FXZA, with the same dimensions and resolution (1080p) as LG's 55LN5100, for $799.99. Under the replacement cost methodology, Villa Lara's ascertainable loss would be $300.**

Paragraph 75. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the fifth sentence of Paragraph 75 of the Second Amended Complaint. LG denies the remaining allegations contained in Paragraph 75 of the Second Amended Complaint.

B. **Plaintiff Villa Lara's Allegations**

76. **Villa Lara purchased an LG LED television, model number 55LN5100 from a Best Buy store located in Compton, California on November 28, 2013.**

Paragraph 76. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 76 of the Second

Amended Complaint.

77. **In the weeks leading up to his purchase, Villa Lara began shopping for a new television for his home. He received numerous mailers to his home in Compton, California from Best Buy highlighting its Black Friday deals, and searched BestBuy.com from his home in Compton, California to compare various television models. Villa Lara recalls that the refresh rate was among the most prominent features advertised for the televisions he considered.**

Paragraph 77. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 77 of the Second

Amended Complaint.

78. **Villa Lara understood that a higher refresh rate television would provide a better, clearer image of moving objects on the screen and viewed television models with different refresh rates in the Best Buy showroom. Villa Lara was able to ascertain a television's promoted refresh rate immediately upon viewing the fact tag's specifications, the contents of which were created by LG and used by Best Buy. The fact tag is the slip of paper prominently placed on the shelf that calls attention to top-selling features and specifications of the displayed television, including the refresh rate.**

Paragraph 78. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 78 of the Second

Amended Complaint as to Villa Lara's understanding of refresh rates, except that

LG admits that a fact tag contains information regarding some of the features and

specifications of products sold by Best Buy, including televisions. LG denies all

other allegations contained in Paragraph 78 of the Second Amended Complaint.

79. **Villa Lara understands the refresh rates shown on the fact tags in the Best Buy Store and on its websites to be representations and warranties by both LG (which created the written specifications) and Best Buy (which displayed the specifications),**

**as it is standard industry practice for retailers to rely on, copy, and adopt the technical specifications and representations provided to them by the manufacturers.**

Paragraph 79. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 of the Second Amended Complaint as to Villa Lara's understanding of the fact tags, and denies all other allegations contained in Paragraph 79 of the Second Amended Complaint.

80. **Because he intended to use the television to watch sporting events and action movies, Villa Lara decided to search for and purchase a television with a minimum of a 120Hz refresh rate.**

Paragraph 80. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80 of the Second Amended Complaint.

81. **On or about November 14, 2013, Villa Lara informed his grandmother, Celina Lara, that he desired to purchase a new television from Best Buy but was unable to immediately pay for or obtain credit to purchase the same. Celina Lara offered to open a Best Buy credit card account to complete the transaction for the television on credit so that Villa Lara would be able to own the television he desired. In consideration of the merchandise he acquired, Ivan agreed to be responsible for the debt on the account and to reimburse his grandmother for the full amount on the Best Buy credit card account.**

Paragraph 81. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 of the Second Amended Complaint.

82. **On November 28, 2013, Villa Lara and his grandmother stood in line for hours at the Best Buy Store in Compton, California, where he subsequently viewed the advertisements and specifications of the LG 55LN5100 television in Best Buy's store on the fact tag, which included the refresh rate of 120Hz promoted prominently by LG as a feature to highlight in its written materials to Best Buy, displayed for the television. As part of Best Buy's Black Friday protocol, the television and its specification (again including the refresh rate of 120Hz) were also presented to him on a ticket he was required to obtain prior to purchasing the television (presumably this was a mechanism enacted to keep track of the status of Best Buy's inventory during the high-volume sales day).**

Paragraph 82. *Answer*: LG denies that the refresh rate of the LG 55LN5100 television was "promoted prominently by LG as a feature to highlight in its written materials to Best Buy…" and that Villa Lara viewed a fact tag for the LG 55LN5100 television. LG denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 82 of the Second Amended Complaint.

83. **Relying on the 120Hz advertised refresh rate Villa Lara saw prominently displayed in store on both his merchandise ticket and the fact tag, he decided to purchase the LG 55LN5100 television from the Best Buy store for $499.99 through his grandmother's Best Buy credit card account per their agreement detailed above. As part of the purchase, Villa Lara also obtained a 5-year Performance Service Plan, costing an additional $99.99. While Villa Lara made his purchase during a Black Friday promotion for the price of $499.99, Villa Lara's television model was manufactured in limited quantities exclusively and solely for the Black Friday promotion at Best Buy. Villa Lara believed he was getting a good deal for the premium feature of a "120Hz" refresh rate.**

Paragraph 83. *Answer*: LG denies that Villa Lara saw the refresh rate of the LG 55LN5100 television "prominently displayed" anywhere and that the LG55LN5100 television was "manufactured in limited quantities exclusively and solely for the Black Friday promotion at Best Buy." LG denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 83 of the Second Amended Complaint.

84. **On or about January 4, 2014, Villa Lara began making payments to his grandmother for the purchase price of the television, the Performance Service Plan, and other items he agreed to be responsible to pay for. By approximately June 2015, Villa Lara had fully reimbursed his grandmother for the television and Performance Service Plan. Villa Lara is considered the purchaser and owner of the merchandise under applicable law.**

Paragraph 84. *Answer*: LG states that the third sentence of Paragraph 84 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required. LG denies knowledge or information sufficient to form a belief

as to the truth of the remaining allegations contained in Paragraph 84 of the Second

Amended Complaint. To the extent that the allegations set forth in Paragraph 84 are

deemed to be factual in whole or in part, LG denies the allegations set forth in

Paragraph 84.

85.     **Within a few weeks of purchasing his television, by January 2014, Villa Lara noticed that the television's images were not as clear as he expected for a 120Hz television. When Villa Lara had the time, he worked through the various settings on the television and thoroughly reviewed the owner's manual created and supplied by LG to determine whether there was a setting that may have been affecting the picture quality. Villa Lara reviewed the settings several times over several months but did not discover any way to adjust settings to improve the picture quality.**

Paragraph 85. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 85 of the Second

Amended Complaint.

86.     **The following holiday season (approximately mid-December 2014 or later), Villa Lara viewed the performance of a true 120Hz television (a non-LG brand) at a friend's house prompting him to again question the performance of his television.**

Paragraph 86. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 86 of the Second

Amended Complaint.

87.     **As a result of this experience, in or around January 2015, Villa Lara began conducting online research in forums and blogs, and discovered that his model television was only a 60Hz television. Before making his discovery in the online forum, Villa Lara was unable to discover that Defendants' representations as to the refresh rate of the television he purchased were false despite reasonable diligence. Villa Lara could not have known that his television was not the promised 120Hz refresh rate, something that requires expertise beyond that of a reasonable lay person.**

Paragraph 87. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 87 of the Second

Amended Complaint regarding the manner in which Villa Lara conducted

research. LG denies the remaining allegations contained in Paragraph 87 of the

Second Amended Complaint.

88.     **Had Villa Lara known that the actual refresh rate of the television was 60Hz—not 120Hz as advertised—he would not have purchased the television or, alternatively, would not have been willing to pay as much for it. Villa Lara was promised a 120Hz television but received a 60Hz television valued approximately 15-20% less (approximately $75 to $100) than what he was promised.**

Paragraph 88. *Answer*: LG denies the allegations contained in Paragraph 88 of the

Second Amended Complaint.

89.     **On May 10, 2017, Villa Lara submitted his television to Best Buy for repair under the 5-year Performance Service Plan he obtained at the time of initial purchase for approximately $100.00. The repair was unrelated to the refresh rate of the television. Rather than repair the television, to comply with its obligations under the extended service contract, Best Buy provided him with store credit in the form of gift cards equivalent to the purchase price of his television. On the Service Order, Best Buy listed Ivan Villa Lara as the "Customer," and processed the order under his name without dispute over whether he was the owner or purchaser of the television or of the extended warranty.**

Paragraph 89. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 89 of the Second

Amended Complaint.

C.      **Plaintiff Poppen's Allegations**

*Poppen's Purchase of LG Television Model Number 55LA6200*

90.     **On or about April 29, 2013, Poppen purchased an LG television, model number 55LA6200 from a Best Buy store located in South Elgin, Illinois.**

Paragraph 90. *Answer*: To the extent that the allegations contained in Paragraph 90 relate to

Plaintiff Poppen's claims against LG, those claims were dismissed pursuant to the Court's

May 10, 2019 Order dismissing Plaintiff Poppen from this Action (ECF 176), those

allegations are moot, and no answer is required.

91.     Prior to purchasing his television, from his home, Poppen researched various televisions on Best Buy's website. Because Poppen intended to use a new television to watch sporting events, he specifically was in the market for a 120Hz refresh rate television and therefore limited his search for a new television to those that were advertised as having a 120Hz refresh rate. Poppen recalls that the refresh rate was among the most prominent features advertised for the televisions he considered for purchase.

Paragraph 91. *Answer*: To the extent that the allegations contained in Paragraph 91

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

92.     Poppen understands that a higher refresh rate television would provide a better, clearer image of moving objects on the screen. Poppen was able to ascertain whether a television was advertised as having 120Hz refresh rate immediately upon viewing the specifications listed on Best Buy's website, the contents of which are created by manufacturers—including LG—for use by retailers—including Best Buy.

Paragraph 92. *Answer*: To the extent that the allegations contained in Paragraph 92

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

93.     Poppen understands the refresh rates advertised on Best Buy's website to be representations and warranties by both LG (which created the written specifications) and Best Buy (which displayed the specifications) as it is standard industry practice for retailers to rely on, copy, adopt, and highlight the key technical specifications and representations provided to them by manufacturers, that drive sales.

Paragraph 93. *Answer*: To the extent that the allegations contained in Paragraph 93

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

94.     Prior to his purchase and during his research on Best Buy's website, Poppen viewed the specifications for LG television model 55LA6200 and noted the 120Hz refresh

rate specification, which was prominently displayed at the top in large text as a key
selling feature.

Paragraph 94. *Answer*: To the extent that the allegations contained in Paragraph 94

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

95.     **Relying on the 120Hz refresh rate he saw advertised, which had been promoted by
        LG as a feature to highlight in its written materials to Best Buy, and which was in
        fact prominently advertised on Best Buy's website, Poppen made his initial decision
        to purchase the LG 55LA6200 television model.**

Paragraph 95. *Answer*: To the extent that the allegations contained in Paragraph 95

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

96.     **On or about April 29, 2013, Poppen traveled to a Best Buy store in South Elgin,
        Illinois with the intent to purchase the LG 55LA6200 television he had identified
        online as the 120Hz refresh rate television he wished to purchase. While in the store,
        store personnel confirmed the advertised 120Hz refresh rate of the LG 55LA6200
        television was accurate. Upon Best Buy's confirmation the advertised 120Hz refresh
        rate was indeed correct and accurate, Poppen purchased the LG 55LA6200
        television for approximately $1,300. With this purchase, Poppen also obtained an
        extended warranty for the television.**

Paragraph 96. *Answer*: To the extent that the allegations contained in Paragraph 96

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

97.     **When Poppen began to use the LG 55LA6200 television for its intended purpose of
        watching sports, in the fall of 2013, he noticed the performance of the television was
        not as expected for a 120Hz refresh rate television—images were not as clear and
        fast-moving objects would noticeably skip across the screen.**

Paragraph 97. *Answer*: To the extent that the allegations contained in Paragraph 97

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

98.     **Poppen contacted Best Buy, reported the issue, and engaged his warranty protection in an attempt to rectify the problem and Best Buy subsequently replaced the component display panel of the television. When Poppen noticed the issue remained even after a new display panel was being used, he once again contacted Best Buy. Rather than attempt to repair the television, on or about November 16, 2014, Best Buy replaced Poppen's television with a new LG 55LA6200.**

Paragraph 98. *Answer*: To the extent that the allegations contained in Paragraph 98

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

99.     **At no point did anyone at Best Buy—whom Poppen reasonably relied on to address his technical questions and issues—inform him that these televisions did not have the 120Hz refresh rate capabilities that were promised.**

Paragraph 99. *Answer*: To the extent that the allegations contained in Paragraph 99

relate to Plaintiff Poppen's claims against LG, those claims were dismissed pursuant

to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this Action

(ECF 176), those allegations are moot, and no answer is required.

100.    **The new television, but same model, exhibited the same issues. Tired of dealing with the hassle of a seemingly unrepairable issue, Poppen subsequently replaced the LG 55LA6200 television with a Samsung model.**

Paragraph 100. *Answer*: To the extent that the allegations contained in Paragraph

100 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

101.   **Had Poppen known the television did not feature a 120Hz refresh rate as advertised, he would not have purchased—or even considered for purchase—the LG 55LA6200 television. Poppen was promised a 120Hz refresh rate television but received a 60Hz refresh rate television valued approximately 15-20% less (approximately $195 to $260) than what he was promised.**

Paragraph 101. *Answer*: To the extent that the allegations contained in Paragraph

101 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

102.   **Prior to August 2018, Poppen was unaware that the 120Hz refresh rate Defendants advertised for the television he purchased was misleading and inaccurate. Prior to August 2018 he was unaware that, in fact, the televisions he purchased had a 60Hz refresh rate. Poppen's lack of prior awareness of the television's refresh rate was reasonable due to, in part, his research that specifically identified the television he wished to purchased based on Defendants' advertising stating that it had a 120Hz refresh rate.**

Paragraph 102. *Answer*: To the extent that the allegations contained in Paragraph

102 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

*Poppen's Purchase of LG Television Model Number 55LN5100*

103.   **On or around November 25, 2013, Poppen purchased an LG television, model number 55LN5100, from the same Best Buy store located in South Elgin, Illinois.**

Paragraph 103. *Answer*: To the extent that the allegations contained in Paragraph

103 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

104.   **Again, prior to purchasing his television, Poppen researched various televisions on Best Buy's website from his home. Poppen was again specifically in the market for a 120Hz refresh rate television and limited his search for a new television to those that were advertised as having a 120Hz refresh rate. Poppen recalls that the refresh rate**

**was among the most prominent features advertised for the televisions he considered for purchase.**

Paragraph 104. *Answer*: To the extent that the allegations contained in Paragraph

104 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

105. **Poppen understood that a higher refresh rate television would provide a better, clearer image of moving objects on the screen. Poppen was able to ascertain whether a television was advertised as having 120Hz refresh rate immediately upon viewing the specifications listed on Best Buy's website, the contents of which are created by manufacturers—including LG—for use by retailers—including Best Buy.**

Paragraph 105. *Answer*: To the extent that the allegations contained in Paragraph

105 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

106. **Again, Poppen understands the refresh rates advertised on Best Buy's website to be representations and warranties by both LG (which created the written specifications) and Best Buy (which displayed the specifications) as it is standard industry practice for retailers to rely on, copy, adopt, and highlight the key technical specifications and representations provided to them by manufacturers, that drive sales.**

Paragraph 106. *Answer*: To the extent that the allegations contained in Paragraph

106 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

107. **Prior to his purchase and during his research on Best Buy's website, Poppen viewed the specifications for LG television model 55LN5100 and noted the 120Hz refresh rate specification, which was prominently displayed at the top in large text as a key selling feature.**

Paragraph 107. *Answer*: To the extent that the allegations contained in Paragraph

107 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

108. **Relying on the 120Hz refresh rate he saw advertised, which had been promoted by LG as a feature to highlight in its written materials to Best Buy, and which was in fact prominently advertised on Best Buy's website, Poppen made his decision to purchase the LG 5LN5100 television model.**

Paragraph 108. *Answer*: To the extent that the allegations contained in Paragraph

108 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

109. **On or about November 25, 2013, Poppen purchased the LG 55LN5100 television for approximately $536.00 from BestBuy.com.**

Paragraph 109. *Answer*: To the extent that the allegations contained in Paragraph

109 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

110. **Had Poppen known the television did not feature a 120Hz refresh rate as advertised, he would not have purchased—or even considered for purchase—the LG 55LN5100 television. Poppen was promised a 120Hz refresh rate television but received a 60Hz refresh rate television valued approximately 15-20% less (approximately $84.00 to $107) than what he was promised.**

Paragraph 110. *Answer*: To the extent that the allegations contained in Paragraph

110 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

111. **Poppen was unaware prior to August 2018 that the 120Hz refresh rate Defendants advertised for the television he purchased was misleading and inaccurate. He was unaware prior to August 2018 that, in fact, the television he purchased had a 60Hz refresh rate. Poppen's lack of prior awareness of the television's refresh rate was reasonable due, in part, to his research that specifically identified the television he wished to purchase based on Defendants' advertising stating that it had a 120Hz refresh rate.**

Paragraph 111. *Answer*: To the extent that the allegations contained in Paragraph

111 relate to Plaintiff Poppen's claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Poppen from this

Action (ECF 176), those allegations are moot, and no answer is required.

D.    **Hudock Plaintiffs' Allegations[1]**

112. **The Hudock Plaintiffs purchased an LG LED television, model number 55LN5100-UB.**

Paragraph 112. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 112 of the Second

Amended Complaint.

113. **In the weeks leading up to their purchase, the Hudock Plaintiffs began shopping for a new television for their home. The Hudock Plaintiffs understood that a higher refresh rate television would provide a better, clearer image of moving objects on the screen. The Hudock Plaintiffs decided to search for and purchase a television with a minimum of a 120Hz refresh rate.**

Paragraph 113. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 113 of the Second

Amended Complaint.

---

[1] LG States that it understands "Hudock Plaintiffs'" to refer only to Plaintiff Breann Hudock because Plaintiff Benjamin Hudock is no longer a party to this Action pursuant to this Court's May 10, 2019 Action (ECF 178). To the extent that the allegations relate to Benjamin Hudock's claims against LG, those claims were dismissed pursuant to the Court's May 10, 2019 Order dismissing Plaintiff Hudock from this Action (ECF 178), those allegations are moot, and no answer is required.

114.    **On November 29, 2013, Plaintiff Breann Hudock viewed advertisements and specifications of the LG 55LN5100-UB television on Best Buy's website, BestBuy.com.**

Paragraph 114. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 114 of the Second Amended Complaint.

115.    **The main product page for the 55LN5100-UB television on Best Buy's website, which was viewed by Plaintiff Breann Hudock, advertised a "120Hz refresh rate" in bold text. Under that bold heading, the webpage explained that a 120Hz refresh rate "[h]elps minimize blurring and ghosting during intense action sequences, so you can enjoy movies, sporting events and games in crystal clarity."**

Paragraph 115. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 115 of the Second Amended Complaint, regarding what Breann Hudock allegedly viewed. LG states that the remaining allegations contained in Paragraph 115 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 115 of the Second Amended Complaint.

116.    **The "Specifications" section of that webpage contained the following representation:**

| Screen Refresh Rate | 120Hz | This refers to how many times per second a TV screen image is completely reconstructed. A TV with a 60Hz refresh rate means that the picture will be completely rebuilt 60 times in one second. Why is this important? Generally, the more the screen is refreshed, the smoother the images will appear. |
|---|---|---|

Paragraph 116. *Answer*: LG states that the allegations contained in Paragraph 116 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 of the Second Amended Complaint.

117.   **Plaintiff Breann Hudock spoke to her husband, Plaintiff Benjamin Hudock, over the phone and read the above specifications to him. Together, relying on the 120Hz advertised refresh rate, Plaintiffs decided to purchase the LG 55LN5100-UB television from Best Buy's website for $499.99. While the Hudock Plaintiffs made their purchase during a Black Friday promotion for the "on sale" price of $499.99 reduced from the claimed "regular price" of $999.99, upon information and belief, the Hudock Plaintiffs' television model was manufactured in limited quantities exclusively and solely for the Black Friday promotion at Best Buy and was never, in fact, available for purchase at the claimed "regular price" of $999.99. After purchasing the television, the Hudock Plaintiffs noticed that the television's images were not as clear as expected. Only later did the Hudock Plaintiffs come to learn that their television's actual refresh rate was 60Hz. Had the Hudock Plaintiffs known that the actual refresh rate of the television was 60Hz—not 120Hz as advertised—they would not have purchased the television or, alternatively, would not have been willing to pay as much for it. The Hudock Plaintiffs were promised a 120Hz television but received a 60Hz television valued approximately 15-20% less (approximately $75 to $100) than what they were promised.**

Paragraph 117. *Answer*: LG denies the allegations contained in Paragraph 117 of the Second Amended Complaint concerning the "actual refresh" rate of the television; denies the allegations contained in the last sentence of Paragraph 117 of the Second Amended Complaint; states that the 55LN5100 television was manufactured by LG exclusively for Best Buy; and, otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained Paragraph 117 of the Second Amended Complaint.

E.   **Plaintiff DeLoss' Allegations**

118.   **Plaintiff DeLoss purchased a 55" LG LED television, model number 55UF6450.**

Paragraph 118. *Answer*: To the extent that the allegations contained in Paragraph 118 relate to Plaintiff DeLoss' claims against LG, those claims were dismissed pursuant to the Court's May 10, 2019 Order dismissing Plaintiff DeLoss from this Action (ECF 177), those allegations are moot, and no answer is required.

119.   **Prior to purchasing this television, Plaintiff DeLoss researched various models and specifications of televisions online. Plaintiff DeLoss understood that a higher refresh rate television would provide a better, clearer image of moving objects on the**

**screen. For this reason, he decided to search for and purchase a television with a minimum of a 120Hz refresh rate.**

Paragraph 119. *Answer*: To the extent that the allegations contained in Paragraph

119 relate to Plaintiff DeLoss' claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff DeLoss from this

Action (ECF 177), those allegations are moot, and no answer is required.

120.   **Plaintiff DeLoss reviewed the specifications for the 55UF6450 television model as labeled and represented by LG. LG advertised the refresh rate of this model as 120Hz. Prior to purchasing the television, Plaintiff DeLoss confirmed the purported 120Hz refresh rate online, as well as on the packaging of the television.**

Paragraph 120. *Answer*: To the extent that the allegations contained in Paragraph

120 relate to Plaintiff DeLoss' claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff DeLoss from this

Action (ECF 177), those allegations are moot, and no answer is required.

121.   **On January 30, 2016, Plaintiff DeLoss, relying on the 120Hz advertised refresh rate, decided to purchase the 55UF6450 television from Kohl's for $699.99.**

Paragraph 121. *Answer*: To the extent that the allegations contained in Paragraph

121 relate to Plaintiff DeLoss' claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff DeLoss from this

Action (ECF 177), those allegations are moot, and no answer is required.

122.   **Only after purchasing the television did Plaintiff DeLoss come to learn that his television's actual refresh rate was 60Hz. Had he known that the actual refresh rate was 60Hz—not 120Hz as advertised—he would not have purchased the television or, alternatively, would not have been willing to pay as much for it. Plaintiff DeLoss was promised a 120Hz television, but he received a 60Hz television worth approximately 15-20% less (approximately $105 to $140) than what he was promised.**

Paragraph 122. *Answer*: To the extent that the allegations contained in Paragraph

122 relate to Plaintiff DeLoss' claims against LG, those claims were dismissed

pursuant to the Court's May 10, 2019 Order dismissing Plaintiff DeLoss from this

Action (ECF 177), those allegations are moot, and no answer is required.

**F.      Plaintiff Mannacio's Allegations**

**123.    On or about February 2016, Plaintiff Eugene Mannacio purchased a 60" LG
          television, model number 60-UH-7700, at the Best Buy located on 700 Du Bois Street
          in San Rafael, California. He purchased the television to use in his home for
          personal and family purposes.**

Paragraph 123. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 123 of the Second

Amended Complaint.

**124.    When shopping for a television, image quality and refresh rate were important
          qualities to Plaintiff Mannacio. Plaintiff Mannacio reviewed the different television
          brands and models in-store for their advertised refresh rates and image qualities.
          He knew that a higher refresh rate indicated a higher picture quality for televisions.**

Paragraph 124. *Answer*: LG denies knowledge or information sufficient to form a

belief as to whether "image quality and refresh rate were important qualities to

Plaintiff Mannacio" and whether Mannacio "knew that a higher refresh rate indicated

a higher picture quality for televisions." LG denies the remaining allegations

contained in Paragraph 124 of the Second Amended Complaint.

**125.    At the San Rafael Best Buy, Plaintiff Mannacio reviewed the 60" LG television's
          advertised refresh rate, which represented that the television refreshed at 240Hz on
          the television's shelf label and online by Best Buy and LG. Believing this
          representation and relying on it as true, Plaintiff Mannacio purchased the television.**

Paragraph 125. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 125 of the Second

Amended Complaint regarding the actions of Plaintiff Mannacio. LG denies all other

allegations contained in Paragraph 125 of the Second Amended Complaint.

**126.    Plaintiff Mannacio later learned that his television actually had a 120Hz refresh
          rate, half the rate that Best Buy and LG advertised.**

Paragraph 126. *Answer*: LG denies the allegations contained in Paragraph 126 of the Second Amended Complaint.

127. **Had Plaintiff Mannacio known that the television had half the refresh rate than advertised, he would not have been willing to purchase it, or, alternatively, would not have been willing to pay as much for it. The television Plaintiff Mannacio received was worth approximately 15-20% less than the 240Hz version he was promised, meaning he overpaid by approximately 15-20%.**

Paragraph 127. *Answer*: LG denies the allegations contained in Paragraph 127 of the Second Amended Complaint concerning the refresh rate of the television and denies the allegations contained in the last sentence of Paragraph 127 of the Second Amended Complaint. LG otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 127 of the Second Amended Complaint.

G. **Plaintiff Fleishman's Allegations**

128. **On or around June 6, 2014, Fleishman purchased a 55" LG television, model number 55LA9650, on Best Buy's website, BestBuy.com. He purchased the television to use in his home for approximately $1,165.99.**

Paragraph 128. *Answer*: LG denies that Fleishman "purchased a 55" LG television, model number 55LA9650, on Best Buy's website, BestBuy.com." LG denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 128 of the Second Amended Complaint.

129. **When shopping for a television, image quality and refresh rates were important qualities to Fleishman. Fleishman reviewed different television brands and models for their advertised refresh rates and image qualities. He knew that a higher refresh rate indicated a higher picture quality for televisions.**

Paragraph 129. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 129 of the Second Amended Complaint.

130. **Fleishman understands the refresh rates advertised on Best Buy's website to be representations and warranties by both LG (which created the written specifications) and Best Buy (which displayed the specifications) as it is standard industry practice for retailers to rely on, copy, adopt, and highlight the key technical specifications and representations provided to them by manufacturers, that drive sales.**

Paragraph 130. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 130 of the Second Amended Complaint as to Fleishman's understanding of the refresh rates allegedly advertised on Best Buy's website, and denies all other allegations contained in Paragraph 130 of the Second Amended Complaint.

131. **Prior to his purchase and during his research on Best Buy's website, Fleishman viewed the specifications for LG television, model 55LA9650, and noted the 240Hz refresh rate specification.**

Paragraph 131. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 131 of the Second Amended Complaint.

132. **Relying on the 240Hz refresh rate he saw prominently advertised on Best Buy's website, Fleishman made his initial decision to purchase the LG television, model 55LA9650.**

Paragraph 132. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 132 of the Second Amended Complaint regarding the information Fleishman relied on, and denies all other allegations contained in Paragraph 132 of the Second Amended Complaint.

133. **Fleishman later learned that his television actually had a 120Hz refresh rate, half the rate that Best Buy and LG advertised.**

Paragraph 133. *Answer*: LG denies the allegations contained in Paragraph 133 of

the Second Amended Complaint.

134. **Had Fleishman known that the television had half the refresh rate than advertised, he would not have been willing to purchase it, or, alternatively, would not have been willing to pay as much for it. The television Fleishman received was worth approximately 15-20% less than the 240Hz version he was promised, meaning he overpaid by approximately 15-20% (approximately $150 to $200).**

Paragraph 134. *Answer*: LG denies the allegations contained in Paragraph 134 of the

Second Amended Complaint concerning the refresh rate of the television and denies

the allegations contained in the last sentence of Paragraph 134 of the Second

Amended Complaint. LG otherwise denies knowledge or information sufficient to

form a belief as to the truth of the allegations contained in Paragraph 134 of the

Second Amended Complaint.

**H.     Plaintiff Carpenter's Allegations**

135. **On or about July 13, 2014, Carpenter purchased a 47" LG television, model number 47LN5700-UH, at the Best Buy located in Long Island, New York. She purchased the television to use in her home for personal use for approximately $868.98.**

Paragraph 135. *Answer*: To the extent that the allegations contained in Paragraph

135 relate to Plaintiff Carpenter's claims against LG, those claims were dismissed

pursuant to the Court's May 15, 2019 Order dismissing Plaintiff Carpenter from

this Action (ECF 179), those allegations are moot, and no answer is required.

136. **When shopping for a television, image quality and refresh rate were important qualities to Carpenter. Carpenter reviewed the different television brands and models in-store for their advertised refresh rates and image qualities. She understood that a higher refresh rate indicated a higher picture quality for televisions.**

Paragraph 136. *Answer*: To the extent that the allegations contained in Paragraph

136 relate to Plaintiff Carpenter's claims against LG, those claims were dismissed

pursuant to the Court's May 15, 2019 Order dismissing Plaintiff Carpenter from

this Action (ECF 179), those allegations are moot, and no answer is required.

**137.** **At the Long Island, New York, Best Buy, Carpenter reviewed the 47" LG television's advertised refresh rate, which represented that the television refreshed at 120Hz on the television's shelf label. Believing this representation and relying on it as true, Carpenter purchased the television.**

Paragraph 137. *Answer*: To the extent that the allegations contained in Paragraph

137 relate to Plaintiff Carpenter's claims against LG, those claims were dismissed

pursuant to the Court's May 15, 2019 Order dismissing Plaintiff Carpenter from

this Action (ECF 179), those allegations are moot, and no answer is required.

**138.** **Carpenter later learned that her television actually had a 60Hz refresh rate, half the rate that Best Buy and LG advertised.**

Paragraph 138. *Answer*: To the extent that the allegations contained in Paragraph

138 relate to Plaintiff Carpenter's claims against LG, those claims were dismissed

pursuant to the Court's May 15, 2019 Order dismissing Plaintiff Carpenter from

this Action (ECF 179), those allegations are moot, and no answer is required.

**139.** **Had Carpenter known that the television had half the refresh rate than advertised, she would not have been willing to purchase it, or, alternatively, would not have been willing to pay as much for it. The television Carpenter received was worth approximately 15-20% less than the 120Hz version she was promised, meaning she overpaid by approximately 15-20% (approximately $130 to $174).**

Paragraph 139. *Answer*: To the extent that the allegations contained in Paragraph

139 relate to Plaintiff Carpenter's claims against LG, those claims were dismissed

pursuant to the Court's May 15, 2019 Order dismissing Plaintiff Carpenter from

this Action (ECF 179), those allegations are moot, and no answer is required.

## CLASS ACTION ALLEGATIONS

**140.** **Plaintiffs bring all claims herein pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23 are all satisfied with respect to the class defined below.**

Paragraph 140. *Answer*: LG denies the allegations contained in Paragraph 140 of the Second Amended Complaint, except states that Plaintiffs purport to bring this class action pursuant to Fed. R. Civ. P. 23.

## A.    Class Definitions

**141.    The National Class includes:**

> **All persons in the United States who, from May 9, 2010 until the present, purchased an LG LED television that LG labeled as having a "Hz" rating twice as high as its actual refresh rate.**

Paragraph 141. *Answer*: LG denies that Plaintiffs have properly asserted any claim for which a purported "National Class" could properly be certified, and denies the allegations of Paragraph 141 of the Second Amended Complaint.

**142.    The Best Buy Purchaser Subclass includes:**

> **All persons in the United States who, from May 9, 2010 until the present, purchased, from a Best Buy store or from Best Buy's website, an LG LED television that Best Buy labeled as having a "Hz" rating twice as high as its actual refresh rate.**

Paragraph 142. *Answer*: LG denies that Plaintiffs have properly asserted any claim for which a purported "Best Buy Purchaser Subclass" could properly be certified, and denies the allegations of Paragraph 142 of the Second Amended Complaint.

**143.    Excluded from the Class and Subclass are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons immediate families, and the presiding judge(s) in this case and his, her, or** their **immediate family. The Class and Subclass also do not include consumers who purchased televisions whose packaging and in-store or digital placards stated "Trumotion 120" or "Trumotion 240" without a "Hz" unit after the number.**

Paragraph 143. *Answer*: LG denies that Plaintiffs have properly asserted any claim for which a purported "National Class" or "Best Buy Subclass" could properly be certified, and denies the allegations of Paragraph 143 of the Second Amended Complaint.

**B.      The Proposed Class and Subclass Satisfy the Rule 23(a) Prerequisites**

144.    **Numerosity: At this time, Plaintiffs do not know the exact size of the Class or Subclass; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class and Subclass members are well into the thousands, possibly millions, and thus are so numerous that joinder of all members is impractical. The number and identities of Class and Subclass members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendants.**

Paragraph 144. *Answer*: LG states that Paragraph 144 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required. To

the extent that the allegations set forth in Paragraph 144 are deemed to be factual in

whole or in part, LG denies the allegations set forth in Paragraph 144, and denies that

this case can proceed as a class action.

145.    **Commonality: There are questions of law or fact common to the Class and Subclass, which include but are not limited to the following:**

    a.      **Whether Defendants represented to Plaintiffs and the Class and Subclass that the LG televisions were capable of a higher refresh rate, expressed in Hz, than the televisions could actually produce;**

    b.      **Whether Defendants intended Plaintiffs and members of the Class and Subclass to rely on the statements of refresh rate;**

    c.      **Whether Plaintiffs and members of the Class and Subclass were harmed by Defendants' misrepresentations;**

    d.      **Whether Defendants' conduct violated California law;**

    e.      **Whether Defendants' conduct violated Illinois law;**

    f.      **Whether Defendants' conduct violated Minnesota law;**

    g.      **Whether Defendants' conduct violated New Jersey law; and**

    h.      **Whether Plaintiffs and the Class and Subclass have been damaged, and if so, the proper measure of damages.**

Paragraph 145. *Answer*: LG states that Paragraph 145 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required. To

the extent that the allegations set forth in Paragraph 145 are deemed to be factual in

whole or in part, LG denies the allegations set forth in Paragraph 145, and denies that

this case can proceed as a class action.

146. **Typicality: Like Plaintiffs, many other consumers purchased LG televisions that were advertised and marketed as having twice the refresh rate as they were actually capable of. The allegations in paragraphs 73-119, supra, show it was typical for Plaintiffs and Class Members to see Defendants' advertisements and marketing materials and then purchase the LG televisions. Plaintiffs' claims are further typical of the claims of the Class and Subclass because Plaintiffs and each Class member and Subclass member were injured by Defendants' false representations about the refresh rates of LG televisions. Plaintiffs and the Class and Subclass have suffered the same or similar injury as a result of Defendants' false and misleading representations and advertisements. Defendants' false statements were identical— they represented that the LG LED televisions had refresh rates that were twice the value of the actual and true refresh rates. For instance, for model 65UF7700, LG states: "Refresh Rate[:] TruMotion 240Hz," when that model's actual refresh rate is 120Hz. For model 55UF6450, LG states: "Refresh Rate[:] TruMotion 120Hz," when that model's actual refresh rate is 60Hz. For model 55UF8300, LG states: "Refresh Rate[:] TruMotion 120Hz," when that model's actual refresh rate is 60Hz. For model 55UF6800, LG states: "Refresh Rate[:] TruMotion 120Hz," when that model's actual refresh rate is 60Hz. For model 55UF7600, LG states: "Refresh Rate[:] TruMotion 120Hz," when that model's actual refresh rate is 60Hz. For model 65UF9500, LG states: "Refresh Rate[:] TruMotion 240Hz," when that model's actual refresh rate is 120Hz. For model 65UF8500, LG states: "Refresh Rate[:] TruMotion 240Hz," when that model's actual refresh rate is 120Hz. Plaintiffs suffered the same injury as other class members who purchased televisions whose refresh rates were misrepresented by 100%. Plaintiffs' claims and the claims of members of the Class and Subclass emanate from the same legal theory, Plaintiffs' claims are typical of the claims of the Class and Subclass, and, therefore, class treatment is appropriate.**

Paragraph 146. *Answer*: LG states that Paragraph 146 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required. To the extent that the allegations set forth in Paragraph 146 are deemed to be factual in whole or in part, LG denies the allegations set forth in Paragraph 146, and denies that this case can proceed as a class action.

147. **Adequacy of Representation: Plaintiffs are committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiffs will fairly and adequately represent the interests of the Class and Subclass and do not have any interests adverse to those of the Class or Subclass.**

Paragraph 147. *Answer*: LG denies the allegations set forth in Paragraph 147 of the Second Amended Complaint.

**C.      The Proposed Class and Subclass Satisfy the Rule 23(b)(2) Prerequisites for Injunctive Relief**

148.    **Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiffs remain in the market for televisions; there is no way for them to know when or if Defendants have ceased misrepresenting the refresh rates of LG televisions, and are therefore in danger of being harmed again.**

Paragraph 148. *Answer*: LG denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 148 of the Second Amended Complaint, regarding whether Plaintiffs remain on the market for televisions, and otherwise denies all remaining allegations contained in Paragraph 148 of the Second Amended Complaint.

149.    **Specifically, Defendants should be ordered to cease from further advertisements that inaccurately state the refresh rates of LG televisions.**

Paragraph 149. *Answer*: LG denies the allegations contained in Paragraph 149 of the Second Amended Complaint.

150.    **Defendants' ongoing and systematic practices make declaratory relief with respect to the Class and Subclass appropriate.**

Paragraph 150. *Answer*: LG states that Paragraph 150 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required. To the extent that the allegations set forth in Paragraph 150 are deemed to be factual in whole or in part, LG denies the allegations set forth in Paragraph 150, and denies that this case can proceed as a class action.

**D.      The Proposed Class Satisfies the Rule 23(b)(3) Prerequisites for Damages**

151.    **The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class or Subclass, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class or Subclass will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively**

modest amount of monetary, injunctive, and equitable relief at issue for each individual Class or Subclass member.

Paragraph 151. *Answer*: LG states that Paragraph 151 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required. To the extent that the allegations set forth in Paragraph 151 are deemed to be factual in whole or in part, LG denies the allegations set forth in Paragraph 151, and denies that this case can proceed as a class action.

### LEGAL BASES FOR RELIEF

### COUNT I
**Violation of Minnesota's Prevention of Consumer Fraud Act - Unlawful Practices, Minn. Stat. § 325F.68, *et seq.***

152.   **Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 152. *Answer*: LG hereby incorporates as if fully set forth herein its answers and defenses to Paragraphs 1-151.

153.   **The LG televisions sold by LG, Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC are merchandise as defined in Minnesota Statutes § 325F.68, subd. 2.**

Paragraph 153. *Answer*: LG states that Paragraph 153 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

154.   **Defendants are persons as defined in Minnesota Statutes § 325F.68, subd. 3.**

Paragraph 154. *Answer*: LG states that Paragraph 154 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

155.   **Each Defendant (LG, through its creation of false, prominently highlighted specifications, and Best Buy, through its adoption and dissemination of the prominently highlighted specifications on its website and on its fact tags) misrepresented the refresh rate of LG televisions, by artificially inflating the refresh rate, expressed in Hz, to at least twice the actual refresh rate. The false statement of**

the refresh rates of the LG televisions were untrue, misleading, and deceptive, inducing Plaintiffs to spend more for a television that has lower picture quality than represented.

Paragraph 155. *Answer*: LG denies the allegations contained in Paragraph 155 of the

Second Amended Complaint.

156. **The misrepresented refresh rate of LG televisions, expressed in Hz, is a material fact to Plaintiffs and other consumers because it is directly related to picture quality, and because Defendants themselves recognize the materiality of their representations as evidenced by their prominent placement on Defendants' labels, packaging, brochures, and shelf tags. Consumers, including Plaintiffs and the members of the Class and Subclass would not have paid as much for the LG televisions had Defendants accurately disclosed the refresh rate of the televisions. Nor could Defendants charge as much for such televisions, as the refresh rate is directly related to the amount of money manufacturers and retailers are able to charge for televisions.**

Paragraph 156. *Answer*: LG denies the allegations contained in Paragraph 156 of the

Second Amended Complaint.

157. **Defendants placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants. Plaintiffs and the Class and Subclass were harmed by Defendants' misrepresentations. Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.**

Paragraph 157. *Answer*: LG denies the allegations contained in Paragraph 157 of the

Second Amended Complaint.

158. **Plaintiffs and members of the Class and Subclass have suffered loss by paying more than they would have otherwise paid—and more than Defendants would have been able to charge—for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.**

Paragraph 158. *Answer*: LG denies the allegations contained in Paragraph 158 of the

Second Amended Complaint.

## COUNT II
**Violation of Minnesota's Uniform Deceptive Trade Practices Act,
Minn. Stat. § 325D.43, *et seq.***

159. **Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 159. *Answer*: LG hereby incorporates as if fully set forth herein its

answers and defenses to Paragraphs 1-158.

160. **By falsely inflating and misstating the refresh rate on LG televisions, each Defendant (LG, through its creation of false, prominently highlighted specifications, and Best Buy, through its adoption and dissemination of the prominently highlighted specifications on its website and on its fact tags) represented that the televisions were of a particular standard, quality, quantity, and grade when the televisions were in fact of a lower standard, quality, quantity, and grade. The refresh rate of televisions is directly related to picture quality. By representing that the refresh rate was higher than it actually is, Defendants misled Plaintiffs and members of the Class and Subclass into believing that the televisions were capable of higher refresh rate and picture quality than they actually were.**

Paragraph 160. *Answer*: LG denies the allegations contained in Paragraph 160 of the

Second Amended Complaint, and states that overall picture quality is a function of

numerous features.

161. **Plaintiffs and members of Class and Subclass have suffered loss by paying more than they would have otherwise paid for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.**

Paragraph 161. *Answer*: LG denies the allegations contained in Paragraph 161 of the

Second Amended Complaint.

## COUNT III
### Violations of the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13

162. **Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 162. *Answer*: LG hereby incorporates as if fully set forth herein its

answers and defenses to Paragraphs 1-161.

163. **Minnesota Stat. § 325D.13 provides: "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."**

Paragraph 163. *Answer*: LG states that Paragraph 163 of the Second Amended Complaint does not call for a response, and further states that Paragraph 163 accurately quotes Minnesota Statute Section 325D.13.

**164.   Defendants are "persons" within the meaning of Minn. Stat. § 325D.10.**

Paragraph 164. *Answer*: LG states that Paragraph 164 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

**165.   Each Defendant (LG, through its creation of false, prominently highlighted specifications, and Best Buy, through its adoption and dissemination of the prominently highlighted specifications on its website and on its fact tags) knowingly misrepresented directly to Plaintiffs and consumers the true quality of their merchandise, in advertising and selling its merchandise, by falsely inflating and misstating the refresh rate on LG televisions. The refresh rate of televisions is directly related to picture quality. By representing that the refresh rate was higher than it actually is, Defendants misled Plaintiffs and members of the Class and Subclass into believing that the televisions were capable of higher refresh rate and picture quality than they actually were, and thus violated Minn. Stat. § 325D.13.**

Paragraph 165. *Answer*: LG denies the allegations contained in Paragraph 165 of the Second Amended Complaint, and states that overall picture quality is a function of numerous features, and that as technology has evolved over time overall picture quality has been described in various ways that are not limited to refresh rate.

**166.   Plaintiffs and members of Class and Subclass have suffered loss by paying more than they would have otherwise paid for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.**

Paragraph 166. *Answer*: LG denies the allegations contained in Paragraph 166 of the Second Amended Complaint.

## COUNT IV
**Violation of New Jersey's Consumer Fraud Act - Fraud in Connection with Sale or Advertisement of Merchandise,
N.J. Stat. Ann. § 56:8-1, *et seq.***

**167.   Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 167. *Answer*: LG hereby incorporates as if fully set forth herein its

answers and defenses to Paragraphs 1-166.

168. **Defendants' representations related to the refresh rates of LG televisions, as described herein, are advertisements as defined by N.J. Stat. Ann. § 56:8-1(a).**

Paragraph 168. *Answer*: LG states that Paragraph 168 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required,

and refers to the contents of the statute.

169. **The LG televisions sold by Defendants are merchandise as defined in N.J. Stat. Ann. § 56:8-1(c).**

Paragraph 169. *Answer*: LG states that Paragraph 169 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required,

and refers to the contents of the statute.

170. **Defendants are persons as defined in N.J. Stat. Ann. § 56:8-1(d).**

Paragraph 170. *Answer*: LG states that Paragraph 170 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required,

and refers to the contents of the statute.

171. **Defendants misrepresented the refresh rate of LG televisions, artificially inflating the refresh rate, expressed in Hz, to at least twice the actual refresh rate (LG, through its creation of false, prominently highlighted specifications, and Best Buy, through its adoption and dissemination of the prominently highlighted specifications on its website and on its fact tags). The false statement regarding the refresh rates of the LG televisions were untrue, misleading, and deceptive, inducing Plaintiffs and other consumers to spend more for televisions that have lower picture quality than represented.**

Paragraph 171. *Answer*: LG denies the allegations contained in Paragraph 171 of the

Second Amended Complaint.

172. **The misrepresented refresh rate of LG televisions, expressed in Hz, is a material fact to Plaintiffs and other consumers because it is directly related to picture quality and value, and because Defendants themselves recognize the materiality of their representations as evidenced by their prominent placement on Defendants' labels, packaging, brochures, and shelf tags. Consumers, including Plaintiffs and the**

members of the Class and Subclass would not have paid as much for the LG televisions had Defendants accurately disclosed the refresh rate of the televisions. Nor could Defendants charge as much for such televisions, as the refresh rate is directly related to the amount of money manufacturers and retailers are able to charge for televisions.

Paragraph 172. *Answer*: LG denies the allegations contained in Paragraph 172 of the

Second Amended Complaint.

173. **Defendants placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants. Plaintiffs and the Class and Subclass were harmed by Defendants' misrepresentations and purchased the LG televisions. Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.**

Paragraph 173. *Answer*: LG denies the allegations contained in Paragraph 173 of the

Second Amended Complaint.

174. **Plaintiffs are entitled to sue both LG (which created the representations) and Best Buy (which displayed the same representations), as the concerted conduct of both Defendants caused Plaintiffs and members of the Class and Subclass to suffer an ascertainable loss by receiving less than what was promised, as discussed *supra*. Plaintiffs have also suffered an ascertainable loss by being deprived of his expectation interest and benefit of his bargain.**

Paragraph 174. *Answer*: LG denies the allegations contained in Paragraph 174 of the

Second Amended Complaint.

**COUNT V**
**Violation of the California Legal Remedies Act,**
**Cal. Civ. Code § 1780 *et seq.***

175. **Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 175. *Answer*: LG hereby incorporates as if fully set forth herein its

answers and defenses to Paragraphs 1-174.

176. **This legal theory, alleged in the alternative to relief under Minnesota or New Jersey consumer protection law, is based on Defendants' deceptive and misleading conduct, based on common misrepresentations of material fact, in violation of the California Legal Remedies Act, Cal. Civ. Code § 1780 *et seq.* ("CLRA").**

Paragraph 176. *Answer*: To the extent that the allegations in Paragraph 176 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 176 of the Second Amended Complaint concerning "deceptive and misleading conduct" and "misrepresentations," and otherwise states that the remaining allegations in Paragraph 176 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

177. **Plaintiffs are consumers, purchasers, or other persons entitled to the protection of the CLRA as he purchased an LG LED television for personal, family, or household purposes.**

Paragraph 177. *Answer*: To the extent that the allegations in Paragraph 177 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG states that it denies knowledge or information as to the purpose for which any Plaintiff purchased an LG LED television. LG states that the remainder of Paragraph 177 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

178. **LG's LED televisions are goods, products, consumer goods, merchandise, property, and/or assets as those terms are defined under the CLRA.**

Paragraph 178. *Answer*: To the extent that the allegations in Paragraph 178 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG states that Paragraph 178 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

179. **Each Defendant (LG, through its creation of false, prominently highlighted specifications, and Best Buy, through its adoption and dissemination of the prominently highlighted specifications on its website and on its fact tags) misrepresented the refresh rate of LG televisions, artificially inflating the refresh rate, expressed in Hz, to at least twice the actual refresh rate. The false statement of the refresh rates of the LG televisions were untrue, misleading, and deceptive, inducing Plaintiffs to spend more for a television that has lower picture quality than represented.**

Paragraph 179. *Answer*: To the extent that the allegations in Paragraph 179 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 179 of the Second Amended Complaint.

180. **The misrepresented refresh rate of LG televisions, expressed in Hz, is a material fact to Plaintiffs and other consumers because it is directly related to picture quality, and because Defendants themselves recognize the materiality of their representations as evidenced by their prominent placement on Defendants' labels, packaging, brochures, and shelf tags. Consumers, including Plaintiffs and the members of the Class and Subclass, would not have paid as much for the LG televisions had Defendants accurately disclosed the refresh rate of the televisions. Nor could Defendants charge as much for such televisions, as the refresh rate is**

**directly related to the amount of money manufacturers and retailers are able to charge for televisions.**

Paragraph 180. *Answer*:  To the extent that the allegations in Paragraph 180 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required.  With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 180 of the Second Amended Complaint.

181.  **Defendants placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants. Plaintiffs and the Class and Subclass were harmed by Defendants' misrepresentations. Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.**

Paragraph 181. *Answer*:  To the extent that the allegations in Paragraph 181 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required.  With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 181 of the Second Amended Complaint.

182.  **Through the above described conduct, Defendants have engaged in deceptive and misleading business practice as proscribed by Cal. Civ. Code § 1770 (5), (7), (9), and (13), *inter alia*, by:**

　　a.　**Misrepresenting that the LG LED televisions at issue have characteristics, uses, benefits, and qualities which they do not have;**

　　b.　**Misrepresenting that the LG LED televisions at issue are of a particular standard, quality, and grade when they are not; and**

    c.      **Advertising the LG LED televisions at issue with the intent not to sell them as advertised;**

    d.      **Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions;**

Paragraph 182. *Answer*: To the extent that the allegations in Paragraph 182 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 182 of the Second Amended Complaint.

183.    **Plaintiffs and members of the Class and Subclass have suffered an actual loss by paying more than they would have otherwise paid—and more than Defendants would have been able to charge—for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.**

Paragraph 183. *Answer*: To the extent that the allegations in Paragraph 176 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 183 of the Second Amended Complaint.

184.    **Plaintiffs have provided Defendants pre-filing notice in accordance with Cal. Civ. Code § 1782 by mailing notice via certified mail on November 27, 2017. By this letter, Plaintiffs demanded that Defendants provide a classwide remedy that rectifies its misconduct. By letter dated December 29, 2017, Defendants have refused to rectify the conduct complained of as described within on a classwide basis and provide any relief demanded. Therefore, Plaintiffs seek damages in addition to his claims for injunctive and other equitable relief under Cal. Civ. Code § 1780.**

Paragraph 184. *Answer*:  To the extent that the allegations in Paragraph 176 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required.  With respect to any Plaintiffs who have a pending claim based on this Count, the allegations in the final sentence of Paragraph 184 of the Second Amended Complaint consist of argument which does not require a response. To the extent an answer is required, LG denies the remaining allegations contained in Paragraph 184 of the Second Amended Complaint, and states that on November 30, 2017 it received a letter dated November 27, 2017, from Plaintiff Villa Lara, regarding a "Warranty Claim – Letter Pursuant to California Civil Code § 1782" and seeking relief on behalf of a putative class, and that the letter stated that it was sent by certified mail. LG further states that on December 29, 2017, LG sent a letter by electronic mail to Plaintiff Villa Lara responding to the California Consumer Legal Remedies Act Demand Letter.

## COUNT VI
### Violation of California Unfair Competition Law,
### California Business and Professions Code § 17200 *et seq.*

185.  **Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 185. *Answer*: LG hereby incorporates as if fully set forth herein its answers and defenses to Paragraphs 1-184.

186.  **This legal theory is alleged in the alternative to relief under Minnesota or New Jersey consumer protection law.**

Paragraph 186. *Answer*: To the extent that the allegations in Paragraph 186 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is

required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG states that the allegations in Paragraph 186 of the Second Amended Complaint consist of argument which does not require a response.

187. **The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." The UCL declares that any act or business practice that is forbidden by law is unlawful and a violation of the UCL.**

Paragraph 187. *Answer*: To the extent that the allegations in Paragraph 187 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG states that Paragraph 187 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

188. **Plaintiffs and the Class and Subclass are consumers, purchasers, or other person entitled to the protection of the UCL.**

Paragraph 188. *Answer*: To the extent that the allegations in Paragraph 188 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG states that Paragraph 188 of the

Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

189. **Defendants' conduct, as described above, constitutes unlawful, unfair, and fraudulent practices under the UCL.**

Paragraph 189. *Answer*: To the extent that the allegations in Paragraph 189 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 189 of the Second Amended Complaint .

190. **Defendants' unlawful practices include, but are not limited to, violations of Cal. Civ. Code § 1770(5), (7), (9), and (13) (*inter alia*).**

Paragraph 190. *Answer*: To the extent that the allegations in Paragraph 190 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required. With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 190 of the Second Amended Complaint.

191. **Defendants committed unfair and/or fraudulent business practice by their marketing and advertising of LG LED televisions with refresh rates that were twice as high as their actual refresh rates, injuring consumers and offending established public policy.**

Paragraph 191. *Answer*: To the extent that the allegations in Paragraph 191 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is

required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required.  With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 191 of the Second Amended Complaint.

192. **Plaintiffs suffered an injury-in-fact and lost money as a result of Defendants' conduct and practices as described herein and challenged by paying more than they would have otherwise paid—and more than Defendants would have been able to charge—for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.**

Paragraph 192. *Answer*: To the extent that the allegations in Paragraph 191 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required.  With respect to any Plaintiffs who have a pending claim based on this Count, LG denies the allegations contained in Paragraph 192 of the Second Amended Complaint.

193. **Separate from any restitution that may be due, Plaintiffs and the Class and Subclass are entitled to injunctive and declaratory relief, including but not limited to, injunctive and declaratory relief in the form of an order requiring Defendants to immediately cease the unfair, unlawful, and fraudulent business practices alleged herein, and attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5, *inter alia*.**

Paragraph 193. *Answer*: To the extent that the allegations in Paragraph 176 relate to Plaintiff Hudock's claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required. On that same basis, these allegations should be moot as to Plaintiff Fleishman, and no answer should be required.  With respect to any Plaintiffs who have a pending claim based on this Count, LG states that Paragraph 193 of the

Second Amended Complaint purports to state a legal conclusion as to which no response is required.

## COUNT VII
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 Ill. Comp. Stat. 505/1

**194.    Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 194. *Answer*: LG hereby incorporates as if fully set forth herein its answers and defenses to Paragraphs 1-193.

**195.    This legal theory is alleged in the alternative to relief under Minnesota or New Jersey consumer protection law.**

Paragraph 195. *Answer*: To the extent that the allegations contained in Paragraph 195 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required.

**196.    The LG televisions sold by LG, Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC are merchandise as defined in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 (the "CFA").**

Paragraph 196. *Answer*: To the extent that the allegations contained in Paragraph 196 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required.

**197.    Defendants' representations related to the refresh rates of LG televisions, as described herein, are advertisements as defined by Section 1(a) of the CFA.**

Paragraph 197. *Answer*: To the extent that the allegations contained in Paragraph 197 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required.

198. **Each Defendant (LG, through its creation of false, prominently highlighted specifications, and Best Buy, through its adoption and dissemination of the prominently highlighted specifications on its website and on its fact tags) engaged in unfair or deceptive practices in violation of the CFA when they misrepresented the refresh rate of LG televisions, by artificially inflating the refresh rate, expressed in Hz, to at least twice the actual refresh rate. The false statement of the refresh rates of the LG televisions were untrue, misleading, and deceptive, inducing Plaintiffs and members of the Class and Subclass to spend more for a television that has lower picture quality than represented.**

Paragraph 198. *Answer*: To the extent that the allegations contained in Paragraph

198 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to

the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no

answer is required.

199. **The misrepresented refresh rate of LG televisions, expressed in Hz, is a material fact to Plaintiffs, members of the Class and Subclass, and other consumers because it is directly related to picture quality, and because Defendants themselves recognize the materiality of their representations as evidenced by their prominent placement on Defendants' labels, packaging, brochures, and shelf tags. Consumers, including Plaintiffs and members of the Class and Subclass, would not have paid as much for the LG televisions had Defendants accurately disclosed the refresh rate of the televisions. Nor could Defendants charge as much for such televisions, as the refresh rate is directly related to the amount of money manufacturers and retailers are able to charge for televisions.**

Paragraph 199. *Answer*: To the extent that the allegations contained in Paragraph

199 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to

the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no

answer is required.

200. **Defendants placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants. Plaintiffs and members of the Class and Subclass were harmed by Defendants' misrepresentations. Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.**

Paragraph 200. *Answer*: To the extent that the allegations contained in Paragraph

200 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to

the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no

answer is required.

201. **Defendants' conduct described herein repeatedly occurred in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.**

Paragraph 201. *Answer*: To the extent that the allegations contained in Paragraph

201 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to

the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no

answer is required.

202. **Plaintiffs and members of the Class and Subclass have suffered a loss by paying more than they would have otherwise paid—and more than Defendants would have been able to charge—for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.**

Paragraph 202. *Answer*: To the extent that the allegations contained in Paragraph

202 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to

the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no

answer is required.

203. **As a direct and proximate result of the unfair and deceptive practices of Defendants set forth above, Plaintiffs and members of the Class and Subclass are entitled to actual damages, compensatory damages, penalties, and attorneys' fees and costs as set forth in Section 10a of the CFA.**

Paragraph 203. *Answer*: To the extent that the allegations contained in Paragraph

203 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to

the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no

answer is required.

204. **Separate from any damages that may be due, Plaintiffs and members of the Class and Subclass are entitled to injunctive relief, including but not limited to, injunctive**

**relief in the form of an order requiring Defendants to immediately cease the unfair and deceptive business practices alleged herein, and attorneys' fees and costs pursuant to Section 10a(e).**

Paragraph 204. *Answer*: To the extent that the allegations contained in Paragraph 204 relate to Plaintiffs' claims against LG, those claims were dismissed pursuant to the Court's July 17, 2019 Order (ECF 217), those allegations are moot, and no answer is required.

**COUNT VIII**
**Violation of the New York General Business Law**
**New York General Business Law § 349**

205.    **Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 205. *Answer*: LG incorporates as if fully set forth herein its answers and defenses to Paragraphs 1-204.

206.    **This legal theory is alleged in the alternative to relief under Minnesota or New Jersey consumer protection law.**

Paragraph 206. *Answer*: To the extent that the allegations contained in Paragraph 206 relate to Plaintiffs' claims against LG, those allegations are moot as no currently-named plaintiff resides or purchased an accused television in New York, and therefore no answer is required. To the extent an answer is required, LG states that Paragraph 206 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

207.    **Plaintiffs are persons as contemplated under N.Y. Gen. Bus. Law § 349.**

Paragraph 207. *Answer*: To the extent that the allegations contained in Paragraph 207 relate to Plaintiffs' claims against LG, those allegations are moot as no currently-named plaintiff resides or purchased an accused television in New York, and therefore no answer is required. To the extent an answer is required, LG states that

Paragraph 207 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

208. **Defendants are persons, firms, corporations, or associations as contemplated under N.Y. Gen. Bus. Law § 349.**

Paragraph 208. *Answer*: To the extent that the allegations contained in Paragraph 208 relate to Plaintiffs' claims against LG, those allegations are moot as no currently-named plaintiff resides or purchased an accused television in New York, and therefore no answer is required. To the extent an answer is required, LG states that Paragraph 208 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required, and refers to the contents of the statute.

209. **Defendants, in selling LG televisions to the public at retail stores and on retail online websites, sold those LG televisions in a consumer-oriented manner.**

Paragraph 209. *Answer*: To the extent that the allegations contained in Paragraph 209 relate to Plaintiffs' claims against LG, those allegations are moot as no currently-named plaintiff resides or purchased an accused television in New York, and therefore no answer is required. To the extent an answer is required, LG states that the allegations contained in Paragraph 209 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 209 of the Second Amended Complaint.

210. **The misrepresented refresh rate of LG televisions, expressed in Hz, is a material fact to Plaintiffs and other consumers because it is directly related to picture quality and value, and because Defendants themselves recognize the materiality of their representations as evidenced by their prominent placement on Defendants' labels, packaging, brochures, and shelf tags. Consumers, including Plaintiffs and the members of the Class and Subclass would not have paid as much for the LG televisions had Defendants accurately disclosed the refresh rate of the televisions. Nor could Defendants charge as much for such televisions, as the refresh rate is directly related to the amount of money manufacturers and retailers are able to charge for televisions. Such conduct is likely to mislead a reasonable consumer**

**acting reasonably under the circumstances to believe Defendants' representations regarding their advertised refresh rates.**

Paragraph 210. *Answer*: To the extent that the allegations contained in Paragraph 210 relate to Plaintiffs' claims against LG, those allegations are moot as no currently-named plaintiff resides or purchased an accused television in New York, and therefore no answer is required. To the extent an answer is required, LG denies the allegations contained in Paragraph 210 of the Second Amended Complaint.

211. **Plaintiffs are entitled to sue both LG (which created the representations) and Best Buy (which displayed the same representations), as the concerted conduct of both Defendants caused Plaintiffs and members of the Class and Subclass to suffer an ascertainable loss by receiving less than what was promised, as discussed *supra*. Plaintiffs have also suffered an ascertainable loss by being deprived of their expectation interest and benefit of their bargain.**

Paragraph 211. *Answer*: To the extent that the allegations contained in Paragraph 211 relate to Plaintiffs' claims against LG, those allegations are moot as no currently-named plaintiff resides or purchased an accused television in New York, and therefore no answer is required. To the extent an answer is required, LG denies the allegations contained in Paragraph 211 of the Second Amended Complaint.

### COUNT IX
**Violation of Pennsylvania Unfair Trade Practices & Consumer Protection Law
73 P.S. 201-1, *et seq.***

212. **Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 212. *Answer*: LG hereby incorporates as if fully set forth herein its answers and defenses to Paragraphs 1-211.

213. **This legal theory is alleged in the alternative to relief under Minnesota or New Jersey consumer protection law.**

Paragraph 213. *Answer*: LG States that Paragraph 213 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required.

214. **Plaintiffs are "persons" as 73 Pa. Stat. § 201-2 defines that term.**

Paragraph 214. *Answer*: LG States that Paragraph 214 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required,

and refers to the contents of the statute.

215. **Each Plaintiff purchased the LG televisions primarily for personal, family, or household purposes.**

Paragraph 215. *Answer*: LG denies knowledge or information sufficient to form a

belief as to the truth of the allegations contained in Paragraph 215 of the Second

Amended Complaint.

216. **Defendants misrepresented the refresh rate of LG televisions, artificially inflating the refresh rate, expressed in Hz, to at least twice the actual refresh rate (LG, through its creation of false, prominently highlighted specifications, and Best Buy, through its adoption and dissemination of the prominently highlighted specifications on its website and on its fact tags). The false statement regarding the refresh rates of the LG televisions were unfair, deceptive, fraudulent, and misrepresented, and it induced Plaintiffs and other consumers to spend more for televisions that have lower picture quality than represented. This deceptive act was likely to confuse and deceive reasonable consumers under the circumstances, including Plaintiffs.**

Paragraph 216. *Answer*: LG denies the allegations contained in Paragraph 216 of the

Second Amended Complaint.

217. **Plaintiffs reasonably relied on Defendants' false and misleading advertisements and labeling in purchasing an LG television. Plaintiffs reasonably believed, based on Defendants' misrepresentations, that they were purchasing a television with a significantly and materially higher refresh rate and, therefore, advanced technology and a better picture quality than the television actually possessed.**

Paragraph 217. *Answer*: LG denies the allegations contained in Paragraph 217 of the

Second Amended Complaint.

218. **Subsequently, Plaintiffs paid substantially more than they would have otherwise paid for the televisions had the refresh rate been accurately disclosed by Defendants. Plaintiffs would not have purchased his LG television, or, alternatively, would have paid much less for it, had the accurate refresh rate been accurately disclosed by Defendants, resulting in an ascertainable loss for each Plaintiff.**

Paragraph 218. *Answer*: LG denies the allegations contained in Paragraph 218 of the Second Amended Complaint.

## COUNT X
### Breach of Express Warranty

**219. Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 219. *Answer*: LG hereby incorporates as if fully set forth herein its answers and defenses to Paragraphs 1-218.

**220. Defendants are merchants as defined by relevant statutes.**

Paragraph 220. *Answer*: LG denies that it has sufficient knowledge or information to admit or deny the allegations contained in Paragraph 220 of the Second Amended Complaint because Plaintiffs have failed to identify the "relevant statutes," and the allegations contained in Paragraph 220 of the Second Amended Complaint therefore are denied.

**221. The televisions sold to Plaintiffs and the Class and Subclass are goods as defined by relevant statutes.**

Paragraph 221. *Answer*: LG denies that it has sufficient knowledge or information to admit or deny the allegations contained in Paragraph 221 of the Second Amended Complaint because Plaintiffs have failed to identify the "relevant statutes," and the allegations contained in Paragraph 221 of the Second Amended Complaint therefore are denied.

**222. An express warranty is created by a seller to a buyer by any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain, or by any description of the goods which is made part of the basis of the bargain, *inter alia*.**

Paragraph 222. *Answer*: LG denies the allegations contained in Paragraph 222 of the Second Amended Complaint.

223.  **As described herein, LG, Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants.**

Paragraph 223. *Answer*: LG denies the allegations contained in Paragraph 223 of the

Second Amended Complaint regarding the claimed "false statements," and denies

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 223 of the Second Amended Complaint.

224.  **Defendants' false statements of the refresh rates of the LG televisions became a basis of the bargain, and Plaintiffs and members of the Class and Subclass expected that the LG televisions that they purchased would conform to Defendants' affirmations of the refresh rates.**

Paragraph 224. *Answer*: LG denies the allegations contained in Paragraph 224 of the

Second Amended Complaint regarding the claimed "false statements," and denies

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 224 of the Second Amended Complaint.

225.  **Plaintiffs and the Class and Subclass were harmed by Defendants' misrepresentations and purchased the LG televisions.**

Paragraph 225. *Answer*: LG denies the allegations contained in Paragraph 225 of the

Second Amended Complaint.

226.  **Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.**

Paragraph 226. *Answer*: LG denies the allegations contained in Paragraph 226 of the

Second Amended Complaint.

227.  **Plaintiffs and members of Class and Subclass have suffered loss by paying more than they would have otherwise paid for the LG televisions and by receiving televisions with lower picture quality than they were promised by Defendants.**

Paragraph 227. *Answer*: LG denies the allegations contained in Paragraph 227 of the

Second Amended Complaint.

## COUNT XI
## Breach of Implied Warranty

**228.  Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 228. *Answer*: LG hereby incorporates as if fully set forth herein its

answers and defenses to Paragraphs 1-227.

**229.  The televisions sold to Plaintiffs and the Class and Subclass are goods as defined by relevant statutes.**

Paragraph 229. *Answer*: LG denies that it has sufficient knowledge or information to

admit or deny the allegations contained in Paragraph 229 of the Second Amended

Complaint because Plaintiff has failed to identify the "relevant statutes," and the

allegations contained in Paragraph 229 of the Second Amended Complaint therefore

are denied. LG further denies that this case can proceed as a class action.

**230.  Defendants are merchants as defined by relevant statutes.**

Paragraph 230. *Answer*: LG denies that it has sufficient knowledge or information to

admit or deny the allegations contained in Paragraph 230 of the Second Amended

Complaint because Plaintiff has failed to identify the "relevant statutes," and the

allegations contained in Paragraph 230 of the Second Amended Complaint therefore

are denied.

**231.  Every sale of consumer goods that are sold at retail in California shall be accompanied by the manufacturer's and the retail seller's implied warranty that that the goods are merchantable which includes that the goods are fit for their ordinary purposes for which such goods are used, pass without objection in the trade under the contract description, and conform to the promises or affirmations of fact made on the container or label.**

Paragraph 231. *Answer*: LG states that Paragraph 231 of the Second Amended

Complaint purports to state a legal conclusion as to which no response is required.

**232.  As described herein, the LG televisions sold to Plaintiffs and members of the Class and Subclass were not as described by LG, Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC in the contract description. Had the true and accurate**

**refresh rates of the televisions been known, they would not have passed without objection in the trade and consumers would not have purchased the televisions, or would have been willing to pay less, because the televisions did not comply with the contract descriptions, which described the televisions as being capable of higher refresh rates than they actually were. Further, as explained herein, trade usage of "Hz" refers to refresh rates. Defendants were aware of such trade usage and nevertheless misstated the refresh rates on the televisions sold to Plaintiffs and members of the Class and Subclass. The description of the televisions sold to Plaintiffs and members of the Class and Subclass did not meet the contract descriptions as interpreted by trade usage because they were not capable of the refresh rates listed in the descriptions.**

Paragraph 232. *Answer*: LG denies knowledge or information sufficient to understand Plaintiffs' use of "contract descriptions" in Paragraph 232 of the Second Amended Complaint, and on that basis denies the allegations contained in the final sentence of Paragraph 232 of the Second Amended Complaint. LG otherwise denies all allegations contained in Paragraph 232 of the Second Amended Complaint, except states that LG is aware that "Hz" sometimes refers to refresh rates. LG further denies that this case can proceed as a class action.

233. **High refresh rate televisions are used for, and reasonably and objectively expected to be capable of, displaying moving objects and action with reduced motion blur. High refresh rate televisions are specifically selected by consumers who wish to watch high action television (such as sports programming), making such use the ordinary purpose of the products. Because the refresh rates are actually lower than described, the televisions purchased by Plaintiffs and members of the Class and Subclass are unfit for that ordinary purpose.**

Paragraph 233. *Answer*: LG states that Paragraph 233 of the Second Amended Complaint purports to state a legal conclusion as to which no response is required. To the extent that the allegations set forth in Paragraph 233 are deemed to be factual in whole or in part, LG denies the allegations contained in Paragraph 233 of the Second Amended Complaint, and states that there can be a number of uses for televisions with various refresh rates.

234. **As described herein, the televisions sold to Plaintiffs and members of the Class and Subclass did not conform to the promises or affirmations of fact made on the**

**packaging and labels associated with the televisions. The packaging and associated technical specifications represented that the refresh rate of the televisions sold to Plaintiffs and members of the Class and Subclass were capable of a much higher refresh rate, expressed in Hz, than they actually were.**

Paragraph 234. *Answer*: LG denies the allegations contained in Paragraph 234 of the

Second Amended Complaint.

**235.  Plaintiffs and members of the Class and Subclass were harmed by these implied warranties by purchasing the televisions.**

Paragraph 235. *Answer*: LG denies the allegations contained in Paragraph 235 of the

Second Amended Complaint.

**236.  As a result of Defendants' breaches of their implied warranties of merchantability, Plaintiffs and members of the Class and Subclass have been injured. Had Plaintiffs and members of the Class and Subclass known the true and accurate refresh rates of the televisions, they would not have purchased the televisions, or would have been willing to pay less.**

Paragraph 236. *Answer*: LG denies the allegations contained in Paragraph 236 of the

Second Amended Complaint.

**COUNT XII**
**Breach of Contract**
**(by Plaintiffs Villa Lara, Poppen, Mannacio, Carpenter, Fleishman, and the Hudocks against Defendant Best Buy)**

**237.  Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 237. *Answer*: LG hereby incorporates as if fully set forth herein its

answers and defenses to Paragraphs 1-236.

**238.  Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC offered to sell Villa Lara a "120Hz" television.**

Paragraph 238. *Answer*: Plaintiffs assert Count XII only "against Defendant Best

Buy." On that basis, LG states that the allegations contained in Paragraph 238 of the

Second Amended Complaint do not relate to LG and therefore do not require a

response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 238 of the Second Amended Complaint.

**239.** **Plaintiffs accepted Defendants' offer and performed under the contract by providing payment for the television at the price dictated by Defendants' offer.**

Paragraph 239. *Answer*: Plaintiffs assert Count XII only "against Defendant Best Buy." On that basis, LG states that the allegations contained in Paragraph 239 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 239 of the Second Amended Complaint.

**240.** **Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC breached their contract with Plaintiffs by supplying a television with a refresh rate of 60 Hz.**

Paragraph 240. *Answer*: Plaintiffs assert Count XII only "against Defendant Best Buy." On that basis, LG states that the allegations contained in Paragraph 240 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 240 of the Second Amended Complaint.

**241.** **As a direct result of the Best Buy Defendants' breach of contract, Plaintiffs have sustained economic losses and is entitled to compensatory damages in an amount to be proven at trial.**

Paragraph 241. *Answer*: Plaintiffs assert Count XII only "against Defendant Best Buy." On that basis, LG states that the allegations contained in Paragraph 241 of the Second Amended Complaint do not relate to LG and therefore do not require a response, but to the extent that a response is required, LG denies the allegations contained in Paragraph 241 of the Second Amended Complaint.

## COUNT XIII
## Unjust Enrichment

**242.** **Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.**

Paragraph 242. *Answer*: LG hereby incorporates as if fully set forth herein its

answers and defenses to Paragraphs 1-241.

243.  **As described herein, LG, Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC placed the false refresh rate, expressed in Hz, in advertisements and spec sheets related to the LG televisions, intending that consumers would rely on those misrepresentations and purchase the televisions from Defendants.**

Paragraph 243. *Answer*: LG denies the allegations contained in Paragraph 243 of the

Second Amended Complaint.

244.  **Had Defendants disclosed the true refresh rate, Plaintiffs and members of the Class and Subclass would not have purchased the televisions or would not have been willing to pay as much for the televisions.**

Paragraph 244. *Answer*: LG denies the allegations contained in Paragraph 244 of the

Second Amended Complaint concerning refresh rates that it disclosed, and denies

knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 244 of the Second Amended Complaint.

245.  **Defendants generated profits from misleading Plaintiffs and members of the Class and Subclass into purchasing LG televisions.**

Paragraph 245. *Answer*: LG denies the allegations contained in Paragraph 245 of the

Second Amended Complaint.

246.  **Defendants have been knowingly and unjustly enriched at the expense of and to the detriment of Plaintiffs and the members of the Class and Subclass by collecting excess profits to which Defendants are not entitled.**

Paragraph 246. *Answer*: LG denies the allegations contained in Paragraph 246 of the

Second Amended Complaint.

247.  **Defendants' actions were unjust because, absent the material misrepresentations about the refresh rates of their televisions, they would not have been able to receive as much money for those models as they did, and as Plaintiffs paid due to the false statements.**

Paragraph 247. *Answer*: LG denies the allegations contained in Paragraph 247 of the

Second Amended Complaint.

248. **LG, Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC have unjustly retained those ill-gotten profits and should be required to disgorge this unjust enrichment.**

Paragraph 248. *Answer*: LG denies the allegations contained in Paragraph 248 of the

Second Amended Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class and Subclass, request

relief as follows:

1. Certification of the Class and Subclass as defined herein pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1), (b)(2), (b)(3), or a combination of subsections;
2. Appointment of Plaintiffs as Class and Subclass Representative[s] and the undersigned counsel as Class Counsel;
3. Restitution of all charges paid by Plaintiffs and members of the Class and Subclass because of Defendants' deceptive business practices as described herein;
4. Disgorgement and restitution to Plaintiffs and to members of the Class and Subclass of all monies wrongfully obtained and retained by Defendants;
5. Compensatory and actual damages in an amount according to proof at trial;
6. Statutory damages and penalties, as provided by law;
7. Prejudgment interest commencing on the date of payment of the charges and continuing through the date of entry of judgment in this action;
8. Costs and fees incurred in connection with this action, including attorneys' fees, expert witness fees, and other costs, as provided by law; and
9. Such other and further relief as the Court deems just and proper.

*Answer*:  LG denies that Plaintiffs are entitled to a judgment or to any other relief as

requested in the "PRAYER FOR RELIEF."

All allegations of the Second Amended Complaint not expressly admitted in this Answer

are denied.

## AFFIRMATIVE DEFENSES

As for its affirmative defenses, LG asserts as follows. By stating these affirmative

defenses, LG does not assume the burden of proving any fact, issue, or element of a cause of

action that it would not otherwise bear.

1.      The Second Amended Complaint, and every claim alleged therein, fails to state facts sufficient to constitute a claim upon which relief can be granted.

2.      The Second Amended Complaint, and every claim alleged therein, is barred, in whole or in part, by the absence of any material misrepresentation, misleading disclosures, and/or omissions made by LG to Plaintiffs upon which the Plaintiffs could have reasonably or justifiably relied.

3.      The Second Amended Complaint, and every claim alleged therein, is barred, in whole or in part, because Plaintiffs and putative class members did not rely on any representation, statement, or omission by LG, or alternatively, such reliance was not reasonable or justifiable.

4.      The Second Amended Complaint, and every claim alleged therein, is barred, in whole or in part, by laches, waiver, and/or estoppel.

5.      The Second Amended Complaint, and every alleged claim premised on fraudulent conduct, is barred, in whole or in part, for failure to plead fraud with sufficient particularity under the Federal Rules of Civil Procedure.

6.      The Second Amended Complaint, and every claim alleged therein, is barred, in whole or in part, for failure to mitigate damages.

7.      The Second Amended Complaint, and every claim alleged therein, is barred, in whole or in part, to the extent that any applicable statute of limitations and/or contractual limitations period has lapsed.

8.      The Second Amended Complaint, and every claim alleged therein, is barred, in whole or in part, because injuries suffered by the Plaintiffs, to the extent any exist, were caused, in whole or in part, by the conduct of third parties for whom LG was not responsible, through

forces in the marketplace over which LG has no control, or through acts or omissions on the part of the Plaintiff.

9.      The Second Amended Complaint, and every claim alleged therein, is barred, in whole or in part, to the extent the Plaintiffs have not suffered any actual injury or damage.

10.     This action is not maintainable as a class action, and relief on a class-wide basis is not appropriate because Plaintiffs have failed to allege and cannot prove the facts and prerequisites necessary for the maintenance of a class action including, but not limited to, typicality, numerosity, commonality, superiority of class-based resolution, adequacy of class representative and class counsel, or predomination of common questions of law and fact, and a uniform method of proving damages.

11.     Plaintiffs and the putative class's claims are barred to the extent they lack standing to assert the claims at issue and/or lack capacity to sue, including lacking standing to assert any claims relating to television models that Plaintiffs did not purchase.

12.     LG denies that Plaintiffs and the putative class have valid consumer protection claims under the state Acts Plaintiffs allege apply in this action or any other State whose law is or becomes relevant in the course of this action. If such claims are found to exist, however, LG pleads all available defenses under the Acts.

13.     LG, at all times material hereto, acted reasonably and within applicable industry standards.

14.     Plaintiffs' or the putative class's claims fail in part to the extent that the underlying products were purchased for business purposes and as such are outside the scope of certain state consumer protection laws.

15.     Any warranty-based claim is barred, in whole or in part, because LG did not make or breach any warranties that are applicable to the named Plaintiffs or any putative class members.

16.     Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, by their failure to give proper or timely notice of any alleged defect or breach of warranty.

17.     Plaintiffs' claims and the claims of putative class members are barred, in whole or in part, by Plaintiffs' and/or the putative class members' lack of reliance on any allegedly applicable warranties.

18.     Plaintiffs' claims and the claims of the putative class members are barred, in whole or in part, by any and all express conditions, disclaimers, modifications, or exclusions made by LG.

19.     Plaintiffs' and the putative class' claims are barred because LG has not engaged in any conduct that is a violation of any law or regulation.

20.     Plaintiffs' claims are barred due to lack of privity with LG or any direct benefit conferred to LG by the Plaintiffs.

21.     The Court is without personal jurisdiction over certain putative class members.

22.     Plaintiffs and the members of the putative class are not entitled to pursue any cause of action for equitable relief, or an award of equitable relief, because they have an adequate remedy at law.

23.     To the extent that the named Plaintiffs and the members of the putative class claim exemplary or punitive damages, such awards are prohibited under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Alternatively, to the extent that the

named Plaintiffs and the members of the putative class claim exemplary or punitive damages, they fail to allege claims sufficient to entitle them to such an award.

24.     Plaintiffs' and the putative class's claims are barred, in whole or in part, because any injuries sustained by Plaintiffs or the putative class were the result of intervening or superseding conduct of third parties.

25.     Plaintiffs' and the putative class's claims for fraud, nondisclosure and/or misrepresentations, or claims based on allegations of fraud, nondisclosure, and/or misrepresentation, are barred, in whole or in part, because LG and its officers and/or agents lack the requisite scienter, including specific intent and/or willfulness, necessary to establish "fraud," nondisclosure and/or misrepresentation.

26.     LG at all times acted in good faith and in compliance with applicable state laws and regulations.

27.     LG expressly and specifically reserves the right to amend this Answer to add, delete, and/or modify defenses based upon legal theories, facts and circumstances that may or will be divulged through discovery and/or further legal analysis of Plaintiffs' position in this litigation.

28.     LG expressly and specifically reserves the right to amend this Answer to add, delete, and/or modify defenses when the Court addresses the counts and/or arguments for which the Court has deferred consideration.

## RESERVATION OF DEFENSES

LG currently has insufficient knowledge or information upon which to form a belief as to any other potential defenses that may be available to it, and expressly reserves the right to amend or supplement this Answer and defenses, as well as to assert any and all additional or

alternative defenses under any applicable state or federal law or regulations, in the event that such defenses become available. LG also reserves the right to assert any additional or alternative cross-claims, counterclaims, and third-party claims in the event that such claims become available.

## PRAYER FOR RELIEF

WHEREFORE, LG prays for relief and judgment as follows:

1.      That the Court deny Plaintiffs' prayer for relief in its entirety and dismiss the Second Amended Complaint with prejudice and enter judgment in LG's favor against Plaintiffs;

2.      That no class be certified;

3.      That the Court award LG its costs, expenses, and attorneys' fees as permitted by law;

4.      That the Court award LG such other and further relief that it deems just and proper.

Dated: August 6, 2019                    **HOGAN LOVELLS US LLP**

                                         /s/ *Phoebe A. Wilkinson*
                                         Peter H. Walsh (MN No. 388672)
                                         Alicia J. Paller (MN No. 0397780)
                                         80 South Eighth Street, Suite 1225
                                         Minneapolis, MN 55402
                                         T. (612) 402-3000
                                         F. (612) 402-3001
                                         peter.walsh@hoganlovells.com
                                         alicia.paller@hoganlovells.com

                                         Phoebe A. Wilkinson*
                                         390 Madison Avenue
                                         New York, NY 10017
                                         T. (212) 918-3000
                                         F. (212) 918-3100
                                         phoebe.wilkinson@hoganlovells.com

                                         Robert B. Wolinsky*
                                         555 Thirteenth Street NW
                                         Washington, DC 20004
                                         T. (202) 637-5600
                                         F. (202) 637-5910
                                         robert.wolinsky@hoganlovells.com
                                         * *pro hac vice*

                                         *Counsel for Defendant LG Electronics U.S.A., Inc.*