# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| *Hudock et al. v. LG Electronics U.S.A., Inc. et al.*<br><br>This Document Relates To:    All Actions | Lead Case No. 16-cv-1220 JRT-KMM<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

# TABLE OF CONTENTS

Table of Authorities ................................................................ 3

INTRODUCTION ................................................................... 7

ARGUMENT ......................................................................... 7

I.  The Meaning of Refresh Rate Is a Common Issue .................................. 7

II.  Variations in Shopping Experiences, Preferences, and Knowledge
Do Not Defeat Class Certification ............................................... 9

    A.  LG controlled retailer representations. ...................................... 11

    B.  Defendants intentionally mislead consumers. ............................. 11

    C.  Common and typical experiences predominate .......................... 12

III.  Plaintiffs Have a Viable Class-Wide Damages Model .......................... 13

    A.  Plaintiffs satisfy the *Comcast* standard. .................................. 14

    B.  Gaskins's CBC was properly designed. ..................................... 16

IV.  Minnesota and New Jersey Law Should Apply Across the Class ......... 17

    A.  Choice of Law   .......................................................... 11

    B.  Class in the Alternative .................................................... 21

V.  Proof of Causation Does Not Require Individual Inquiries ................. 22

VI.  Named Plaintiffs Are Typical and Adequate ....................................... 25

VII.  Rule 23(b)(2) Requirements Are Met ................................................. 25

CONCLUSION ........................................................................ 26

# Table of Authorities

**Page(s)**

**Cases**

*Alpern v. UtilCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ................................................................. 9, 25

*Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
   2016 WL 4098741 (D. Minn. July 28, 2016) ................................................ 14

*Byrd v. J Rayl Transp., Inc.*,
   2015 WL 12976117 (D. Minn. Mar. 20, 2015).............................................. 15

*Comcast Corp. v. Behrand*,
   569 U.S. 27 (2013) ................................................................................. 14

*CTS Corp. v. Dynamics Corp. of Am.*,
   481 U.S. 69 (1987) ................................................................................. 20

*D'Agostino v. Maldonado*,
   78 A.3d 527 (N.J. 2013)........................................................................... 20

*Dawson v. Eli Lilly & Co.*,
   543 F. Supp. 1330 (D.D.C. 1982) ............................................................... 12

*Dzielak v. Whirlpool Corp.*,
   2017 WL 6513347, at (D.N.J. Dec. 20, 2017) ............................................... 24

*Dzielak v. Whirlpool Corp.*,
   2017 WL 1034197 (D.N.J. Mar. 17, 2017)..................................................... 24

*Elias v. Ungar's Food Prod., Inc.*,
   252 F.R.D. 233 (D.N.J. 2008)..................................................................... 24

*Eubanks v. Billington*,
   110 F.3d 87 (D.C. Cir. 1997) .................................................................... 26

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
  326 F.R.D. 592 (N.D. Cal. 2018) ................................................................ 17

*Fla. State Board of Admin. v. Law Eng'g & Envtl. Servs., Inc.,*
  262 F. Supp. 2d. 1004 (D. Minn. 2003) ...................................................... 21

*Gennari v. Weichert Co. Realtors,*
  691 A.2d 350 (N.J. 1997) ............................................................................ 23

*Grp. Health Plan, Inc. v. Philip Morris Inc.,*
  621 N.W.2d 2 (Minn. 2001) ................................................................. 20, 23

*Hadley v. Kellogg Sales Co.,*
  324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...................................................... 16

*Hughes v. Wal-Mart Stores, Inc.,*
  250 F.3d 618 (8th Cir. 2001) ...................................................................... 18

*Huyer v. Wells Fargo & Co.,*
  295 F.R.D. 332 (S.D. Iowa 2013) ............................................................... 26

*In re Baycol Prods. Liab. Litig.,*
  218 F.R.D. 197 (D. Minn. 2003) ................................................................. 18

*In re Dial Complete Marketing and Sales Practice Litig.,*
  320 F.R.D. 326 (D.N.H. 2017) .................................................................... 16

*In re Dial Complete Mktg. & Sales Practices Litig.,*
  312 F.R.D. 36 (D.N.H. 2015) ...................................................................... 12

*In re FCA US LLC Monostable Elec. Gearshift Litig.,*
  382 F. Supp. 3d 687 (E.D. Mich. May 22, 2019) ................................. 16, 17

*In re Lutheran Bhd.,*
  2004 WL 909741 (D. Minn. Apr. 28, 2004) ............................................... 22

*In re MyFord Touch Consumer Litig.,*
  291 F. Supp. 3d 936 (N.D. Cal. 2018) ........................................................ 16

*In re Prudential Ins. Co. of Am. Sales,*
   *Litig.*, 962 F. Supp. 450 (D.N.J. 1997) .......................................................... 13

*In re St. Jude Med., Inc.*,
   425 F.3d 1116 (8th Cir. 2005) ...................................................................... 17

*In re St. Jude Med., Inc.*,
   522 F.3d 836 (8th Cir. 2008) ......................................................... 19, 23, 24

*In re St. Jude Med., Inc.*,
   2006 WL 2943154 (D. Minn. Oct. 13, 2006) .................................... 19, 20, 21

*In re Workers Comp.*,
   130 F.R.D. 99 (D. Minn. 1990) .................................................................... 25

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
   644 F.3d 604 (8th Cir. 2011) ................................................................. 14, 23

*Jepson v. Gen. Cas. Co. of Wisconsin*,
   513 N.W.2d 467 (Minn. 1994) ...................................................................... 21

*Khoday v. Symantec Corp.*,
   2014 WL 1281600 (D. Minn. Mar. 13, 2014) .................................... 9, 12, 13

*Ly v. Nystrom*,
   615 N.W.2d 302 (Minn. 2000) ...................................................................... 20

*Mooney v. Allianz Life Ins. Co. of N. Am.*,
   244 F.R.D. 531 (D. Minn. 2007) .................................... 17, 18, 19, 21

*Mooney v. Allianz Life Ins. Co. of N. Am.*,
   2009 WL 511572 (D. Minn. Feb. 26, 2009) .................................................. 23

*Peterson v. BASF Corp.*,
   618 N.W.2d 821, 826 (Minn. Ct. App. 2000) .............................................. 19

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ...................................................................................... 17

*Richie v. Paramount Pictures Corp.*,
   544 N.W.2d 21 (Minn. 1996) ........................................................................ 21

*Smith v. United Healthcare Servs., Inc.*,
    2002 WL 192565 (D. Minn. Feb. 5, 2002) ............................................. 25, 26

*Smith v. Univ. Wash., Law School*,
    233 F.3d 1188 (9th Cir. 2000) ........................................................................ 26

*Thompson v. Allianz Life Ins. Co. of N. Am.*,
    330 F.R.D. 219 (D. Minn. 2019) ............................................................. 17, 18

*Tuttle v. Lorillard Tobacco*,
    377 F.3d 917 (8th Cir. 2004) .......................................................................... 22

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ...................................................................................... 8

*W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
    325 F.R.D. 280 (D. Minn. 2018) .................................................................... 14

*Wiegand v. Walser Auto. Grps., Inc.*,
    683 N.W.2d 807 (Minn. 2004) ....................................................................... 12

**Statutes**

Minn. Stat. § 541.31, subd. 1(a)(1) .................................................................... 22

**Other Authorities**

Restatement 2d Conflicts § 145 ........................................................................ 24

**INTRODUCTION**

Defendants attempt to impede class certification by mischaracterizing Plaintiffs' claims and making irrelevant merits arguments. Plaintiffs do not allege that Defendants misrepresented the overall picture quality of their televisions; such representations are likely puffery. Plaintiffs instead allege that Defendants misrepresented the objective metric of a feature correlated with better picture quality: the refresh rate. Common evidence shows that higher refresh rates are important to consumers, that consumers are willing to pay more for higher refresh rates, and that consumers paid Defendants a price premium for "TruMotion 120Hz" and "TruMotion 240Hz" televisions. Defendants now admit those televisions had refresh rates of 60Hz and 120Hz. Given this overwhelming common evidence in support of Plaintiffs' common legal claims, Plaintiffs have shown that class certification is appropriate.

**ARGUMENT**

**I.    The Meaning of Refresh Rate Is a Common Issue.**

Refresh rate means the amount of *new* information capable of being displayed on the screen. *See, e.g.*, D.E. 1 at ¶3; D.E. 37 at 2; D.E. 225

("Mem.") at 14; den Boer Rprt. (Ex. 1[1]) at ¶¶12, 15. Defendants attempt to draw distinctions among Plaintiffs' expressions of refresh rate without drawing any differences—they all say the same thing. Opp'n at 14.[2] Defendants offer a different (and unsupported) definition—one where refresh rate can be "enhanced" using "backlight scanning" *without* adding new information. Opp'n at 7-12.

This description, even if colorable, merely evokes an alleged "fatal similarity"—a common merits defense *subject* to class adjudication. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016). However, the evidence contradicts it in any case. Apart from the parties' expert opinions, evidence already in the record deals Defendants' position a fatal blow:

- LG's current, public labeling admits that a TruMotion 120 television only has a 60Hz refresh rate, Figure A, *infra*;

- Defendants admit that , Mem. at 34-37;

---

[1] References to "Ex." refer to those attached to the Declarations of Dave Cialkowski [D.E. 314 and 339]. References to "Defs.' Exs." refer to those filed in support of Defendants' Opposition.

[2] Defendants' Sealed Opposition Memorandum [D.E. 315] and Redacted Opposition Memorandum [D.E. 316] have different page numbers. Plaintiffs cite to the Sealed version.

- BBY admitted that a ████████████████████████████████████████████████████████████████, Ex. 91.

- Defendants' cited articles, Defs.' Exs. 21, 22, declare that increasing the native refresh rate requires inserting *new images* between frames.

Defendants' position lacks credibility and contradicts their own admissions. While backlight scanning may provide an alternative means to improve picture quality, it cannot alter the rate at which new images are capable of being refreshed on the screen, any more than adding turbo technology to a 4-cylinder engine would allow a car to be labeled "6-cylinder." This case is about misrepresenting refresh rates—a quantitative metric, not a qualitative descriptor.

## II. Variations in Shopping Experiences, Preferences, and Knowledge Do Not Defeat Class Certification.

Defendants emphasize minute differences between their representations throughout the Class Period and ignore the common representations that Class Members were exposed to. "Factual variations amongst plaintiffs will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Khoday v. Symantec Corp.*, No. 11-cv-180 JRT/TNL, 2014 WL 1281600, at *16 (D. Minn. Mar. 13, 2014) (quoting *Alpern v. UtilCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)).

Defendants admit that ████████████████████████
███████████████. *See, e.g.*, Figure A; Mem. at 31-32.[3] Defendants also
concede that ████████████████████████████. Figure A.



Importantly, ████████ ████ ████████████████████
████████████████████████████. *See, e.g.*, Ex. 8,
LG 30(b)(6) Tr. at 362:7-23; Opp'n at 12.

---

[3] The Class does not include individuals who purchased in 2014, 2017, and
2018. Only models displayed with a Hz label are in the Class. *See* Exs. 9, 10.

## A.     LG controlled retailer representations.

Defendants argue that ██████████████████████████████

████████████████████████. Opp'n at 29, n.60 (citing Ex. 26). Yet,

LG confirms that it ████████████████████████████████████

██████. Figure A, *supra*. Moreover, ████████████████████████

████████████████████████████████████████████████

██████████████████. Ex. 26. ████████████████████████

████████████████████████████████████████████████

██████████. Ex. 92; *see also*, Exs. 93, 94, 95 ██████████████████

████████████████████████████████████████; Ex. 96.

████████████████████████████████. Ex. 97.

During the Class Period, LG only provided retailers the TruMotion-
inflated refresh rate with the "Hz" unit. This was the critical piece of
advertising Defendants used to ensure consumers believed they were getting
a television with a higher refresh rate than they received. *See, e.g.*, Ex. 98;
Mem. at n.32.

## B.     Defendants intentionally mislead consumers.

There is no evidence that consumers had actual knowledge of
Defendants' misleading sales practices, or that they read the CNET or
*Consumer Reports* articles cited by Defendants. Defs.' Ex. 5 at 25:17-24; Defs.'
Ex. 37 at 47:13-48:6; Ex. 99, Mannacio Tr., at 33:18-35:2; Ex. 100, Hudock

Tr., at 58:15-17. Critically, ███████████████████████████. *See, e.g.*, Ex. 8, LG 30(b)(6) Tr. at 362:7-23; Opp'n at 12 (admitting as much). Expecting lay consumers to "research technical literature and draw [their] own conclusions therefrom" particularly in the face of Defendants' contrary information, places on them "far too great a burden of due diligence[.]" *Dawson v. Eli Lilly & Co.*, 543 F. Supp. 1330, 1339 (D.D.C. 1982). Defendants actually created and disseminated information to the public that contradicts the articles cited and perpetuates Defendants' false advertising. *See* Ex. 91; *Wiegand v. Walser Auto. Grps., Inc.*, 683 N.W.2d 807, 812-13 (Minn. 2004) (consumer fraud despite written disclosure).

### C. Common and typical experiences predominate.

Defendants' "evidence" that BBY sales associates or varied store layouts *may* have given in-store shoppers unique purchasing experiences (Opp'n at 21-30) is irrelevant. Plaintiffs challenge the representations on the PDPs, fact tags, and brand vignettes. Every TV sold in a BBY store or on its website has a fact tag or a PDP. Mem. at 25. Commonality is not defeated by representations *in addition* to those challenged here. *See, e.g.*, *Khoday*, 2014 WL 1281600, at *15; *In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 60 n.12 (D.N.H. 2015).

Fact tags and PDPs for the Accused Models were all substantially similar because LG provided common information and worked to ensure it

was used by all retailers (*see supra*). *In re Prudential Ins. Co. of Am. Sales Litig.*, 962 F. Supp. 450 (D.N.J. 1997). None of the photos taken by BBY (Opp'n at 22-28, 32, 34) contradict Plaintiffs' allegations and, instead, show that all accused models had a consumer-facing display showing the false and inflated refresh rate:

- **Figures 11, 14; Simonson Exs. 3, 6, 7, 8, 9:** fact tags are illegible.

- **Figure 12:** no evidence draft fact tag ever used (*see* Defs.' Ex. 42) and contradicts Mannacio's testimony.

- **Figure 13 (draft); Simonson Ex. 1:** fact tag prominently displays the inflated refresh rate with "Hz". *See also* Ex. 101 (email attaching Defs.' Ex. 44).

Plaintiffs and Class Members consistently saw the inflated "Hz"-tagged refresh rate either in a header or bullet on a PDP or a fact tag. *See* Section I, *supra*. Moreover, ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████. Mem. at 34-35.

## III.  Plaintiffs Have a Viable Class-Wide Damages Model.

At class certification, Plaintiffs' damages model need only offer a "likely method for determining class damages" consistent with their liability case. *See Khoday*, 2014 WL 1281600, at *32 (citations omitted). Plaintiffs meet that standard. Mem. at 73-76. Defendants' merits arguments are premature expert attacks, which do not defeat Plaintiffs' motion.

### A.      Plaintiffs satisfy the *Comcast* standard.

At this stage, the Court need only ensure that Plaintiffs' damages methodology "is consistent with the classwide theory of liability capable of being measured on a classwide basis." *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 4098741, at *11 (D. Minn. July 28, 2016) (citation omitted). "*Comcast* merely requires that a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory." *Id.* (quoting *Comcast Corp. v. Behrand*, 569 U.S. 27, 35 (2013)). This can be done through an expert report. *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 290 (D. Minn. 2018) (citation omitted). And the evaluation of expert testimony at class certification is limited to whether it is reliable "in light of the criteria for class certification and the current state of the evidence." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 614 (8th Cir. 2011).

Plaintiffs' damages model is directly tied to their legal theory. Gaskin designed and implemented a Choice-Based Conjoint Analysis ("CBC"), using prices actually observed in the market as one of the product attributes, to isolate the market value of the deceptive refresh rate specifications. *See* Gaskin Rprt. (Ex. 86) at ¶¶9, 26; Ex. 102, Gaskin Tr., at 131:11-18. Weir, an economist, then used the results of the CBC to calculate class-wide damages. Gaskin Rprt. at ¶¶55-56; Weir Rprt. (Ex. 85) at ¶¶51-54. The results apply

14

equally to the Class and the BBY Subclass. Ex. 102, Gaskin Tr., at 329:16-23. Beyond establishing this tie between their liability theory and damages model, a full Rule 702 and *Daubert* inquiry into Gaskin's CBC methodology (such as the survey attributes, the prices used, and the sales data considered, Opp'n at 66-70) is premature and unnecessary.

Unlike the conjoint analysis in *Larsen v. Vizio, Inc.*, (Defs.' Ex. 50), Gaskin's CBC used attribute levels that reflect the specific technology and misrepresentations used by Defendants. Gaskin Rprt. at ¶26 (Refresh Rate 60Hz and TruMotion, TruMotion 120Hz, Refresh Rate 120Hz and TruMotion, and TruMotion 240Hz). Respondents could view additional information describing refresh rate and TruMotion. *Id.* at ¶42. This distinguishes Gaskin's CBC from the one in *Larsen*. The use of these refresh rate attribute levels to determine damages is tied to Plaintiffs' theory of liability, and the *Comcast* standard is satisfied.[4]

---

[4] Defendants' argument that Plaintiffs' CBC results are statistically insignificant for the 240Hz Accused Models (Opp'n at 73-74) is irrelevant at the class certification stage. Any dispute Defendants have with the CBC design or results is properly addressed on cross examination at trial. *Byrd v. J Rayl Transp., Inc.*, 2015 WL 12976117, at *1 (D. Minn. Mar. 20, 2015).

### B.   Gaskin's CBC was properly designed.

Where (as here) damages are measured as what consumers would have paid for the Accused Models in the but-for world (*i.e.* absent Defendants' misrepresentations), the only difference between the real-world transactions that occurred and the but-for world should be the absence of the misrepresentations and omissions (and thus a changed market price). Ex. 103, Weir Tr., at 176:18-177:1, 187:2-14. Using real-world market prices and assuming the quantity of televisions supplied by Defendants is fixed as a matter of history allows the but-for world to be assessed by holding constant the supply-side conditions that were actually present in the market and also takes into account all of the supply-side factors that Defendants contend must be considered, including production costs and competitor actions. *Id.* at 219:9-13, 230:23-231:16; Weir Rprt. at ¶¶34-39; Gaskin Rprt. at ¶22.

Courts have held that these two factors—real-world market prices and holding quantity-of-supply fixed—adequately accounts for supply-side factors (including competitive pricing, Opp'n at 69-70) for determining diminution in value using a consumer survey. *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1106 (N.D. Cal. 2018); *In re Dial Complete Marketing and Sales Practice Litig.*, 320 F.R.D. 326, 334-37 (D.N.H. 2017); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 969-71 (N.D. Cal. 2018); *In re FCA US LLC Monostable Elec. Gearshift Litig.* 382 F. Supp. 3d 687, 702 (E.D.

16

Mich. May 22, 2019); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 606 (N.D. Cal. 2018). Thus, Defendants' criticisms of Gaskin's CBC design are premature and wrong.

## IV.   Minnesota and New Jersey Law Should Apply Across the Class.

### A.   Choice of Law

In the choice-of-law analysis, the constitutional and choice-influencing "contacts" question focuses not on the parties' domicile contacts but on a state's contacts with the Plaintiffs' "*claims.*" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985); *see also In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005). Here, Plaintiffs' claim is that Defendants uniformly misrepresented refresh rates—misrepresentations that were conceived of, drafted, and executed in New Jersey and Minnesota.[5] These are not only "defendant's contacts," they are direct contacts with every Plaintiff's *claims*. *Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531, 535 (D. Minn. 2007).

*Thompson v. Allianz Life Ins. Co. of N. Am.*, 330 F.R.D. 219 (D. Minn. 2019), is inapposite because the contracts at issue there were not uniform from state to state and no fraud emanated from a state. In fact, Judge

---

[5] *See, e.g.*, Mem. at 20-23, 51-52; Ex. 20, BBY 30(b)(6) Tr., at 217:24-218:24; Ex. 8, LG's 30(b)(6) Tr., at 24:5-25:3. Ex. 104.

Magnuson distinguished *Thompson* on that exact basis: "The *Mooney* class's [Minnesota's Consumer Fraud Act] claims emanated from Allianz's marketing materials, which were created in and distributed from Minnesota." *Id.* at 225.

Properly focusing on the *claims'* contacts likewise reduces Defendants' entire choice-influencing-factor analysis to rubble. Regarding the **predictability** factor, where Minnesota has "significant contacts" with all class members' claims, concerns about forum shopping are "not implicated." *Mooney*, 244 F.R.D. at 536.

Regarding the **interstate-order** factor, Defendants cite two unpersuasive personal injury cases. Unlike here, in neither case did the plaintiffs put forward any evidence that injuries particularly stemmed from decisions made at defendants' headquarters. *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 621 (8th Cir. 2001) (defendant's domicile irrelevant because Wal-Mart's Arkansas headquarters had minimal connection to plaintiff's injury in Louisiana, when Wal-Mart didn't manufacture defective goods and injury didn't occur at its stores); *In re Baycol Prods. Liab. Litig.*, 218 F.R.D. 197, 207, 212 (D. Minn. 2003) (determining law of state of plaintiffs' residence applies, court relied on fact that Baycol was prescribed, ingested, and resulted in personal injury there—a choice-result typical in tort cases but not fraud cases). Defendants' novel argument—that the court should *ignore*

18

evidence that the deceptive schemes were developed and executed nationwide from Minnesota and New Jersey because they are "simply incidents" of Defendants' domiciles—is without authority and contradicts established precedent. *Cf. Mooney*, 244 F.R.D. at 535; *In re St. Jude Med., Inc.*, 2006 WL 2943154, at *6 (D. Minn. Oct. 13, 2006), *rev'd on other grounds*, 522 F.3d 836 (8th Cir. 2008).[6]

Finally, **Minnesota's governmental interests** are not advanced by applying foreign law with stricter liability standards. Defendants assert that applying Minnesota and New Jersey law would ignore other states' interests in "having their laws apply to their residents." Opp'n at 47. But the choice-of-law analysis takes those interests into account. If the foreign law favors liberal, broad coverage, then that state's policy goals are met by application of Minnesota and New Jersey law. If, however, the state's interest reflects an effort to protect local defendants with stricter liability standards, it would be "pure fancy" to suggest that such a state "would seek to prevent an action that would benefit their own citizens" when local protectionism is not

---

[6] Defendants cite cases from New Jersey holding that, in particular circumstances, the NJCFA did not apply to out-of-state plaintiffs. Even if that were a blanket rule—which it is not (Mem. at 65)—those cases applied *New Jersey*'s choice-of-law rules, which must not be applied here. Under Minnesota's choice-of-law rules, the NJCFA applies to all class members' claims against LG. *Cf. Peterson v. BASF Corp*, 618 N.W.2d 821 at 826 (Minn. Ct. App. 2006).

implicated. *St. Jude*, 2006 WL 2943154 at *6. Defendants ignore Minnesota's and New Jersey's interest in policing conduct impacting consumers both domestically and extraterritorially. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 93 (1987); *St. Jude*, 2006 WL 2943154, at *6.

Defendants' reliance on *Mazza*—an out-of-circuit decision applying California's vastly different choice-of-law rules—is misplaced: "Consumer protection statutes focus on the behavior of the defendant, and therefore it is appropriate to apply law from where the defendant has the most contacts." *St. Jude*, 2006 WL 2943154 at *6 (citing Restatement 2d Conflicts § 145 cmt. e). In fraud and misrepresentation cases, there is no logical "place of injury," and where the rule at issue is intended to deter misconduct, the state where that misconduct took place has the most significant relationship. Rest. 2d Conflicts § 145 cmts. c & e.

Defendants also ignore precedent that Minnesota's consumer protection private remedies provision "reflects congressional goals of expanded enforcement and deterrence." *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 11 (Minn. 2001); s*ee also Ly v. Nystrom*, 615 N.W.2d 302, 314 n.21 (Minn. 2000) (internal quotation omitted). The same is true of the NJCFA. *See D'Agostino v. Maldonado*, 78 A.3d 527, 538 (N.J. 2013). Because the laws

at issue seek to deter misrepresentations, the place where that conduct took place has the most significant relationship to the claims.[7]

## B.   Class in the Alternative

The alternative class Plaintiffs propose would include claims against *both* BBY *and* LG under Minnesota law, and further analysis of potential states' conflicts with New Jersey law is irrelevant. The rule is that *forum* law applies if there are no true conflicts of substantive law. *Richie v. Paramount Pictures Corp.*, 544 N.W.2d 21, 29 (Minn. 1996). Thus, the alternative class does not seek to apply New Jersey law to LG, but rather Minnesota law under the rule.

Defendants also erroneously state that different "statute[s] of limitations[] and damages" create additional "outcome-determinative" conflicts. Opp'n at 77. Here, all matters of procedure and remedies are governed by Minnesota law. *Fla. State Board of Admin. v. Law Eng'g & Envtl. Servs., Inc.*, 262 F. Supp. 2d. 1004, 1011 (D. Minn. 2003). And

---

[7] Defendants state that the advancement-of-Minnesota's-governmental-interest factor is *less* important than the first two. Opp'n at 46 (citing *Jepson v. Gen. Cas. Co. of Wisconsin*, 513 N.W.2d 467 (Minn. 1994)). But *Jepson* did not say that—it instead found that Minnesota's interest in compensating *tort victims* was not as influential in the context of a *contract-enforcement* case. 513 N.W.2d at 472. Numerous cases have discussed the governmental interest factor as the driving one in the context of misrepresentation cases. *Mooney*, 244 F.R.D. at 537; *St. Jude*, 2006 WL 2943154 at *6.

limitations law is governed by the substantive law that is applied. Minn.
Stat. § 541.31, subd. 1(a)(1).

## V.     Proof of Causation Does Not Require Individual Inquiries.

Plaintiffs correctly articulated that causation may be presumed or
reliance proven with circumstantial evidence, Mem. at 67, and cited
significant common evidence showing causation of consumer confusion and
harm. *Id.* at 68; *cf.* Ex. 98 ("█████████████████████████████████").
Defendants' attempt to show that individual issues exist is unpersuasive
(Opp'n at 49-53):

- *consumers may not know what refresh rate means.*

   Common evidence contradicts this:

   - Defendants emphasized refresh rate in headers on fact tags
     and PDPs;

   - Defendants knew consumers were confused by LG's refresh
     rate claims (*cf. In re Lutheran Bhd.*, 2004 WL 909741, at *5
     (D. Minn. Apr. 28, 2004)) ("Lutheran Brotherhood cannot
     formulate illustrations seeking to convince customers to buy
     products, observe that those illustrations are indeed
     convincing customers to buy, and then argue that the record
     contains no evidence of reliance.");

   - LG's Morpace study and Gaskin's study show consumers value
     higher refresh rates (*cf. Tuttle v. Lorillard Tobacco*, 377 F.3d
     917, 927 (8th Cir. 2004) (noting plaintiffs need not present
     evidence of their reliance, but could rely on surveys, consumer
     tests, market research, and expert testimony)).

- *one consumer did not base her decision on motion interpolation versus backlight scanning.*

  - Irrelevant—none of Defendants' labeling mentioned backlight scanning or interpolation.

- *consumers purchase TVs for different reasons.*

  - Red herring—causation is established where the conduct had some impact on the cause of damages, not that it was the sole factor. *Grp. Health*, 621 NW.2d at 14; *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365-66 (N.J. 1997).

- *some people don't like higher refresh rates.*

  - Misleading—the "evidence" Defendants cite actually says higher refresh rates are needed to enjoy sports and video games without judder.

To the extent Defendants wish to raise the specter of potential, individual differences, they have failed. *See In re Zurn*, 644 F.3d at 618-19 (8th Cir. 2011) (rejecting hypothetical factual differences). This case contrasts with *In re St. Jude Med., Inc.*, 522 F.3d 836, 838-39 (8th Cir. 2008), where there was no common proof present. Here, LG and Best Buy marketed to Class members directly, via PDPs and fact tags, *inter alia*, ensuring that every class member would see the refresh rate claim. *See Mooney v. Allianz Life Ins. Co. of N. Am.*, 2009 WL 511572, at *5-6 (D. Minn. Feb. 26, 2009). Plaintiffs' common evidence shows, *prima facie*, that the refresh rate claims were "materially false," making them more amenable to common resolution.

*St. Jude*, 522 F.3d at 841. Simply put, Class Members were promised something that they did not receive.

Additionally, without citing authority, Defendants declare that conjoint analysis under the NJCFA "is a price-inflation theory," which is contradicted by precedent. *Dzielak v. Whirlpool Corp.*, 2017 WL 6513347, at *8-10 (D.N.J. Dec. 20, 2017) (allegations defendant didn't live up to a representation and thus plaintiffs seek benefit-of-the-bargain damages, holding damages can be shown with a price-premium model of ascertainable loss, which is certifiable); *cf. Dzielak*, 2017 WL 1034197, at *5-6 (D.N.J. Mar. 17, 2017) (denying *Daubert* attack on plaintiff's conjoint, price-premium opinion, thereby establishing plaintiff's benefit-of-the-bargain model).

Moreover, where representations are in written and uniform materials presented to each prospective plaintiff, there is a presumption of causation in NJCFA cases. *Elias v. Ungar's Food Prod., Inc.*, 252 F.R.D. 233, 249 (D.N.J. 2008). The common evidence shows that consumers place a premium on the higher refresh rates the class did not receive. Gaskin Rprt. at ¶9. Thus, there is evidence of class-wide, ascertainable loss.

Defendants' only challenge to Plaintiffs' warranty and contract claims—which have no causation element—is that they depend on individualized representations. As detailed above, each Plaintiff received the

24

same challenged representation, and the various purchasing experiences of Class members are irrelevant. *See* Section II¸ *supra*.

## VI.   Named Plaintiffs Are Typical and Adequate.

Plaintiffs meet the adequacy requirement. With respect to Villa Lara, "the fact that some representatives face additional defenses does not defeat their ability adequately to represent the class." *In re Workers Comp.*, 130 F.R.D. 99, 107 (D. Minn. 1990) (citation omitted); *see also Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

As to Hudock, she has no relation to proposed Class Counsel and has had regular communication with proposed Class Counsel throughout the case. *See, e.g.,* Defs.' Ex. 1 at 31:18-23; Ex. 100, Hudock Tr., at 52:6-23, 249:5-20, 341:20-342:4; 291:23-293:18; *In re Workers' Comp.*, 130 F.R.D. at 107 ("the representative must display some minimal level of interest in the action[ and] familiarity with the practices challenged."). Thus, Defendants' "[n]aked allegations of antagonism are insufficient to undermine certification pursuant to Rule 23(a)(4)." *In re Workers' Comp.*, 130 F.R.D. at 108 n.7 (citation omitted).

## VII.   Rule 23(b)(2) Requirements Are Met.

"A request for monetary relief is an insufficient basis for refusing to certify a class action under Rule 23(b)(2)." *Smith v. United Healthcare Servs., Inc.*, 2002 WL 192565, at *5 (D. Minn. Feb. 5, 2002). Indeed, courts uniformly

recognize that certification under both 23(b)(2) and 23(b)(3) are not "mutually exclusive" and "a class may be certified under more than one category." *See, e.g., Eubanks v. Billington*, 110 F.3d 87, 91 (D.C. Cir. 1997); *Smith v. Univ. Wash., Law School*, 233 F.3d 1188, 1196 (9th Cir. 2000); *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 344-45 (S.D. Iowa 2013) (collecting cases).

Injunctive relief here is essential. Beyond demanding that Defendants follow the law, Plaintiffs seek an order preventing recidivism by Defendants. For the same reasons Plaintiffs satisfy the Rule 23(a) requirements, Rule 23(b) is also satisfied. *See, e.g., Smith*, 2002 WL 192565, at *5; *Huyer*, 295 F.R.D. at 345-46.

## CONCLUSION

Plaintiffs respectfully request this Court **GRANT** their motion for class certification.

Dated: October 23, 2019          Respectfully submitted,


                                 By: */s/ David M. Cialkowski*
                                 David M. Cialkowski (MN Lic. #306526)
                                 Alyssa J. Leary (MN Lic. #397552)
                                 **ZIMMERMAN REED LLP**
                                 1100 IDS Center, 80 S. 8th St.
                                 Minneapolis, MN 55402
                                 Telephone: (612) 341-0400
                                 david.cialkowski@zimmreed.com
                                 alyssa.leary@zimmreed.com

Hart L. Robinovitch (MN Lic. #240515)
**ZIMMERMAN REED LLP**
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
Telephone: (480) 348-6415
hart.robinovitch@zimmreed.com

Daniel C. Hedlund (MN Lic. #258337)
Raina Borrelli (MN Lic. #392127)
Brittany N. Resch (MN Lic. #397656)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
rborrelli@gustafsongluek.com
bresch@gustafsongluek.com

Luke P. Hudock (*Pro Hac Vice*)
**HUDOCK LAW GROUP, S.C.**
P.O. Box 83
Muskego, WI 53150
Telephone: (414) 526-4906
lphudock@law-hlg.com

Samuel J. Strauss (*Pro Hac Vice*)
Alex Phillips (*Pro Hac Vice*)
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, WI 53703
Telephone: (608) 237-1774
Sam@turkestrauss.com
AlexP@turkestrauss.com

*Attorneys for Plaintiffs and the Putative Class*