# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Hudock et al., | Case No. 0:16-cv-1220-JRT-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| LG Electronics U.S.A., Inc., et al., | |
| Defendants. | |

This document relates to:
All actions

      This matter is before the Court on the Plaintiffs' Motion to Compel Defendants to Produce Documents Improperly Withheld as Privileged. [Pls.' Mot., ECF No. 186.] When the Plaintiffs originally filed their motion, the challenge to the privilege claims asserted by LG Electronics U.S.A., Inc. ("LG") and Best Buy Co., Inc., were expansive. The Court held a hearing on the motion on June 13, 2019, and a subsequent telephone conference with the parties resulted in a significant narrowing of the issues in dispute.[1]

      On August 8, 2019, the Plaintiffs submitted a supplemental letter brief concerning the remaining areas of disagreement. The Plaintiffs no longer challenge the privilege claims regarding any documents on Best Buy's privilege log and have narrowed their dispute to only 31 documents from LG's privilege log. LG argues that the communications at issue are protected by the attorney-client privilege.[2] The parties

---

[1] *See* Mins. of Hr'g (June 13, 2019), ECF No. 205; Mins. of Tel. Conf. (July 3, 2019), ECF No. 215.

[2] The parties' letters were not electronically filed in the official record of this case. Nor were the declarations of Louis Giagrande and Michelle Fernandez, which were submitted by LG in support of its supplemental letter brief. As indicated below, the parties are instructed to electronically file those materials.

agreed to submit a sample of the disputed documents to the Court for *in camera* review. Based on the Court's review, the Plaintiffs' modified motion to compel is granted in part and denied in part.

I.     **Background**

In this putative consumer class action[3] the Plaintiffs allege that LG and Best Buy falsely represented the refresh rates of LG's high definition televisions. The Plaintiffs claim that even though LG's televisions had a refresh rate of, for example, 60 Hz, the marketing materials provided to consumers indicated that the refresh rate was 120 Hz. They contend that LG and Best Buy thereby misrepresented the quality of the televisions, causing consumers to pay higher prices than they would have if the refresh rates had been accurately disclosed.[4]

The privilege issues raised by the Plaintiffs' motion involves a third-party advertising company called HS Ad America ("HSAA"). LG developed the marketing materials for the televisions at issue in this case with HSAA, and those materials were later provided to retailers like Best Buy. HSAA and LG are separate legal entities, but they are affiliated. HSAA was formerly known as "LG Ad" and only provides services to LG companies. [Decl. of Louis Giagrande ("Giagrande Decl.") ¶¶ 1–2.] The companies' offices are currently located close to one another and HSAA plans to move its corporate offices into LG's new headquarters when it opens. [*Id.* ¶ 2.] According to HSAA's Chief Operating Officer, Louis Giagrande, it is common practice for companies like LG to use legally distinct, but affiliated advertising companies and for such entities to treat their employees as an integrated team. [*See id.* ¶¶ 3–5.]

The Plaintiffs challenge LG's claims of attorney-client privilege over several communications between LG and HSAA non-attorney employees. As noted, LG

---

[3]     The Plaintiffs' motion for class certification is currently pending.

[4]     The Plaintiffs allege that a television's refresh rate indicates "how many unique images per second are displayed on the television screen." The refresh rate is "directly linked to picture quality. Consolidated Second Am. Class Action Compl. ¶¶ 3–4, ECF No. 175.

submitted a sampling of the challenged documents for the Court's *in camera* review. *In camera* Exhibit 1 includes three April 2015 emails between LG and HSAA employees ("the 2015 Emails"). The 2015 Emails are in a reverse chronological thread. The first of these emails is from one LG employee, David Park, to another LG employee, Alfred Lee, and Sarah Kim (an HSAA employee) is copied on the message. In the second email, Alfred Lee forwards Mr. Park's message to Christina Park, another HSAA employee. The third email is from Mr. Lee to Ms. Park, copying Ms. Kim. Attached to these three challenged emails are almost twelve pages of communications involving both in-house LG attorneys and external counsel from the law firm Wilson Sonsini Goodrich & Rosati. The Plaintiffs' challenge does not request production of the attached communications involving the attorneys. However, they do ask the Court to compel LG to produce the three 2015 Emails between non-attorney LG and HSAA employees.

The remaining sample documents comprise *in camera* Exhibits 2 through 9. These Exhibits contain email threads from 2017 that were partially redacted based on LG's privilege claims ("the 2017 Emails"). The 2017 Emails are also communications between non-attorney LG and HSAA employees. In the unredacted portions of these communications, LG and HSAA employees discuss changes to how LG's consumer-facing marketing materials represent the Hz refresh rate in connection with "TruMotion" branded televisions. LG redacted significant portions of these email threads when they produced them to the Plaintiffs, claiming that the undisclosed portions of the messages convey advice from LG's legal department regarding pending litigation.

**II.     Discussion**

The Plaintiffs assert that LG improperly withheld the 2015 Emails and the redacted portions of the 2017 Emails. They argue that the communications reflect business advice, rather than legal advice. Similarly, they argue that the emails reflect nothing more than the implementation of legal advice. The Plaintiffs assert that neither business advice nor implementation of legal advice is privileged. In addition, the Plaintiffs argue that even if the communications reveal legal advice, LG's disclosure of that advice to HSAA personnel waives the attorney-client privilege. As explained below, the Court concludes that LG has not waived the privilege by inclusion of HSAA team

members and that the majority of the communications at issue are protected. However, the Court finds that two of the sample items LG withheld must be disclosed to the Plaintiffs. Given that the nine exhibits addressed below are a sample selected from 31 items in dispute, the Court expects the parties to act in good faith to apply the lines drawn in this Order to the remaining 22 documents.

### A. Attorney-Client Privilege

The attorney-client privilege applies under the following circumstances:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Kobluk v. Univ. of Minnesota*, 574 N.W.2d 436, 440 (Minn. 1998) (quoting 8 John Henry Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).[5] "[T]he party resisting disclosure bears the burden of presenting facts to establish the privilege's existence." *Id.*

The privilege applies to corporations as well as individuals if certain criteria are met:

> (1) the communication was to secure legal advice, (2) the employee made the communication at the direction of his or her corporate superior, (3) the superior's request was to seek legal advice for the corporation, (4) the subject matter of the communication is within the employee's corporate duties, and (5) the communication was not disseminated beyond people who need to know its contents because of the corporate structure.

---

[5] The Consolidated Second Amended Complaint includes claims under consumer protection statutes from Minnesota, California, New Jersey, New York, Illinois, and Pennsylvania, as well as other state tort claims. Where state law supplies the rule of decision for a claim or defense, it also governs claims of privilege. *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-cv-3183 (ADM/LIB), 2017 WL 9325027, at *3 (D. Minn. May 5, 2017). The parties have not based their arguments exclusively on any one state's law, and they have cited cases from jurisdictions other than those whose law is implicated by the statutory claims in the operative pleading, and it does not appear that choice-of-law considerations would affect the outcome of the privilege issues here.

*Inline Packaging*, 2017 WL 9325027, at *4 (citing *Leer v. Chicago, M., St. P & P. Ry. Co.*, 308 N.W.2d 305, 308–09 (Minn. 1981)).

Courts that have explored the issue have expressly held that communications among corporate employees who are not lawyers may still be privileged if their discussions relay or transmit "advice received from an attorney." *Medical Protective Co. v. Bubenik*, No. 4:06CV01639 ERW, 2007 WL 3026939, at *2 (E.D. Mo. Oct. 15, 2007); *Music Sales Corp. v. Morris*, No. 98CIV.9002(SAS)(FM), 1999 WL 974025, at *7 (S.D.N.Y. Oct. 26, 1999) ("Accordingly, the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege."); *see also Tekstar Comm'ns, Inc. v. Sprint Comm'ns Co. L.P.*, No. 08-cv-1130 (JNE/RLE), 2009 WL 10711789, at *5 (D. Minn. June 18, 2009) ("Nonetheless, a corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having a need to know of the communications are confidential for purposes of the attorney-client privilege.") (internal quotations and alterations omitted). However, this rule protecting non-lawyer communications that transmit legal advice is not without limits. "[C]ommunications retain their privileged status within a corporation if an employee conveys legal advice received from counsel to other employees or officers of the corporation on a need to know basis." *Fair Isaac Corp. v. Experian Information Solutions, Inc.*, No. 06-cv-4112 (ADM/JSM), 2009 WL 10677479, at *21 (D. Minn. Mar. 23, 2009) (internal quotation marks omitted) (collecting cases). "An employee is on a need to know basis, so as to preserve the attorney-client privilege, if he is a policymaker for the corporation (i.e., an executive) or is responsible for the subject matter at issue in the communication." *Id.*

It is somewhat difficult to draw the line between privileged and non-privileged communications in the context of a client's implementation of her lawyer's advice. "[W]hen a corporate executive makes a decision after consulting with an attorney, his decision is not privileged whether it is based on that advice or even mirrors it." *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 805 (E.D. La. 2007).

> The privilege does not extend to decisions made by the client based on the legal advice the client received. Since the actions taken by the client do not have to be consistent with the advice given, an extension of the privilege to

client decisions would be unwarranted. Revealing client actions or
decisions would disclose neither the substance of the recommendation nor
the content of the client's privileged communications upon which the
decisions/actions were based. Disclosure of the client's action, therefore,
would not discourage the conduct that the privilege was designed to
encourage.

*Id.* at 805 n.27 (quoting Paul R. Rice, 1 *Attorney-Client Privilege in the United States*, § 5:15, p. 113 (Thomson West 2d ed.1999)); *see also Stout v. Illinois Farmers Ins. Co.*, 150 F.R.D. 594, 611 (S.D. Ind. 1993) ("The attorney-client privilege is not so broad as to cover all of a client's actions taken as a result of communications between attorney and client.") (internal quotation marks and alterations omitted). Nevertheless, "disclosure of the fact that 'the client takes that advice to heart and acts upon it' is privileged if it indirectly reveals the substance [of] the client's request for legal advice." *Oasis Int'l Waters, Inc. v. United States*, 110 Fed. Cl. 87, 101 (2013) (quoting *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 516–17 (D. Conn. 1976)).

Courts have recognized that a corporation's attorney-client privilege is not necessarily waived even when legal advice is communicated to people who are not employees of the corporation if such individuals are "the functional equivalent of an employee." *In re Bieter Co.*, 16 F.3d 929, 938 (8th Cir. 1994) (finding that a consultant hired by the corporation to represent it in commercial and retail development matters was the functional equivalent of a corporate employee where he likely possessed information that a corporate lawyer would need to provide the company with legal advice); *Goad Co. v. Honeywell Int'l, Inc.*, No. 14-cv-00545-CV-W-JTM, 2015 WL 12852954, at *1 (W.D. Mo. Sept. 1, 2015) (same).

### B. Waiver[6]

The Plaintiffs' waiver arguments can be divided into two categories. First, they assert that LG waived any privilege for the 2015 and 2017 Emails because LG did not establish that HSAA personnel are the functional equivalent of LG employees. Second,

---

[6] For the sake of simplicity, the Court's discussion of waiver assumes that the 2015 Emails and the redacted material from the 2017 Emails contain privileged communications.

6

the Plaintiffs contend that LG failed to demonstrate that the specific individuals involved in the various communications were among those who need to know the legal advice LG requested and received. [*See* Plaintiffs' Letter at 6.] The Court finds that neither of these arguments carry the day, and LG has adequately shown that it did not waive the privilege with respect to the 2015 and 2017 Emails.

*Functional Equivalent*

The Court finds that LG and HSAA are sufficiently interrelated that the HSAA personnel who handle marketing and advertising matters for LG's products are the functional equivalent of LG employees. Mr. Giagrande indicates that HSAA is an "integrated part of LG's operation," handling marketing and advertising functions for LG. [Giagrande Decl. ¶ 2; *see also* Fernandez Decl. ¶ 3.] LG works with HSAA in this arrangement to ensure that its marketing agency has "a deep understanding of [its] brand, its products and its operations," and to ensure lower marketing overhead. [Giagrande Decl. ¶¶ 4–5.] HSAA's "primary business is to perform discrete marketing functions for LG which LG does not handle internally." [*Id.* ¶ 8.] This includes a "Channel Marketing Team" that "support[s] retailers who sell LG products by assisting them with marketing or content needs." [*Id.* ¶ 9.]

Several HSAA employees work "fulltime in LG's offices at assigned work stations among LG employees and maintain LG email addresses." [*Id.* ¶ 3.] LG hires some HSAA personnel to work on year-long retainers, and it enters contracts with others "on a project by project basis." [*Id.*] These employees work side-by-side with LG employees in "integrated teams." [*Id.* ¶ 6; *see also* Fernandez Decl. ¶¶ 5–6.]

LG's attorneys also discuss legal advice with HSAA employees. [Giagrande Decl. ¶¶ 11.] HSAA "seeks and receives legal advice from the legal departments of LG and its parent company with respect to advertising and marketing issues." [*Id.* ¶ 10.] HSAA personnel approach LG's legal department for answers to legal questions concerning advertising or marketing LG's products, not HSAA's counsel. [*Id.*] HSAA's personnel could not "craft advertisements that complied with the law and with legal advice specific to pending or threatened litigation against LG," unless it received advice from LG. [*Id.*]

7

These facts are sufficient to demonstrate that HSAA's employees carrying out marketing and advertising tasks for LG satisfy the "functional equivalent" test and are de facto LG employees for purposes of applying the attorney-client privilege. *See Bieter*, 16 F.3d at 938. HSAA personnel represent LG's interests in the marketing arena and often do so in an exclusive capacity. This reality describes the Channel Marketing Team that works with retailers selling LG products, the very marketing and advertising relationship that is placed at issue in this litigation. Under these circumstances, "[t]here is no principled basis to distinguish [the HSAA employees'] role from that of [LG] employee[s]…." *Bieter*, 16 F.3d at 938. Application of the attorney-client privilege to HSAA employees under these circumstances is consistent with the purpose of the privilege—encouraging pursuit of legal advice free from concern that the request will be revealed, and the inclusion of these de facto employees on communications does not vitiate that privilege. *See id.* at 937–38 (discussing "the very purpose of the privilege"). For this reason, the Court finds that HSAA's relationship to LG is of the sort that justifies application of the privilege, so long as the employees satisfied the need-to-know test.

### *Need to Know*

The Court also finds that LG has sufficiently shown that the individuals involved in the 2015 and 2017 Emails were among those with a need to know the legal advice conveyed. The evidence in support of this conclusion is, admittedly, less robust than that regarding the functional-equivalence question discussed above. Michelle Fernandez, LG's Senior Director of Home Entertainment Consumer Marketing, provides a declaration that sets forth the following facts relevant to the need-to-know issue. When LG employees conveyed the company's attorneys' advice to HSAA personnel it "was intended to be confidential and disclosed only to those parties who needed that advice in order to perform their duties." [Fernandez Decl. ¶ 13.] HSAA "is responsible for handling discrete marketing duties for LG, such as channel marketing and updating LG's website, [so] it was necessary for them to have received [the advice reflected in the 2015 and 2017 Emails]." [*Id.* ¶ 14.] The HSAA employees included on these messages "could not have effectively performed marketing duties without access to the legal advice present in these documents." [*Id.*]

Unfortunately, neither Ms. Fernandez's declaration nor Mr. Giagrande's provides much detail about the specific roles of the individual HSAA employees who are included on the 2015 and 2017 Emails. Ms. Fernandez's statement about the HSAA employees' need to know the advice conveyed in the *in camera* exhibits is somewhat generalized and perhaps conclusory. But her declaration does not lack evidentiary value—indeed it fully complies with 28 U.S.C. § 1746. Moreover, the broader evidentiary record and the substance of the *in camera* documents readily establishes that the HSAA employees who are involved are "responsible for the subject matter at issue in the communication." *Fair Isaac Corp.*, 2009 WL 10677479, at *21. Under these circumstances, the Court concludes that the inclusion of the HSAA personnel on the *in camera* documents does not operate as a waiver of any attorney-client privileged communications because they satisfy the need-to-know test.

### C. The Challenged Communications

Having found no waiver, the Court turns to the Plaintiffs' arguments that the 2015 and 2017 Emails are not privileged communications. Based on *in camera* review, the Court concludes that a portion of the 2015 Emails is not protected by the attorney-client privilege and must be disclosed, but the remainder may be withheld. The Court also finds, with one exception, that the 2017 Emails are covered by the privilege and the redacted material need not be disclosed.

#### *The 2015 Emails*

The 2015 Emails do not include any lawyers, but LG argues that they are nevertheless protected by the attorney-client privilege because they convey or transmit the substance of legal advice received from LG's lawyers. This set of communications includes two April 6, 2015 emails and one from April 15, 2015. The first April 6th email (which is the last in the reverse-chronological thread), includes a discussion that indicates what actions should be taken based on the advice of counsel. As such, even though it is between non-lawyers, the Court finds that its disclosure would reveal the substance of the client's request for legal advice. *Oasis Int'l Waters*, 110 Fed. Cl. at 101. The communication involves the transmission or relaying of legal advice among corporate employees and their functional equivalents who are responsible for the subject matter at

9

issue. LG may continue to withhold this message from production via redaction or other means.

However, the top message from April 15 is not protected by the attorney-client privilege. LG argues that requiring disclosure of this document would indirectly reveal the substance of the client's request for legal advice, but the Court disagrees. Based on the Court's *in camera* review, adopting LG's characterization of this communication would carry the line of cases protecting intra-corporate transmission of legal advice too far. The April 15th email discusses how certain LG televisions must be marketed, but it makes no mention of nor otherwise references any legal advice or pending litigation. There is no indication in that email that the decisions being made are consistent or inconsistent with any response regarding a request for legal advice. As such, disclosure of the April 15 email will not directly or indirectly reveal the substance of any request for legal advice. *See Stout v. Illinois Farmers Ins. Co.*, 150 F.R.D. 594, 611 (S.D. Ind. 1993) ("If counsel advised Farmers that, based upon the law, a good faith evaluation of a claim like Mr. Stout's would require that certain minimum steps be taken, all of Farmers' documents produced in order to implement that advice would not be privileged as attorney-client communications."). Requiring production of the April 15 email "would not discourage the conduct that the privilege was designed to encourage." *In re Vioxx*, 501 F. Supp. 2d at 805 n.27 (quoting Rice § 5:15, p. 113). LG must produce this email within 14 days of the date of this Order or after the resolution by the District Court of any objections to this Order.

The middle email in the chain is a second April 6th email. This is essentially an empty forwarding message with no substantive content. Its disclosure will not reveal anything about the substance of LG's request for legal advice. It should also be produced.

### *The 2017 Emails*

Based on its review of the record, the Court finds that aside from one exception, the redacted portions of the 2017 Emails in *in camera* Exhibits 2 through 9 are protected by the attorney-client privilege. Exhibit 2 comprises an email chain among non-lawyer employees of HSAA and LG. A large portion of Exhibit 2 is a February 10, 2017 email that is properly redacted because it involves the transmission of counsel's advice. This

February 10, 2017 is a part of all the remaining email threads included in *in camera* Exhibits 2 through 9.

*In camera* Exhibit 3 includes essentially identical redacted information to Exhibit 2. This redacted content is also protected by the attorney-client privilege. *In camera* Exhibit 4 properly redacts the same February 10, 2017 message from another email string. It also includes two additional redactions from emails exchanged on February 15, 2017. These additional redactions are appropriate because they involve the client's requests for clarification concerning the substance of legal advice. Similarly, *in camera* Exhibit 5 includes redacted content from a February 15th email that clarifies the substance of counsel's advice. *In camera* Exhibit 5 again properly redacts the February 10, 2017 email discussed above. It also redacts nearly identical information from a February 13th email, which the Court finds appropriate.

The redaction of a February 10th email from the chain in *in camera* Exhibit 6 is a proper invocation of the attorney-client privilege because it involves the transmission of counsel's advice among corporate employees and their functional equivalents. *In camera* Exhibits 7 and 8 redact the same February 10th email that appears in Exhibit 2 and the February 13th email that appears in Exhibit 5. These redactions are appropriate as are the additional redactions from February 14, 2017 emails in each string, which clarify the substance of counsel's advice.

However, with respect to *in camera* Exhibit 9, the Court finds that LG only properly redacted the February 10, 2017 email that is part of the other 2017 Emails. LG's additional redaction of a portion of a February 15th message does not directly or indirectly reference any advice received from counsel. There is no indication that revelation of the redacted information would reveal the substance of counsel's legal advice or the client's request for legal advice. Therefore, the Court concludes that this message is not protected by the attorney-client privilege and the portion of the February 15, 2017 message redacted from *in camera* Exhibit 9 must be disclosed on the same schedule as the compelled portion of the 2015 Emails.

**III. Order**

As set forth above, the Court concludes that the Defendants' assertion of privilege is correct with respect to most, but not all of the nine sample exhibits provided to the Court for *in camera* review. Therefore, **IT IS HEREBY ORDERED THAT:**

1. The Plaintiffs' Motion to Compel Defendants to Produce Documents Improperly Withheld as Privileged [ECF No. 186] is **GRANTED IN PART** and **DENIED IN PART** as described in this Order.

2. LG must disclose the first and second emails beginning the thread embodied in *in camera* Exhibit 1 within fourteen days of the date of this Order or, if objections are filed, within fourteen days of any Order by the District Court ruling on those objections. LG must further disclose the redacted portion of the February 15, 2017 email in *in camera* Exhibit 9 according to the same schedule.

3. LG need not disclose any of the other communications reflected in *in camera* Exhibits 2 through 9.

4. The parties must work together in good faith to apply this Court's ruling regarding the nine sample documents to the remaining twenty-two documents in dispute. Any disagreement should be brought to the Court promptly.

5. In issuing this Order, the Court has relied on the parties' supplemental letters and the declarations of Louis Giagrande and Michelle Fernandez. Within three days of the date of this Order, the parties shall electronically file those materials so that they are part of the official record.

Date: November 4, 2019

                                                 *s/Katherine Menendez*
                                                 Katherine Menendez
                                                 United States Magistrate Judge