# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| BREANN HUDOCK, IVAN VILLA LARA, EUGENE MANNACIO, and BRIAN FLEISHMAN, *individually and on behalf of all others similarly situated,* | Civil No.  16-1220 (JRT/KMM) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| LG ELECTRONICS U.S.A., INC., BEST BUY CO., INC., BEST BUY STORES, L.P., and BESTBUY.COM, LLC, | |
| Defendants. | |

David M. Cialkowski and Alyssa Leary, **ZIMMERMAN REED**, 1100 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, Raina Borrelli, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402, Luke Hudock, **HUDOCK LAW GROUP, S.C.**, Post Office Box 383, Muskego, Wisconsin 53150, for plaintiffs.

Phoebe Anne Wilkinson, **HOGAN LOVELLS US LLP**, 875 Third Avenue, New York, New York 10020, Robert Benjamin Wolinsky, **HOGAN LOVELLS US LLP**, 555 Thirteenth Street Northwest, Washington, District of Columbia, 20004, Peter H. Walsh, **HOGAN LOVELLS US LLP**, 80 South Eighth Street, Suite 1225, Minneapolis, Minnesota 55402, for defendants.

This is a Motion to Certify a Class in a class action brought by named Plaintiffs Breann Hudock, Ivan Villa Lara, Eugene Mannacio, and Brian Fleishman against Defendants LG Electronics U.S.A., Inc. ("LG"), a New Jersey corporation with its principle place of business in New Jersey; Best Buy Co., Inc., a Minnesota corporation with its principal place of business in Minnesota; Best Buy Stores L.P., a Virginia limited

partnership with its principal place of business in Minnesota; and BestBuy.com LLC, a Virginia limited liability company with its principal place of business in Minnesota (collectively "Best Buy"). Plaintiffs allege that Defendants inaccurately labeled televisions with a 60Hz or 120Hz refresh rate as having a refresh rate of 120Hz or 240Hz, respectively. Plaintiffs bring claims under the Minnesota Consumer Fraud Act ("MCFA"); Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"); Minnesota Unlawful Trade Practices Act ("MUTPA"); and New Jersey Consumer Fraud Act ("NJCFA"); as well as claims of breach of express and implied warranties; breach of contract (against Best Buy only); and unjust enrichment.

Plaintiffs moved for class certification of "[a]ll persons in the United States that purchased LG LED televisions between May 9, 2010 and the present, labeled as having a 'Hz'-rating that was twice the native refresh rate of its panel." Plaintiffs also moved to certify a subclass defined as "[a]ll persons in the United States who purchased an LG LED television from a Best Buy store or from Best Buy's website between May 9, 2010 and the present, labeled as having a 'Hz"-rating that was twice the native refresh rate of its panel."

The Court will grant the motion for class certification on the consumer-protection and unjust-enrichment claims against LG, applying New Jersey law; and on the consumer-protection and unjust-enrichment claims against Best Buy, applying Minnesota law. The Court will deny the motion for class certification on the breach-of-warranty and breach-

of-contract claims. The Court will also dismiss Plaintiff Ivan Villa Lara because his claims are not typical of the class.

## BACKGROUND

### I.    PROCEDURAL BACKGROUND

This case is a consolidation of two consumer-protection class actions based on television refresh rates.  The refresh rate of a television is the number of times per second that the images on the screen are completely rebuilt with new image formation; the higher the Hz, the smoother the picture.  *Hudock et al. v. LG Elecs. U.S.A., Inc., et al.* ("*Hudock I*"), Civil No. 16-1220, 2017 WL 1157098, at *1 n.1 (D. Minn. Mar. 27, 2017). Here, Plaintiffs allege that, between May 9, 2010 and the present, Defendants marketed and sold LED televisions with actual refresh rates that were half of the advertised refresh rates—that is, Defendants allegedly sold televisions with a native refresh rate of either 60 or 120 Hz but were labeled as having a refresh rate of 120 of 240 Hz.

### A.    The *Hudock* Case

The Hudocks filed a putative class action against LG and Best Buy, alleging violation of New Jersey and Minnesota consumer-protection laws, as well as claims of breach of warranty, breach of contract, and unjust enrichment.  *Hudock I* at *1.  The claims arose from the November 2013 purchase of an LG television from Bestbuy.com.  *Id.*  Defendants moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).  *Id.*  The Court dismissed a breach-of-contract claim against LG with prejudice, *id.* at *10, found that

Plaintiffs were entitled only to injunctive relief under the MDTPA, *id.* at *7, and dismissed the NJCFA claim without prejudice. *Id.* at *8. The Hudocks filed an amended complaint curing the NJCFA issues and adding a new named plaintiff, Gerald DeLoss. *Hudock et al. v. LG Elecs. U.S.A., Inc. et al.* ("*Hudock II*")*,* Civil No. 16-1220, 2018 WL 626527, at *1 (D. Minn. Jan. 30, 2018). The Court subsequently dismissed Plaintiffs De Loss and Benjamin Hudock with prejudice, (Order, May 10, 2019, Docket No. 178), and denied Defendants' renewed motion to dismiss the NJCFA claim. *Hudock II* at *5.

**B.    The *Villa Lara* Case**

Ivan Villa Lara, a California resident, purchased an LG television from Best Buy in 2013. *Villa Lara v. LG Elecs. U.S.A., Inc. et al.*, Civil No. 17-5222, 2018 WL 3748177, at *1 (D. Minn. Aug. 7, 2018). Villa Lara's grandmother agreed to purchase the TV from Best Buy for him, and he agreed to reimburse her. *Id.* Villa Lara believed the television had a 120 Hz refresh rate. *Id.* After purchasing the television, Villa Lara realized that the television's images were not as clear as expected. *Id.* When Villa Lara took his television to Best Buy to seek repair of a problem unrelated to the television's refresh rate, Best Buy gave Villa Lara store credit equivalent to the purchase price in exchange for the television, in accordance with a service plan purchased at the same time as the television. *Id.* Villa Lara filed a putative class action asserting consumer-protection claims under Minnesota and New Jersey law, breach-of-warranty claims, breach-of-contract claims, and two claims based on California law: (1) violation of the California Legal Remedies Act ("CLRA")

and (2) violation of the California Unfair Competition Law ("CUCL"). *Id.* Defendants moved to dismiss all claims. *Id.* at *2. The Court dismissed Villa Lara's fraud-based claims against LG without prejudice, and limited Villa Lara's MDTPA claim to injunctive relief only. *Id.* at *3–4. The Court did not dismiss the remaining claims. *Id.*

### C. Consolidated Complaint & *Hudock III*

In February 2019, plaintiffs in the *Hudock* and *Villa Lara* cases filed a Consolidated Class Action Complaint ("Consolidated Complaint"). (Consolidated Compl., Feb. 7, 2019, Docket No. 148.) The Consolidated Complaint added two class representatives: Scott Poppen, an Illinois resident; and Eugene Mannacio, a California resident; and brought new claims under the Illinois Consumer Fraud Act ("ICFA"), 815 Ill. Comp. Stat. 505/1. (*Id.* ¶¶ 8, 12, 180–90.) Poppen was later dismissed with prejudice. (Order, May 10, 2019, Docket No. 176.)

After briefing was completed on a motion to dismiss the Consolidated Complaint, Plaintiffs filed an Amended Consolidated Class Action Complaint ("2d Consolidated Complaint"). (2d Consolidated Compl., May 1, 2019, Docket No. 175.) It was filed pursuant to a stipulation by the parties. (*See* Stip., Apr. 30, 2019, Docket No. 163.) According to the parties, the 2d Consolidated Complaint did not materially change the arguments, it simply added two proposed class representatives: Piakanae Carpenter, a Georgia resident; and Brian Fleishman, a Pennsylvania resident. (*Id.*) Carpenter was subsequently dismissed without prejudice. (Order, May 31, 2019, Docket No. 198.)

## II. THE CONSOLIDATED CASE

Following the Court's order on the claims in the 2d Consolidated Complaint there remain four named Plaintiffs: (1) Breann Hudock, (2) Ivan Villa Lara, (3) Eugene Mannacio, and (4) Brian Fleishman. *Hudock et al. v. LG Elecs. U.S.A., Inc., et al.* ("*Hudock III*"), Civil No. 16-1220, 2019 WL 3219515 (D. Minn. July 17, 2019). There are eight remaining primary claims: three under Minnesota consumer-protection statutes (MCFA, MDTPA, MUTPA); the NJCFA claim; two breach-of-warranty claims; a breach-of-contract claim (against Best Buy only); and an unjust-enrichment claim. *Id*.

### A. Claims by Eugene Mannacio

In February 2016, Mannacio, a California resident, purchased a television manufactured by LG at a Best Buy store. (2d Consolidated Compl. ¶ 123.) The television was advertised as 240Hz online and in store, but the refresh rate was actually 120Hz. (*Id.* ¶¶ 125–26.) Mannacio stated that if he knew that the television did not have the refresh rate that had been advertised, he either would not have purchased it or would not have paid as much as he did. (*Id.* ¶ 127.) Plaintiffs allege that the television Mannacio purchased was worth 15 to 20% less than the 240Hz version he thought he was buying. (*Id.*)

### B. Claims by Brian Fleishman

Brian Fleishman, a Pennsylvania resident, bought an LG television from BestBuy.com in June 2014. (2d Consolidated Compl. ¶128.) Fleishman viewed

specifications that said that the model he purchased had a refresh rate of 240Hz, but he later learned that his television actually had a refresh rate of 120Hz. (*Id.* ¶¶ 131, 133.) Fleishman stated that if he knew that the television did not have the refresh rate that had been advertised, he either would not have purchased it or would not have paid as much as he did. (*Id.* ¶ 134.) Plaintiffs allege that the television Fleishman purchased was worth 15 to 20% less than the 240Hz version he thought he was buying. (*Id.*)

### C.    Motion for Class Certification

In their August 6, 2020 Motion to Certify, Plaintiffs seek certification of a class under Federal Rules of Civil Procedure 23(b)(2), (3). Plaintiffs define the class as:

> All persons in the United States who purchased an LG LED television between May 9, 2010 and the present, labeled as having a "Hz"-rating that was twice the native refresh rate of its panel.

(Mot. for Class Cert. ¶ 1(a), Aug. 6, 2019, Docket No. 233.) Plaintiffs also define a subclass as:

> All persons in the United States who purchased an LG LED television from a Best Buy store or from Best Buy's website between May 9, 2010 and the present, labeled as having a "Hz"-rating that was twice the native refresh rate of its panel.

(*Id.* ¶ 1(b).)

**DISCUSSION**

## I.    CLASS ACTION STANDARD OF REVIEW

Under Rule 23, "[p]laintiffs requesting class certification must satisfy both 'implicit' and 'explicit' legal requirements." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 351 (D. Minn. 2012). "To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of three subsections of Rule 23(b)." *In re St. Jude Med., Inc.* ("*St. Jude I*"), 425 F.3d 1116, 1119 (8th Cir. 2005). The Court has broad discretion to determine whether class certification is appropriate. *See, e.g.*, *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012).

Plaintiffs bear the burden of showing that a class action is appropriate and that the requirements of Rule 23 are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23] . . . ."). The Court must conduct a "rigorous analysis" and frequently, that rigorous analysis will include "some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. "Nonetheless, the district court does not conduct a mini-trial to determine if the class 'could actually prevail on the merits of their claims.'" *Johns v. Bayer Corp.*, 280 F.R.D 551, 555 (S.D. Cal. 2012) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)). "When the court must determine the merits of an individual

claim to determine who is a member of the class, then class treatment is not appropriate."

*Id.*

## II.    RULE 23(A)

Rule 23(a) requires plaintiffs to demonstrate that:

> (1) the putative class is so numerous that it makes joinder of all members impractical; (2) questions of law or fact are common to the class; (3) the class representatives' claims or defenses are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*St. Jude I*, 425 F.3d at 1119.

### A.    Numerosity

Plaintiffs acknowledge that the true size of the class or subclass is unknown, but allege joinder is impractical because class members are well into the thousands, possibly even millions.  Defendants do not dispute that Plaintiffs have satisfied the numerosity requirement.  Thus, the Court concludes that the plaintiffs satisfy the numerosity requirement.  *Cf. Wiener v. Dannon Co.*, 255 F.R.D. 658, 664 (C.D. Cal. 2009) (finding the numerosity requirement satisfied in a consumer fraud action where the class would have included "several million plaintiffs").

### B.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  *Dukes*, 564 U.S. at 349.  The claims "must depend upon a common contention" that is "capable of classwide resolution."  *Id.* at 350.  The key question for a court

examining commonality is "the capacity of a class-wide proceeding to generate common **answers** apt to drive the resolution of the litigation." *Id.* (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Defendants argue that there is no commonality because of dissimilarities in purchasing experience, questions of reliance, and damages. These arguments largely go to the question of predominance under Rule 23(b), rather than whether there are common questions at all.

As is often the case in consumer fraud cases, the common question in this case is whether Defendants' alleged representations about the refresh rates "were likely to mislead or deceive class members." *Khoday v. Symantec Corp*, Civil No. 11-180 (JRT/TNL), 2014 WL 1281600, at *15 (D. Minn. Mar. 13, 2014).; *see also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Defendants also argue that the Plaintiffs' exhibits show that the refresh-rate specification was listed in different ways for different models at different times. However, "[t]hat all of Defendants' representations . . . were not identical or that some consumers may have purchased the product even if they had known" the representations were false "does not negate Plaintiffs' showing of commonality." *Khoday*, 2014 WL 1281600, at *15. Because the Plaintiffs' contentions all arise from the common question of Defendants'

representations about the refresh rates of the televisions that Plaintiffs purchased, the Court finds that Plaintiffs satisfy the commonality requirement.

## C.    Typicality

### 1.    General Requirements

Typicality requires "that there are other members of the class who have the same or similar grievances as the plaintiff." *Sonmore v. CheckRite Recovery Servs.*, 206 F.R.D. 257, 262 (D. Minn. 2001) (cleaned up).  The typicality requirement seeks to determine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).  Typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff[s]." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

Defendants first argue that there cannot be typicality generally because there will be individualized inquiries regarding reliance for each plaintiff—again, an argument going more to predominance.  Factual variations amongst plaintiffs will not normally preclude class certification "if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (internal quotation marks omitted). Defendants' reliance on *Elizabeth M. v. Montenez*, 458 F.3d 778 (8th Cir. 2006) to argue otherwise is misplaced.  That was a case in which plaintiffs brought substantive due

process claims regarding alleged assaults they suffered at Nebraska's three residential mental health facilities. 458 F.3d at 782. The Eighth Circuit concluded typicality was defeated because no two assaults could be the same. *Id.* at 787. Here, the case revolves around a long-term course of conduct in marketing consumer electronics and fits with *Alpern*'s definition. Because Plaintiffs allege they all were aware of the Hz-rating on their televisions and bought the televisions based on that rating, there is sufficient typicality.

### 2. Villa Lara

In addition to their general arguments against typicality, Defendants argue specifically that Villa Lara is not typical because he is subject to unique defenses. Defendants note that Villa Lara has already received a full refund for his purchase because of an unrelated repair issue and claims only that he is owed either interest or reimbursement for the protection plan he purchased and assert a defense of lack of privity for the breach claims.

Courts have concluded that when a named plaintiff is subject to unique defenses, they are not typical for the purposes of Rule 23(a). *See In re GenesisIntermidia, Inc. Sec. Lit.* 232 F.R.D. 321, 329 (D. Minn. 2005); *Irvin E. Schermer Tr. ex rel. Kline v. Sun Equities Corp.*, 116 F.R.D. 332, 336–37 (D. Minn. 1987). Plaintiffs respond by citing two cases, *Alpern* and *In re Workers Comp.*, 130 F.R.D. 99, 107 (D. Minn. 1990). Both refer not to questions of typicality but to adequacy—specifically the requirement "the representatives must not have interests which are antagonistic to those of the class."

*In re Workers Comp.*, 130 F.R.D. at 107. Although the unique factual distinctions of Villa Lara's claim may not make him antagonistic to the class, that does not address the question of his typicality.

The Court has already expressed "serious questions" about Villa Lara's typicality. *Villa Lara*, 2018 WL 3748177, at *7 n.2. Because Villa Lara's claim is distinct from the other Plaintiffs—both because of the issue of privity stemming from his grandmother's purchase of the television and his damages claim—the Court finds that Villa Lara is not typical for the purposes of this Class Certification.[1]

### D.    Adequacy of Representation

To demonstrate adequacy of representation, a plaintiff must show that "(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Farmington Hills*, 281 F.R.D. at 353.

Defendants argue only that Plaintiff Hudock is inadequate, because her brother-in-law was one of the attorneys who initially brought her case. This, they say, is akin to

---

[1] During oral argument, Plaintiffs argued that because Villa Lara's damages are typical, he meets the typicality requirement. However, both the reasons that Plaintiffs supply—the collateral-source rule and the rule in *Humphery v. Phillip Morris,* 551 N.W.2d 490, 496–97 (Minn. 1996) (a refund will not defeat typicality in a consumer-protection class action)— are foreclosed to them because they failed to brief either and denied Defendants the opportunity to respond. *Cf. Berryhill v. Schriro*, 137 F.3d 1073, 1075 n.2 (8th Cir. 1998).

cases in which class representatives have been found to be inadequate because a "close personal relationship between the name[d] plaintiff and class counsel 'creates a present conflict of interest—an incentive for [the named plaintiff] to place the interest of [class counsel] above those of the class.'" *O'Shaughnessy v. Cypress Media, L.L.C.*, No. 4:13-CV-0947-DGK, 2015 WL 4197789, at *5 (W.D. Mo. July 13, 2015) (quoting *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003)).

The Court disagrees. That Hudock's brother-in-law is not among those being put forward as class counsel is, despite Defendants' assertion to the contrary, a relevant consideration. There is no evidence to suggest Hudock does not wish to pursue this action with vigor and because her brother-in-law will not be class counsel, there is no evidence to suggest that her viewpoint will diverge from her fellow class members.

Defendants do not argue that proposed class counsel is inadequate. Both Attorney Cialkowski and Attorney Hedlund have significant experience in class-action litigation. (*See* Decl. of David M. Cialkowski ("Cialkowski Decl.") ¶¶ 6–13, Aug. 7, 2019, Docket No. 314; Decl. of Daniel C. Hedlund ("Hedlund Decl.") ¶¶ 3–8, Aug. 6, 2019, Docket No 311.) They are adequate class counsel. The Court therefore finds both the named Plaintiffs and class counsel meet the adequacy requirement of Rule 23(a).

### E.    Rule 23(a) Conclusion

Because the Court concludes that the requirements of numerosity, commonality, typicality, and adequacy are met, the Court finds that the class satisfies the requirements

of 23(a).  However, the Court finds that Plaintiff Villa Lara must be dismissed because his claims are not typical.  The Court will now turn to the Rule 23(b)(3) factors, which, as noted above, must also be met in order to certify the class.

## III.    RULE 23(b)(3)

The Court may certify a class under Rule 23(b)(3) if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### A.    Predominance

The Supreme Court has held that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  The central issue when determining predominance is whether defendant's liability as to all plaintiffs can be established by common evidence.  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010).  The Court must first determine whether applying Minnesota or New Jersey law, respectively, to this class action violates the Due Process Clause.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) (evaluating whether the Due Process Clause precluded application of Kansas law in a putative class action).  Then, if the Court concludes that application of Minnesota or New Jersey is constitutional, it must also conduct a choice-of-law analysis to determine whether application of Minnesota or New Jersey law is **preferable** to applying the law of each plaintiff's home state.  *See*

*Whitney v. Guys, Inc.*, 700 F.3d 1118, 1124 (8th Cir. 2012). Finally, the Court must determine whether common questions sufficiently predominate.

### 1. Due Process

The Due Process Clause of the Fourteenth Amendment provides "modest restrictions" on the application of forum law to class actions. *Shutts*, 472 U.S. at 818. The forum must have "'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure that the choice of [forum] law is not arbitrary or unfair." *Id.* at 821–22 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981)). Often, there will be several constitutionally permissible choices of law. *Shutts*, 472 U.S. at 823.

Whether application of the law of the forum state comports with Due Process is a two-step inquiry. First, the Court must determine whether the law of the forum "conflicts in any material way with any other law which could apply." *Id.* at 816 (explaining that application of the law of the forum causes no injury if that state's law is not in material conflict with the law of any other jurisdiction connected to the lawsuit). Second, if there is a material conflict, then the Court must consider whether the forum state has sufficient significant contacts to the litigation such that application of the forum state's law would be fair. *Id.* at 819.

### a.    Material Conflict

The parties agree that the putative class contains residents of all 50 states.  The Court must therefore determine whether there are material conflicts between (1) the MCFA/MDTPA/MUTPA claims against Best Buy and other jurisdictions' consumer-protection statutes; (2) the NJCFA claims against LG and other jurisdictions' consumer-protection statutes; (3) breach-of-warranty law and other jurisdictions' approach to breach of warranty; (4) breach-of-contract law and other jurisdictions' approach to breach of contract; and (5) unjust-enrichment law and other jurisdictions' approach to unjust enrichment.

### i.    Minnesota Consumer Protection Statutes

Plaintiffs concede there are material differences between the MCFA, MDTPA, and MUTPA and the consumer-protection statutes of other jurisdictions.  Plaintiffs have provided research demonstrating those material differences.  (*See* Plfs.' Ex. 87, Aug. 7, 2019, Docket No. 314.)  This Court has also previously concluded there are material differences.  *Mooney v. Allianz Life Ins. Co.*, 244 F.R.D. 531, 534 (D. Minn. 2007) (MCFA); *In re St. Jude Med.*, 2006 WL 2943154, at *5.  Therefore, the Court finds material differences between the MCFA, MDTPA, and MUTPA and the consumer-protection statutes of other jurisdictions.

### ii.      New Jersey Consumer Protection Statute

Additionally, there are material differences between the NJCFA and the consumer-protection statutes of other jurisdictions. Plaintiffs' research demonstrating material differences between Minnesota consumer-protection statutes and the statutes of other jurisdictions also demonstrates that the New Jersey Consumer Fraud Act differs materially from the consumer-protection statutes of other jurisdictions. (*See* Plfs.' Ex. 87, Aug. 7, 2019, Docket No. 314.) Therefore, the Court finds material differences between the NJCFA and the consumer-protection statutes of other jurisdictions.

### iii.      Breach of Warranty

Plaintiffs also concede there are material differences between Minnesota law on breach of warranty and the law of other jurisdictions. Indeed, there is confusion as to **Minnesota's** elements of breach of express warranty. *Lyon Fin Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 544 n.6 (Minn. 2014) (acknowledging, but declining to clarify, the open question as to whether Minnesota has abandoned reliance as an element of a breach-of-express-warranty claim). Therefore, the Court finds material differences in Minnesota law on breach of warranty and breach of warranty law in other jurisdictions.

### iv.      Breach of Contract

Plaintiffs argue that there are no material variations in contract law across jurisdictions. *See Thompson v. Allianz Life Ins. Co.*, 330 F.R.D. 219, 222. (D. Minn. 2019) (concluding that the elements for a claim of breach of contract "are undoubtedly similar

in all jurisdictions"). However, the Court in *Thompson* also concluded that "although courts have found class certification appropriate where the class alleges a breach of [a] **standardized** contract," a material difference did exist in *Thompson* because that case involved the construction of ambiguous contract terms—the process of which states differ materially—rather than standardized contracts. *Id.* at 223 (emphasis added).

Defendants provide additional research suggesting material differences in breach-of-contract law based on statutes of limitations. *See Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 509–13 (D. Minn. 2014) (noting that even the use of subclasses to accommodate variations among the statutes of limitation of several states was too complicated to certify a class).

The alleged contracts between Best Buy and Plaintiffs are based on the conception that the Hz-ratings were a term of an offer made by Best Buy to sell televisions to Plaintiffs. (2d Consolidated Compl. ¶¶ 237–241.) This theory is analogous to an ambiguous contract, not a standardized form, because standardized contracts are "uniform and essentially the same." *Thompson* 330 F.R.D. at 223 (internal quotation marks omitted). Thus, because it is likely that any contract between Best Buy and Plaintiffs is not a standardized form and because there are likely some material differences between Minnesota breach-of-contract law and the law of other jurisdictions when it comes to statutes of limitations, the Court finds such material differences exist here.

### v.     Unjust Enrichment

Plaintiffs argue that courts are not "inclined to find material variations in state unjust enrichment law." *See e.g.*, *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1177 (D. Minn. 2014) (Magnuson, J.) (finding that "[t]he substantive law of unjust enrichment is consistent across all jurisdictions").  However, this Court has also routinely concluded that there are material differences in unjust enrichment laws.  *See, e.g.*, *Mooney*, 244 F.R.D. at 534 (recognizing that conflicts exist "between Minnesota unjust enrichment law and unjust enrichment law in other jurisdictions"); *Cruz v. Lawson Software, Inc.*, Civil No. 08-5900, 2010 WL 890038, at *6 (D. Minn. Jan. 5, 2010); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 214 (D. Minn. 2003).

Defendants provide additional research suggesting material differences in unjust enrichment law based on seven variables including, *inter alia*, the elements of the offense, level of misconduct required, and whether it is a recognized independent cause of action. (Wilkinson Decl., Ex. 54.) Because of these conflicts, the Court concludes that material differences exist.

### b.     Significant Contacts

Because there are material conflicts of law, the Court must determine whether it would be fair—within the context of the Due Process Clause—to apply the law of the forum.  *Shutts*, 472 U.S. at 819.  The Court must consider whether the forum has

significant contacts to the litigation that support the forum state's interest in applying its law.  *Id.*  The "expectation of the parties" should also be considered.  *Id.* at 822.

### i.    Minnesota Law

Application of Minnesota law is fair.  Best Buy is a Minnesota company, and subject to general jurisdiction.  Although LG is a New Jersey corporation, it has a significant business presence in Minnesota, with a satellite office and employees located in the state to work directly with Best Buy.  Additionally, because LG sold its televisions in Minnesota it "'purposefully avail[ed] itself of the privilege of conducting activities within' Minnesota."  *Glover v. Merck & Co., Inc.*, 345 F. Supp. 2d 994, 997–98 (D. Minn. 2004) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Defendants appear to concede that they have sufficient contacts with Minnesota but argue that **Plaintiffs** lack significant contacts with Minnesota.  *See St. Jude I*, 425 F.3d at 1120 ("[W]e suspect Minnesota lacks sufficient contacts with all the [plaintiffs'] claims.").  This doubt came from the question of whether "the out-of-state parties 'had any idea that [Minnesota] law could control' potential claims."  *Id.* at 1120 (quoting *Shutts*, 472 U.S. at 822).

Defendants' reliance on *St. Jude I* is misplaced because it ignores the rigorous work done by this Court to subsequently analyze plaintiffs' contacts in that case and find they were sufficiently related to Minnesota.  *In re St. Jude Med., Inc.*, MDL No. 01-1396, 2006 WL 2943154, at *3–4 (D. Minn. Oct. 13, 2006).  That analysis was reviewed by the

Eighth Circuit in *St. Jude II*.  As was true then, Minnesota has a strong interest in applying its laws to companies doing business in the state—especially those who are headquartered here.  *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 93 (1987) (noting the forum state "has a substantial interest in preventing the corporate forum from becoming a shield for unfair business dealing.").  Virtually all the corporate acts implicated by each claim occurred in Minnesota, because LG and Best Buy worked together to develop the allegedly untrue Hz ratings.  And, to the extent that a consumer contemplated potential choice-of-law issues when purchasing a television—a generous assumption—they likely thought that **either** the law of the state of purchase, the law of Minnesota, where Best Buy is headquartered, or perhaps the law of New Jersey, where LG is headquartered would apply.  *Shutts*, 472 U.S. at 818 (recognizing that "a particular set of facts giving rise to litigation could justify, constitutionally, the application of more than one jurisdiction's laws."); *Mooney*, 244 F.R.D. at 535.  For that reason, the Court concludes that Minnesota law can be applied to both Best Buy and LG.

### ii.      New Jersey Law

Minnesota's choice-of-law rules apply to the question of whether to apply New Jersey law to claims with plaintiffs in all 50 states.  *Whitney*, 700 F.3d at 1123 ("In determining which state's law applies, we generally employ the forum state's choice-of-law rules.").

The Supreme Court has overruled application of state law where the state had no significant contact or significant aggregation of contacts to the action. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981). However, LG is undoubtedly subject to general jurisdiction in New Jersey, as it is incorporated and headquartered there.[2]

A state "may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Home Ins. Co. v. Dick*, 281 U.S. 397, 410 (1930). However, it cannot be said that Plaintiffs' actions have "no relation" to anything done within the borders of New Jersey. Unlike in *Shutts,* where plaintiffs purchased natural gas from leased land located in 11 states, Plaintiffs all purchased televisions manufactured by the same company—LG. *Shutts* also emphasized that the court should consider the expectation of the parties when determining whether applying a forum's laws comports with due process. *Shutts*, 472 U.S. at 822. Here, making the generous assumption that purchasers of LG televisions had any expectations of what state's law would apply to any claims they might bring against LG, the law of New Jersey— as LG's state of incorporation and the location of LG's principal place of business—would be an obvious choice.

Further, in *Hague,* a plurality of the Supreme Court affirmed the application of Minnesota law because of its significant contacts to the litigation. *Hague*, 449 U.S. at

---

[2] At oral argument, Plaintiffs clarified that they allege violation of the NJCFA against LG only.

313–29.  New Jersey's interest in enforcing its consumer protection laws is a "legitimate public policy" goal.   *Tinsley v. Yates*, 2019 WL 3451748, at *10 (D.N.J., 2019).[3]  Thus, application of New Jersey law against Defendant LG comports with Due Process.

### c.      Due Process Conclusion

There are material conflicts for each of the claims brought by Plaintiffs.  Regarding fairness under the Due Process Clause, the Court finds that as to LG, New Jersey law can constitutionally apply to (1) the MCFA/MDTPA/MUTPA claims; (2) the NJCFA claim; (3) the breach-of-warranty claims; and (4) the unjust-enrichment claims.

For Best Buy, the Court finds that Minnesota law can constitutionally apply to (1) the MCFA/MDTPA/MUTPA claims; (2) the breach-of-warranty claims; (3) the breach-of-contract claims; and (4) the unjust-enrichment claims.

### 2.      Choice-of-Law Analysis

Now that the Court has concluded what law may constitutionally be applied under the Due Process Clause, it must now determine what law is preferable to apply.  Minnesota uses the five-factor *Milkovich* test to determine which state's law is preferable: (1) predictability of result; (2) maintenance of interstate order; (3) simplification of the

---

[3] The Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, is designed to address "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices."   *Daaleman v. Elizabethtown Gas Co*., 390 A.2d 566, 569 (N.J. 1978).

judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. *Milkovich v. Saari*, 203 N.W.2d 408, 412 (Minn. 1973).

There are seven claims against Best Buy: three under Minnesota consumer protection statutes (MCFA/MDTPA/MUTPA); two breach-of-warranty claims; a breach-of-contract claim; and an unjust-enrichment claim. There are seven claims against LG: three under Minnesota consumer protection statutes (MCFA/MDTPA/MUTPA); the NJCFA claim; two breach-of-warranty claims; and an unjust-enrichment claim.

### a. Minnesota Law

### i. Predictability

This factor "addresses whether the choice of law was predictable before the time of the transaction or event giving rise to the cause of action." *Danielson v. Nat'l Supply Co.*, 670 N.W.2d 1, 7 (Minn. App. 2003). It applies primarily to contractual and other "consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000). It has limited applicability to tort claims, because the occurrence of torts is unpredictable. *See Nesladek v. Ford Motor Co.*, 46 F.3d 734, 738 (8th Cir. 1995).

The claims brought under the Minnesota consumer-protection statutes and the equitable doctrine of unjust enrichment are quasi-torts. To the extent this factor relates to them, it weighs toward the application of Minnesota law. Defendants are either

Minnesota companies or have significant operations within Minnesota and therefore expect to be subject to Minnesota law.[4]

As for the breach-of-warranty and breach-of-contract claims, this factor weighs slightly toward application of plaintiff's home-state law because the purchases took place within those states. Making the generous assumption that any plaintiffs actually considered the question of which state's law applied to the purchase of a television, many would likely be surprised to find these kinds of claims, which relate specifically to the transaction between the individual and the business—as opposed to consumer-protection claims, which regulate the behavior of the company—were governed by the law of a state other than the one in which they purchased their televisions.

Thus, the predictability factor weighs in favor of applying Minnesota law to Plaintiffs' consumer-protection and unjust enrichment claims and weighs against applying Minnesota law to the breach-of-warranty and breach-of-contract claims.

### ii.     Interstate order

This factor addresses "whether the application of Minnesota law would manifest disrespect for [another state's] sovereignty or impede the interstate movement of people and goods." *Jepson v. General Cas. Co. of Wisc.*, 513 N.W.2d 467, 471 (Minn. 1994). "The factor is generally not implicated if the state whose law is to be applied has 'sufficient

---

[4] For example, on Best Buy's website, its terms and conditions state that the laws of the State of Minnesota apply to any disputes or claims.

contacts with and interest in the facts and issues being litigated.'" *Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 620 (8th Cir. 2001) (quoting *Myers v. GEICO*, 225 N.W.2d 238, 242 (Minn. 1974)). A comparison of contacts is made only when a forum state "has little or no contact with a case and nearly all of the significant contacts are with a sister state." *Hughes*, 250 F.3d at 620–21 (internal quotation omitted).

As discussed above, Minnesota has significant contacts with Plaintiffs' claims by virtue of the domicile and claims-related activities of Best Buy. This factor weighs against application of Minnesota law to LG because, by comparison, it has fewer contacts with Minnesota than Best Buy. It is headquartered in New Jersey, and Plaintiffs' allegations of decision making on Hz-labeling emanate almost exclusively from New Jersey. The breach-of-warranty and breach-of-contract claims have a more tenuous connection to Minnesota because they arise under each state's business regime.

### iii.    Judicial task

In applying this factor, the relevant question is not whether applying the law of one state would be simpler than applying the laws of all 50 states. *See St. Jude* I, 425 F.3d at 1120 (8th Cir. 2005). Instead, the question is whether, with respect to any particular claimant, applying the law of Minnesota would be simpler than applying the law that would otherwise apply. *Id.* "[T]his Court is capable of resolving a non-Minnesota class member's claims under [either] Minnesota law or the law of the non-resident's home state." *Mooney*, 244 F.R.D. at 536. Additionally, "the third factor, simplification of the

judicial task, has not been given much weight" by the Minnesota Supreme Court. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co*., 604 N.W.2d 91, 95 (Minn.2000). Thus, this factor is neutral.

### iv. Forum's interest

Under this factor, the Court must weigh the policy interests of Minnesota with those of other states with connections to this litigation. S*ee Nesladek*, 46 F.3d at 739 (noting "this factor requires analysis not only of Minnesota's governmental interests, but also of Nebraska's public policy"). Minnesota has a compelling interest in redressing wrongs committed within its borders. Specifically, there is a strong interest in providing redress for those who are injured. *See Boatwright v. Budak*, 625 N.W.2d 483, 489 (Minn. App. 2001); *see also* Minn. Const. art. I, § 8 ("Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to . . . person, property or character . . . .")

Although, when applied to torts, this factor generally points to application of the law of the forum where the injury occurred, a different conclusion can be reached for claims based on consumer-protection statutes. Consumer-protection statutes focus on the behavior of the defendant, and therefore it is appropriate to apply law from where the defendant has the most contacts. *See* Restatement (Second) Conflict of Laws § 145 cmt. e (explaining that in cases of misrepresentation or fraud the place of injury has little importance).

Minnesota has a strong interest in applying its law to a Minnesota-based corporation like Best Buy. *CTS Corp.*, 481 U.S. 93. It has a more tenuous interest in applying its law to a New Jersey-based company like LG. Again, Plaintiff appears to concede this point and suggest that New Jersey law should apply against LG as to all the areas where there is a material conflict—which they argue are only the consumer-protection and unjust-enrichment claims. This factor therefore weighs toward application of Minnesota law to the claims against Best Buy and weighs against application of Minnesota law to the claims against LG.

### v.      Better rule

Minnesota courts have stated that this factor carries no weight, and the Court will not address it. *See Nodak*, 604 N.W.2d at 96.

### vi.     Minnesota Law Conclusion

Of the three substantive *Milkovich* factors, all weigh in favor of applying Minnesota law to the consumer-protection and unjust-enrichment claims against Best Buy. They also weigh against generally applying Minnesota law to the breach-of-warranty and breach-of-contract claims. The *Milkovich* factors weigh against applying Minnesota law to any of the claims against LG.

### b.    New Jersey Law

#### i.    Predictability

As noted above, application of New Jersey law against LG for the consumer-protection claim and unjust-enrichment claims is reasonable because they are quasi-tort claims.  Nothing in the record "indicate[s] that this was a transaction where the parties desired advance notice of what state law would apply in a future dispute."  *Danielson*, 670 N.W.2d at 7.  Further, it should come as no shock to a New Jersey–based company to face liability under the NJCFA.

However, the breach-of-warranty and breach-of-contract claims are not tort claims, and a plaintiff might more plausibly be said to have considered which state's laws might apply to such a claim.  *Nodak*, 604 N.W.2d at 94 (concluding that parties engaging in consensual transactions desire advance notice of what law will govern future disputes).  As above, this factor weighs in favor of the application of plaintiff's home-state law because the purchases took place within those states.  Even so, because of the significant contacts between LG and New Jersey, predictability weighs in favor of the application of New Jersey law for the consumer-protection and unjust-enrichment claims.

#### ii.    Interstate order

LG is at home in New Jersey, and most of the actions that are alleged to have taken place leading up to the Hz labeling happened in New Jersey.  LG distributes, markets, and warrants its products from New Jersey, so it benefits from protections of New Jersey law.

This factor weighs in favor of application of New Jersey law as to LG because New Jersey has a sufficient interest in the facts and issues being litigated.

### iii.  Judicial task

This factor slightly favors application of Minnesota law because it would be simpler to apply the law of one state than the law of two states. Plaintiffs note that applying another state's law in this case poses no foreseeable problem. *See Mooney*, 244 F.R.D. at 536.

### iv.  Forum's interest

As discussed above, just as Minnesota has a strong interest in policing the actions of Best Buy, as a domestic corporation, New Jersey has the same interest vis-a vis LG. *See Mooney*, 244 F.R.D. at 535; *St. Jude*, 2006 WL 2943154, at *4-7.

Defendants argue that courts in New Jersey, applying New Jersey law, have routinely refused to apply the NJCFA to out-of-state consumers, because to do so would "disregard the individual laws of those states . . . [and] would ignore their strong compensatory interest in this matter and would threaten to upset the balance of our federal system." *Gray v. Bayer Corp.*, 2011 WL 2975768, at *6 (D.N.J. July 21, 2011). The Court finds this reasoning unpersuasive; New Jersey has the strongest interest and most significant relationship of any state to Plaintiffs' consumer-fraud claims against LG. *In re Mercedes-Benz Tele Aid Contract Litig.,* 267 F.R.D. 113, 149 (D.N.J. 2010) ("New Jersey has a greater interest than the other five [states] in having the punitive provisions of the

NJCFA control the litigation due to the fact that Mercedes is headquartered there and the misrepresentations or omissions at issue were made in that state . . . .").[5]  By attempting to reframe the question to focus on individual plaintiffs, Defendants ignore the actions of LG, which are alleged to have mostly taken place in New Jersey.  *See id.* at 144 (discussing defendant's actions).  Thus, because companies who operate in a state should expect to be held accountable under that state's laws, even if transactions involving the company also happen outside of the state, this factor weighs in favor of application of New Jersey law to LG.

### v.      Better rule

Again, because Minnesota courts have stated that this factor carries no weight, the Court will not address it.  *See Nodak*, 604 N.W.2d at 96.

### vi.      New Jersey Law Conclusion

Of the three substantive *Milkovich* factors, all weigh **in favor** of applying New Jersey law to the consumer-protection and unjust-enrichment claims against LG.  They also all weigh **against** applying New Jersey law uniformly to the breach-of-warranty and breach-of-contract claims.

---

[5] This opinion was slightly modified upon a motion for reconsideration.  *In re Mercedes-Benz Tele Aid Contract Litig.*, Civ. 07-2720 DRD, 2010 WL 2976496 (D.N.J. July 22, 2010). The modification did not affect this portion of the analysis.

### c.     Choice-of-Law Conclusion

Given all of the above, the Court concludes that the following laws apply to the following Defendants, for the following claims:

- LG: **New Jersey law** for the NJCFA and unjust-enrichment claim.  Because the factors weigh in favor of application of home-state law for the breach-of-warranty claims, those claims are not manageable and will not be certified.  *See Rapp*, 302 F.R.D. 510 (application of the laws of 50 states to plaintiffs' claims made "fashioning a plan for applying those laws on a class-wide basis . . . nearly impossible").

- Best Buy: **Minnesota law** for the MCFA/MDTPA/MUTPA and unjust-enrichment claims.  Because the factors weigh in favor of application of home-state law for the breach-of-warranty and breach-of-contract claims, these are not manageable and will not be certified.  *Id.*

### 3.     Common Questions

Having concluded that there are no due-process barriers to certifying a class on the consumer-protection and unjust-enrichment claims, the Court must next determine whether common questions of law or fact will predominate.  Defendants argue that individual inquiries into reliance under the various consumer-protection statutes will predominate over common questions in this litigation, and, therefore, that certification is inappropriate.

### a.    MCFA/MDTPA/MUTPA

The MCFA prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled . . . ."  Minn. Stat. § 325F.69, subd. 1.

In *State v. Minnesota School of Business*, the Minnesota Supreme Court held that "'proof of individual reliance' is **not** needed to prevail under the MCFA," and concluded instead that plaintiffs need only "establish 'a causal nexus between the conduct alleged to violate the [MCFA] and the damages claimed.'"  *State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 134–35 (Minn. 2019) (emphasis in original) (quoting *Grp. Health Plan, Inc. v. Phillip Morris, Inc.*, 621 N.W.2d 2, 4 (Minn. 2001)).  This is particularly true "where a defendant's misrepresentations were directed at and affected a broad group of consumers," and plaintiffs in such cases do not need to offer "proof of direct individual reliance" to establish that causal nexus.  *Id.* at 135.

However, "[the] **seller's** intent to influence consumers and understanding that its advertising would influence consumers is important and relevant evidence to establish a causal nexus."  *Id.* at 136 (emphasis added)*.*  Indeed, courts considering MCFA cases have routinely found that class members' awareness of seller misrepresentations provides a sufficient causal nexus between a violation of the consumer protection statutes and damages in the form of restitution.  *See City of Farmington Hills*, 281 F.R.D. at 356

(concluding that each class member signed a document containing the alleged misrepresentation); *Curtis v. Altria Grp., Inc.*, 792 N.W.2d 836, 858 (Minn. App. 2010), *reversed on other grounds*, 813 N.W.2d 891 (Minn. 2012) ("[N]o matter what individual factors may have been involved in a class member's decision . . . all consumers . . . were led by false advertising to believe that Lights were healthier than regular cigarettes when they were not . . . .").

The Court concludes that Defendants' alleged intent to advertise a higher Hz rating than the televisions' native refresh rate is a sufficient causal nexus, and that individual reliance on that advertising will not defeat certification of an MCFA class action.[6]

---

[6] The Eighth Circuit has been wary of certifying class actions under the MCFA because of reliance issues. "*Group Health* surely does not prohibit [Defendants] from presenting direct evidence that an individual plaintiff . . . did not rely on representations from [Defendants]." *In re St. Jude Med., Inc.* ("*St. Jude II*"), 522 F.3d 836, 840 (8th Cir. 2008). "Whatever *Group Health* means about the need for . . . plaintiffs to present direct evidence of individual reliance, it does not eliminate the right of a defendant to present evidence negating a plaintiff's direct or circumstantial showing of causation and reliance." *Id.*

This dicta on the meaning of *Group Health* appeared before the further clarifying and liberalizing decision of *Minnesota School of Business*. Although the Minnesota Supreme Court did not endorse a quasi-fraud-on-the-market theory, it was at pains to suggest that entities accused of consumer fraud could not avoid liability simply by committing that alleged fraud on a large scale. Based on the direction of the law being developed by the Minnesota Supreme Court on application of Minnesota's consumer-protection statutes, the Court concludes that any issues of reliance in this case are not a barrier to certification and that common questions will predominate.

**b. NJCFA**

Like the MCFA, the NJCFA has a relaxed standard of proof compared to traditional fraud claims and has "replace[d] reliance . . . with the requirement that plaintiff[s] prove ascertainable loss." *Internat'l Union of Op. Eng. Local No. 68 Welfare Fund v. Merck & Co., Inc.* ("*IUOE Local 68*"), 929 A.2d 1076, 1086 (N.J. 2007). Plaintiffs may prove ascertainable loss by "produc[ing] evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005).

Defendants point to the decision in *IUOE Local 68*, in which the New Jersey Supreme Court concluded that a class could not be certified under the New Jersey class-action statute because "plaintiff [did] not suggest that each of the[] proposed class members, receiving the same information from defendant, reacted in a uniform or even similar manner[,]" and therefore class issues did not predominate. *IUOE Local 68*, 929 A.2d at 1087. In that case, however, the liability of the drug manufacturer, Merck, for allegedly driving up prices of Vioxx via a fraudulent marketing scheme that held out the drug as a safer and more effective alternative to other traditional pain medications, was a process involving third-party payors, various union and medical committees, and other stakeholders. There are no such middlemen in this case. Instead, consumers allegedly received misrepresentations about the Hz-ratings of LG televisions—affirmative

acts, in the language of the NJCFA[7]—directly from LG.  Taking the allegations in Plaintiffs'

2d Consolidated Complaint as true, as the Court must at this time,[8] consumers all acted

in the same manner: they purchased the televisions.  In accordance with its earlier ruling

in *Hudock II* that Plaintiffs had sufficiently pleaded ascertainable loss for the purposes of

the NJCFA, the Court finds that common questions predominate under the NJCFA.

### c.    Unjust Enrichment

Unjust enrichment occurs when the defendant receives a benefit that is

inequitable to retain.  *Klass v. Twin City Fed. Sav. & Loan Ass'n*, 190 N.W. 2d 493, 494–95

(Minn. 1971).  Unjust enrichment claims often turn on individualized facts.  *Daigle v. Ford*

*Motor Co.*, Civ. No. 09-3214, 2012 WL 3113854, at *4 (D. Minn. July 31, 2012).  However,

courts have certified unjust enrichment claims where they are based on the same claims

that were certified under consumer protection statutes.  *E.g.*, *Mooney*, 2007 WL 128841,

at *11.  Because Plaintiffs' unjust-enrichment claims arise essentially out of the same

conduct as the statutory consumer-protections claims, the Court finds predominance

with respect to the unjust enrichment claims.

---

[7] *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) ("When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act.").

[8] *See, e.g.*, *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).

### 4. Damages

At class certification, Plaintiffs' damages model must show that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast*, 569 U.S. at 35. "Calculations need not be exact, but at the class-certification stage . . . any model supporting a plaintiff's damages case must be consistent with its liability case." *Id.* at 34 (internal citation and quotation marks omitted).

Plaintiffs argue that that their experts set forth evidence of class-wide harm and a damages model that uses Choice-Based Conjoint Analysis to estimate the reduction in market value of the televisions sold. Courts have routinely accepted similar analyses as proper for calculating price premiums on a class-wide basis in a consumer class action. *See, e.g.*, *Khoday*, 2014 WL 1281600, at *33 (finding a conjoint survey allowed "for a determination of the actual value to consumers" of a mislabeled product in a class case).

Defendants counter that the conjoint analysis fails the predominance requirement because damages are not calculable by common proof. They have many other qualms, including Plaintiffs' experts' supposed lack of consideration of (i) change-in-market-value considerations; (ii) supply-side-factor considerations; (iii) and competitive pricing data. However, such a dispute does not prevent the Court from certifying the class at this stage of litigation. Thus, the Court finds that the Plaintiffs have met their burden at this time.

### 5. Conclusion

There are material conflicts between the laws of the various states implicated by the claims raised in the 2d Consolidated Complaint. However, it does not offend due process to apply the laws of either Minnesota or New Jersey to all claims raised against Best Buy or LG, respectively.

After reviewing the *Milkovich* factors, the Court concludes that it will apply Minnesota law to the consumer-protection and unjust enrichment claims against Best Buy, but that the law of the forum where the transaction took place must apply to breach-of-warranty and breach-of-contract claims. Because applying the law of 50 states to the large volume of claims encompassed by the proposed class is not judicially manageable, the Court will decline to certify a class for the breach-of-warranty and breach-of-contract claims against Best Buy.

Similarly, the Court concludes that it will apply New Jersey law to the consumer-protection and unjust-enrichment claims against LG, but that the law of the forum where the transaction took place must apply to the breach-of-warranty claims. Because applying the law of 50 states to the large volume of claims encompassed by the proposed class is not judicially manageable, the Court will decline to certify a class for the breach-of-warranty claims against LG.

The Court also concludes that common questions will predominate under the claims to be certified, and that Plaintiffs have met their burden as to damages at this stage of the litigation.

**B.     Superior Method**

In addition to showing predominance, for a class to be certified under Rule 23(b)(3), the Court must conclude that a class action is the superior method to adjudicate the claims.  "There is no bedrock standard upon which a Court determines that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *Sonmore*, 206 F.R.D. at 265 (internal quotation marks omitted).  Rather, courts generally look to the following non-exhaustive list of relevant factors: (1) the interest of class members in individually controlling their claims; (2) the extent to which litigation that has already begun; (3) the desirability of concentrating the litigation in a particular forum; and (4) the likely difficulties of managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).  Class actions are also superior if the alleged damages are small, and absent a class action most plaintiffs would have not realistic day in court.  *Shutts*, 472 U.S. at 809.

Here, the Plaintiffs are alleging overpayments of five percent or less, and the litigation has been going for nearly four years.  Taking the allegations against LG and Best Buy as true, as the Court must at this stage, this appears to be the kind of bad behavior with individually small impact that class actions were designed to address.  Because these factors weigh in favor of group adjudication, rather than on an individual basis, the Court concludes that a class action is the superior method with which to address Plaintiffs claims.

### C. Rule 23(b)(3) Conclusion

Because it concludes that the issues of predominance and superiority weigh in favor of class adjudication, the Court will certify a class under Rule 23(b)(3).

## IV. RULE 23(b)(2)

Plaintiffs also move to certify an injunctive class under Federal Rule of Civil Procedure 23(b)(2), which allows for class actions when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The primary question in cases such as this, where plaintiffs seek certification under both Rules 23(b)(2) and 23(b)(3), is whether injunctive relief is the **primary** relief, with money damages being only incidental. *St. Jude I*, 425 F.3d at 1121; *see also Avritt*, 615 F.3d at 1036; *Glenn v. Daddy Rocks, Inc.*, 203 F.R.D. 425, 430 (D. Minn. 2001) ("[C]ertification under Rule 23(b)(2) is precluded where monetary relief is sought, unless such monetary relief is incidental to the requested injunctive or declaratory relief."); Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 1775 & n.36 (concluding same and collecting cases).

The damages sought in this case cannot be said to be incidental to the claim. Plaintiffs have asked the Court to certify a class numbering potentially in the millions, with each member seeking monetary relief. Although individual claims may be small, the

aggregation of those claims—the very purpose of a Rule 23(b)(3) class—could make for significant damages.

Because the Court concludes that Plaintiffs' case is primarily seeking monetary damages, it will decline to certify a class under Rule 23(b)(2).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiffs' Motion for Preliminary Certification of a Class [Docket No. 223] is **GRANTED IN PART** as to:

      a.    Claims against Defendant LG Electronics U.S.A., Inc. under Count IV and Count XIII of the Second Amended Complaint [Docket No. 175];

      b.    Claims against Defendants Best Buy, Co., Inc.; Best Buy Stores, LP; and BestBuy.com, LLC under Count I, Count III, and Count XIII of the Second Amended Complaint [Docket No. 175].

2.    Plaintiffs' Motion for Preliminary Certification of a Class [Docket No. 223] is **DENIED IN PART** as to Count II, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, Count X, Count XI, and Count XII of the Second Amended Complaint [Docket No. 175]; and

3.    Plaintiff Ivan Villa Lara is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  March 30, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court