**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| BREANN HUDOCK, EUGENE MANNACIO, and BRIAN FLEISHMAN, *individually and on behalf of all others similarly situated*, | Civil No. 16-1220 (JRT/KMM) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS TO EXCLUDE EXPERT TESTIMONY** |
| v. | |
| LG ELECTRONICS U.S.A., INC., BEST BUY CO., INC., BEST BUY STORES, L.P., and BESTBUY.COM, LLC, | |
| Defendants. | |

David M. Cialkowski and Alyssa Leary, **ZIMMERMAN REED**, 1100 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, Raina Borrelli, Brittany N. Resch, and Daniel C. Hedlund, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, Minnesota 55402, for plaintiffs.

Phoebe Anne Wilkinson, **HOGAN LOVELLS US LLP**, 875 Third Avenue, New York, New York 10020, Robert Benjamin Wolinsky, **HOGAN LOVELLS US LLP**, 555 Thirteenth Street Northwest, Washington, District of Columbia, 20004, Peter H. Walsh, **HOGAN LOVELLS US LLP**, 80 South Eighth Street, Suite 1225, Minneapolis, Minnesota 55402, for defendants.

This is a class action brought by Named Plaintiffs Breann Hudock, Eugene Mannacio, and Brian Fleishman against Defendants LG Electronics USA, Inc. ("LG"), Best Buy Co., Inc. ("Best Buy Co."), Best Buy Stores, L.P. ("Best Buy Stores"), and BestBuy.com, LLC ("BestBuy.com") (collectively, "Best Buy"). While Plaintiffs' class-certification motion was pending, Defendants moved for summary judgment, which the Court will largely

deny.  The Court will deny summary judgment as to Counts I, III, and IV because Plaintiffs' model of damages sufficiently calculates benefit-of-the-bargain damages.  However, to the extent that Counts II, V, and VI seek injunctive relief, the Court will grant summary judgment because Plaintiffs fail to show the likelihood of future harm.  Additionally, because there are no longer Named Plaintiffs residing in either New York or Illinois, the Court will sua sponte grant summary judgment as to Counts VII and VIII.

Plaintiffs and Defendants have also filed cross-motions to exclude expert testimony or other evidence.  The Court will deny Defendants' Motion to Exclude the report of Plaintiffs' damages expert.  The Court grant in part Plaintiffs' Motion to Exclude Defendants' Expert Dr. Keith R. Ugone as to his opinion that the design of Plaintiffs' damages model is flawed because Ugone is not qualified to opine as a survey-design expert.  Finally, the Court will deny both Plaintiffs' Motion to Exclude Defendants' Expert Dr. Charles A. Poynton and their Motion to Exclude the Declaration of Taylor Vander Aarde.

## BACKGROUND

### I.     THE CASE

This long-running class action has had many claims and characters come and go over the past four years.  The Court will  recite only those facts necessary to resolving the pending motions.

Plaintiffs purchased televisions manufactured by LG either on Bestbuy.com or in a Best Buy store.  Plaintiffs allege that, prior to buying the televisions, they decided to purchase a television with a refresh rate of either 120Hz or 240Hz. [1]  Plaintiffs contend that they spent weeks shopping for their preferred television and that advertisements and specifications indicated these LG televisions had refresh rates of either 120Hz or 240Hz.  After purchasing their televisions, Plaintiffs allege that they noticed that the television images were not as clear as expected.  They later learned that the televisions used a technology called backlight scanning to enhance picture quality and, therefore, had a "native" refresh rate of only 60Hz or 120Hz, respectively.  *See Hudock v. LG Elecs., U.S.A., Inc.* ("*Hudock I*"), Civil No. 16-1220 (JRT/FLN), 2017 WL 1157098, at *1 (D. Minn. Mar. 27, 2017); *Hudock v. LG Elecs., U.S.A., Inc.* ("*Hudock II*"), Civil No. 16-1220 (JRT/FLN), 2018 WL 626527, at *1 (D. Minn. Jan. 30, 2018); *Hudock v. LG Elecs., U.S.A., Inc.* (*Hudock III*"), Civil No. 16-1220 (JRT/KMM), 2019 WL 3219515 (D. Minn. July 17, 2019).

## II.    THE CLAIMS

In March 2020, the Court granted in part and denied in part Plaintiffs' class-certification motion.  *Hudock v. LG Elecs., U.S.A., Inc.* ("*Hudock IV*"), Civil No. 16-1220

---

[1] "The refresh rate of a particular television," which is expressed in Hertz ("Hz"), "indicates the number of times per second a television refreshes the image displayed.  The higher the refresh rate of a television, the more unique images are displayed per second allowing the television to display moving images more clearly, resulting in better picture quality." *Hudock v. LG Elecs., U.S.A., Inc.* ("*Hudock I*"), Civil No. 16-1220 (JRT/FLN), 2017 WL 1157098, at *1 n.1 (D. Minn. Mar. 27, 2017).

(JRT/KMM), 2020 WL 1515233, at *16 (D. Minn. Mar. 30, 2020). It certified the proposed damages class and subclass as to (1) claims against LG under the New Jersey Consumer Fraud Act ("NJCFA") and claims for unjust enrichment under New Jersey law; and (2) claims against Best Buy under the Minnesota Consumer Fraud Act ("MCFA"), Minnesota Uniform Unlawful Trade Practices Act ("MUTPA"), and claims for unjust enrichment under Minnesota law. *Id.* at *15. Because the Court's choice-of-law analysis weighed in favor of application of home-state law for both breach-of-warranty claims and breach-of-contract claims, the Court declined to certify a class for those counts. *Id.* The Court also declined to certify an injunctive class because it "conclude[d] that Plaintiffs' case is primarily seeking monetary damages[.]" *Id.* at *16.

Now, under the operative SCC, there are three named Plaintiffs:

(1) Breann Hudock (Wisconsin; 120 Hz);
(2) Eugene Mannacio (California; 240 Hz); and
(3) Brian Fleishman (Pennsylvania; 240 Hz)

There are four class claims:

- Count I (MCFA);
- Count III (MUTPA);
- Count IV (NJCFA); and
- Count XIII (Unjust Enrichment).

And there are nine claims brought only by the Named Plaintiffs:

- Count II (Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.43, *et seq.*);
- Count V (California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1780 *et seq.*);
- Count VI (California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*);

-4-

- Count VII (Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/1);
- Count VIII (New York General Business Law ("GBL"), N.Y. Gen. Bus. Law § 349);
- Count IX (Pennsylvania Unfair Trade Practices & Consumer Protection Law ("PUTP"), 73 P.S. 201-1 *et seq.*);
- Count X (Breach of Express Warranty);
- Count XI (Breach of Implied Warranty); and
- Count XII (Breach of Contract) (against Best Buy only)

Defendants moved for summary judgment.  (Jan. 10, 2020, Docket No. 429.)

## III.    THE EXPERTS

Both parties also filed motions to exclude expert testimony.  (Defs.' Mot to Excl., Dec. 2, 2019, Docket No. 373; Plfs.' Mots. To Excl., Jan. 10, 2020, Docket Nos. 397, 406.) Plaintiffs later filed a Motion to Exclude a declaration in support of Defendants' summary-judgment motion.  (Plfs.' Mot. to Excl., Feb. 5, 2020, Docket No. 475.)

Plaintiffs move to exclude Defendants' experts Dr. Keith R. Ugone (Jan. 10, 2020, Docket No. 397); and Dr. Charles A. Poynton (Jan. 10, 2020, Docket No. 406), and the Declaration of Taylor Vander Aarde (Feb. 5, 2020, Docket No. 475).

Ugone holds an undergraduate degree, master's degree, and Ph.D. in economics. (Decl. of Raina Borrelli, Ex. 1 at 14, 70, Jan. 10, 2020, Docket No. 402.)  Ugone has taught economics at the graduate and undergraduate level and he has spent many years in the private sector doing economics.  (*Id.* at 70.)  When asked what type of expert he is, Ugone replied that "I am an economist and a damage quantifier.  I am not a survey design person, I am not a survey person."  (*Id.* Ex. 2 at 7:24–8:4.)  When asked if he was an expert in conjoint survey design, Ugone said, "[n]ot in the conjoined survey design.  But . . . in the

economic aspects of it, I do consider myself an expert."  (*Id.* at 8:15–22.)  Ugone was clear that, "[he] can take the results of a survey and give opinions as to either the implications of the survey that is undertaken or whether there is [sic] economic issues associated with them."  (*Id.* at 10:23–11:2.)

Poynton holds an undergraduate degree in mathematics and computing science from Queen's University in Kingston, Ontario, Canada.  (Decl. of Charles Poynton ("Poynton Decl.") ¶ 1, Jan. 10, 2020, Docket No. 411.)  He has a Ph.D. from Simon Fraser University in Burnaby, British Columbia, Canada.  (*Id.*)  For the past 30 years, has been "an independent consultant specializing in imaging systems, digital video, and television display technology."  (*Id.* ¶ 2.)  He is the author of three books on digital video.  (*Id.*)  He is also a Fellow of the Society of Motion Picture and Television Engineers ("SMPTE")."  (*Id.* ¶ 5.)

Defendants move to exclude certain expert testimony of Steven P. Gaskin and Colin B. Weir.  (Dec. 2, 2019, Docket No. 373.)  Specifically, Defendants take issue with a choice-based conjoint ("CBC") analysis conducted by Gaskin and utilized by Weir to calculate class-wide damages.

Gaskin has a Bachelor of Science degree and a Master of Science in Management degree from the Massachusetts Institute of Technology.  (Decl. of Phoebe A. Wilkinson ("Wilkinson Excl. Decl."), Ex. 3 at A-1, Dec. 2, 2019, Docket No. 376.)  He is a principal at Applied Marketing Science, Inc., a marketing-research and consulting firm, where he

consults with clients about product development and customer behavior.  (*Id*. at A-2.)

Gaskin has previously been accepted by this Court and others as an expert witness for

purposes of CBC analysis.  (*Id*. at A-3.)  He created a CBC analysis to be used as Plaintiffs'

damages model.  (Decl. of Raina C. Borrelli ("Borrelli Decl."), Ex. 74 ("Gaskin Report") ¶¶

26, 52, 56, Feb. 5, 2020, Docket No. 487.)  The data used in Gaskin's report was provided

by Weir.  (Borrelli Decl., Sealed Ex. 93 ("Weir Report") ¶ 26, 30–46, Feb. 5, 2020, Docket

No. 490.)

Weir has a Bachelor of Arts degree in Business Economics from the College of

Wooster and a Master of Business Administration degree from Northeastern University.

(Wilkinson Excl. Decl., Ex. 5 ¶ 1, Docket No. 377.)  Since graduating from Northeastern,

Weir has taken three one-week educational courses through Sawtooth Software "on the

use of conjoint analysis.  (*Id.* ¶ 3, Ex. 6 at 69:24–72:21.)  Currently, Weir is vice president

at Economics and Technology, Inc., a research and consulting firm specializing in

economics, statistics, regulation, and public policy.  (*Id.* Ex. 5 at 1.)

**DISCUSSION**

I.      **MOTION FOR SUMMARY JUDGMENT**

       A.      **Standard of Review**

       Summary judgment is appropriate where there are no genuine issues of material

fact and the moving party can demonstrate that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and

a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256.

### B. Damages

Although the parties agree that the proper measure of damages is the benefit of the bargain, Defendants argue that Plaintiffs' damages model is insufficient proof of those damages.

Plaintiffs' damages model is a choice-based conjoint ("CBC") analysis produced by their expert, Steven Gaskin. Conjoint analyses "measure[] consumer desires by asking survey respondents about their relative preferences for certain combinations of product features." *In re Gen. Motors LLC Ignition Switch Litig.* ("*In re GM I*"), 407 F. Supp. 3d 212, 234 (S.D.N.Y. 2019), *reconsideration denied* ("*In re GM II*"), 427 F. Supp. 3d 374 (S.D.N.Y. 2019). Typically, such conjoint analyses " focus[] entirely on consumers' willingness to pay and ignore[] producers' willingness to sell." *In re GM II*, 427 F. Supp. 3d at 384.

-8-

Defendants argue at length about the merits of Plaintiffs' CBC analysis, but their main point is a simple one: because CBCs generally omit supply-side considerations, they cannot serve as the basis for a model of benefit-of-the-bargain damages since they do not determine market price. Without a market price, Defendants say, one cannot calculate the price premium paid by Plaintiffs for the alleged mislabeling.

However, this is "a classic mislabeling case." *In re GM I*, 407 F. Supp. 3d at 239. *In re GM I* used the analogy of fruit juice: "A conjoint survey that asks respondents whether they would rather pay *x* for a product labeled '100% Fruit Juice' or *y* for a similar product labeled '50% Fruit Juice' . . . would account for supply-side factors" because the variables *x* and *y* "reflect the prices for which juice companies actually sell similarly labeled products in the marketplace." *Id.* In mislabeling cases, courts have concluded that conjoint analyses "adequately account for supply-side factors" when "(1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018.)

Here, Gaskin used real-world market prices and held constant the historical quantity of television sold when preparing his CBC analysis in concluding that purchasers of the allegedly mislabeled 120Hz televisions paid a price premium of 5.31% and purchasers of the allegedly mislabeled 240Hz televisions paid a price premium of 1.3%.

However, Defendants point out that both the price data and data on the number of televisions sold come exclusively from those LG televisions included in the SCC.

So, the ultimate question is whether this narrowing of price and quantity data to only those LG televisions within the SCC means that the Gaskin CBC did not determine market price.  To apply the analogy from *In re GM I*, the CBC no longer looks at the market for all fruit juices labeled "100% Juice" and "50% Juice."  Instead, it considered only, say, Nantucket Nectar–brand juices labeled "100% Juice" and "50% Juice."   Given the definition of the certified class and subclass—those who purchased an **LG television** that was **labeled as having a Hz-rating twice that of the native refresh rate**—this narrowing is not, as a matter of law, impermissible.  Defendants point to no authority holding otherwise and the reasoning from *Hadley* holds true, even with the CBC's focus narrowed to the market price of a defined universe of LG televisions.

The Court therefore concludes that Plaintiffs' damages model does not fail as a matter of law and will deny Defendants' Motion for Summary Judgment on that ground.[2]

---

[2] To the extent Plaintiffs must show "ascertainable loss" to survive summary judgment on their NJCFA claim, "an estimate of damages, calculated within a reasonable degree of certainty will suffice to demonstrate an ascertainable loss."  *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005) (cleaned up).  Because the Court finds that the CBC analysis methodology results in a reasonable degree of certainty, Gaskin's model meets the *Thiedemann* test.

C.      Injunctive Relief

Plaintiffs bring claims for injunctive relief under Count II (MDTPA); Count V (CLRA); and Count VI (UCL).   Defendants argue that Plaintiffs lack Article III standing to seek injunctive relief because the prospective harm of the alleged mislabeling is not "actual and imminent."   *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).   Because the Court declined to certify a Rule 23(b)(2) injunctive-relief class, the injunctive-relief claims are brought only by Named Plaintiffs.   Named Plaintiffs must therefore "present[] evidence that they face any risk of future harm to themselves."   *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1071 (D. Minn. 2013).

Named Plaintiffs offer no evidence that they are likely to be harmed in the future by Defendants' alleged mislabeling.   The only record evidence suggests that neither Fleishman nor Mannacio plan to purchase any television in the foreseeable future.   (*See* Reply Decl. of Phoebe A. Wilkinson ¶ 2, Ex. 1 at 7:1–4, Ex. 2 at 8:25–9:2, 10:2–4, Feb. 24, 2020, Docket No. 530.)   There does not appear to be any evidence either way of Hudock's plans to purchase a new television.

Given the absence of any evidence of the likelihood of future harm to the Named Plaintiffs, they lack standing to seek injunctive relief and the Court will grant the Motion

for Summary Judgment as to the MDTPA claim and grant in part the Motion for Summary

Judgment as to the CLRA and UCL claims, so far as they seek injunctive relief.[3]

D.    **Plaintiff Mannacio**

Defendants argue that the record contains specific evidence that Plaintiff

Mannacio did not see the mislabeling at issue in this case and therefore that the Court

should grant summary judgment as to his claims.

To survive summary judgment, a plaintiff must present evidence beyond their own

"unsubstantiated allegations in [a] deposition."  *Davenport v. Riverview Gardens Sch.*

*Dist.*, 30 F.3d 940, 945 (8th Cir. 1994).  Although direct evidence of reliance is not needed,

plaintiffs must produce evidence of a causal connection.  *See, e.g.*, *State v. Minn. Sch. of*

*Bus., Inc.*, 935 N.W.2d 124, 134 (Minn. 2019); *Int'l Union of Operating Eng'rs Local 68*

*Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007) (stating that, to state

a NJCFA claim, a plaintiff must allege "three elements: (1) unlawful conduct . . . (2) an

ascertainable loss . . . and (3) a causal relationship between the defendants' unlawful

conduct and the plaintiff's ascertainable loss").

Mannacio purchased his LG television from Best Buy on March 22, 2016.  (Decl. of

Phoebe A. Wilkinson ("Wilkinson SJ Decl."), Ex. 22 at 9, 12, Jan. 10, 2020, Docket No. 454.)

---

[3] The Court has previously held that the only relief available under the MDTPA is injunctive relief.  *Hudock I*, 2017 WL 1157098, at*7.  The CLRA and UCL appear to allow for both damages and injunctive relief, and Defendants only move for summary judgment on the CLRA and UCL claims so far as they seek the latter.

Mannacio testified that he researched the LG television he ultimately purchased online at both LG.com and BestBuy.com, as well as at the Best Buy store the day he bought it. (Wilkinson SJ Decl., Ex. 1 at 9, Docket No. 455.)  He also stated that the LG website[4] and the in-store display ("fact tag") described the television as being 240Hz.  (*Id.* at 9:22–25, 11:10–21.)  Mannacio also stated that the LG website and fact tag, in addition to 240Hz, included the words "refresh rate."  (*Id.* at 10:1–2, 11:10–13.)

Defendants point to screenshots of LG.com and BestBuy.com that contradict Mannacio.  (*Id.* Ex. 17 at 3, Ex. 18 at 4, Ex. 19 at 3; Ex. 20 at 3; Ex. 21 at 3.)  In each of these screenshots, the television specifications include the term "TruMotion 240Hz" but do not include the term "refresh rate."  Defendants also produce a fact tag that was designed to be displayed with the television model purchased by Mannacio at the Best Buy store where he purchased it in March 2016.  (Sealed Decl. of Taylor Vander Aarde ("Vander Aarde Decl."), Jan. 10, 2020, Dock. 434.)  Vander Aarde, a Best Buy employee whose job includes editing fact tags for display, deleted the term "Hz" from the designation "TruMotion 240Hz" on March 18, 2016.  (*Id.* ¶ 8, Ex. 2 at 6–7.)  The edited fact tags were then "published for their various MK dates."  (*Id.*, Ex. 1 at 2.)  Vander Aarde states that the edited fact tags "were on display by March 20."  (*Id.* ¶ 11.)

_____

[4] Mannacio was not asked if he recalled seeing 240Hz on the BestBuy.com webpage for his television.

Despite Defendants' statement to the contrary, this evidence does not, as a matter of law, disprove Mannacio's deposition statements. Although the term "refresh rate" is missing from the website screenshots, the term "240Hz" appears both before and after the date Mannacio purchased his television. The central issue in this case is the allegation that LG and Best Buy advertised televisions with a higher refresh rate **as expressed in Hz units**—not whether the term refresh rate was specifically used. Likewise, the deletion of the Hz unit from the fact tag in Vander Aarde's Declaration may be strong evidence that Hz did not appear on the in-store fact tag on the day Mannacio purchased his television, but it is not definitive proof. The exhibit shows that the edit had been made by March 18, 2016, but it is merely Vander Aarde's assertion that the fact tag was being used in that store by March 20. If anything, this discrepancy is a question of fact that should be decided by a jury.

Accordingly, because Plaintiffs have demonstrated a genuine issue of material fact, summary judgment is not warranted.

### E.  Implied Warranty

Defendants argue that LG has disclaimed any implied warranties. However, the parties' briefing discussed the issue almost exclusively in terms of New Jersey law. However, the Court has since concluded that home-state law applies to the implied-warranty claims. Because neither party addresses the crucial question—whether in-box warranties can be sufficiently conspicuous, pursuant to UCC § 2-316(b), under California,

Pennsylvania, and Wisconsin state law—and given the likelihood that conspicuousness is a question of fact for the jury, the Court will deny the Motion for Summary Judgment as to the implied-warranty claims.

### F.   Unjust Enrichment

Defendants argue that, under New Jersey law, because Plaintiffs bring contract claims—that is, warranty claims—against LG, they cannot also bring an unjust-enrichment claim.[5]  Defendants point to *In re Philips/Magnavox Television Litigation* in which the court dismissed plaintiffs' unjust-enrichment claims "because the parties' relationship is governed by an express contract—the warranties issued by [d]efendants."  *In re Philips/Magnavox Television Litig.*, Civil No. 09-3072 (PGS), 2010 WL 3522787, at *10 (D.N.J. Sept. 1, 2010) (citing *Moser v. Milner Hotels, Inc.*, 78 A.2d 393, 394 (N.J. 1951) ("An implied contract cannot exist when there is an existing express contract about the identical subject.").  However, other decisions from the District of New Jersey have concluded, when considering *Moser*, that "[n]o such bright-line rule exists," and that such a rule "would restrict the use of unjust enrichment and deprive the [c]ourt of the flexibility that is essential to an equitable remedy."  *Palmeri v. LG Elecs. USA, Inc.*, Civil No. 07-5706, 2008 WL 2945985, at *6 (D.N.J. July 30, 2008).  The *Palmeri* decision also noted that "New

---

[5] Defendants do not argue that the unjust-enrichment claim cannot be maintained against Best Buy under Minnesota law.

Jersey Supreme Court cases abound that are inconsistent with such a bright-line rule." *Id.* (collecting cases).

Given this mixed authority, along with the consideration that the unjust-enrichment claim is a class claim while the warranty claims are brought only by the Named Plaintiffs, the Court will deny the Motion for Summary Judgment as to Count XIII.

### G. Conclusion

Based on the foregoing, the Court will deny Defendants' Motion for Summary Judgment except as to claims for injunctive relief under Count II (MDTPA); Count V (CLRA); and Count VI (UCL). The Court will also sua sponte dismiss Count VII (ICFA) and Count VIII (GBL) as those claims were not certified for the Class and there are no longer any named plaintiffs who reside in either Illinois or New York.

## II. MOTIONS TO EXCLUDE

### A. Standard of Review

Expert testimony is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods;

> (d)     the expert has reliably applied the principles
> and methods to the factors of the case.

Fed. R. Evid. 702.  "[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).

In *Polski v. Quigly Corp.* the Eighth Circuit gave a three-part test to determine admissibility of expert testimony: (1) evidence based on scientific, technical, or other specialized knowledge must be **useful** to the finder of fact in deciding the ultimate issue of fact, (2) the witness must be **qualified** to assist the finder of fact, (3) the proposed evidence must be **reliable** or trustworthy in an evidentiary sense. *Polski v. Quicley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008).  The Court has a "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 satisfies these prerequisites. *Daubert*, 509 U.S. at 597.  "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert,* 509 U.S. at 592.)

When considering admissibility of expert witness, the Court "should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Meats, Inc.* 457 F.3d 748, 758 (8th Cir. 2006).  And "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Robinson*

-17-

*v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (quoting *Daubert,* 509 U.S. at 595).

However, even if expert-witness evidence meets the Rule 702 standard, it may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

### B.    Defendants' Motion to Exclude

Defendants move to exclude certain expert testimony of Steven P. Gaskin and Colin B. Weir.  (Dec. 2, 2019, Docket No. 373.)  Defendants seek to exclude Gaskin and Weir's testimony and reports for several reasons, all of which concern Gaskin's CBC analysis.  First, mirroring their summary judgment argument, Defendants contend that Gaskin's CBC survey does not reliably measure relevant market-price damages because it does not consider both demand and supply-side factors.  Defendants also argue that the survey to collect the CBC data was unreliable, and that Gaskin's analysis of the data has various flaws.  Finally, Defendants argue that some of the survey responses were unreasonable, and thus the entire survey should be discarded.  Ultimately, Defendants argue that because evidence exists which undermines the reliability of Gaskin's CBC, it ought to be excluded.

1.      **Analysis**

First, as discussed above, numerous courts have held that two factors—(1) real-world market prices and (2) holding the quantity supplied fixed—adequately account for supply-side factors in CBC analyses.  *See Hadley*, 324 F. Supp. 3d at 1105.

This Motion is merely another attack on the idea of a conjoint survey being used to measure class-wide damages in a mislabeling case.  Because Gaskin is adequately qualified to offer his opinion, and because that opinion is both useful and reliable, the Court will deny exclusion under Rule 702.

As for Rule 403, Defendants provide no real explanation as to why the probative value of Gaskin and Weir's testimony and reports is outweighed by the danger of unfair prejudice.  Defendants can raise their concerns about the reliability of Gaskin and Weir's testimony and reports through more proper means of cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.  *See Robinson*, 447 F.3d at 1100 (quoting *Daubert*, 509 U.S. at 595.).  The Court will therefore deny exclusion under Rule 403.

For these reasons, the Court will deny Defendants' Motion to Exclude.

C.      **Plaintiffs' Motions to Exclude**

1.      **Dr. Ugone**

Plaintiffs argue that Ugone offered four opinions which comment on survey design despite not being an expert on CBC survey design, methodology, or analysis.  In addition,

Plaintiffs attack Ugone's opinion for being speculative, unreliable, and based on insufficient facts. Finally, Plaintiffs argue three of the four opinions that Ugone offers are duplicative in violation of Fed. R. Evid. 403.

**a.    Ugone's qualifications**

Plaintiffs argue that because Ugone is not a survey design expert, he is not qualified to provide opinions on whether the CBC study ignores individualized purchase factors, measuring market value, competition in the market, and whether the results of the CBC study are consistent with real-world price differences.

In Ugone's first opinion, he criticizes the CBC for not considering individual factors leading to the purchase of a television. Such a critique of the calculation of damages falls easily in the wheelhouse of an economist specializing in damages calculation. Ugone's dissatisfaction with the lack of individual factors in Gaskin's calculation of damages is the consideration of an economist and does not transform his opinion into that of a conjoint survey-design expert.

In the second opinion, Ugone suggests that Plaintiffs' calculation of damages is missing an economic variable, because the market value of a product is determined by the interaction of supply and demand factors. As an expert in economics, Ugone is qualified to note the absence of a relevant variable in a calculation.

In the third opinion, Ugone again notes that Plaintiffs have left out a variable – this time a proper consideration of competition in the market. As with the two previous

opinions, this finding is not a determination that the CBC study was poorly designed, but instead a criticism of its economic analysis.  Ugone is qualified to make such critiques.

In Ugone's final opinion, Ugone disagrees about whether data is available to compare the results of the CBC study to real-world prices.  He explains that some CBC studies can give inflated prices to attributes of products such that adding all priced attributes of a product together equals more than the retail price of the product. Therefore, Ugone would have compared real-world prices to the result of the CBC study. Unlike Ugone's prior opinions, this criticism is not based on how damages should be quantified, instead is an opinion about how CBC studies should be conducted.  Ugone is admittedly not a survey design expert, and he is not qualified to render opinions on CBC design.  Accordingly, the Court will exclude this opinion.

**b.      Reliability**

Plaintiffs argue that Ugone's three remaining opinions are not reliable because Defendants did not conduct their own CBC study based on Ugone's economic principles.

Such a study is not necessary for Ugone's opinions to be reliable.  He has identified three economic principles—individual factors, supply-side factors, and competition— which he alleges are missing from Plaintiffs' calculation of damages.  If Ugone believes that each of those three economic variables are required in calculation of damages, he can critique a study that he believes omits them without being required to produce a counter-study.

**c.      Duplicative reports**

-21-

Plaintiffs assert that Ugone's opinions are duplicative of Defendants' survey expert, Dr. Wilcox. Wilcox identifies some of the same variables as Ugone but focuses his critique on survey design. Ugone uses some of the same missing variables to critique the entire calculation of damages. The fact that Ugone and Wilcox have overlapping opinions presents minimal prejudice, and certainly not enough to substantially outweigh the probative value of Ugone's opinions.

For these reasons, the Court will grant in part and deny in part this Motion to Exclude Ugone's Expert Opinions.

### 2.    Dr. Poynton

Plaintiffs challenge Dr. Poynton's opinions on four grounds: (i) his qualifications; (ii) the reliability of his methods; (iii) relevancy; and (iv) whether he usurps the role of factfinder by commenting on the ultimate question of the case.

### a.    Poynton's qualifications

Plaintiffs critique Poynton for not being a video-systems engineer; having measured neither the refresh rate nor backlight scanning of an LCD panel; and focusing his career on color reproduction in televisions.

Although the distinction that Poynton has not specialized in refresh rates in LED/LCD panels through his career is accurate, it is not so important to overcome the lean towards admissibility. *Robinson*, 447 F.3d at 1100 (citing 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6265 (1997) ("[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's

-22-

testimony, not its admissibility.")).  Poynton's relevant experience, including a 40-year career in television-display technology and multiple awards for his work, render him sufficiently qualified despite his lack of refresh rate specialization.

### b.    Reliability

Plaintiffs raise several concerns about how Poynton came to his conclusion that refresh rate can mean the number of times that the image is lit by the television for the viewer to see.  Plaintiffs argue that this conclusion lacks foundation, is inconsistent with the evidence, and is an unhelpful lay opinion.

Poynton's conclusion is similar to the definition of refresh rate put out by the Institute of Electrical and Electronics Engineers which allows for an interpretation similar to Poynton's.  Furthermore, although Poynton interpreted the term "update" by the common language definition, interpreting this one word by common language usage does not transform the rest of Poynton's expertise into lay opinion.  Plaintiffs' challenges to reliability rise only to weight and not admissibility.  *Robinson*, 447 F.3d at 1100.

### c.    Relevance

Plaintiffs argue that Poynton mischaracterizes the central issue according to the claim they are asserting.  Poynton stated that the "key to this case is temporal performance as expressed in technical specifications and as experienced by television viewers."  (Poynton Tr. at 90:9-24.)  Plaintiffs disagree, and instead believe the key issue is that the advertised refresh rate should reflect the number of times per second that new

-23-

image data loads on the screen.  However, a difference in characterizing the central issue of the case reflects the natural path of the adversarial system, not an issue of relevance.

> **d.    Usurping role of the factfinder**

Plaintiffs claim that Poynton's opinion that it was appropriate for Defendants to market their backlight-scanning technology as having a higher refresh rate invades the province of the factfinder and improperly embraces the ultimate issue under Rule 704. The Court will defer judgment on this issue until trial.  *See Khottavongsa v. City of Brooklyn Ctr.,* Civil No. 16 -1031 (RHK/DTS), 2017 WL 3822877, at *5 (D. Minn. Aug. 30, 2017). Additionally, even if this statement were improper, such impropriety does not provide a basis to exclude the rest of Poynton's testimony.  *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003).

For these reasons, the Court will deny this Motion to Exclude Poynton's Expert Opinions.

> **3.    Vander Aarde**

Defendants produced a fact tag—a label displayed on or near a particular television that describes the technical specifications and price of that model—from Taylor Vander Aarde to support their summary-judgment motion on January 10, 2020.  Plaintiffs challenge this evidence under Federal Rule of Civil Procedure 26, which requires that initial disclosures must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other

parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The advisory committee notes to Rule 26(e) state that "[t]here is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition . . . ." Fed. R. Civ. P. 26(e) Notes of Advisory Committee on Rules—1993 Amendment.

Defendants produced over 750 documents which mentioned Vander Aarde's name or email address, and multiple deponents discussed Vander Aarde. Because Vander Aarde was frequently identified in documents and depositions produced during discovery, the Court will deny this Motion to Exclude.

## CONCLUSION

The Court will largely deny Defendants' Motion for Summary Judgment, except as to Counts II, V, and VI, so far as they seek injunctive relief. The Court will sua sponte grant summary judgment as to Counts VII and VIII, because there are no longer any named plaintiffs from Illinois or New York. The Court will deny Defendants' Motion to Exclude,

and deny Plaintiffs' Motions to Exclude, except as to Ugone's opinion on the design of the Gaskin survey, which he is unqualified to give.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 429] is **GRANTED in part and DENIED in part:**

  a. Count II of Plaintiffs' Second Consolidated Complaint [Docket No. 175] is **DISSMISSED WITH PREJUDICE**;

  b. Counts V and VI of Plaintiffs' Second Consolidated Complaint [Docket No. 175] are **DISSMISSED WITH PREJUDICE** so far as they seek injunctive relief; and

  c. Counts VII and VIII of Plaintiffs' Second Consolidated Complaint [Docket No. 175] are **DISSMISSED WITHOUT PREJUDICE**;

2. Defendants' Motion to Exclude Expert Testimony [Docket No. 373] is **DENIED**;

3. Plaintiffs' Motion to Exclude Expert Testimony [Docket No. 397] is **GRANTED in part and DENIED in part**:

  a. Ugone is unqualified to opine on the design of the choice-based conjoint analysis developed by Plaintiffs' expert;

4.      Plaintiffs' Motion to Exclude Expert Testimony [Docket No. 406] is **DENIED**;

and

5.      Plaintiffs' Motion to Exclude the Declaration of Taylor Vander Aarde

Pursuant to Fed. R. Civ. P. 37(c) [Docket No. 475] is **DENIED**.


DATED:  August 12, 2020                          _____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                         Chief Judge
                                                  United States District Court