# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-2317
_____

Breann Hudock; Eugene Mannacio; Brian Fleishman, individually and on behalf of all others similarly situated

*Plaintiffs - Appellees*

v.

LG Electronics U.S.A., Inc.; Best Buy Co., Inc.; Best Buy Stores, L.P.; BestBuy.com, LLC

*Defendants - Appellants*

------------------------------

Retail Litigation Center, Inc.; Consumer Technology Association; Association of Home Appliance Manufacturers; U.S. Chamber Litigation Center; The Product Liability Advisory Council

*Amici on Behalf of Appellant(s)*

State of Minnesota

*Amicus on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 13, 2021
Filed: August 25, 2021
[Published]

————

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.

————

COLLOTON, Circuit Judge.

Breann Hudock, Eugene Mannacio, and Brian Fleishman sued LG Electronics U.S.A., Inc., Best Buy Co., and two Best Buy subsidiaries for allegedly misrepresenting the features of certain televisions that they sold. The named plaintiffs sought certification of two proposed classes, under Federal Rule of Civil Procedure 23(b)(3), to litigate claims of unjust enrichment and violations of consumer protection statutes from Minnesota and New Jersey. The district court granted the consumers' motion to certify the classes, and the defendants appeal. We conclude that the classes were not properly certified, and we therefore reverse the certification order.

I.

Each of the named consumers alleged that he or she purchased an LG LED (Light-Emitting Diode) television "labeled as having a 'Hz' rating twice as high as its actual refresh rate." A television's "refresh rate" is the number of times per second that the screen displays an image; this value is expressed in terms of Hertz (Hz). A television with a refresh rate of 60 Hz, for example, displays 60 images per second. Higher refresh rates reduce blurring in fast-moving scenes and produce clearer images.

The consumers alleged that LG and Best Buy sold televisions with refresh rates of 60 Hz and 120 Hz, but labeled them as having refresh rates of 120 Hz and 240 Hz, respectively. This information is sometimes displayed for consumers on a "fact

tag"—a product label that Best Buy uses to show information about product features. The consumers claimed that they relied on the allegedly false refresh rate labels, and would not have purchased, or would have paid less for, their televisions. They sought to represent two classes: a "National Class" of consumers who purchased LG televisions "labeled as having . . . 'Hz' rating[s] twice as high as" their actual refresh rates, and a "Best Buy Purchaser Subclass" of consumers who purchased such televisions from Best Buy's stores or its website.

The district court certified the proposed classes to adjudicate common-law claims of unjust enrichment and claims under three consumer protection statutes—the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1; the Minnesota Unlawful Trade Practices Act, *id.* § 325D.13; and the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2. The court concluded that the Due Process Clause permits, and Minnesota's choice-of-law rules require, the application of New Jersey law for claims against LG, and the application of Minnesota law for claims against Best Buy. Reasoning that questions common to all consumers in the classes would predominate, the court concluded that the proposed classes satisfied the requirements of Federal Rule of Civil Procedure 23(b)(3). LG and Best Buy argue on appeal that the court abused its discretion by certifying the classes under Rule 23. Alternatively, they maintain that the court erred in its analysis of the constitutional and choice-of-law issues as applied to the nationwide classes.

II.

A party seeking class certification "must affirmatively demonstrate his compliance" with Rule 23. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The movant must, among other things, satisfy "through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* For certification under Rule 23(b)(3), the party must show that "questions of law or fact common to class members predominate over any

questions affecting only individual members." The predominance requirement is "demanding"; a court considering certification pursuant to Rule 23(b)(3) must take a "close look at whether common questions predominate over individual ones." *Comcast Corp.*, 569 U.S. at 34 (internal quotation omitted).

LG and Best Buy argue that the district court abused its discretion by concluding that common questions of law and fact predominate over questions affecting only individual consumers. Citing *In re St. Jude Medical, Inc.*, 522 F.3d 836 (8th Cir. 2008), the companies contend that the court erred by ignoring individualized evidence that some consumers did not see, or did not rely on, the alleged misrepresentations regarding the Hz ratings of their LG televisions.

In *St. Jude*, we said that fraud cases often are unsuitable for class treatment, because proof often varies among individuals concerning what representations were received, and the degree to which particular persons relied on the representations. 522 F.3d at 838. A group of plaintiffs who were implanted with faulty artificial heart valves sought certification to bring claims under three Minnesota consumer protection statutes, including the Consumer Fraud Act, against the manufacturer of the valves. *Id.* at 837. In opposing certification, the manufacturer presented evidence that some plaintiffs received no material representations about their heart valves, and some physicians who prescribed the valves had not received representations directly from the manufacturer. *See id.* at 838-39.

Although we noted that the Minnesota legislature has "relaxed" the traditional requirement of proving reliance on a fraudulent statement as an element of consumer fraud claims, *see Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13-14 (Minn. 2001), we explained that "causation is still a necessary element of a damages action" under Minnesota's consumer protection laws. *St. Jude*, 522 F.3d at 839-40. And because the defendant could present evidence "negating a plaintiff's direct or circumstantial showing of causation and reliance," we concluded that the case would

be "dominated by individual issues," so the case was unsuitable for class treatment. *Id.* at 840.

Since *St. Jude*, the Minnesota Supreme Court has "reiterate[d]" its holding in *Group Health*: "direct proof of reliance is not required to establish a causal nexus" in cases alleging violations of the State's consumer protection statutes. *State v. Minn. Sch. of Bus., Inc.*, 935 N.W.2d 124, 137 (Minn. 2019). The court also reiterated, however, that defendants "retain the right to assert" that their "misrepresentations did not cause" an individual plaintiff's injuries. *Id.* at 140; *see St. Jude*, 522 F.3d at 839-40.

The New Jersey Consumer Fraud Act has similar standards for proving a causal nexus between misrepresentation and harm. Like Minnesota, New Jersey has replaced the requirement that plaintiffs prove reliance on a defendant's misrepresentations "with the requirement that plaintiff[s] prove ascertainable loss." *Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (per curiam). But as in Minnesota, claims under the New Jersey statute still require "proof of a causal nexus between [a] defendant's acts and the claimed damages." *Id.* at 1088; *see id.* at 1086. And defendants may offer individualized proof that class members did not "react[] in a uniform or even similar manner" to the defendant's misrepresentations. *Id.* at 1087; *cf. Dugan v. TGI Fridays, Inc.*, 171 A.3d 620, 637, 642-43 (N.J. 2017).

Like the defendant in *St. Jude*, LG and Best Buy have presented evidence that some consumers did not see, or did not rely on, the allegedly false representations—here, assertions about refresh rates for their televisions. Plaintiff Mannacio testified that he was "quite certain" that the fact tag he viewed when purchasing his television said "240 Hz." But the companies presented evidence creating a genuine dispute about whether Best Buy's contemporaneous fact tag for the relevant model of television, and store displays for different sizes of the same model,

read "TruMotion 240," without any mention of "Hz" or "refresh rate." Plaintiff Hudock testified that she wanted a 120 Hz television for her basement; but when purchasing a television for her bedroom, she cared only about getting a "decent price" for a television that suited "the area or the size" of the room. A television's advertised refresh rate would not have influenced her purchasing decision for the bedroom television.

Other evidence supports the conclusion that refresh rate was immaterial in some purchases, or to some consumers. One survey indicates that consumers cared less about the "120 Hz" feature when purchasing televisions for bedrooms than for "public rooms." In another survey of LG customers, some described the "TruMotion" enhanced refresh rate feature as "enjoyable" and "relevant" to their television usage, but others described it as a "[w]aste of money," and explained that they could not detect a difference between TruMotion and non-TruMotion televisions.

Questions of which television features—such as size, resolution, refresh rate, internet connectivity, and compatibility with other devices—motivated individual consumers to purchase particular LG televisions are the kind of "plaintiff-by-plaintiff determinations" that made certification inappropriate in *St. Jude*. 522 F.3d at 840. The Minnesota and New Jersey consumer protection statutes do not prohibit LG and Best Buy "from presenting direct evidence that an individual plaintiff . . . did not rely on" the companies' representations about the refresh rates of their televisions. *Id.* Such evidence is relevant and important to the question of a causal nexus between the alleged misrepresentations and any financial injury related to the television purchases. Because determination of the companies' liability would require individual determinations on causation and reliance, "common issues will not predominate" in the case. *Id.* Insofar as the particular fact tag displayed for a consumer like Mannacio determines whether he is even part of the class, *see* R. Doc. 175, ¶ 143, the need for individualized inquiries on that matter creates further "difficulties in managing a class

action." *See* Fed. R. Civ. P. 23(b)(3)(D).  We therefore conclude that the certification of the classes under Rule 23(b)(3) was inappropriate.

*   *   *

For these reasons, we reverse the class certification order and remand for further proceedings.

_____